Stephen G. Larson (SBN 145225)
slarson@larsonllp.com
Hilary Potashner (SBN 167060)
hpotashner@larsonllp.com
Jonathan Gershon (SBN 306979)
jgershon@larsonllp.com
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Tel: (213) 436-4888
Fax: (213) 623-2000

Attorneys for Defendant
JASON EDWARD THOMAS CARDIFF

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>JASON EDWARD THOMAS CARDIFF,<br><br>　　　　Defendant. | Case No. 5:23-cr-00021-JGB<br><br>**JASON CARDIFF'S *EX PARTE* APPLICATION FOR AN ORDER TRANSFERRING CASE TO THE HONORABLE DOLLY M. GEE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Filed concurrently with Request for Judicial Notice; Declaration of Stephen G. Larson; and [Proposed] Order]* |

Defendant Jason Edward Thomas Cardiff, by and through his counsel of record, hereby applies to the court *ex parte* for an order transferring the instant criminal action to the Honorable Dolly M. Gee.

Judge Gee presided over *FTC v. Jason Cardiff et al.,* Case No. 5:18-CV-02104-DMG ("FTC Action"), which is inextricably intertwined with the current indictment against Mr. Cardiff which has been assigned to this Court. Although the two cases do not fall squarely within the parameters of General Order No. 23-15, § II.I.1 (the "General Order") because this is a criminal matter and the FTC Action was a civil matter, Mr. Cardiff respectfully believes that the Court should exercise its discretion to transfer this case to Judge Gee because the government's conduct in the FTC Action may be relevant to Mr. Cardiff's defenses and because transferring this matter to Judge Gee is in the interest of judicial economy.

Moreover, *ex parte* relief is appropriate because (1) a properly noticed motion to transfer the instant matter to Judge Gee would not be heard until January 22, 2024, the day before trial is currently set to begin; and (2) it would not be in the interest of judicial economy for the Court to conduct extensive substantive work on the matter before deciding on whether to transfer the case.

This *ex parte* Application is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice, the Declaration of Stephen G. Larson, the files and records in this action, and upon such oral and documentary evidence as may be allowed at any hearing on this *ex parte* Application.

On December 14, 2023, Mr. Cardiff's counsel met and conferred with Assistant U.S. Attorney Valerie Makarewicz who advised that the government was still formulating its position. (Larson Decl., ¶ 3.) On December 21 and 22, 2023, Mr. Cardiff's counsel left two voicemails with Ms. Makarewicz requesting an update on the government's position on transferring this case to Judge Gee. Ms.

Makarewicz responded by email that the government opposes Mr. Cardiff's request to transfer this case to the Honorable Dolly M. Gee. (Larson Decl., ¶¶ 4-5.)

Dated: December 22, 2023                LARSON LLP

                                        By: /s/ Stephen G. Larson
                                            Stephen G. Larson
                                            Hilary Potashner
                                            Jonathan Gershon

                                            Attorneys for Defendant
                                            JASON EDWARD THOMAS CARDIFF

## I. INTRODUCTION

The instant criminal indictment appears to stem from dual civil and criminal investigations by the government—the former by the Federal Trade Commission ("FTC") and the latter by the United States Postal Inspection Service ("USPIS")—into Jason Cardiff and one of his companies, Redwood Scientific Technologies, Inc. ("Redwood").

On October 10, 2018, the FTC filed a civil complaint against Mr. Cardiff in his role as President and CEO of Redwood Scientific Technologies, Inc., ("Redwood") entitled *FTC v. Jason Cardiff, et al.,* Case No. 5:18-CV-02104-DMG ("FTC Action"). The FTC Action alleged, among other things, that Mr. Cardiff enrolled Redwood customers into autoship programs and charged their credit cards without their permission. The Honorable Dolly M. Gee presided over the FTC Action, which spanned over three and a half years. On March 1, 2022, Judge Gee entered a permanent injunction against Mr. Cardiff and Redwood but permitted continued operation of the business under prescribed circumstances and declined to impose any monetary remedies.

On a date unknown, USPIS initiated a criminal investigation against Mr. Cardiff based on the very same facts as the FTC Action.[1] Counsel for the government, Assistant U.S. Attorney Valerie Makarewicz, has represented that much of the discovery being produced on hard drives comes from the FTC case. That investigation led to a criminal indictment against Mr. Cardiff which was filed on January 31, 2023, and unsealed on November 27, 2023.

Although the two closely related cases do not fall squarely within the parameters of General Order No. 23-15, § II.I.1 (the "General Order") strictly

---

[1] Mr. Cardiff, through the undersigned, made an informal discovery request seeking the date that the government initiated the criminal investigation but, thus far, the government has refused to provide this date. Instead, Mr. Cardiff will now have to scour terabytes of data attempting to ascertain this critical data point.

4
JASON CARDIFF'S *EX PARTE* APPLICATION FOR AN ORDER TRANSFERRING CASE TO THE HONORABLE DOLLY M. GEE

because this is a criminal matter and the FTC Action was a civil matter, Mr. Cardiff respectfully believes that the Court should exercise its discretion to transfer this case to Judge Gee for several reasons.

*First*, in the Permanent Injunction, Judge Gee—apparently never having been made aware of the government's criminal investigation—ordered Mr. Cardiff to destroy a substantial amount of evidence from the FTC Action, including large amounts of customer information. To supervise this and other aspects of the detailed injunction, Judge Gee expressly retained continuing jurisdiction over the FTC Action. Given Judge Gee's ongoing involvement in the related civil matter, Mr. Cardiff respectfully submits that it is appropriate for Judge Gee to consider the implications that her Permanent Injunction and related orders may have had and may continue to have on Mr. Cardiff's criminal case.

*Second*, Judge Gee appointed a Receiver in the FTC Action who seized control of Mr. Cardiff's companies, including Redwood.  On September 20, 2022, just four months before the return of the criminal indictment, Judge Gee authorized the Receiver to immediately destroy records and computers which contained consumer information which is evidence directly relevant to the charges brought in this matter.  If the government initiated its criminal investigation prior to September 20, 2022—which the defense has reason to believe is the case, but which the government presently refuses to acknowledge one way or the other—then the government's failure to object to the destruction of this crucial evidence may be grounds for seeking dismissal of the indictment.  Again, since any obligation of the government to disclose its investigation would have been owed to Judge Gee, Mr. Cardiff respectfully submits that it is appropriate for Judge Gee to be assigned the criminal case.

*Third*, to the extent that the government shared information gathered through discovery in the FTC Action with its USPIS criminal investigators and/or federal prosecutors, either directly or through the court-appointed Receiver, the government

may have violated the Protective Order entered in the FTC Action as well as Mr. Cardiff's constitutional rights. The Protective Order generally prohibited the Parties from disclosing confidential, proprietary, or private information, and thus whether the government violated Judge Gee's Protective Order should be determined by Judge Gee who retained jurisdiction to enforce that order. Moreover, if the government acted in bad faith during the FTC Action by seeking compelled discovery from Mr. Cardiff and sharing that evidence with the federal criminal investigators and/or prosecutors—again, either directly or through the court-appointed Receiver—that would violate Mr. Cardiff's constitutional rights. Because the Protective Order was issued by Judge Gee, Mr. Cardiff respectfully submits that it is appropriate for Judge Gee to consider any motion brought pursuant to that Protective Order.

*Finally*, the FTC Action and the indictment against Mr. Cardiff are inextricably intertwined, and thus transferring this matter to Judge Gee is in the interest of judicial economy. As with the FTC Action, two counts in the indictment are based on allegations that Mr. Cardiff enrolled customers in autoship programs and charged their credit cards without their permission, and two other counts allege that Mr. Cardiff engaged in evidence tampering during the FTC Action. Because Judge Gee is familiar with the facts, evidence, witnesses, and parties, transferring this case to her would avoid unnecessary and duplicative effort. Indeed, it would cause a significant burden on this Court to have to familiarize itself with the FTC Action, which involved 721 docket entries and, according to the government, terabytes of discovery.

Accordingly, given the significant overlap between the indictment and the FTC Action, and the impact that this may have on Mr. Cardiff's defenses, Mr. Cardiff respectfully believes that the Court should exercise its discretion to transfer this case to Judge Gee.

## II. PROCEDURAL BACKGROUND

On October 10, 2018, the government initiated the FTC Action against Mr. Cardiff in his role as President and CEO of Redwood, based on Redwood's marketing and sale of homeopathic dissolvable thin-film strips. Request for Judicial Notice ("RJN"), Ex. 1. Judge Gee presided over the FTC Action, and it spanned over three and a half years and involved 721 docket entries.

On September 24, 2019, the Court in the FTC Action entered a stipulated protective order which prohibited the disclosure of confidential, proprietary, or private information unless otherwise required or authorized by law. *See* RJN, Ex. 2.

During the FTC Action, Judge Gee appointed a Receiver who seized control of Mr. Cardiff's companies, including Redwood. On March 1, 2022, Judge Gee entered a "Final Judgment including Permanent Injunction as to Defendants Jason Cardiff and Eunjung Cardiff" in the FTC Action which specifically provided that "this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order." RJN, Ex. 3 at § XXIV. The Order further enjoined the Receiver from returning any customer information to Mr. Cardiff and ordered Mr. Cardiff to destroy any customer information in his possession. *Id.* at § XVIII(A)(2) and (B).

Following the entry of the permanent injunction, on September 30, 2022, Judge Gee entered an "Order approving the Receiver's Final Report and Accounting, and the Receiver's Final Fee Application." RJN, Ex. 4. This Order provided that "[t]he Receiver is authorized to immediately destroy the remaining records and computers of the Receivership Defendants, which records contain consumer information[.]" *Id.* at 3, ¶ 7.

On January 31, 2023, the indictment was filed in the instant matter, arising out of the same set of facts in the FTC Action—Redwood's marketing and sale of homeopathic dissolvable thin-film strips. [ECF Nos. 1-2]. Counts 3 and 4 in the indictment are premised on alleged witness and evidence tampering occurring

during Mr. Cardiff's defense against related allegations in the FTC Action. [ECF No. 1, ¶¶ 5-6].

The indictment was unsealed on November 27, 2023, and Mr. Cardiff was arraigned on that same date. [ECF Nos. 7, 11].

### III.  EX PARTE RELIEF IS WARRANTED

Pursuant to the Court's Standing Order, and L.R. 6-1, a properly noticed motion to transfer the instant matter to Judge Gee would not be heard until January 22, 2024, the day before trial is currently set to begin. Moreover, given that Mr. Cardiff is requesting a transfer, in part, based on judicial economy, *ex parte* relief is appropriate so that the Court may decide on whether to transfer the case before conducting extensive substantive work on the matter.

### IV.  ARGUMENT

It is inarguable that the FTC Action and the instant criminal action are inextricably intertwined. The FTC Action involved allegations that Mr. Cardiff's businesses, including Redwood, sold homeopathic dissolvable thin-film strips and that in doing so, they enrolled their customers in unauthorized autoship programs which resulted in the customers being charged for additional shipments. RJN, Ex. 1 at ¶ 7. Counts 1 and 2 in the indictment allege that that the credit card charges from these alleged unauthorized autoship programs constitute access device fraud under 18 U.S.C. § 1029(a)(5) and aggravated identity theft under 18 U.S.C. §§ 1028A(a)(1), 2. Moreover, Counts 3 and 4 of the indictment are premised on Mr. Cardiff's alleged evidence tampering in the FTC Action.

Given the significant overlap between the indictment and the FTC Action, Mr. Cardiff respectfully believes that the Court should exercise its discretion to transfer this case to Judge Gee because the FTC Action may be relevant to Mr. Cardiff's defenses and because such a transfer promotes judicial economy.

### A. The FTC Action May Be Relevant to Mr. Cardiff's Defenses

Two orders made by Judge Gee in the FTC Action may have had a direct impact on potentially exculpatory evidence in this case. On March 1, 2022, Judge Gee entered a "Final Judgment including Permanent Injunction as to Defendants Jason Cardiff and Eunjung Cardiff" in the FTC Action which ordered Mr. Cardiff to destroy customer information in his possession, custody, or control within 30 days of the entry of the order" and prohibited the Receiver from returning any customer information to Mr. Cardiff. RJN, Ex. 3 at § XVIII(A)(2) and (B). Notably, Judge Gee specifically retained continuing jurisdiction over this order. *See* RJN, Ex. 3 at § XXIV ("[T]his Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order."). Then, on September 30, 2022, Judge Gee entered an Order which provided that "[t]he Receiver is authorized to immediately destroy the remaining records and computers of the Receivership Defendants, which records contain consumer information[.]" RJN, Ex. 4 at ¶ 7.

Accordingly, these two orders both directed Mr. Cardiff to destroy evidence and not only prohibited the Receiver from providing evidence to Mr. Cardiff but authorized the Receiver to destroy this evidence. If the government had already initiated its criminal investigation at the time that this evidence was allowed to be destroyed, this may be grounds for seeking dismissal of the indictment. *See, e.g., United States v. Robertson*, 895 F.3d 1206, 1211 (9th Cir. 2018) ("The government's failure to preserve potentially exculpatory evidence rises to the level of a due process violation … if the defendant shows that the government acted in bad faith.") (citing *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)).

Moreover, to the extent that the government shared information gathered through compelled discovery in the FTC Action with federal criminal investigators and/or prosecutors, the government may have violated the Protective Order that was entered in the FTC Action as well as Mr. Cardiff's constitutional rights.

First, the Protective Order in this case generally prohibited the Parties from disclosing confidential, proprietary, or private information, and it is not clear that the government will be able to establish that an exception to this prohibition applies. *See* RJN, Ex. 2.  Whether the government violated the Protective Order should be determined by Judge Gee, who retains jurisdiction to enforce the order.  *See Beebe v. Nutribullet, L.L.C.*, 2019 WL 4261876, at 8 (C.D. Cal. July 3, 2019) ("[T]he court that issues a protective order retains jurisdiction to enforce it, even after the case has closed.").

Second, it is well-established law that the government may only conduct parallel civil and criminal investigations of a defendant without violating their constitutional rights if the government does not act in bad faith.  *See e.g. United States v. Stringer*, 535 F.3d 929, 936 (9th Cir. 2008).  Such bad faith may be established where "(1) the government pursued a civil action 'solely to obtain evidence for a criminal prosecution'; (2) the government 'failed to advise the defendant during the civil proceeding that it contemplate[d] his criminal prosecution'; (3) 'the defendant [wa]s without counsel'; (4) the defendant 'reasonably fear[ed] prejudice from pretrial publicity or other unfair injury'; or (5) 'other special circumstances suggest that the criminal prosecution is unconstitutional or improper.'"  *United States v. Asiegbu*, 2009 WL 413132, at *8 (C.D. Cal. Feb. 17, 2009) (citing *United States v. Kordel*, 397 U.S. 1, 12-13 (1970)).  Thus, discovery in this matter may reveal that the government acted in bad faith during the FTC Action by engaging in dual investigations, seeking compelled discovery from Mr. Cardiff in the FTC Action without disclosing the criminal investigation, and then sharing that evidence with the federal criminal investigators and/or prosecutors.  *See e.g. United States v. Scrushy*, 366 F. Supp. 2d 1134, 1140 (N.D. Ala. 2005) ("Because the Government manipulated the simultaneous investigations for its own purposes… the court finds that the utilization of Mr. Scrushy's deposition in this case departs from the proper administration of justice."); *United States v. Parrott*, 248 F. Supp. 196,

200 (D.D.C 1965) ("[T]he danger of prejudice flowing from testimony out of a defendant's mouth at a civil proceeding is even more acute when he is unaware of the pending criminal charge.").

Accordingly, because the government's conduct in the FTC Action may be central to Mr. Cardiff's defense, this case should be transferred to Judge Gee who presided over that case.

### B. The Court has Discretion to Transfer the Case In The Interest Of Judicial Economy

Under the General Order, cases may be deemed related and heard by the same judge where there is (1) an underlying case arising out of the same set of facts, (2) a call for determination of related or substantially similar questions of law and fact, or (3) a substantial risk of duplication of labor if the matter is heard by different judges. General Order No. 23-15, § II.I.1.

The primary purpose behind the General Order is to preserve judicial economy. *See, e.g., Reno-Tahoe Specialty, Inc. v. Mungchi, Inc.*, 2018 WL 6267821, at *2 (C.D. Cal. Mar. 7, 2018) ("[T]he new lawsuit involves many of the same parties as the previous case, and it would entail substantial duplication of labor if the actions were heard by a different district judge."); *StemCells, Inc. v. Neuralstem, Inc.*, 2008 WL 2622831, at *4 (N.D. Cal. July 1, 2008) ("[I]t would seem most conducive to judicial economy to have all of the disputes between these parties decided in the same court."); *Ross v. Chipotle Mexican Grill, Inc.*, 2016 WL 7634445, at *5 (S.D. Cal. Aug. 8, 2016) (noting that the "primary purpose" of relating cases "is judicial economy—placing similar actions involving the same plaintiff or defendant before one judge."). Thus, while the General Order does not specifically address whether this matter should be related to the FTC Action, the same rationale for the General Order applies with equal force here.

It is indisputable that the FTC Action and the instant matter both stem from Redwood's marketing and sale of homeopathic dissolvable thin-film strips and are

related under the principles embodied in the General Order.  There will be substantial overlap in evidence, witnesses, facts, and issues presented in both matters, which would result in a significant duplication of labor if the matter is heard by different judges.  Accordingly, judicial economy dictates that this matter be transferred to Judge Gee.

## V. CONCLUSION

For the reasons set forth above, Mr. Cardiff respectfully requests that this Court transfer the instant criminal case to the Honorable Dolly M. Gee.

Dated: December 22, 2023

LARSON LLP

By: /s/ Stephen G. Larson
Stephen G. Larson
Hilary Potashner
Jonathan Gershon

Attorneys for Defendant JASON EDWARD THOMAS CARDIFF