Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Hilary Potashner (SBN 167060)
*hpotashner@larsonllp.com*
Jonathon Gershon (SBN 306979)
*jgershon@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone:(213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Defendant
JASON EDWARD THOMAS CARDIFF

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 5:23-CR-00021-JGB |
| Plaintiff, | **DEFENDANT JASON CARDIFF'S NOTICE OF MOTION AND MOTION TO DISMISS INDICTMENT WITH PREJUDICE; MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| JASON EDWARD THOMAS CARDIFF, | |
| Defendant. | [*Filed concurrently with Declaration of Stephen G. Larson; Declaration of Jason Cardiff; and [Proposed] Order*] |
| | Date:       May 6, 2024 |
| | Time:      2:00 p.m. |
| | Courtroom:   1 |

**[REDACTED VERSION OF DOCUMENT FILED
CONDITIONALLY UNDER SEAL]**

1    TO ALL PARTIES AND ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on May 6, 2024, at 2:00 p.m., or on the date

3 and time as otherwise set by the Court, in the courtroom of the Honorable Jesus G.

4 Bernal, United States District Judge, Defendant Jason Cardiff ("Cardiff"), by and

5 through his attorneys of record, Stephen G. Larson, Hilary Potashner, and Jonathan

6 Gershon, will hereby move this Honorable Court for an order dismissing the

7 indictment with prejudice based on a violation of Cardiff's Fifth Amendment due

8 process rights. Alternatively, Cardiff will hereby move this Honorable Court for an

9 order suppressing all evidence secured by the United States Postal Inspection

10 Service, Department of Justice, and United States Attorney's Office in violation of

11 his Fifth Amendment right to due process and in circumvention of his Fourth

12 Amendment rights against unreasonable searches and seizures. Moreover, Cardiff

13 requests an evidentiary hearing to further develop the record in support of this

14 Motion.

15    This Motion is based upon the attached Memorandum of Points and

16 Authorities, the Declaration of Stephen G. Larson, the Declaration of Jason Cardiff,

17 and all files and records in this case, and any further evidence as may be adduced at

18 the hearing on this Motion.

19

20 Dated: April 8, 2024            LARSON LLP

21

22

23                        By: _____

24                            Stephen G. Larson
                            Hilary Potashner
25                            Jonathan Gershon
                        Attorneys for Defendant
26                        JASON EDWARD THOMAS CARDIFF

27

28

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................... 1

II.   STATEMENT OF FACTS ...................................................................... 4

III.  ARGUMENT ........................................................................................ 23

    A.  The Government Violated Cardiff's Due Process Rights and Circumvented His Fourth Amendment Rights By Conducting a Joint Civil Action and Criminal Investigation in Bad Faith ............... 23

        1.  The Court Should Dismiss an Indictment When the Government Engages in a Civil Action and a Criminal Investigation in Bad Faith ..................................................... 23

        2.  The Government Utilized the FTC Action to Develop a Criminal Case Against Cardiff ................................................ 24

        3.  The Government Engaged in Trickery to Deceive Cardiff Into Believing No Criminal Investigation Was Taking Place ..................................................................................... 27

    B.  The Government Violated Cardiff's Due Process Rights By Failing to Preserve Potentially Exculpatory Evidence ........................ 28

        1.  Dismissal is the Appropriate Remedy Where the Government Fails to Preserve Potentially Exculpatory Evidence in Bad Faith ................................................................ 28

        2.  The Government Permitted Destruction of Potentially Exculpatory Evidence ................................................................ 29

    C.  The Government Engaged in Fraud on the Court by Procuring and Utilizing Appointment of a Receiver, Omitting Material Facts from the Protective Order, and Failing to Inform the Court of the Significance of its Destruction of Evidence Orders ................. 32

        1.  The Government Committed Fraud on the Court By Omitting and Concealing Material Facts .................................... 33

        2.  The Government Committed Fraud on the Court By Co-opting the Receiver and Using Him to Assist in the Criminal Investigation in Violation of His Fiduciary Duties ..................................................................................... 35

    D.  The Pre-Indictment Delay of Prosecution Prejudiced Cardiff's Right to Prepare a Defense and Secure a Fair Trial ........................... 38

IV.   CONCLUSION .................................................................................... 39

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Arizona v. Youngblood*,
  488 U.S. 51 (1988) ..................................................................28, 29, 32

*California v. Trombetta*,
  467 U.S. 479 (1984) ......................................................................28

*Fed. Trade Comm'n v. A1 DocPrep Inc.*,
  Case No. CV17-07044-SJO (JCX) (C.D. Cal. May 7, 2018) .............................7

*Fed. Trade Comm'n v. AH Media Group, LLC*,
  Case No. 19-CV-040220JD (N.D. Cal. Feb. 11, 2022)...........................7

*Fed. Trade Comm'n v. American Mortg. Consulting Grp., LLC*,
  Case No. SACV12-01561 DOC (C.D. Cal. Oct. 1, 2012) ...................................7

*Fed. Trade Comm'n v. Assail, Inc.*,
  Case No. 6:03-CV-00007 (W.D. Tex. June 14, 2009) ........................................7

*Fed. Trade Comm'n v. Data Med. Capital, Inc.*,
  Case No. SA CV 99-1266 AHS (EEX) (C.D. Cal. July 6, 2010) ......................7

*Fed. Trade Comm'n v. J.K. Publ'ns, Inc.*,
  Case No. CV 99-00044 ABC AJW (C.D. Cal. April 13, 2009)...........................7

*Fed. Trade Comm'n v. Loss Mitigation Services, Inc.*,
  Case No. SACV 09-0800 DOC (ANX) (C.D. Cal. Dec. 7, 2009) ......................7

*Fed. Trade Comm'n v. Lucaslaw Ctr., Inc.*,
  Case No. SACV 09-0770 DOC (ANX) (C.D. Cal. June 3, 2010) ......................7

*Fed. Trade Comm'n v. M&T Fin. Grp.*,
  Case No. CV17-06855-ODW(PLAX) (C.D. Cal. June 8, 2018) ........................7

*Fed. Trade Comm'n v. Nat'l Foreclosure Relief, Inc.*,
  Case No. SACV09117DOC(MLGX) (C.D. Cal. March 6, 2009) ......................7

*Fed. Trade Comm'n v. On Point Glob. LLC*,
  2020 WL 5819809 (S.D. Fla. Sept. 30, 2020).....................................35

*Fed. Trade Comm'n v. Sale Slash, LLC*,
 Case No. CV15-03107 PA (C.D. Cal. April 27, 2015) ........................................ 7

*Fed. Trade Comm'n v. Universal Premium Servs.*,
 Case No. CV 06-0849 SJO (OPX) (C.D. Cal. June 8, 2006) ............................. 7

*Kastigar v. United States*,
 406 U.S. 441 (1972) ........................................................................................ 3

*Kinney v. Lenon*,
 425 F.2d 209 (9th Cir. 1970) ........................................................................ 38

*Life Alert Emergency Response, Inc. v. Connectamerica.com, LLC*,
 Case No. LA CV13-03455 JAK (SSX) (C.D. Cal. June 3, 2014) ..................... 7

*North American Broadcasting, LLC v. U.S.*,
 306 Fed.Appx. 371 (9th Cir. 2008) .............................................................. 35

*Rea v. United States*,
 350 U.S. 214 (1956) ...................................................................................... 24

*SEC v. Capital Consultants, LLC*,
 397 F.3d 733 (9th Cir. 2005) ....................................................................... 35

*SEC v. Schooler*,
 2015 WL 1510949 (S.D. Cal. Mar. 4, 2015) ........................................... 35, 36

*U.S. v. Bruce*,
 984 F.3d 884 (9th Cir. 2021) ....................................................................... 28

*U.S. v. Chen*,
 605 F.2d 433 (9th Cir. 1979) ....................................................................... 29

*U.S. v. Cooper*,
 983 F.2d 928 (9th Cir. 1993) ....................................................................... 29

*U.S. v. Dahlstrum*,
 493 F.Supp. 966 (C.D. Cal. 1980) ................................................................ 24

*U.S. v. Estate of Stonehill*,
 660 F.3d 415 (9th Cir. 2011) ....................................................................... 32

*U.S. v. Kordel*,
 397 U.S. 1 (1970) ................................................................................... 23, 27

*U.S. v. Lovasco*,
  431 U.S. 783 (1977) .......................................................................... 38

*U.S. v. Mills*,
  641 F.2d 785 (9th Cir. 1981) ........................................................... 38

*U.S. v. Robertson*,
  895 F.3d 1206 (9th Cir. 2018) .............................................. 28, 29, 32

*U.S. v. Scrushy*,
  366 F.Supp.2d 1134 (N.D. Ala. 2005) ........................................ 24, 27

*U.S. v. Sierra Pac. Indus.*,
  100 F.Supp.3d 948 (E.D. Cal. 2015) ............................................ 32, 33

*U.S. v. Stringer*,
  535 F.3d 929 (9th Cir. 2008) ................................................ 23, 24, 27

*U.S. v. Swacker*,
  628 F.2d 1250 (9th Cir. 1980) ......................................................... 38

*U.S. v. Zaragoza-Moreira*,
  789 F (9th Cir. 2015) ...................................................................... 29

*USA v. Kimoto*,
  Case No. 3:07-cr-30089-SPM-1 (S.D. Ill. July 14, 2010) ..................... 7

**Federal Statutes**

18 U.S.C.
  § 1028A(a)(1) .................................................................................. 23
  § 1029(a)(5) .................................................................................... 23
  § 1512(b)(2)(B) .............................................................................. 23

Freedom of Information Act ................................................................ 21

**California Statutes**

Stored Communications Act ......................................................... 14, 26

**Other Authorities**

16 C.F.R. § 4.11(c) ...................................................................*passim*

16 C.F.R. § 4.11(c), A ........................................................................ 4

U.S. Const., amend XIV ...........................................................................................32

*What We Do*, United States Postal Inspection Service,
    https://www.uspis.gov/about/what-we-do (last visited Feb. 12,
    2024) ..............................................................................................................1

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## I.    INTRODUCTION

3    This Indictment is the result of a years-long, clandestine, and joint criminal

4  investigation of Cardiff by the Federal Trade Commission ("FTC"), the

5  government's criminal investigators and prosecutors (the United States Postal

6  Inspection Service ("USPIS")[1], the Department of Justice ("DOJ"), and the United

7  States Attorney's Office ("USAO") (collectively "the Government")), and the court-

8  appointed Receiver. Together, with the Government clearly at the helm, these

9  governmental agencies and this court appointee abused their power and manipulated

10  the civil court system to illegally build this criminal case against Cardiff.

11    The Government began its criminal investigation into Cardiff no later than

12  July 24, 2018. Shortly thereafter, on October 10, 2018, the FTC filed a civil

13  complaint against Cardiff and his company, Redwood Scientific Technologies, Inc.,

14  entitled *FTC v. Jason Cardiff et al.*, Case No. 5:18-CV-02104-DMG-PLA ("FTC

15  Action"), and immediately moved for the appointment of Robb Evans & Associates

16  LLC ("Robb Evans LLC" or the "Receiver") to serve as a receiver in the FTC

17  Action.

18    Receivers serve at the direction of the Court. Their appointments give them

19  extensive power and access to the businesses under receivership. They are, at all

20  times, officers of the court, required to serve in a neutral capacity to assist the court

21  in its judicial functions. Accordingly, while serving in these powerful positions,

22  their actions are strictly governed by the Code of Conduct for United States Judges.

23

24

25  [1] The USPIS is the federal law enforcement arm of the United States Postal Service;
26  in part, the USPIS conducts criminal investigations related to alleged crimes
     involving the postal system, its employees, and its customers. *What We Do*, United
27  States Postal Inspection Service, https://www.uspis.gov/about/what-we-do (last
     visited Feb. 12, 2024).
28

1    The FTC, Receiver, and the Government were all well aware of the
2  Receiver's ethical and legal responsibilities when they knowingly trampled over
3  them. From the start, the FTC engineered the selection of a receiver whom the
4  Government knew would provide them unfettered access and information about
5  Cardiff outside the bounds of subpoenas, court orders, and the United States
6  Constitution. And, once appointed, the Receiver immediately began delivering for
7  the Government.

8    Within days of his appointment—and without ever alerting the Court or
9  Cardiff—Brick Kane of Robb Evans LLC agreed to allow USPIS into Cardiff's
10  business for a 10-hour inspection, allowing the Government to do a full-scale
11  inventory of its business records complete with photographs and hard drive imaging.
12  Shortly thereafter, the Receiver waived attorney-client privilege, directing his
13  counsel to send routine updates and summaries of his findings about Cardiff and his
14  business practices at Redwood to the Government for the sole purpose of assisting
15  in the development of the criminal case. When it came time for the Government to
16  acquire third-party records, the Receiver was again there for the Government, giving
17  express consent for the release of any and all third-party records without the need
18  for Court order or subpoena. The Receiver's active role in the building of this
19  criminal case was a clear abuse of the trust and authority that the Court vested in
20  him, having nothing to do with his administration of the businesses in receivership.
21  Additionally, it amounted to fraud on the Court as his work on behalf of the criminal
22  prosecution team was all intentionally hidden from the Court. What is more, time
23  and time again, the Government, fully complicit and leading the efforts, knowingly
24  and successfully tapped into the Receiver's access and power to secretly build its
25  criminal case against Cardiff.

26    The joint task force's secretive work was extensive. After the FTC
27  orchestrated the appointment of the Government-allied receiver, it also went to work
28  helping build the Government's criminal case while prosecuting the FTC Action. As

it engaged in civil discovery and learned information through its case, the FTC relayed its spoils to the Government to help build its criminal case. Documents, deposition transcripts, evaluations of friendly witnesses, and email communications from Cardiff's counsel all flowed from the FTC to the Government. This was far from a parallel investigation. Instead, this was a coordinated, concerted, and fully integrated effort by the Government, the FTC, and the Receiver to capitalize on the discovery and receivership process in the FTC Action to build a criminal case—all in violation of the Code of Conduct for United States Judges and Cardiff's constitutional rights.

The constitutional violations did not end there. After developing the criminal case behind closed doors, the FTC, Government, and Receiver coordinated the destruction of a massive amount of evidence and documents relating to Cardiff and his business practices. With the Government's express knowledge, the FTC and the Receiver requested that the Court order Cardiff to destroy key documents and permit the Receiver to do the same. When making these requests, they failed to alert Cardiff or the Court that there was a criminal case about to be filed. In the dark, the Court granted their requests. Documents and evidence containing customer information, exculpatory or otherwise, were destroyed. And only then did the Government reveal—through the unsealing of this Indictment—its criminal case. Failing to advise the Court of the entire picture while seeking destruction of evidence in this case was not only an egregious fraud on the Court, but a clear violation of Cardiff's constitutional rights to due process and a fair trial.

As a result of the Government's repeated misconduct and its violation of Cardiff's constitutional rights, Cardiff seeks dismissal with prejudice of the Indictment. In the alternative, Cardiff requests suppression of all evidence obtained by the Government through its unlawful criminal investigation. Moreover, Cardiff requests an evidentiary hearing to further develop the record in support of this Motion. *See Kastigar v. United States*, 406 U.S. 441 (1972).

II.    **STATEMENT OF FACTS**

As evidenced in Exhibit 1[2]—a summary exhibit created by the defense detailing 710 separate communications between and among the Receiver, USPIS, FTC, DOJ, and/or USAO—the inescapably intertwined nature of the government's civil and criminal investigative efforts is undeniable. (Declaration of Stephen G. Larson ("Larson Decl."), Ex. 1.) In fact, the following chronology highlights how the Government utilized both the FTC Action (a civil lawsuit) and the appointed Receiver to acquire evidence for a criminal prosecution in circumvention of Cardiff's Fourth Amendment rights and in violation of his Fifth Amendment rights:



- **July 17, 2018**: ████████████████████ ███████████████████████ ███████████████████████ ██████████████████ (*Id.* at Ex. 2, p. 2.) ███ ████████████████████████ ██████████████████████ ██████████████████ (*Id.*)

- **July 24, 2018**: ████████████████████ ██████████████████████ ██████████████████████ ████████████ (*Id.* at

_____

[2] Exhibit 1 likely does not contain all the communications among these agencies as the Government has declined, despite repeated requests, to provide certain communications relating to its Cardiff investigation—seemingly based on claims of privilege or claims that certain communications fall outside of their discovery obligations.

[3] A certification submitted to the FTC in compliance with 16 C.F.R. § 4.11(c) is referred to as a "Request for Non-Public Materials and Certification of Intent to Maintain Confidentiality and Restrict Use to Law Enforcement Purposes." Under 16 C.F.R. § 4.11(c), the production of nonpublic records to requesting law enforcement

1    Ex. 3.) ████████████████████████████████████

2    ████████████████████████████████████

3    ███████████████████████ (*Id.*) █████████████████

4    ████████████████████████████████████

5    ████████████████████████████████████

6    ████████████████████

7    • **September 26, 2018**: ███████████████████

8    ████████████████████████████████████

9    ████████████████████████████████████

10   ████████████████████████████████████

11   ████████████████████████████████████

12   ████████████████████████████████████

13   ████████████████ (*Id.* at Ex. 4, p. 1.)

14   • **August 3, 2018**: ███████████████████████

15   ██████████████████████████████████████

16   ████████████████████████████████████

17   ████████████████████ (*Id.* at Ex. 5.)

18   • **August 14, 2018**: ██████████████████████

19   ████████████████████████████████████

20   ████████████████████████████████████

21   ████████████████████ (*Id.* at Ex. 6.)

22   • **August 17, 2018**: ██████████████████████

23   ████████████████████████████████████

24

_____

25   agencies is permitted *so long as* the requesting agency submits a certificate stating

26   the nature of the law enforcement activity, the anticipated relevance of the information, and that the information will be kept confidential. Under this statute,

27   the requesting agency must notify the submitter of the information being requested

28   unless the requesting agency requests otherwise. 16 C.F.R. § 4.11(c).

1    █████████████████████████████████████████████████████

2    █████████████████  (*Id.* at Ex. 7.)

3    •  **September 4, 2018**: ██████████████████████████

4    ██████████████████████████████████████

5    ██████████████████████████████████████

6    ████████████████████████████████████████████

7    ██████████████████  (*Id.* at Ex. 8.)

8    •  **September 6, 2018**: ███████████████████████████

9    ████████████████████████████████████████████

10   ██████████████████████████  (*Id.* at Ex. 9, p. 1.)

11   •  **October 5, 2018**: ████████████████████████████

12   ███████████████████████████████████████████  (*Id.* at

13   Ex. 10 at p. 1.) ████████████████████████████

14   ████████████████████████████████████████████

15   ██████████████████  (*Id.*) ████████████████████

16   ████████████████████████████████████████████

17   ████████████████████████████████████  (*Id.*)

18   ████████████████████████████████████████████████

19   ████████████████████████████████████████████████

20   ██████████████████████████████████████████

21   ██████████████████  (*Id.*) ████████████████████

22   ██████████████████████████████  (*Id.*)

23   •  **October 10, 2018**: ████████████████████████████

24   ██████████████████████  (*Id.* at p. 2.) ████████████

25   ████████████████████████████████████████

26   ████████████████  (*Id.*) ████████████████████████

27   ████████████████████████████████████████████

28

1    ███████████████████████ (*Id.*) ████████████████

2    ████████████████████████████████████████████ (*Id.*)

3    • **October 10, 2018**: The FTC files the FTC Action against Cardiff in his

4    role as President and Chief Executive Officer of Redwood. (*Id.* at Ex.

5    11.) The matter was initially assigned to the Honorable S. James Otero

6    but was transferred to the Honorable Dolly M. Gee on April 2, 2020.

7    • **October 10, 2018**: The FTC files an *ex parte* temporary restraining

8    order ("TRO"), seeking *inter alia* the appointment of Robb Evans LLC

9    as temporary receiver over, in relevant part, Redwood and the assets of

10   Cardiff.[4] While the TRO was pending, ██████████████████

11   _____

12   [4] Robb Evans LLC was a known ally of the FTC and DOJ. The company boasted about repeated nominations by both entities. *Home Page*, Robb Evans & Associates,

13   LLC https://www.robbevans.com/ (last visited Feb. 18, 2024) ("We have been

14   repeatedly nominated by the Federal Trade Commission, the Commodity Futures Trading Commission, the Securities and Exchange Commission, and the United

15   States Department of Justice."); *e.g.*, *Fed. Trade Comm'n v. Assail, Inc.*, Case No. 6:03-CV-00007 (W.D. Tex. June 14, 2009) and related criminal prosecution *USA v.*

16   *Kimoto*, Case No. 3:07-cr-30089-SPM-1 (S.D. Ill. July 14, 2010); *Fed. Trade*

17   *Comm'n v. AH Media Group, LLC*, Case No. 19-CV-040220JD (N.D. Cal. Feb. 11, 2022); *Fed. Trade Comm'n v. M&T Fin. Grp.*, Case No. CV17-06855-

18   ODW(PLAX) (C.D. Cal. June 8, 2018); *Fed. Trade Comm'n v. A1 DocPrep Inc.*,

19   Case No. CV17-07044-SJO (JCX) (C.D. Cal. May 7, 2018); *Fed. Trade Comm'n v.*

20   *Sale Slash, LLC*, Case No. CV15-03107 PA (AJWX) (C.D. Cal. April 27, 2015); *Life Alert Emergency Response, Inc. v. Connectamerica.com, LLC*, Case No. LA

21   CV13-03455 JAK (SSX) (C.D. Cal. June 3, 2014); *Fed. Trade Comm'n v. American Mortg. Consulting Grp., LLC*, Case No. SACV12-01561 DOC (C.D. Cal. Oct. 1,

22   2012); *Fed. Trade Comm'n v. Data Med. Capital, Inc.*, Case No. SA CV 99-1266

23   AHS (EEX) (C.D. Cal. July 6, 2010); *Fed. Trade Comm'n v. Lucaslaw Ctr., Inc.*, Case No. SACV 09-0770 DOC (ANX) (C.D. Cal. June 3, 2010); *Fed. Trade*

24   *Comm'n v. Loss Mitigation Services, Inc.*, Case No. SACV 09-0800 DOC (ANX)

25   (C.D. Cal. Dec. 7, 2009); *Fed. Trade Comm'n v. Nat'l Foreclosure Relief, Inc.*, Case No. SACV09117DOC(MLGX) (C.D. Cal. March 6, 2009); *Fed. Trade Comm'n v.*

26   *J.K. Publ'ns, Inc.*, Case No. CV 99-00044 ABC AJW (C.D. Cal. April 13, 2009);

27   *Fed. Trade Comm'n v. Universal Premium Servs.*, Case No. CV 06-0849 SJO

28   (OPX) (C.D. Cal. June 8, 2006).

1  ██████████████████████████████████████████████

2  ████████████████████████████████████████████████

3  ██████████████████████████████████████████████████

4  ████████████████████████ (*Id.* at Ex. 12.) The Proposed Order,

5  which the Court adopted the same day, allowed the Receiver to

6  "cooperate with *reasonable* requests for information or assistance from

7  any state or federal civil or criminal law enforcement agency." (*Id.* at

8  Ex. 13, p. 25.) (emphasis added.) Robb Evans LLC then begins serving

9  as the Receiver. (*Id.* at Ex. 14, p. 2.)

10  • **October 10, 2018**: ████████████████████████

11  ██████████████████████████████████████████████████

12  ████████████████████████████████████████████████████

13  ██████ (*Id.* at Ex. 15, p. 1.) ██████████████████████

14  ██████████████████████████████████████████████████████

15  ██████████████████████████ (*Id.*)

16  • **October 12, 2018**: Receiver takes possession of Redwood's offices and

17  assets. (Declaration of Jason Cardiff ("Cardiff Decl."), ¶ 5.) While

18  Cardiff is present, the Receiver does not seek any substantive

19  information from him about the business operations or the pending

20  FTC allegations. (*Id.*)

21  • **October 18, 2018**: ████████████████████████

22  ██████████████████████████████████████████████████

23  ████████████████████████████████████████████████████

24  ██████████████████████████████████████████████████

25  ████████████████████████████████████████

26  ████████████ (*Id.* at Ex. 16, p. 1.)

27  • **October 22, 2018**: ████████████████████████

28  ████████████████████████████████████████████████████

1    ▮▮▮▮▮▮▮▮ (*Id.*) The Receiver's timekeeping records for this

2    day note a 10.1-hour entry for "assist[ing] Christine Reins-Jarin." (*Id.*

3    at Ex. 14, p. 41.) Notably, the Receiver had not returned to Redwood

4    between October 12, 2018 and October 22, 2018. (*Id.*) Nor do his

5    records reflect that he obtained any information justifying his decision

6    to permit USPIS's warrantless search. (*Id.*)

7    • **November 8, 2018**: At the FTC's request, the Court enters a

8    preliminary injunction in the FTC Action, which continues the

9    receivership imposed by the TRO. (*Id.* at Ex. 17, p. 7.)

10   • **November 30, 2018**: On or around this date, the Receiver stops all

11   payments on Redwood's Google Suite account.[5]

12   • **November 2018**: FTC issues several third-party subpoenas in the FTC

13   Action.

14   • **December 7, 2018**: FTC takes Danielle Walker's deposition in the FTC

15   Action.

16   • **December 17, 2018**: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19   ▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at Ex. 18.)

20   • **January 7, 2019**: The Receiver files its first Application for Order

21   Approving and Authorizing Payment of Receiver and Receiver's

22   Counsel's Fees and Expenses from the inception of Receivership Estate

23   through November 30, 2018. (*Id.* at Ex. 19.) Attached to the

24   Application is a declaration containing the Receiver's billings records

25   and a report of the Receiver's activities. (*Id.* at Ex. 14.) This report does

26

27   ─────────────────

[5] The Receiver's bills and fees from this point forward do not record any payments

28   to Google for maintenance of Redwood's Google Suite account. (*Id.* at Exs. 14, 65.)

LARSON
LOS ANGELES

DEFENDANT JASON CARDIFF'S MOTION TO DISMISS INDICTMENT WITH PREJUDICE

not mention the USPIS at all, let alone the ████████████████████

████████████████ (*Id.* at Exs. 14, 19.) Moreover, despite the fact that

███████████████████████████████████████████

████████, Mr. Kane's billing records do not include these

conversations. (*Id.* at Exs. 14, 16, 19.)

- **February 8, 2019**: FTC serves written discovery on Jason Cardiff and his wife Eunjung Cardiff in the FTC Action.

- **March 22, 2019**: FTC takes Julie Green's deposition in the FTC Action.

- **April 4, 2019**: ████████████████████████████
████████████████████████████████████
████████████████████████████████████
█████████████████████████████████████████
████████ (*Id.* at Ex. 20, p. 1.)

- **April 29, 2019**: ████████████████████████
████████████████████████████████████████
█████████████████████████████████████████
██████████████████████████ (*Id.* at Ex. 22, p. 1.)

- **May 17, 2019**: ██████████████████████████
███████████████████████████████
████████████████████████████████████
(*Id.* at Ex. 23, p. 2.) ████████████████████████
███████████████████████████████████
████████ (*Id.* at p. 1.)

- **June 13, 2019**: ████████████████████████████
███████████████████████████████████

DEFENDANT JASON CARDIFF'S MOTION TO DISMISS INDICTMENT WITH PREJUDICE

1    ████████████████████████████████████

2    ██████████████████████████████████████

3    ███████████████████████████████████ (*Id.* at

4    Ex. 24, p. 2.)

5    • **June 14, 2019**: ███████████████████████████

6    ████████████████████████████████

7    ████████████████ (*Id.* at pp. 5–7.)

8    • **July 29, 2019**████████████████████████████

9    ██████████████████████████████████████

10   ████████████████████████████ (*Id.* at Ex.

11   25.)

12   • **September 23, 2019**: The FTC files a joint motion for protective order

13   for discovery. (*Id.* at Ex. 26.) The proposed protective order fails to

14   alert the Court that ████████████████████████

15   ██████████████████████████████████████

16   ██████████████████████████████████

17   ███████████—a fact only known to the FTC, Receiver, and Government

18   at that time.

19   • **September 24, 2019**: The Court in the FTC Action enters a stipulated

20   protective order prohibiting the disclosure of confidential, proprietary,

21   or private information unless otherwise required or authorized by law

22   based on the joint motion filed on September 23, 2019. (*Id.* at Ex. 27.)

23   • **September 26, 2019**: Mr. Cardiff and the FTC exchange initial

24   disclosures in the FTC Action.

25   • **October 22, 2019**: ████████████████████████

26   ██████████████████████████████████████

27   ████████████████████████████████████

28   (*Id.* at Ex. 28.)

1    • **November 6, 2019**: ███████████████████████

2    █████████████████████████████████

3    ██████████████████████████████████

4    ████████████████████████████████

5    ████████  This is the second such request by the Government to the FTC.

6    (See **July 24, 2018 entry**.)

7    • **November 8, 2019**: ██████████████████

8    ████████████████████████████

9    ██████████████████████████████████

10   ████████████████████████ (*Id.* at Ex. 30.)

11   • **December 11, 2019**: ███████████████████

12   ████████████████████████

13   ██████████████████████ (*Id.* at Ex. 31, pp. 1–

14   2.)

15   • **January 22, 2020**: ███████████████████

16   ███████████████████████████

17   ███████████████████████████

18   ████████ (*Id.* at Ex. 32, p. 2.) ████████████

19   ████████████████████████████

20   (*Id.*) (emphasis added.) ███████████████

21   ████████████████████████████

22   ████████████████ (*Id.*)

23   • **February 12, 2020**: ████████████████

24   █████████████████████████████████

25   ████████████████████████████████████

26   ███████████████████ (*Id.* at Ex. 33, p. 2.) ███████

27   ████████████████████ (*Id.*) ██████████

28   █████████████████████████████

1

2 ██████████████████████████████ (*Id.* at p. 1.)

3 • **March 24, 2020**: ████████████████████

4 ████████████████████████████████

5 ████████████ (*Id.* at Ex. 34, p. 1.) ███████████

6 ████████████████████████████████

7 ████████████████████ (*Id.* at pp. 2–3.)

8 • **March 25, 2020**: ████████████████████

9 ████████████████████████████████

10 ███████████████ (*Id.* at Ex. 35, p. 1.)

11 • **April 23, 2020**: ████████████████████

12 ████████████████████████████████

13 ████████████████████████████████

14 ████████ (*Id.* at Ex. 36.) ████████████████

15 ████████████████████████████████

16 ██████████████████████████████ (*Id.*)

17 • **May 1, 2020**: ████████████████████

18 ████████████████████████████████

19 ████████████████ (*Id.* at Ex. 37.)

20 • **May 15, 2020**: ████████████████████

21 ████████████████████████████████

22 ████████████████████████████████

23 ████████████ (*Id.* at Ex. 38, p. 1.)

24 ████████████████████████████

25 ████████████████████ (*Id.*) ███████████

26 ████████████████████████████████

27 ████████████████████████████████

28 ██████████████████████████████ (*Id.*)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- **May 26, 2020**: ██████████████████████████████ ██████████████████ ████████████████████ ██████████████████ (*Id.* at Ex. 39 pp. 1, 3– 19.)

- **June 19, 2020**: ████████████████████████ ██████████████ (*Id.* at Ex. 40.) ████████ ████████████████████████ ██████████ (*Id.*)

- **June 19, 2020**: ████████████████████████ ████████████████████████ ████████████████ (*Id.* at Ex. 41.)

- **June 22, 2020**: ████████████████████████ ██████████████████████ ████████████████████████ ████████ (*Id.* at Ex. 42, pp. 1–2.)

- **June 22, 2020**: ██████████████████████ █████████████████████████ (*Id.* at Ex. 43, p. 1.)

- **June 23, 2020**: At the request of ████████████ ████████████████████ ████████████████████████ (*Id.* at Ex. 42, pp. 1, 4–5.) ████████████████ ████████████████ █████████████████████████ (*Id.* at p. 1.)

1   • **June 29, 2020:** ███████████████████

2   ███████████████████████

3   ██████████████████ (*Id.* at

4   Ex. 44, p. 2.)

5   • **July 6, 2020**: ████████████████

6   ████████████████████

7   █████████████████

8   ██████████████████████

9   (*Id.* at Ex. 45, p. 1.)

10  • **July 7, 2020**: ███████████████

11  ███████████████████████

12  ███████████████████████

13  ███████████████████

14  ███████ *Id.* at Ex. 46, p. 1.) (emphasis added.) ████████

15  ████████████████████████

16  ███████████████████████

17  ██████████████████████

18  ███████████████████ (*Id.*)

19  (emphasis added.)

20  • **July 13, 2020**: ████████████████

21  ████████████████████

22  █████████████████

23  ████████████████████

24  █████████████████████████

25  ██████████████████

26  ████████████████████████

27  ██████████████████████

28  ██████████████████ (*Id.*)

1      • **July 13, 2020**: Cardiff and intervener VPL Medical file an *ex parte*

2      application to remove the Receiver from VPL because the Receiver has

3      suspended VPL's manufacturing operations and failed to pay vendors

4      and critical staff. (*Id.* at Ex. 48.)

5      • **July 14, 2020**: The FTC files an opposition to the *ex parte* application

6      to remove the Receiver. (*Id.* at Ex. 49.)

7      • **July 15, 2020**: ███████████████████████████████████

8      ████████████████████████████████████████████████

9      ████████████████████████████████████████████████

10     ███████████████████████████████ (*Id.* at Ex. 50.) ███████████

11     ██████

12     • **July 16, 2020**: In accordance with the FTC's July 14, 2020 opposition,

13     the Court enters an order denying the *ex parte* application to remove the

14     Receiver. (*Id.* at Ex. 51.)

15     • **August 6, 2020**: The FTC files a proposed final judgment in the FTC

16     Action, which includes an order for the Cardiffs and "their officers,

17     agents, employees, and all other persons in active concert or

18     participation with any of them" to destroy customer information

19     relating to his business and an order appointing Robb Evans LLC as a

20     permanent Receiver. (*Id.* at Ex. 52, pp. 28–29.)

21     • **August 11, 2020**: ████████████████████████████████

22     ████████████████████████████████████████████████████

23     ███████████████████████████████ (*Id.* at p. 1.)

24     • **August 11, 2020**: ████████████████████████████████

25     ████████████████████████████████████████████████

26     ███████████████████████████████ (*Id.* at Exs.

27     53–59.) ████████████████████████████████████████

28

1   ██████████████████████████████████████████████

2   ████████████  (*Id.*)

3   •  **August 14, 2020:** ████████████████████████████

4   ████████████████████████████████████████████████

5   ████████████  (*Id* at Ex. 60, p. 1.)

6   •  **August 18, 2020**: ████████████████████████

7   ████████████████████████████████████████

8   ████████████████  (*Id.* at Ex. 61.)

9   •  **August 21, 2020**: ████████████████████████

10  ████████████████████████████████████████████

11  ████████████  (*Id.* at Ex. 62, p. 2.)

12  •  **August 26, 2020**: ████████████████████████

13  ████████████████████  (*Id.* at Ex. 63, p. 1.)

14  •  **August 27, 2020:** ████████████████████████

15  ████████████████████████████

16  ████████████████████  (*Id*. at Ex. 64.)

17  •  **September 2, 2020:** The Receiver files another application requesting

18  fees for it and its counsel's work for the period of October 1, 2019

19  through June 30, 2020. In support of the application, Brick Kane

20  submits a declaration describing the Receiver's work during the

21  relevant period and attaching the Receiver's billing records. (*Id.* at Ex.

22  65.) The declaration and attached billing records make no mention of

23  assisting with the criminal investigation despite the aforementioned

24  communications, including on ████████████████████████

25  ████████████  (*Id.* at pp. 91, 96.)

26  •  **September 14, 2020**: ████████████████████████

27  ████████████████████████████████████████████████

28

1  ████████████████████████████████████████████████████

2  ███████████████████ (*Id*. at Ex. 66.)

3  • **October 2, 2020**: ████████████████████████████████

4  ████████████████████████████████████████████████

5  ████████████████████████████████████████████

6  ████████████████ (*Id.* at Ex. 67, p. 1.)

7  • **October 9, 2020**: The Court grants in part the FTC's motion for

8  summary judgment and denies in part Cardiff's motion for summary

9  judgment but defers ruling and judgment on the proper remedy pending

10  the results of a relevant Supreme Court case. (*Id.* at Ex. 68.)

11  • **October 13, 2020**: ████████████████████████████████

12  ████████████████████████████████████████

13  ██████████████████████████████████████████

14  ████████ ██ (*Id.* at Ex. 69.)

15  • **November 6, 2020**: ████████████████████████████████

16  ████████████████████████████████████████████████████

17  ████████████████████████████████ (*Id.* at Ex. 70.)

18  • **November 19, 2020**: ████████████████████████████████

19  ████████████████████████████████████████████

20  ████████████████ (*Id.* at Ex. 76, p. 1.)

21  • **January 8, 2021**: The Receiver files another application requesting

22  fees for it and its counsel's work for the period of July 1, 2020 through

23  October 31, 2020. In support of the application, Brick Kane submits a

24  declaration describing the Receiver's work during the relevant period

25  and attaching the Receiver's billing records. (*Id.* at Ex. 71.) The

26  declaration and attached billing records make no mention of assisting

27  with the criminal investigation despite the aforementioned

28

1   communications, including on ███████████████████████████

2   ████████████   (*Id.* at pp. 26, 42, 86.)

3   • **January 27, 2021**: █████████████████████████████

4   ████████████████████████████████████████████

5   ████████████████████████████   (*Id.* at Ex. 72.)

6   • **April 15, 2021**: ███████████████████████████

7   ████████████████████████████████████████████████

8   ████████████████████████████████████████████████

9   ██████████   (*Id.* at Ex. 73.) █████████████████

10  ████████████████████████████████████████████████

11  ████████████████████   (*Id.*)

12  • **April 20, 2021**: ██████████████████████████

13  ███████████████████████████████████████████

14  ███████████████████████████████████████████

15  ████████   (*Id.* at Ex. 74, p. 1.)

16  • **April 20, 2021**: ██████████████████████████

17  █████████████████████████████████████████

18  ████████████████████████████████████████████████

19  ████████████████   (*Id.* at Ex. 75.) Notably, Redwood's active

20  Google Suite account would have provided, among other items, data

21  storage, audit logs, customer backup data, sales data, Nest Cam

22  recordings, sales call recordings and Google Docs.[6]

23

24

25

26  _____
    [6] ████████████████████████████████████████████

27  ████████████████████████████████████████████

28  █████████████████████   (Cardiff Decl., ¶ 9.)

- **April 20, 2021**: ███████████████████████████
███████████████████████████████████████████ (*Id.* at
Ex. 74, p. 1.)

- **April 21, 2021**: ███████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████
█████████████████████████████████ (*Id.*)

- **April 30, 2021**: ██████████████████████████████████
████████████ (*Id.* at Ex. 76, pp. 1–2.)

- **June 29, 2021:** The Court enters an order declining to impose any
monetary remedies, dissolving the Receivership, lifting the asset freeze
upon entry of judgment, and granting a permanent injunction. (*Id.* at
Ex. 77.)

- **June 30, 2021**: ███████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████████
████████ (*Id.* at Ex. 78.)

- **July 6, 2021**: █████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████████████
████████████████ (*Id.* at p. 1; Ex. 80.) ████████████
████████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████████████████ (*Id.* at Ex. 79, p. 1.)

- **August 26, 2021**: The Court enters an order directing the FTC to submit a proposed judgment. (*Id.* at Ex. 81.)

- **September 3, 2021**: The FTC files a proposed permanent injunction in the FTC Action, which includes the previous provision requiring that Cardiff destroy evidence in his possession and adds a new provision that prohibits the Receiver's ability to return customer information to Cardiff. (*Id.* at Ex. 82, pp. 3, 30–31, 61.) ████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████████████████ (*Id.* at Ex. 83.)

- **March 1, 2022**: The Court in the FTC Action enters a permanent injunction, adopting the FTC's request to limit the Receiver's ability to share information and require that Cardiff destroy evidence. (*Id.* at Ex. 84, p. 24.)

- **March 2022 (exact date unknown)**: The USAO presents its case against Cardiff to the Grand Jury.[7] (ECF No. 1.)

- **September 14, 2022**: The Receiver submits a request in the FTC Action for an order permitting destruction of data and evidence related to Cardiff and Redwood's business operations because it was prohibited by the permanent injunction from returning the documents to Cardiff. (*Id.* at Ex. 85, p. 3:20–22; Ex. 86, ¶ 14.)

---

[7] ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ was likely used directly or indirectly by the Government to present its case against Cardiff to the Grand Jury. Significantly, there is no evidence that the Government complied with the requirement under the Freedom of Information Act to provide notice to the FTC and obtain written authorization from the FTC before utilizing information obtained pursuant to a request for non-public information in court. (*Id.* at Ex. 30.)

- **September 14, 2022:** ███████████████████████████
  ██████████████████████████████████████████
  ████████████████████ (*Id.* at Ex. 87.) The FTC does not object to
  the destruction request, despite its knowledge and participation in the
  Government's criminal investigation of Cardiff. Nor did the
  Government take any action in response to the request, despite their
  knowledge that the Receiver has made this request.

- **September 30, 2022**: Absent objection, the Court grants the Receiver's
  September 14, 2022 request to destroy evidence related to Cardiff and
  Redwood's business operations. (*Id.* at Ex. 88.)

- **October 2, 2022**: ███████████████████████████████████████
  (*Id.* at Ex. 89.) Counsel for the Receiver subsequently confirms that the
  data and other tangible items were successfully destroyed pursuant to
  the Court's authorization. (Cardiff Decl., ¶ 8.) Accordingly, the
  following evidence was ultimately lost or destroyed:

  (1) The complete content of Redwood's Google Suite account,
  including Nest Cam recordings from Redwood office spaces,
  sales call audio recordings, daily customer sale log sheets, audit
  logs, and Google Hangout Chat[8] data;
  (2) Redwood's staff's daily-meeting handwritten logbooks;
  (3) Redwood employee personnel files; and
  (4) Handwritten notes stored in Cardiff's office. (*Id.* at ¶ 9.)

- **January 31, 2023:** The Indictment against Cardiff returned by the
  March 2022 Grand Jury is filed in this Action charging Cardiff with

---

[8] The Google Hangout Chat feature was utilized by Redwood staff to communicate
internally about the daily operations of Redwood, which included conversations
regarding rebilling and customer accounts, among other things. (Cardiff Decl., ¶ 4.)

access device fraud under 18 U.S.C. § 1029(a)(5), aggravated identity theft under 18 U.S.C. § 1028A(a)(1), and two counts of witness tampering under 18 U.S.C. § 1512(b)(2)(B), all in relation to his business practices at Redwood. (ECF No. 1.)

- **November 27, 2023**: Cardiff is arrested, the Indictment against him is unsealed, and Cardiff is arraigned. (ECF Nos. 7, 11.)

- **December 6, 2023**: Cardiff is released on multiple pretrial release conditions, including that he abide by a curfew and remain in the custody of Stephen Cochell, one of his attorneys. (ECF No. 21.)

## III. <u>ARGUMENT</u>

### A. <u>The Government Violated Cardiff's Due Process Rights and Circumvented His Fourth Amendment Rights By Conducting a Joint Civil Action and Criminal Investigation in Bad Faith</u>

1. <u>The Court Should Dismiss an Indictment When the Government Engages in a Civil Action and a Criminal Investigation in Bad Faith</u>

Generally, it is permissible for the Government to conduct "parallel civil and criminal investigations," *provided* the investigations remain separate and comply with the Fifth Amendment Due Process Clause. *U.S. v. Kordel*, 397 U.S. 1, 11–12 (1970); *U.S. v. Stringer*, 535 F.3d 929, 936 (9th Cir. 2008). The government may conduct parallel civil and criminal investigations without violating the due process clause, so long as it does not act in bad faith. *Stringer*, 535 F.3d at 936. Bad faith exists where the government (1) conducts a covert criminal investigation under the guise of a civil action; (2) engages in deceit or affirmative misrepresentations regarding the true purpose of the investigation; or (3) engages in conduct which demonstrate "special circumstances" that might suggest the unconstitutionality or impropriety of a criminal prosecution. *See Kordel*, 397 U.S. at 12–13; *Stringer*, 535 F.3d at 937 (dismissal or suppression of evidence may be warranted "where the

1   government made affirmative misrepresentations or conducted a civil investigation
2   solely for purposes of advancing a criminal case.").

3        When a civil investigation becomes "inescapably intertwined with the
4   criminal investigation conducted by the Department of Justice" (as is the case here),
5   it "negate[s] the existence of parallel investigations." *U.S. v. Scrushy*, 366 F.Supp.2d
6   1134, 1141 (N.D. Ala. 2005). Moreover, when the government "manipulate[s] the
7   simultaneous investigations for its own purpose" it "departs from the proper
8   administration of justice." *Id.* (emphasis added). Thus, when the government is
9   suing a defendant civilly and conducting a criminal investigation against him at the
10  same time, the government must inform the defendant of the criminal investigation.
11  *See id.* at 1139–40 ("Failing to advise [the defendant] about the criminal
12  investigation of which he was a target . . . cannot be said to be in keeping with the
13  proper administration of justice. Our justice system cannot function properly in the
14  face of such cloak and dagger activities by those charged with upholding the
15  integrity of the justice system.").

16       Federal courts have supervisory authority over the manner in which federal
17  law enforcement agencies exercise their power to conduct investigations and may
18  find dismissal or suppression of evidence as an appropriate remedy to governmental
19  misconduct. *Rea v. United States*, 350 U.S. 214, 217 (1956); *Stringer*, 535 F.3d at
20  937, 940–42; *U.S. v. Dahlstrum*, 493 F.Supp. 966, 975 (C.D. Cal. 1980) (mandating
21  dismissal of an indictment where the Internal Revenue Service issued a civil
22  summons for the purpose of gathering evidence for a criminal prosecution).

23            2.   The Government Utilized the FTC Action to Develop a Criminal
24                 Case Against Cardiff

25       As early as July 17, 2018—many months before the FTC Action was
26  initiated—the Government began to coordinate with the FTC to jointly investigate
27  Cardiff. On July 24, 2018, ███████████████████████████████
28  ████████████ seeking materials related to Redwood and Cardiff. (Larson Decl.,

LARSON
LOS ANGELES

DEFENDANT JASON CARDIFF'S MOTION TO DISMISS INDICTMENT WITH PREJUDICE

1  Ex. 3.) ███████████████████████████████████████████████████

2  ████████████████████████████████████████████████████

3  ███████████ (*Id.*) As such, the USPIS explicitly stated that it was ████████████

4  ████████████████████████████ before the FTC Action was even filed.

5      On October 5, 2018, ███████████████████████████████████

6  ███████████████████████████████████████████████████████████

7  ███████████████████████ (*Id.* at Ex. 10.) Five days later, on October 10, the

8  FTC filed the FTC Action and immediately requested the appointment of Robb

9  Evans LLC as a temporary receiver. (*Id.* at Exs. 11, 13.) The proposed order

10 submitted by the FTC, which the Court adopted, authorized the Receiver to

11 "cooperate with *reasonable* requests for information or assistance from any state or

12 federal civil or criminal law enforcement agency." (*Id.* at Ex. 13, p. 25.) (emphasis

13 added.)

14      Eight days later, on October 18, 2018, ████████████████████████

15 ████████████████████████████████████████████

16 ██████████████████████████████████████████████████████████

17 ███████████████████████ (*Id.* at Ex. 16, p. 1.) Thus, after the

18 USPIS failed to obtain information ████████████████████████████

19 █████, it worked with the FTC to have a receiver appointed (which had previously

20 cooperated with the FTC and USPIS), and shortly thereafter, the Receiver provided

21 consent for ████████████████████████████████████████

22 While the Receiver's appointment allowed for cooperation with *reasonable* requests

23 by law enforcement, cooperation to the level of ███████████████████████

24 ██████████████████████████████ within days of appointment was

25 anything but reasonable. Yet, this early action set the tone for the intimate

26 collaboration between the Government, the FTC, and the Receiver which continued

27 throughout the course of the FTC Action. For example, the Receiver went on to (1)

28 ████████████████████████████████████████████████

1  ██████████████████████████████████████████████

2  ████████; (2)██████████████████████████████

3  ███████████████████████████████████████; (3)██████

4  ██████████████████████████████████████████████

5  ████████████████████; and (4)███████████████████████

6  ████████████. (*Id.* at Exs. 39, 42, 61, 63.) Indeed, on other occasions the Receiver

7  went so far as to ██████████████████████████████

8  ███████████; for example, when the Receiver received ████████████████

9  ████████████████████████████████████████████

10 █████████████████████████████████████████████████

11 ██████████████(*Id.* at Ex. 40 (noting that the government ████████████

12 ████████████████████████).) Moreover, the Receiver took active

13 steps to conceal from Cardiff his cooperation with the Government, ███████████████

14 ██████████████████████████████████████████

15 ██████████████████. (*Id.* at Ex. 75.)

16      The Government and FTC were also in regular communication throughout the

17 FTC Action. For example, the FTC provided the Government with ██████████████

18 ███████████████████████████████. (*E.g.*, *id.* at Exs.

19 31, 35, 83, 87.) Indeed, █████████████████████████████████

20 throughout their investigation, █████████████████████████████

21 ████████████████████████████████████████████

22 ██████████████████████████████████████████████

23 ████████████████████(*E.g.*, *id.* at Exs. 34, 37, 64, 66, 70, 72.) Undoubtedly,

24 these ████████████ were designed to brainstorm how to maximize and use each

25 agency's knowledge and resources in prosecuting Cardiff both civilly and

26 criminally.

27      These regular communications and sharing of evidence indicate that the

28 criminal and civil investigations were not conducted in parallel but rather were

wholly intertwined and all but formally integrated. *See Scrushy*, 366 F.Supp.2d at 1139 ("To be parallel, by definition, the separate investigations should be like the side-by-side train tracks that never intersect."). As such, the failure to inform Cardiff of the criminal investigation while forcing him to defend himself and participate in the civil processes associated with the FTC Action in and of itself necessitates dismissal. But here, the violations go far beyond the failure to notify Cardiff. ████ ████████████████████████████████████████████████ shortly after the FTC had a known ally appointed as the Receiver, and the subsequent █████████████ █████████████████████████████████████████, indicates that, from the onset, the FTC Action was intended to serve as a vehicle and stalking horse for building a criminal case against Cardiff. Indeed, the Receiver's May 26, 2020 ███████████████ makes it abundantly clear that the Receiver became part and parcel of the FTC-DOJ-USPIS prosecution team. Thus, the Government conducted a covert criminal investigation under the guise of the FTC Action. As such, the government acted in bad faith and the Indictment must be dismissed.

> 3.   The Government Engaged in Trickery to Deceive Cardiff Into Believing No Criminal Investigation Was Taking Place

The Indictment also must be dismissed because the government deceived Cardiff into believing that the investigation was exclusively civil in nature. (*See Stringer*, 535 F.3d at 940; *Kordel*, 397 U.S. at 12–13).

Preliminarily, by obtaining evidence directly from the Receiver and FTC, the Government was circumventing the normal subpoena and warrant procedures which would have provided Cardiff with notice of the criminal investigation. Moreover, the Government took additional steps to ensure that Cardiff was left in the dark regarding the criminal investigation. For example, (1) the Government submitted ██ ██████████████████████████████████████████ (2) the FTC identified██████████████ ████████████████████████████████████████████

1 ██████████████████████████████████████████

2 ████████████████████████████████████

3 ██████████; and (3) the Government allowed the Receiver ██████████

4 ██████████████████████████████████████████

5 ██████████. (Larson Decl., Exs. 3, 13, 29, 75.)

6      Accordingly, the government also acted in bad faith by taking affirmative

7 steps to intentionally deceive Cardiff into believing there was only a civil

8 investigation. This too necessitates the dismissal of the Indictment.

9    **B.    The Government Violated Cardiff's Due Process Rights By Failing**

10      **to Preserve Potentially Exculpatory Evidence**

11      1.    Dismissal is the Appropriate Remedy Where the Government

12        Fails to Preserve Potentially Exculpatory Evidence in Bad Faith

13      Where the government fails to preserve potentially exculpatory evidence in

14 bad faith, their conduct is considered a due process violation. *U.S. v. Robertson*, 895

15 F.3d 1206, 1211 (9th Cir. 2018); *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).[9]

16 Specifically, a due process violation occurs where the following elements exist: (1)

17 the government acted in "bad faith" in failing to preserve potentially exculpatory

18 evidence; (2) the unavailable evidence possessed potentially exculpatory value that

19 was apparent before the evidence was destroyed; and (3) the defendant is unable to

20 obtain comparable evidence by other reasonable means. *California v. Trombetta*,

21 467 U.S. 479, 489 (1984); *Youngblood*, 488 U.S. at 58. Whether "bad faith" exists

22 turns on whether the government knew that the evidence at issue had potentially

23

24

---

[9] "Exculpatory" evidence is evidence that tends to prove the innocence of the defendant (i.e., it is favorable to the defense). *U.S. v. Bruce*, 984 F.3d 884, 895 (9th Cir. 2021). "Exculpatory" does not mean that it must result in the defendant's acquittal or benefit the defense in every regard; rather, "exculpatory" describes a broader category of evidence that, if disclosed and used effectively, could make the difference between conviction and acquittal. *Id.*

25

26

27

28

LARSON
LOS ANGELES

DEFENDANT JASON CARDIFF'S MOTION TO DISMISS INDICTMENT WITH PREJUDICE

exculpatory value at the time it was lost or destroyed. *Youngblood*, 488 U.S. at 56–57 n. *; *Robertson*, 895 F.3d at 1211.

Where the government destroys potentially exculpatory evidence in bad faith, the appropriate remedy is dismissal of the indictment. *U.S. v. Cooper*, 983 F.2d 928, 929, 933 (9th Cir. 1993) (upholding dismissal of an indictment where the government acted in bad faith by destroying the defendants' chemical laboratory equipment despite repeated suggestions of its potential exculpatory nature); *U.S. v. Zaragoza-Moreira*, 789 F,3d 971, 982 (9th Cir. 2015) (directing the district court to dismiss the indictment where the government destroyed potentially exculpatory video evidence in bad faith); *U.S. v. Chen*, 605 F.2d 433, 435 (9th Cir. 1979) (noting that federal agents' intentional destruction of currency form was "unjustified and inexcusable"). As explained below, the Indictment must be dismissed because the government knowingly permitted the destruction of potentially exculpatory evidence in bad faith.

> 2.    The Government Permitted Destruction of Potentially
>        Exculpatory Evidence

The Government contends that Cardiff enrolled Redwood customers in autoship programs and charged their credit cards without their permission. Cardiff denies these allegations. Redwood's communications with customers and its use of their credit cards were carefully documented by Cardiff and his team at Redwood in the form of sales call recordings, Nest Cam recordings, staff meeting handwritten logbooks, customer sale log sheets, handwritten notes, and data reports of customer charges and rebills, among other things. (Cardiff Decl., ¶¶ 3–4.) Many of these records were stored electronically on Redwood's Google Suite account. (*Id.* at ¶ 3.) It is precisely these documents and recordings that Cardiff would, of course, use to establish that the allegations are false.

However, on April 20, 2021, the Government allowed the Receiver █████

████████████████████████████████████████████████████

1   ████████████████ (Larson Decl., Ex. 75.) This decision invariably led to the

2   destruction of data associated with the account. (*Id.* at Ex. 76.)

3        Then, on March 1, 2022, the Court entered a permanent injunction which (1)

4   ordered Cardiff to destroy any documents containing customer information, and (2)

5   prohibited the Receiver from returning any documents containing customer

6   information to Cardiff. (*Id.* at Ex. 84, pp. 24–25, §§ XVIII(A)(2), (B).) Although

7   these provisions were proposed by the FTC ████████████████████████████

8   ████████████████████████ the Government failed to object or otherwise take any

9   measure to preserve the documents. (*Id.* at Ex. 83.) Months following this order, on

10  September 14, 2022, the Receiver requested that the Court authorize him to destroy

11  the documents containing customer information because he was prohibited from

12  returning them to Cardiff. (*Id.* at Ex. 85.) The FTC ████████████████████

13  ████████████████████████████████████████████████████████████████

14  (*Id.* at Ex. 87.) Nonetheless, neither the FTC nor the Government objected or

15  otherwise alerted the Court, and the Court thereafter entered the order and the

16  Receiver, who is now deceased, ultimately destroyed the documents. (*Id.* at Ex. 88;

17  Cardiff Decl., ¶¶ 8, 14.)

18       The Government's case against Cardiff revolves around how Redwood

19  operated on a daily basis. However, Cardiff is unable to adequately prepare a

20  defense because the recordings and documents reflecting the daily operations of

21  Redwood—which would potentially and actually refute the Government's criminal

22  allegations against him—were destroyed with the Government's consent and notice.

23  (Larson Decl., Exs. 84, 88.)[10] Specifically, these recordings and documents would

24

25  ─────────────────────
    [10] The Government may argue that allowing Cardiff and the Receiver to destroy this

26  potentially exculpatory evidence was not in bad faith because it preserved copies of
    some or all of these records. However, despite Cardiff's requests, the Government

27  has refused to advise Cardiff whether these specific categories of evidence were
    copied or produced.  (Larson Decl., ¶¶ 92–93.) Moreover, the Government has

28

have shown that Redwood's customers were presented with clear options, including the ability to engage in a one-time sale or the monthly rebilling system. (Cardiff Decl., ¶ 10.) The Nest Cam video and telephone audio recordings in particular would have provided the exact content of the conversations that occurred between Redwood and its customers, refuting the Government's claim that customers were enrolled in the monthly rebilling system without their express authorization and that Cardiff directed the destruction of evidence. (*Id.* at ¶ 11.) The employees' daily handwritten logbooks, which were used to document discussions with Cardiff, would have further demonstrated that Cardiff gave clear instructions regarding the enrollment process, including the need for express consent prior to charging any customer's credit card. (*Id.* at ¶ 12.) Likewise, Cardiff's own handwritten notes and the daily customer sales log sheets would have demonstrated the protocols that he had in place to ensure that Redwood's customers who participated in the monthly rebilling plan did so with their prior authorization. (*Id.* at ¶ 13.) Finally, the Google Suite audit logs would have shown that emails and documents were not deleted by Redwood employees, corroborating the fact that Cardiff did not order the destruction of any evidence as charged in the Indictment.  (*Id.* ¶ 11.) The potentially exculpatory nature of this lost evidence is obvious and apparent and goes directly to the heart of what is at issue in this case. Moreover, both Mr. Kane and Robb Evans (the owner of Robb Evans LLC) passed away in the Fall of 2021 and the company

---

produced over 17.8 million pages of documents and many of these exculpatory documents are handwritten and cannot be found via electronic searches. (*Id.*) Thus, even if the Government did claim that they copied and produced the potentially exculpatory evidence, Cardiff would have no way to verify the accuracy of this claim, nor would he actually be able to locate the documents without incurring enormous time and cost. As such, even if the destroyed records were copied and produced (which the Government has not confirmed), by ordering Cardiff and the Receiver to destroy the records, keeping the only copy, and then producing them intermixed with millions of pages of other documents, the potentially exculpatory evidence would still be functionally unavailable to Cardiff and thus the destruction remained prejudicial.

1   itself dissolved in June 2023. (*Id.* at ¶ 14.) As such, the prejudice caused by the

2   destruction of this evidence cannot be cured by calling these witnesses to testify

3   regarding the contents of the destroyed recordings and documents. The Government

4   acted in bad faith—in clear violation of Cardiff's due process rights—by permitting

5   the destruction of this potentially exculpatory evidence. *Youngblood*, 488 U.S. at

6   56–57 n.*; *Robertson*, 895 F.3d at 1211.[11]

7   **C.    The Government Engaged in Fraud on the Court by Procuring and**

8   **Utilizing Appointment of a Receiver, Omitting Material Facts from**

9   **the Protective Order, and Failing to Inform the Court of the**

10  **Significance of its Destruction of Evidence Orders**

11  The Indictment also must be dismissed based on the government's fraud on

12  the Court in the FTC Action. "Fraud on the Court" is "fraud which does or attempts

13  to, defile the [C]ourt itself, or is a fraud perpetrated by officers of the [C]ourt so that

14  the judicial machinery cannot perform in the usual manners its impartial task of

15  adjudging cases that are presented for adjudication." *U.S. v. Sierra Pac. Indus.*, 100

16  F.Supp.3d 948, 955 (E.D. Cal. 2015) (quoting *Appling v. State Farm Mut. Auto. Ins.*

17  *Co.*, 340 F.3d 769, 780 (9th Cir. 2003)) (cleaned up). To determine if fraud on the

18  Court exists, courts look to whether the fraudulent conduct "harmed the integrity of

19  the judicial process." *U.S. v. Estate of Stonehill*, 660 F.3d 415, 444 (9th Cir. 2011)

20  (quoting *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989) (cleaned up). As

21  part of this analysis, courts consider whether the "fraud prevents the opposing party

22  from fully and fairly presenting his case" and whether the fraud "involve[d] an

23  unconscionable plan or scheme which is designed to improperly influence the

24

25  [11] Notably, "the Due Process Clause of the Fourteenth Amendment, as interpreted in

26  *Brady*, makes the good or bad faith of the State irrelevant when the State fails to
    disclose to the defendant material exculpatory evidence." *Youngblood*,  488 U.S. at

27  57. Thus, even if the Government did not act in bad faith (and it did), the Indictment
    still must be dismissed because here the destroyed evidence was more than just

28  potentially exculpatory, it was actually materially exculpatory.

1    [C]ourt in its decision." *Sierra Pac. Indus.*, 100 F.Supp.3d at 955 (quoting *Abatti v.*

2    *C.I.R.*, 859 F.2d 115, 119 (9th Cir. 1988) and *Pumphrey v. K.W. Thompson Tool*

3    *Co.*, 62 F.3d 1128, 1131 (9th Cir. 1995) (cleaned up)).

4          Non-disclosure amounts to fraud on the Court if it was "so fundamental that it

5    undermined the workings of the adversary process itself" or if it would have

6    significantly impacted the Court's decision and the withheld information would

7    have significantly changed the information available to the district court. *Sierra Pac.*

8    *Indus.*, 100 F.Supp.3d at 956 (quoting *Estate of Stonehill*, 660 F.3d at 445–46)

9    (cleaned up).

10              1.    <u>The Government Committed Fraud on the Court By Omitting</u>

11                    <u>and Concealing Material Facts</u>

12          Here, the Government first committed fraud on the Court when it worked

13    with the FTC to procure a Receiver for the claimed purpose of "protecting assets,"

14    when the Government actually intended to use the Receiver ███████████████

15    ███████████████ and to otherwise collect and provide additional evidence to the

16    Government outside the normal procedures for subpoenas and warrants. (Larson

17    Decl., Ex. 13.) Indeed, at no point did the FTC or Government disclose to the Court

18    that they were using the Receiver, an officer of the Court, as a *de facto* investigating

19    agent. In fact, the Receiver omitted virtually all of its interactions with the

20    Government in the time entries that it submitted to the Court in support of its fee

21    applications and reports. However, at no time did the FTC or Government bring

22    these critical omissions to the Court's attention.[12]

23

24

_____

25    [12] To the extent the Government claims that grand jury secrecy prevented disclosure
      of the Receiver's extensive cooperation and communications with the Government
26    to the Court, there is no indication that the FTC or the Government attempted to
      alert the Court to the full story outside the presence of the FTA Action defendants—
27    through an *in camera* filing or otherwise.

28

1      The Government also perpetrated fraud on the Court when it coordinated with
2  the FTC in omitting key material facts when the FTC lodged the proposed protective
3  order in the FTC Action. The Court entered the protective order on September 24,
4  2019. (*Id.* at Ex. 27.) However, the Court did so without first being advised that a
5  substantial amount of nonpublic information *had already* been released to the
6  Government by the Receiver. Because the Court's protective order was expressly
7  designed to create rules to avoid the dissemination of confidential, proprietary, or
8  private information, the FTC, Receiver or the Government should have informed the
9  Court of these activities. Instead, by choosing not to share this critical information,
10 they led the Court into unwittingly entering into a protective order that was <u>not</u>
11 retroactive and did <u>not</u> apply to these previously-shared documents.

12     Moreover, and perhaps most significantly, the Government perpetrated fraud
13 on the Court by allowing the Court to approve requests for the destruction of
14 documents containing customer information, despite the Government's knowledge
15 that the evidence had potentially exculpatory value in its future criminal case. (*Id.* at
16 Exs. 51, 82, 84–89.) Indeed, the Government was aware that the FTC requested that
17 the Court order Cardiff to destroy this exculpatory evidence and prohibit the
18 Receiver from providing this evidence to Cardiff but failed to object or intervene in
19 any way. (*E.g.*, *id.* at Exs. 52, 83.) Then, unable to return the documents, the
20 Receiver requested to destroy the records. (*Id.* at Exs. 85–86.) The Government was
21 also aware of this request, but again failed to object or intervene in any way. (*Id.* at
22 Ex. 87.)

23     Without the benefit of knowing that there was an ongoing criminal
24 investigation and that the documents and recordings containing customer
25 information constituted exculpatory evidence, the Court approved both requests and
26 the documents and recordings were ultimately destroyed. (*Id.* at Exs. 84, 88.) The
27 withheld information would have significantly impacted the Court's decision to
28 approve the destruction requests because a court would never enter an order

LARSON
LOS ANGELES

DEFENDANT JASON CARDIFF'S MOTION TO DISMISS INDICTMENT WITH PREJUDICE

1  requiring destruction of exculpatory evidence on the eve of a criminal prosecution.

2      Accordingly, the Government's conduct in committing fraud on the Court

3  necessitates dismissal of the Indictment.

4          2.    <u>The Government Committed Fraud on the Court By Co-opting</u>

5                <u>the Receiver and Using Him to Assist in the Criminal</u>

6                <u>Investigation in Violation of His Fiduciary Duties</u>

7      The Government also committed fraud on the Court by co-opting the

8  Receiver and urging him to violate his fiduciary duties to Cardiff to further the

9  Government's criminal investigation. A Receiver "receives her power and authority

10  directly from the court and therefore is subject to the court's directions and orders in

11  the discharge of her official duties." *Fed. Trade Comm'n v. On Point Glob. LLC*,

12  2020 WL 5819809, at *2 (S.D. Fla. Sept. 30, 2020); *see also SEC v. Capital*

13  *Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005); *North American Broadcasting,*

14  *LLC v. U.S.,* 306 Fed.Appx. 371, 373 (9th Cir. 2008). Once appointed, a Receiver is

15  considered "a neutral officer of the Court," not an arm of a government agency. *On*

16  *Point Glob. LLC*, 2020 WL 5819809, at *2 (quoting *Sterling v. Stewart*, 158 F.3d

17  1199, 1201 (11th Cir. 1998) (cleaned up); *see also SEC v. Schooler*, 2015 WL

18  1510949, at *2 (S.D. Cal. Mar. 4, 2015). As such, a Receiver "should be impartial

19  between the parties and avoid the appearance of impropriety." *Id.* at *3 (citing Code

20  of Conduct for United States Judges, Canons 2, 3(A)(1) (2014); Model Code of

21  Judicial Conduct R. 1.2, 2.2 (2010)).[13] A Receiver is only partial to the Receivership

22  estate because the Receiver owes a "'fiduciary duty to the owners of the property

23  under his care' and thus must 'protect and preserve' the [R]eceivership estate's

24  assets 'for the benefit of the person ultimately entitled to it.'" *Id.* (quoting *Sovereign*

25  _____

26  [13] The propositions cited to by *Schooler* remain the same in the current versions of
    both the Code of Conduct for United States Judges and Model Code of Judicial

27  Conduct. The canon and rule numbers, respectively, remain the same in the current
    versions of the publications.

28

1   *Bank v. Schwab*, 414 F.3d 450, 454 (3d Cir. 2005)).

2         Under these principles, a Receiver should abide by the following ethical

3   standards at a minimum:

4           1.  The Receiver owes a fiduciary duty to the Court and to the eventual

5               owners of the Receivership estate's assets;

6           2.  The Receiver thus has a duty to protect, preserve, administer, and

7               distribute appropriately the receivership estate's assets and must

8               advocate, to the Court, courses of action that are consistent with these

9               duties;

10          3.  The Receiver may engage in appropriate *ex parte* communication with

11              the parties where necessary to either carry out the Receiver's duties or

12              effectuate discovery;

13          4.  The Receiver, however, is obligated to remain unbiased between the

14              parties in the litigation and must not take positions or advocate for

15              actions primarily for the benefit of one party unless such positions or

16              actions are consistent with the Receiver's fiduciary duties; and

17          5.  The Receiver must avoid the appearance of impropriety so as to

18              maintain confidence in the impartiality of the judiciary.

19  *Schooler*, 2015 WL 1510949, at *3–*4.

20        Here, the Government prompted, persuaded, and permitted the Receiver to

21  violate his fiduciary duties and exhibit bias in favor of the Government on several

22  occasions. The October 10, 2018 TRO appointing the Receiver provided limitations

23  on the Receiver's ability to share information; the TRO allowed cooperation with

24  other law enforcement agencies only upon a *reasonable request* from law

25  enforcement. (Larson Decl., Ex. 13, p. 25, § XVI(T).) Barely a week later, on

26  October 18, 2018, the Receiver ████████████████████████████████████

27  ████████████████████████████████████ (*Id.* at Ex. 16.) On October 22,

28  2018, the Receiver's team "assisted" the USPIS with ████████████████████

1 ████████████████████████████████████████████

2 ████████ (*Id.*, Ex. 14, p. 41; Ex. 16, p. 1.) ████████████████████████ of

3 Redwood's office cannot be considered a "reasonable request" from law

4 enforcement given the requirements of the Fourth Amendment. Nor could it be

5 justified as a reasonable step to advance the goals of a receivership. As such, the

6 Receiver's ████████████████████████████████ is evidence of the

7 Receiver's bias against Cardiff and a violation of his fiduciary duties at the behest of

8 the government.

9        As explained in Section III.A.2, *supra*, there are numerous other examples of

10 the government instrumentalizing the Receiver to aid the criminal investigation,

11 despite knowing that doing so would violate the Receiver's fiduciary duties to

12 Cardiff. For example, the Receiver gave consent ████████████████████

13 ████████████████████████████████, provided the

14 government with vast amounts of information, and even alerted the Government to

15 activities which were far afield of the Receivership estate. Indeed, the Receiver's

16 waiver of privilege dispensed with any semblance of impartiality and simply

17 confirms that the Receiver was integrated into the prosecution team.

18        Reflective of that integration, the Receiver and the Government were in

19 constant contact regarding Cardiff from the moment the Receiver was appointed in

20 October 2018. This use of the Receiver as a quasi-governmental criminal

21 investigator was never disclosed to the Court and would never have been authorized.

22 Indeed, the Receiver omitted virtually all of its interactions with the Government in

23 its fee applications and reports to the Court. Accordingly, by using the Receiver to

24 aid in their criminal investigation, despite knowing that such assistance violated the

25 Receiver's fiduciary duties, the Government engaged in a fraud on the Court which

26 necessitates dismissal of the Indictment.

27 ///

28 ///

### D. <u>The Pre-Indictment Delay of Prosecution Prejudiced Cardiff's Right to Prepare a Defense and Secure a Fair Trial</u>

The ability of the accused to prepare his defense is a fundamental aspect of our adversary system. *Kinney v. Lenon*, 425 F.2d 209, 210 (9th Cir. 1970). A pre-indictment delay may lead to the denial of a defendant's rights to due process of law. *U.S. v. Lovasco*, 431 U.S. 783, 790 (1977). In considering whether a pre-indictment delay requires dismissal of an indictment, a Court must first determine whether the defendant suffered actual prejudice because of the delay. *U.S. v. Swacker*, 628 F.2d 1250, 1254 (9th Cir. 1980). Showing that witnesses have been lost or that evidence has become unavailable due to the delay suggests actual prejudice. *U.S. v. Mills*, 641 F.2d 785, 788 (9th Cir. 1981).

As detailed above, the Government began investigating Cardiff in July 2018. By October 2018, the Government was well aware that the FTC had filed a Complaint, alleging that Cardiff enrolled his Redwood customers in a monthly rebilling scheme without authorization. Within days of the filing of the FTC Action, the Government had completed an exhaustive ███████████████████ ███████████████████████████████████. The Government then engaged in years of coordination with the FTC and the Receiver, discussing the details of the credit card fraud case being developed against Cardiff through the FTC Action.

By no later than August 2020, the Government was also well aware of the allegations now in the Indictment that Cardiff had engaged in evidence tampering back in 2018. The Government knew about these claims through its extensive work with the FTC and its review of the FTC's 2020 motion for summary judgment which expressly accused Cardiff of this obstruction and the Receiver's January 7, 2019 report. (Larson Decl., Ex. 14, p. 16; Ex. 90, p. 46.)

Nonetheless, the Government did not indict Cardiff in 2018, 2019, 2020, 2021, or 2022. During this delay, on April 20, 2021, the Government allowed the

1  Receiver to ███████████████████████████████, destroying this

2  potentially exculpatory evidence. (Larson Decl., Ex. 75.) Then,  the Government

3  continued to stand on the sidelines as it knowingly watched the FTC and the

4  Receiver seek and obtain court orders in 2022 to destroy additional critical evidence

5  pertaining to Cardiff and his Redwood business operations. (*Id.* at Exs. 84, 88.)

6  Moreover, during this delay, key witnesses who could have testified regarding the

7  unconstitutional coordination between the Government, the FTC, and the

8  Receiver—Brick Kane and Robb Evans—passed away.

9      In January 2023, after permitting key evidence to be destroyed, the

10 Government sought and obtained this Indictment reaching back to the conduct that it

11 had been aware of since 2018. Because the Government's pre-indictment delay has

12 substantially prejudiced Cardiff's constitutional right to prepare a defense and

13 secure a fair trial, this case should be dismissed.

14 **IV.   CONCLUSION**

15      Based on the foregoing, Cardiff requests dismissal with prejudice of the

16 Indictment. In the alternative, Cardiff requests suppression of all evidence obtained

17 by the Government through its unlawful criminal investigation. Additionally,

18 Cardiff requests an evidentiary hearing to further develop the record in support of

19 this Motion.

20

21 Dated: April 8, 2024            LARSON LLP

22

23

24                      By: _____

25                         Stephen G. Larson
                            Hilary Potashner
26                         Jonathan Gershon
                         Attorneys for Defendant
27                       JASON EDWARD THOMAS CARDIFF

28