AMANDA N. LISKAMM
Director, Consumer Protection Branch
MANU J. SEBASTIAN
Trial Attorney
U.S. Department of Justice
Consumer Protection Branch
    450 Fifth Street, NW, Suite 6400S
    Washington, D.C.  20001
    Telephone: (202) 514-0515
    Facsimile: (202) 514-8742
    Email:  Manu.J.Sebastian@usdoj.gov

E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
VALERIE MAKAREWICZ (Cal. Bar No. 229637)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0756
    Facsimile: (213) 894-6269
    E-mail:   Valerie.Makarewicz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>       v.<br><br>JASON EDWARD THOMAS CARDIFF,<br><br>       Defendant. | No. 5:23-CR-00021-JGB<br><br>**GOVERNMENT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO MOTION TO DISMISS**<br><br>Date:       May 20, 2024<br>Time:       2:00 p.m.<br>Courtroom:  1 |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Valerie L. Makarewicz and Department of Justice Trial Attorney Manu J. Sebastian, submits this Opposition to Defendant's Motion to Dismiss.

1

Dated April 22, 2024:                    Respectfully submitted,


                                         E. MARTIN ESTRADA
                                         United States Attorney
                                         AMANDA LISKAMM
                                         Director
                                         Consumer Protection Branch


                                         _____/s/_____
                                         MANU J. SEBASTIAN
                                         Trial Attorney
                                         VALERIE MAKAREWICZ
                                         Assistant United States Attorney


                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION.......................................................1

II.  LEGAL STANDARDS & ARGUMENT.........................................5

    A.   The Government Conducted its Civil and Criminal
         Investigations in Good Faith...................................5

    B.   The Government Neither Failed to Preserve Potentially
         Exculpatory Evidence nor Acted in Bad Faith..................11

    C.   There Was No Fraud on the District Court in the Civil
         Case........................................................15

    D.   There was No Prejudice to Defendant by Pre-Indictment
         Delay.......................................................19

        1.   The Indictment was Returned within the Statue of
            Limitations............................................19

        2.   Defendant Did Not Suffer Actual Prejudice as a
            Result of Pre-Indictment Delay.........................21

        3.   There was No Undue Pre-Indictment Delay.............22

    E.   No Evidence Should be Suppressed............................24

    F.   An Evidentiary Hearing is Not Necessary.....................26

III. CONCLUSION.......................................................26

i

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Arizona v. Youngblood*,
488 U.S. 51 (1988) ................................................ 14

*California v. Trombetta*,
467 U.S. 479 (1984) .............................................. 12

*Evans v. Santoro*,
2023 WL 3325946 (C.D. Cal. Mar. 31, 2023) ...................... 19

*Mooney v. Holohan*,
294 U.S. 103 (1935) .............................................. 21

*SEC v. Elfindepan, S.A.*,
169 F.Supp.2d 420 (M.D.N.C. 2001) ............................... 16

*SEC v. Schooler*,
2015 WL 1510949 (S.D. Cal., March 4, 2015) ..................... 17

*St. Louis Public Sch. v. Walker*,
76 U.S. 282 (1869) ............................................... 19

*United States v. Barken*,
412 F.3d 1131 (9th Cir. 2005) ................................... 22

*United States v. Bracy*,
67 F.3d 1421 (9th Cir. 1995) .................................... 20

*United States v. Bridges*,
344 F.3d 1010 (9th Cir. 2003) .................................... 7

*United States v. Bruce*,
984 F.3d 884 (9th Cir. 2021) .................................... 12

*United States v. Cano-Gomez*,
460 F. App'x 656 (9th Cir. 2011) ................................ 26

*United States v. Drake*,
543 F.3d 1080 (9th Cir. 2008) ................................... 12

*United States v. Ewell*,
383 U.S. 116 (1966) .............................................. 19

*United States v. Goldstein*,
989 F.3d 1178 (11th Cir. 2021) ............................... 7, 11

United States v. Heine,
    2016 WL 6808595(D. Or. Nov. 17, 2016) ............................ 7

United States v. Howell,
    231 F.3d 615 (9th Cir. 2000) .................................... 26

United States v. Huntley,
    976 F.2d 1287 (9th Cir. 1992) ........................... 21, 22, 23

United States v. Kail,
    612 F.2d 443 (9th Cir. 1979) .................................... 20

United States v. Kordel,
    397 U.S. 1 (1970) ....................................... 5, 6, 7, 11

United States v. Lovasco,
    431 U.S. 783 (1977) ............................... 19, 20, 23, 24

United States v. Madison,
    226 F. App'x 535 (6th Cir. 2007) ........................... 17, 18

United States v. Marion,
    404 U.S. 307 (1971) ............................... 19, 20, 24

United States v. Moran,
    759 F.2d 777 (9th Cir. 1985) .................................... 20

United States v. Orrock,
    2022 WL 256651 (9th Cir. Jan. 26, 2022) ......................... 8

United States v. Prokop,
    2013 WL 2338156 (D. Nev. May 28, 2013) ...................... 14, 15

United States v. Rakow,
    2006 WL 8445911 (C.D. Cal. July 3, 2006) ....................... 8,9

United States v. Robertson,
    895 F.3d 1206 (9th Cir. 2018) ................................... 11

United States v. Robson,
    477 F.2d 13 (9th Cir. 1973) .................................... 25

United States v. Scrushy,
    366 F.Supp.2d 1134 (N.D. Ala. 2005) ........................... 10

United States v. Setser,
    568 F.3d 482 (5th Cir. 2009) ............................... 17, 25

iii

United States v. Sherlock,
    962 F.2d 1349 (9th Cir. 1989) ......................... 20, 21, 22, 23

United States v. Stringer,
    535 F.3d 929 (9th Cir. 2008) ............................... passim

United States v. Talbot,
    51 F.3d 183 (9th Cir. 1995) ..................................... 23

United States v. Unruh,
    855 F.2d 1363 (9th Cir. 1987) .................................... 6

United States v. Zaragoza-Moreira,
    780 F.3d 971 (9th Cir. 2015) ................................ 11, 12

**Federal Statutes**

15 U.S.C.
    § 53 ........................................................... 4
    § 53(b) ..................................................... 1, 4
    §§ 1693-1693r ............................................... 1, 4
    §§ 8401-05 .................................................. 1, 4

18 U.S.C
    § 3282(a) .................................................... 20
    § 1029(a) .................................................. 4, 20
    § 1512(b)(2)(B) ........................................... 5, 20
    § 1028A(a)(1) ............................................. 5, 20
    § 1028A(a)(2) ................................................ 5

**Regulations**

16 C.F.R. § 310.4(b)(1)(v) .................................... 1, 4

iv

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Defendant has presented for the court's consideration a
conclusory and accusatory filing rife with allegations of government
conspiracy and wrongdoing unsupported by law or fact. Defendant's
Motion to Dismiss Indictment, Dkt. 45 (hereinafter "Def. Mot."). In
fact, Defendant's actions as a serial fraudster finally caught up
with him, when the vast number of consumer complaints related to his
fraudulent behavior alerted the Federal Trade Commission ("FTC") to
Defendant's activities. The FTC began a civil investigation into his
conduct in 2017 which, in the normal and proper course of
investigation, led to appointment of a receiver and referral for a
parallel criminal proceeding, and culminated in <u>FTC v. Cardiff, et
al.</u>, Case No. 5:18-cv-02104 (C.D. Ca.), (hereinafter "<u>FTC v.
Cardiff</u>") where the Court found Defendant violated the FTC Act, 15
U.S.C. § 53(b), the Restore Online Shoppers' Confidence Act
("ROSCA"), 15 U.S.C. §§ 8401-05, the Electronic Fund Transfer Act
("EFTA"), 15 U.S.C. §§ 1693-1693r, and the FTC's Telemarketing Sales
Rule ("TSR"), 16 C.F.R. § 310.4(b)(1)(v). <u>Id.</u> at Dkt. 511.

On August 8, 2017, the FTC issued a Civil Investigative Demand
("CID") to Defendant and his company, Redwood Scientific
Technologies, Inc. ("Redwood"). which Defendant failed to respond to
the CID, causing the FTC to petition the Court for an order enforcing
the CID. <u>FTC v. Redwood</u>, Case No. 2:17-cv-07921 (C.D. Ca.), initiated
October 30, 2017 (Dkt. 1) ("hereinafter <u>FTC v. Redwood</u>"). Defendant
was compelled to respond on January 24, 2018, but he once again
failed to comply, and on March 20, 2018, the Court issued an Order to
Show Cause and held a contempt hearing. <u>Id.</u> at Dkt. 17, 20, 22.

1

1  Unbeknownst to the Court and the FTC, Defendant only partially
2  complied with the Court's order and produced some documents to the
3  FTC in or around June 2018. Id. at Dkt. 29.

4      Finding evidence that Defendant violated the FTC Act, the Court,
5  on October 10, 2018, granted the FTC's request for a Temporary
6  Restraining Order, appointed a Receiver, and permitted the FTC and
7  Receiver "immediate access" to Defendant's business premises. FTC v.
8  Cardiff, Dkt. 3. On October 12, 2018, the FTC and Receiver executed
9  the immediate access with the assistance of a Postal Inspector from
10  the U.S. Postal Inspection Service ("USPIS") and a few local law
11  enforcement personnel. Id. at Dkt. 52; Def. Mot. Ex. 15. On November
12  1, 2018, the Receiver filed its first report with the Court and on
13  November 8, 2018, the Court entered a preliminary injunction with an
14  asset freeze. Id. at Dkt. 59.

15      The Court found that good cause existed to give the Receiver
16  custody, control, and possession of all assets and documents related
17  to Defendant and his companies. Id. at Dkt. 29, p.4. Further, the
18  Court granted the Receiver broad discretion over the Receivership
19  property. Id. The Court allowed the FTC access to the premises of the
20  Receivership Entities, gave the Receiver the ability to grant
21  inspection and copying of books, records, documents and other
22  materials, and instructed the Receiver to cooperate with "any state
23  or federal civil or criminal law enforcement agency." Id.

24      Defendant, however, continued his deceptive behavior and on July
25  27, 2019, during a second contempt hearing related to Defendant's
26  conduct, the Court recommended the FTC refer the matter to the U.S.
27  Attorney's Office for criminal investigation. Government's Memorandum
28  of Law in Support of Request for Pretrial Detention, Exhibit C, Dkt.

13-3, 391:15-19. Specifically, the Court found that the Defendant, his wife, and their associate "created a paper trail perpetuating fraud on the Court" to conceal the fact that Defendant unlawfully transferred money out of the Receivership. Id. at 390-391. The Court went on to say:

> The Defendants in this case have been very clever and very devious and have structured transfers of monies and placed the Court in a position where, if there's truly an impossibility of performance, the sanction that can be imposed by the Court is a sanction that would not ever deter this conduct going forward and would allow the Cardiffs to continue to perpetuate fraud . . . I would highly, again, recommend to the United States Attorney's Office that they take a close look at this case.

Id. at 395.

In late 2019, the FTC referred the matter to the U.S. Department of Justice ("DOJ") and by June 2020, the FTC turned over material collected from Defendant in June 2018 in response to the CID and from the immediate access in October 2018, as well as information collected from third parties in the course of the FTC's civil investigation, deposition transcripts from early 2019, and declarations filed in the civil action. Def. Mot., Ex. 28-31, 60. DOJ conducted its own investigation by subpoenaing several entities and financial institutions, and making a number of requests for information to the Receiver. Def. Mot., Ex. 53-59, 61, 63. Specifically, DOJ requested the Receiver provide copies of Redwood's Google account and its QuickBooks account that the Receiver had collected. The Department also requested that the Receiver allow access to Redwood's Customer Retention Management ("CRM") data by signing a consent form so the data could be collected directly from the custodian, Sticky.io formerly known as Limelight.

On October 9, 2020, the Court in the civil case granted summary judgement on 16 different counts: 13 violations of the FTC Act, 15 U.S.C. § 53, and violations of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. §§ 8401-05, the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r, and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.4(b)(1)(v). FTC v. Cardiff, Dkt. 511. On March 1, 2022, the Court entered a permanent injunction against Defendant, his wife, and all of their related companies prohibiting Defendant from continuing his fraudulent behavior. FTC v. Cardiff, Dkt. 705-706. Shortly thereafter, Defendant moved to Ireland with his wife and daughter.

Meanwhile, DOJ conducted its independent criminal investigation into Cardiff conduct as the owners of Redwood. That investigation led to charges that during approximately January 2018 through May 2018, Defendant ordered his employees to participate in a scheme that defrauded consumers out of hundreds of thousands of dollars. Indictment, Dkt. 1. Specifically, Defendant engaged in a scheme to charge prior one-time single-purchase customers and place them on periodic continuity sales plans without their authorization or consent. Id. During this scheme to defraud, Defendant also ordered the deletion and destruction of documents Redwood had been ordered to produce as part of the FTC CID enforcement proceeding. Id.

DOJ conducted over 35 witness interviews and analyzed voluminous amounts of data, including the review of thousands of victim transactions. On January 31, 2023, a federal grand jury sitting in the Central District of California returned and filed the Indictment against Defendant, charging him with access device fraud in violation of 18 U.S.C. §§ 1029(a) Sections 5 and 2; aggravated identity theft in

violation of 18 U.S.C. §§ 1028A(a)(1)-(2); and two counts of witness tampering in violation of 18 U.S.C. § 1512(b)(2)(B). Indictment, Dkt.1.

From December 27, 2024 through March 22, 2024, DOJ produced to Defendant voluminous discovery material in nine productions. Exhibit 1, March 22, 2024 Production Letter. As Defendant admits, DOJ produced over 17.8 million pages of material including 308 gigabytes of material from the Google Account. Def. Mot. at p.19 n.6; Id. at p.30 n.10. DOJ also produced over 10 terabytes of forensic images of Defendant's computers and other electronic devices on March 22, 2024. Ex. 1.

## II.   LEGAL STANDARDS & ARGUMENT

### A.   The Government Conducted its Civil and Criminal Investigations in Good Faith

Under the Due Process Clause, the Government may generally conduct parallel civil and criminal investigations. United States v. Stringer, 535 F.3d 929, 937 (9th Cir. 2008). However, there are five circumstances in which there *may* be "such unfairness and want of consideration for justice" from parallel investigations so as to independently invalidate a conviction: (1) "the Government has brought a civil action solely to obtain evidence for its criminal prosecution," (2) the Government "has failed to advise the defendant in its civil proceeding that it contemplates his criminal prosecution," (3) "the defendant is without counsel," (4) the defendant "reasonably fears prejudice from adverse pretrial publicity or other unfair injury," or (5) there are "any other special circumstances that might suggest the unconstitutionality or even the impropriety of this criminal prosecution." United States v. Kordel,

397 U.S. 1, 11–12 (1970). None of these five circumstances are present here.

First, the FTC did not bring its investigation solely to obtain evidence for this criminal prosecution. The FTC investigation predates the criminal investigation. This fact alone "tends to negate any likelihood that the government began the civil investigation in bad faith." Stringer, 535 F.3d at 939. Specifically, the FTC issued a CID to Defendant on August 8, 2017, a full year before Defendant claims the USPIS was involved in the matter, and over two years before DOJ opened its investigation. FTC v. Redwood, Dkt. 1; Def. Mot. Ex.3; Id. at 29. Defendant neglected to include this crucial fact in his extensive recitation of the relevant timeline. Indeed, there is no indication that the FTC began its investigation with an eye towards a criminal investigation.

Moreover, the FTC fully litigated its civil action and obtained a judgment against Defendant. As described above, on October 9, 2020, the Court granted summary judgement on 16 different counts. FTC v. Cardiff, Dkt. 511. On March 1, 2022, the Court entered a permanent injunction against Defendant, his wife, and all of his related companies prohibiting him from continuing his fraudulent behavior. Id., Dkt. 705-706. Indeed, that the FTC brought—and obtained—a judgment on a civil suit against Defendant demonstrates a lack of Government bad faith. United States v. Unruh, 855 F.2d 1363, 1374 (9th Cir. 1987) ("There was no evidence of bad faith on the part of the prosecution in bringing the civil proceeding. The civil investigation culminated in at least one civil suit on behalf of the United States.").

Second, the FTC engaged in its typical practices during the

civil investigation, <u>Kordel</u>, 397 U.S. at 11, and Defendant has failed
to show – or to point to any evidence indicating – that the civil
investigation was directed at the behest of the criminal
investigation, <u>see</u> <u>United States v. Heine</u>, No. 3:15-CR-238-SI-1, 2016
WL 6808595, at *19 (D. Or. Nov. 17, 2016). <u>See also</u> <u>Stringer</u>, 535
F.3d at 939. Although there was some contact between the USPIS, the
Department of Justice, and the FTC, mere contact is not indicative of
bad faith. Indeed, it is "common and generally proper" for the FTC
and the prosecution team to jointly interview cooperating witnesses,
conduct their investigations at roughly the same time, and share
information. <u>United States v. Goldstein</u>, 989 F.3d 1178, 1202 (11th
Cir. 2021). Further, Defendant's claim of impropriety when law
enforcement attended the immediate access conducted by the court-
appointed Receiver is misplaced, as the order appointing the Receiver
clearly instructed, "Law enforcement personnel . . . may assist the
Receiver in implementing these provisions in order to keep the peace
and maintain security." <u>FTC v. Cardiff</u>, Dkt. 45-3; <u>see also</u> Def.
Mot., at Ex. 13, p. 23.

Third, and crucially, the Government neither failed to advise
Defendant during the civil proceeding that it was contemplating a
criminal prosecution nor made any affirmative misrepresentations.
Defendant must demonstrate, through clear and convincing evidence,
that he was affirmatively misled by the Government's agents. <u>United
States v. Bridges</u>, 344 F.3d 1010, 1020 (9th Cir. 2003); <u>see Stringer</u>,
535 F.3d at 940 (noting that an affirmative misrepresentation
involves trickery or deceit). He wholly fails to do so.

Defendant claims that the Government affirmatively misled him by
taking steps to leave him in the dark regarding the criminal

investigation. Def. Mot. at 27-28. Defendant fully misapprehends what
an affirmative misrepresentation is. The non-disclosure of an
investigation is not an affirmative misrepresentation, so long as a
potential defendant is on notice that a criminal investigation may
occur. Stringer, 535 F.3d at 938. A document or notice which informs
a potential defendant that information obtained can be used for a
criminal investigation is sufficient to place a potential defendant
on notice. Stringer, 535 F.3d at 933; United States v. Orrock, No.
19-10388, 2022 WL 256651, at *1 (9th Cir. Jan. 26, 2022).

Here, Defendant was placed on notice as to the possibility of
criminal investigation on several occasions. For example, the August
8, 2017 FTC CID specifically states, "We may disclose the information
in response to a valid request from . . . criminal federal law
enforcement agencies for their official law enforcement purposes."
FTC v. Redwood, Dkt. 1-2. As Defendant confirmed, both the USPIS and
the United States Department of Justice executed valid requests from
the FTC for the material it collected. Def. Mot. at 4; Id. at 12. In
addition, as Defendant concedes, the Order appointing the Receiver on
October 10, 2018, clearly states that the Receiver is authorized to
cooperate with law enforcement requests. Id. at 8.

Defendant and his counsel in the civil matter demonstrated
awareness of Defendant's potential criminal liability when Defendant
refused to answer questions and pleaded his Fifth Amendment right
against self-incrimination throughout his deposition with the FTC.
Exhibit 2, Portion of J. Cardiff Deposition; See also United States
v. Rakow, No. CR 04-01563, 2006 WL 8445911, at *15 (C.D. Cal. July 3,
2006); aff'd, 286 Fed. Appx. 452 (9th Cir. 2008) (holding that
knowledge of and planning for criminal investigation underscores

8

awareness of criminal liability even in absence of being informed by the Government).

During the deposition of Defendant's codefendant wife in the FTC matter on March 28, 2019, Defendant's counsel clearly stated that he believed the FTC would refer the matter for criminal investigation and advised both Defendant and his wife accordingly.

> I am concerned that given what I see on your website and given the history of how the FTC has pursued civil matters . . . at some point in time, and I don't know when, but they get flipped over for potential criminal prosecution."

Exhibit 3, Portion of E. Cardiff Deposition at 17. Defendant's counsel then inquired if the FTC communicated with anyone with "prosecutorial authority regarding the case" and received the following response:

> . . . [F]rom time to time we share information with Government agencies, and those communications with Government agencies may be civil or criminal and are confidential, and we can't disclose them.

Id. at 18-19. Defendant's counsel confirmed,

> . . . it tells me what I needed to know. And that is, in essence, there is quite often a pattern of practice where the FTC civil flips information to criminal.

Id. at 19. Defendant's counsel then advised Defendant's codefendant wife that she should "assert the Fifth," which she did throughout the deposition. Id. at 22.

The entire criminal referral colloquy was incorporated into Defendant's deposition the following day at the request of his attorney and Defendant also repeatedly "invoke[d] [his] Fifth Amendment privilege" for every question asked of him during the deposition. See Ex. 2. Defendant's personal knowledge of the

possibility of criminal charges is also laid bare by the fact that when he was told about the charges listed in the indictment after his arrest at Los Angeles International Airport on November 26, 2023, his response was that he thought the five-year statute of limitations period for criminal charges would have passed while he was living in Ireland. Exhibit 4, USPIS ISF 75, Cardiff Arrest Report.

Defendant erroneously relies on United States v. Scrushy, 366 F. Supp.2d 1134 (N.D. Ala. 2005), to claim that the Government misled him. (See Def. Mot. at 23-24). In Scrushy, the district court determined that the Government engaged in "cloak and dagger activities" when the Securities and Exchange Commission ("SEC") failed to advise the defendant of the criminal investigation of which he was a target, moved the deposition date to accommodate the U.S. Attorney's Office need to bring one of the SEC investigators questioning the defendant during the deposition into the criminal investigation, and changed the location of the deposition for criminal venue purposes. 366 F.Supp.2d at 1139-40. Here, by contrast, Defendant was repeatedly put on notice about the possibility of a criminal investigation and evinced his knowledge of this danger.

Just four months after the FTC attorney informed Defendant of a possible criminal referral and Defendant invoked his Fifth Amendment rights against self-incrimination during his deposition, the Court held a contempt hearing on July 29, 2019, which Defendant attended in person. The Court "suggest[ed] that the FTC seriously consult with the office of the U.S. Attorney and bring this matter to the attention of the federal authorities, criminal section of the U.S. Attorney" after witnessing first-hand Defendant's fraudulent conduct. Government's Memorandum of Law in Support of Request for Pretrial

<u>Detention, Exhibit C</u>, Dkt. 13-3, 391:15-19. The Court also stated, "I would say of the 16 years I've been on the federal court, I've never presided over a matter where the fraud committed by the defendants was so clear, the deception so extreme. I'm astounded." <u>Id.</u>, Dkt. 41-3, 389:3-6.

Fourth and finally, that the FTC and USPIS simultaneously investigated Defendant does not invalidate the criminal prosecution. To find otherwise would "stultify enforcement of federal law." <u>Kordel</u>, 397 U.S. at 11. The Ninth Circuit has upheld the providence of joint civil and criminal investigations so long as they do not otherwise violate a defendant's Due Process rights. <u>See, e.g.</u>, <u>Stringer</u>, 535 F.3d at 933 ("There is nothing improper about the government undertaking simultaneous criminal and civil investigations."); <u>Goldstein</u>, 989 F.3d at 1202 (holding that parallel investigations are "common and generally proper"). Even after reviewing over 710 voluntarily produced communications between the criminal and civil teams and between the criminal team and the Receiver, Defendant has adduced no evidence of misconduct in the criminal investigation. The indictment therefore should not be dismissed as violative of the Due Process Clause.

**B.    The Government Neither Failed to Preserve Potentially Exculpatory Evidence nor Acted in Bad Faith.**

The Government commits a Due Process violation when it fails to preserve potentially exculpatory evidence in bad faith. <u>United States v. Robertson</u>, 895 F.3d 1206, 1211 (9th Cir. 2018). The burden is on Defendant to show bad faith. <u>Id.</u> Bad faith "turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed." <u>United States v. Zaragoza-Moreira</u>,

780 F.3d 971, 977 (9th Cir. 2015). Evidence is exculpatory if it tends to prove Defendant's innocence. United States v. Bruce, 984 F.3d 884, 895 (9th Cir. 2021). Along with the bad faith requirement, the destroyed evidence must be unobtainable by other reasonably available means. California v. Trombetta, 467 U.S. 479, 489 (1984). "The exculpatory value of an item of evidence is not 'apparent' when the evidence merely '*could have*' exculpated the defendant." United States v. Drake, 543 F.3d 1080, 1090 (9th Cir. 2008) (emphasis in original).

Defendant has not met his burden on any level. First, Defendant has not shown bad faith because he has failed to adduce *any* evidence whatsoever that the Government had knowledge of the apparent exculpatory value of the evidence or failed to preserve it. Defendant merely claims that the potentially exculpatory nature of documents he describes is "obvious and apparent." Def. Mot. at 31. But Defendant does not discuss the Government's knowledge three years ago, and he ignores the efforts the government made to preserve material associated with Redwood's Google account and produce it to Defendant in discovery in this case. In 2020, the Government requested that the Receiver provide it with "Google Docs as well as any other documents that may be contained in the cloud storage such as Google Drive." Def. Mot., Ex. 61, p. 2-3. The Government believes it did in fact receive all of the material the Receiver was able to collect from the Google account, as the Receiver stated that it had "a forensic image of the data contained in Google Suites."; see also FTC v. Cardiff, Dkt. 52 at 3; Def. Mot. Ex. 14, p.15. As Defendant himself acknowledges, the Receiver sent 308 gigabytes of the forensically imaged Google Suites account to the Government, showing that the

1  Government worked to preserve the material in Redwood's Google

2  account, including any potentially exculpatory evidence. Def. Mot. at

3  17:6-8. The government has produced in discovery the Google material

4  it received from the Receiver, as well as an identical copy of the

5  Google material that was produced to the Government by the FTC.

6       Moreover, with respect to the paper documents and other physical

7  items taken by the Received during the immediate access, Defendant

8  was given several opportunities to collect items from the Receiver

9  prior to their destruction, and on March 16, 2022, he selectively

10  collected, "more than 36 boxes and multiple plastic bins containing

11  documents, and other items" from the Receiver and those boxes of

12  documents were then shipped to Defendant. Def. Mot., Ex. 86, p. 6.

13       Aware that he fails to demonstrate any bad faith by the

14  Government, Defendant attempts to avoid the requirement by claiming

15  that the Government destroyed materially exculpatory evidence. Def.

16  Mot. at 32 n.11. But as Defendant concedes, the Government has

17  produced over 17.8 million pages of documents and 308 gigabytes of

18  data from the Google account. Def. Mot. at 30-31 n.10. In addition,

19  the Government has produced to Defendant 10 terabytes of forensic

20  images of electronic devices at Defendant's business during the

21  immediate access.  As explained above, the government has produced

22  two copies of the materials that the Receiver obtained from Redwood's

23  Google account.  If material in the Google Suites account beyond what

24  has been produced in discovery contained materially exculpatory

25  evidence, Defendant would be able to point to even one piece of

26  evidence that is exculpatory.[1] Instead, Defendant merely relies on

27

28  [1]  Importantly, emails contained in the discovery appear to show

*(footnote cont'd on next page)*

his own self-serving declaration that the evidence *may* have contained exculpatory information. See Arizona v. Youngblood, 488 U.S. 51, 57 (1988) (holding that bad faith showing not required when materially exculpatory evidence destroyed but required when evidence "might" be exonerative).

Relatedly, Defendant has not demonstrated that the evidence he references in his motion has not already been produced. The 10 terabytes of forensic images of Defendant's media devices, including computers, were made available to him on March 22, 2024, and the Google data has been available to Defendant since January 26, 2024. Defendant admits that he has not reviewed the material produced in discovery to determine whether the records he now claims are exculpatory have been produced. Def. Mot. at 30-31, n.10. Defendant's claim that he is prejudiced because he is unable to expeditiously search the government's discovery productions for handwritten documents is without merit as a simple search for the word "notes" within the filename of the documents provided to Defendant shows at least 15 different documents of handwritten notes.

Thus, through discovery in this case and his own collection of documents from the Receiver, Defendant is in possession of most or all of the documents he claims are potentially exculpatory, thus negating any harm. United States v. Prokop, No. 2:09-cr-00022-MMD,

---

Defendant had seven Nest Cameras, four were in his home, and three were in the Redwood office space. Emails also indicate that Defendant paid for "10-day video history subscriptions." Exhibit 5, Nest Email. The period of criminal activity for which Defendant was indicted was from January to May 2018. The Receiver had access to the Google Suites account in October 2018. The Government provided all material that was produced from the Receiver, including any available videos, to Defendant on January 25, 2024.

2013 WL 2338156, at *2 (D. Nev. May 28, 2013) (concluding that evidence from destroyed unaudited tax filings was reasonably available through audited tax filings and other documents produced in discovery). Thus, the indictment should not be dismissed for a failure to preserve potentially exculpatory evidence.

**C.    There Was No Fraud on the District Court in the Civil Case.**

Defendant alleges the government perpetuated a fraud on the District Court in FTC v. Cardiff, a civil action filed in this district in 2018 and presided over, first by District Judge S. James Otero and then District Judge Dolly M. Gee, for three and a half years. Def. Mot. at 32. Without any support other than his conclusory assertions, Defendant throws out a mix of supposed fraudulent acts, including that the Government's criminal team worked with the FTC "to procure a Receiver" who they could use to collect evidence in the criminal investigation, that the FTC did not advise the District Court, prior to entry of the protective order, that the Receiver had shared information with the Government, and that the Government "co-opt[ed]" the Receiver to assist the criminal investigation. Def. Mot. at p. 33-35.[2]

But there was no fraud. The Receiver was authorized to access and control the assets and records of the Receivership Entities and of Defendant by the District Court and to "prevent the inequitable distribution of Assets and determine, adjust and protect the interests of consumers who have transacted business with the

---

[2] Defendant also alleges fraud on the court by the Government "allowing the Court to approve requests for the destruction" of potentially exculpatory materials, including customer information. Def. Mot. at 34.  The issue of the claimed destruction of exculpatory materials is fully addressed in section II, above.

Receivership Entities." Def. Mot., Ex. 13, at 18-19, 23. To allow the Receiver to protect the interests of affected consumers, the Court expressly authorized the Receiver to cooperate with law enforcement and the Government. Id. at 25 (Receiver authorized to cooperate with "any state or federal civil or criminal law enforcement agency").

In the District Court's order appointing the Receiver, the Court found good cause existed to give the Receiver "exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, any Receivership Entity and all Assets of Jason Cardiff and Eunjung Cardiff." Def. Mot., Ex. 13 at 4. Further, the Court granted the Receiver broad discretion to "[c]onserve, hold, manage, and prevent the loss of all Receivership Property, and perform all acts necessary or advisable to preserve the value of those Assets." Def. Mot., Ex. 13, at 4, 18-20. The Court explicitly granted the Receiver "full powers" to effectuate the mandate by the Court, including, *inter alia*, by allowing the FTC access to the premises of the Receivership Entities, giving the Receiver the ability to grants inspection and copying of books, records, documents and other materials, and authorizing the Receiver to cooperate with "any state or federal civil or criminal law enforcement agency."  Def. Mot., Ex. 13, at 18-25.

Thus, the Receiver's power and authority in the civil action came "directly from the court" and was "subject to the court's directions and orders in the discharge of his official duties." SEC v. Elfindepan, S.A., 169 F.Supp.2d 420, 424 (M.D.N.C. 2001). The District Court specifically found that "[i]n numerous instances, Defendants have misrepresented" their products, thus "misleading vulnerable consumers"; the Court further found that there would be

16

"immediate and irreparable damage to the Court's ability to grant
effective final relief for consumers . . . unless Defendants [were]
immediately restrained and enjoined." Def. Mot., Ex. 13, at 2-3. The
Court found good cause to freeze all assets and appoint the Receiver—
specifically so that harmed consumers could be protected. Id.; see,
e.g., SEC v. Schooler, No. 3:12-cv-2164-GPC-JMA, 2015 WL 1510949, at
*3 (S.D. Cal., March 4, 2015) (court appointed a receiver to "protect
and preserve the receivership estate's assets for the benefit of the
persons ultimately entitled to it").

The extensive record in the civil case shows over 720 docket
entries, over 65 hearings or other discussions with the Court, and
over 93 filings by the Receiver's attorney, including detailed
reports to the Court from the Receiver. See FTC v. Cardiff. The
record reflects the District Court's extensive oversight of the
Receivership and monitoring of the Receiver's actions.

Because the Receiver was authorized *exclusively* to access and
exert control over all the assets and records of the Receivership
Entities and of Defendant, and to take any action which could have
been taken by any defendant with respect to those assets and records,
that included allowing or consenting to a search of the Receivership
Premises and/or copying or seizure of Receivership records. See
United States v. Setser, 568 F.3d 482, 491 (5th Cir. 2009) ("After
appointment, the receiver was 'vested with complete jurisdiction and
control' of the property and had the 'right to take possession' of
it.... The receiver was required to 'manage and operate the property
... in the same manner' as its original owner.... The receiver became
the possessor, and as such could consent to the search of the seized
documents."); United States v. Madison, 226 F. App'x 535, 542 (6th

17

Cir. 2007) (court ordered the receiver to "[t]ake exclusive custody,
control and possession of all ... effects, books and records of
account and other papers and property or interests owned or held by
the [companies] ... with full power to ... receive and take
possession of such receivership properties" and, thus, the receiver
exercised the [companies'] own authority, and had the authority to
consent to the FBI agent's search of the premises).

In accordance with its responsibilities and duties, the Receiver
provided law enforcement with material that it determined may be
evidence of criminal activity after conducting interviews with
Defendant's employees. Def. Mot., Ex. 14, p.12-24. For example,
during the immediate access, the Receiver found a storage room with
boxes containing material related to a mailing operation where
Defendant sent letters from a "Master Prophet" and collected over
$1,525,000 in donations. Id. The Receiver permitted, as the Order
appointing the Receiver required, law enforcement to take pictures of
the office, review the related material, and to make copies of the
related computers and documents. See Def. Mot. at 8. Later, the
Receiver provided to the Department of Justice material from
Defendant's Google account and QuickBooks financial software, as such
material was evidence of possible fraudulent activity which caused
the court to appoint the Receiver in the first place. Id. at 17.

DOJ issued reasonable information requests to the Receiver
and the Receiver complied with such reasonable requests using the
power provided to it by the Court and as the Court had instructed. In
turn, the government produced all material it collected to the
Defendant. See Ex. 1. Accordingly, the government did not commit a
fraud on the Court.

**D.    There was No Prejudice to Defendant by Pre-Indictment Delay**

1.    The Indictment was Returned within the Statue of
Limitations

"[T]he applicable statute of limitations . . . is . . . the
primary guarantee against bringing overly stale criminal charges."
United States v. Marion, 404 U.S. 307, 322-323 (1971) (citation
omitted). Statutes of limitation thus are the primary source of
protection for a defendant when assessing pre-indictment delay. As
the Supreme Court has explained, such statutes "are made for the
repose and protection of those who may (during the limitation) have
lost their means of defense." Marion, 404 U.S. at 322 (quoting United
States v. Ewell, 383 U.S. 116, 122 (1966) and St. Louis Public Sch.
v. Walker, 76 U.S. 282, 288 (1869)); see also United States v.
Lovasco, 431 U.S. 783, 789 (1977).

The Due Process Clause of the Fifth Amendment also "has a
limited role to play in protecting against oppressive pre-accusation
delay," Evans v. Santoro, No. 2:21-cv-04812-SSS-MAA, 2023 WL 3325946,
at *5 (C.D. Cal. Mar. 31, 2023), but such protection is very limited.
As the Supreme Court noted in Lovasco, "so few defendants have
established that they were prejudiced by [pre-accusation] delay that
neither this Court nor any lower court has had a sustained
opportunity to consider the constitutional significance of various
reasons for delay." Lovasco, 431 U.S. at 796-97. "Specifically, due
process would require dismissal of criminal charges if it were shown
that the pre-charging delay 'caused substantial prejudice to [the
defendants] rights to a fair trial and that the delay was an
intentional device to gain tactical advantage over the accused.'"
Evans v. Santoro, Case No. 21-CV-04812-SSS-MAA (C.D. Ca., March 31,

1    2023), 2023 WL 3325946, at *5; citing Marion, 404 U.S. at 324.

2        The Supreme Court in Marion found no due process violation there

3    because there was no "actual prejudice" shown, nor an intentional

4    delay by the government. Id. at 325-26. Further, the Supreme Court in

5    Lovasco found that, as contrasted with a delay to gain unfair

6    tactical advantage, the government prosecuting a defendant after an

7    investigative delay does not deprive the defendant of due process

8    "even if his defense might have been somewhat prejudiced by the lapse

9    of time." Lovasco, 431 U.S. at 796. Absent any allegation that the

10   "Government delayed bringing the indictment to obtain a tactical

11   advantage," defendant's "due process claim is unsubstantial." United

12   States v. Kail, 612 F.2d 443, 446 (9th Cir. 1979).

13       Where, as here, the government has complied with the statute of

14   limitations,[3] a defendant challenging a pre-indictment delay as a

15   violation of due process must satisfy a two-pronged test. First,

16   Defendant "must prove that [he] suffered actual, non-speculative

17   prejudice from the delay." United States v. Sherlock, 962 F.2d 1349,

18   1353 (9th Cir. 1989); see also United States v. Bracy, 67 F.3d 1421,

19   1427 (9th Cir. 1995). This prong places a very heavy burden on

20   defendants, because "the proof must be definite and not speculative,

21   and the defendant must demonstrate how the loss of a witness and/or

22   evidence is prejudicial to his case." United States v. Moran, 759

23   F.2d 777, 782 (9th Cir. 1985); see also Sherlock, 962 F.2d at 1354

24

25

26   [3] The indictment charges Defendant with violations of 18 U.S.C. §
     1029(a)(5), Access Device Fraud, 18 U.S.C. § 1028A(a)(1), Aggravated
     Identity Theft, and 18 U.S.C. § 1512(b)(2)(B), Witness Tampering,
27   with the alleged conduct occurring between January 2018 through May
     2018. Pursuant to 18 U.S. Code § 3282(a), the indictment must be
28   instituted "within five years next after such offenses shall have
     been committed."

("Our cases reflect this heavy burden, as we frequently find actual
prejudice lacking."); United States v. Huntley, 976 F.2d 1287, 1290
(9th Cir. 1992) (noting that showing is "'so heavy' that we have
found only two cases since 1975 in which any circuit has upheld a due
process claim").

Second, if a defendant proves that such prejudice exists, the
defendant must also "show that the delay, when balanced against the
prosecution's reasons for it, offends those 'fundamental conceptions
of justice which lie at the base of our civil and political
institutions.'" Sherlock, 962 F.2d at 1353-1354 (quoting Mooney v.
Holohan, 294 U.S. 103, 112 (1935)).

As detailed below, Defendant fails to meet the heavy burden of
showing actual prejudice, and also fails to show that the delay
offends "fundamental justice," especially when balanced against the
legitimate reasons for the delay.

> 2.   Defendant Did Not Suffer Actual Prejudice as a Result
>      of Pre-Indictment Delay

Defendant has not demonstrated he suffered any actual prejudice
as a result of pre-indictment delay. Defendant alleges that
exculpatory material was destroyed during the purported delay and
witnesses who could have testified about the coordination between the
Government, the FTC, and the Receiver passed away. Def. Mot. at 39.
Specifically, Defendant alleges that the deaths of Brick Kane and
Robb Evans prejudices Defendant's ability to prepare a defense and
secure a fair trial. Id.

A defendant must "prove that he suffered actual, non-speculative
prejudice from the delay, meaning proof that demonstrates exactly how
the loss of evidence or witnesses was prejudicial." United States v.

1   <u>Barken</u>, 412 F.3d 1131, 1134 (9th Cir. 2005) (internal quotation marks

2   omitted). "Our cases reflect this heavy burden, as we frequently find

3   actual prejudice lacking." <u>United States v. Sherlock</u>, 962 F.2d 1349,

4   1354 (9th Cir. 1989). "This court has emphasized that protection from

5   lost testimony generally falls solely within the ambit of the statute

6   of limitations." <u>Id</u>.

7       In order to establish prejudice from pre-indictment delay,

8   Defendant must "demonstrate by definite and non-speculative evidence

9   how the loss of a witness or evidence is prejudicial to the

10   defendant's case." <u>Huntley</u>, 976 F.2d at 1290. Defendant fails to

11   describe any evidence that was actually lost as a result of the delay

12   or explain why the delay in any way hurt his ability to defend

13   themselves against the charges.

14       The Government has, as described in detail above, produced

15   voluminous material to Defendant, including 17.8 million pages of

16   documents, 308 gigabytes of data from the forensically imaged Google

17   account, and 10 terabytes of forensic images, including full copies

18   of Defendant's own computers, his wife's computer, and other

19   electronic devices and media. Defendant is uniquely positioned to

20   best know where any exculpatory evidence would be retained on his

21   company's media devices. However, Defendant admits that he has not

22   reviewed the material and therefore, cannot claim he has been

23   prejudiced in any way. Def. Mot. at 30-31, n10. Moreover, the death

24   of two individuals employed by the Receiver do not prejudice

25   Defendant as the Government has produced to Defendant all of the

26   materials that the Receiver provided to the government.

27       3.   <u>There was No Undue Pre-Indictment Delay</u>

28       Because Defendant fails to establish actual, non-speculative

prejudice, the court should not "reach the second prong of the due process test, balancing the length of the delay against the reasons for it." Huntley, 976 F.2d at 1291; United States v. Talbot, 51 F.3d 183, 186 (9th Cir. 1995); ("It is unnecessary to reach the balancing portion of this test as [defendants] have not made a sufficient showing of prejudice."). Nevertheless, even if Defendant had met the requisite prejudice standard, Defendant has failed to show that the delay, balanced against the reasons for the delay, offends fundamental notions of justice.

Defendant claims the Government intentionally delayed the indictment even though the civil case showed that the Government knew the facts contained in the indictment in February 2018. Def. Mot. at 38. The documents refute this claim. The civil case and the criminal case are not the same case. They were filed by different teams of government attorneys. They are subject to different burdens of proof. The civil case was brought by the FTC to stop Redwood Scientific and its principals from engaging in ongoing fraud and to stop Defendant from draining the remaining assets of the company. This criminal case, which requires the government to prove guilt beyond a reasonable doubt, involves credit card fraud and evidence tampering.

The Ninth Circuit has emphasized that a "prosecutor may have wide latitude to decide when to seek an indictment, especially when a case involves more than one person." Sherlock, 962 F.2d at 1355. Investigative work takes time and is no basis for dismissal. Id. ("The ongoing investigation was a legitimate reason for the delay."); see also United States v. Lovasco, 431 U.S. 783, 796 (1977) ("We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might

1  have been somewhat prejudiced by the lapse of time.").

2       Here, the government interviewed more than 35 witnesses,

3  including victims of the alleged credit card fraud scheme, during the

4  height of the COVID-19 pandemic, and collected and reviewed

5  voluminous documents and other materials.  The indictment was brought

6  only after the Government determined which charges were appropriate

7  and determined that there was sufficient evidence to justify the

8  charges. "[R]equiring the Government to make charging decisions

9  immediately upon assembling evidence sufficient to establish guilt

10 would preclude the Government from giving full consideration to the

11 desirability of not prosecuting in particular cases." Id. at 794.

12      Defendant has presented no evidence that the Government

13 intentionally delayed indictment to gain some tactical advantage or

14 to harass him. Especially absent any proof of prejudice, Defendant

15 cannot claim that the delay between the offense conduct and the

16 filing of the indictment violated his due process rights. See Marion,

17 404 U.S. at 325-26 (because defendants failed to prove any "actual

18 prejudice to the conduct of the defense" or that the government

19 "intentionally delayed to gain some tactical advantage over appellees

20 or to harass them," 38-month delay between offending conduct and

21 indictment was not sufficient to justify dismissal of the

22 indictment).  His motion to dismiss the Indictment due to pre-

23 indictment delay must be denied.

24      **E.   No Evidence Should be Suppressed**

25      In addition to denying Defendant's Motion to Dismiss, the Court

26 should also reject his alternative request that vast quantities of

27 lawfully-obtained evidence should be suppressed. A motion to suppress

28 is subject to the same inquiry as a request to dismiss the

24

1    indictment. See Stringer, 535 F.3d at 940. Suppression is not

2    appropriate without a showing of bad faith in the form of trickery or

3    affirmative misrepresentation. See United States v. Robson, 477 F.2d

4    13, 14-15 (9th Cir. 1973); see also Stringer, 535 F. 3d at 937.

5        Here, Defendant argues that the evidence collected from the

6    Receiver should be suppressed due to alleged violations of his Fifth

7    Amendment right to due process. Def. Mot. at 2. As discussed in

8    detail above, Defendant fails to show the government acted in bad

9    faith. The government did not engage in trickery, nor did it make any

10   affirmative misrepresentations about the criminal investigation. In

11   fact, Defendant was made aware that information would be shared with

12   law enforcement several times since the issuance of the CID on August

13   8, 2017. See FTC v. Redwood, Dkt. 1-2; see also Ex. 2 at 12:13-24;

14   see Ex. 3 at 17-19; see also Def. Mot. at 8; see FTC v. Cardiff, Dkt.

15   41-3, 391:15-19. Defendant also confirmed his knowledge of a possible

16   criminal investigation when he admitted to arresting officers that he

17   believed the five-year statute of limitations period for criminal

18   charges related to his conduct had passed. Ex. 4.

19       In addition, Defendant argues that evidence collected from the

20   Receiver should be suppressed due to alleged violations of his Fourth

21   Amendment rights against unreasonable searches and seizures. Def.

22   Mot. at 2. As detailed above, the Receiver was authorized *exclusively*

23   to access and exert control over all the assets and records of the

24   Receivership Entities and of Defendant, and to take any action which

25   could have been taken by any defendant with respect to those assets

26   and records, that included allowing or consenting to a search of the

27   Receivership Premises and/or copying or seizure of Receivership

28   records. See Setser, 568 F.3d at 491. The Receiver shared material

25

1  with law enforcement as was its right as the owner of such material.

2  Thus, no evidence should be suppressed.

3       **F.  An Evidentiary Hearing is Not Necessary.**

4       The motion fails as a matter of law, as discussed above, and

5  Defendant identifies no material evidence that would be proved at an

6  evidentiary hearing. The exhibits to Defendant's motion are merely

7  publicly available filings from the civil injunction case and

8  communications between the government and the FTC and/or the

9  Receiver. Defendant's motion should accordingly be resolved without a

10  hearing because it does not "allege facts with sufficient

11  definiteness, clarity, and specificity to enable the trial court to

12  conclude that contested issues of fact exist[]." United States v.

13  Cano-Gomez, 460 F. App'x 656, 657 (9th Cir. 2011) (quoting United

14  States v. Howell, 231 F.3d 615, 621 (9th Cir. 2000)) ("district court

15  did not abuse its discretion in declining to hold an evidentiary

16  hearing" on motion to dismiss).

17  **III. CONCLUSION**

18       For the foregoing reasons, the Court should deny Defendant's

19  Motion to Dismiss.

20

21

22

23

24

25

26

27

28