# EXHIBIT 2

# In the Matter of:

# FTC v. Jason Cardiff, et al.

*March 29, 2019*
*Jason Cardiff*

**Condensed Transcript with Word Index**



For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

Case 5:23-cr-00021-JGB   Document 61-2   Filed 04/22/24   Page 3 of 10   Page ID #:4288

FTC v. Jason Cardiff, et al.                                    Cardiff
                                                              3/29/2019

## Page 1

```
 1              UNITED STATES DISTRICT COURT
 2              CENTRAL DISTRICT OF CALIFORNIA
 3
 4
 5   FEDERAL TRADE COMMISSION,    )Case No.
                                  )ED 5:18-cv-02104-SJO-PLAx
 6        Plaintiff,              )
                                  )
 7        v.                      )CONFIDENTIAL
                                  )
 8   JASON CARDIFF, ET AL.,       )
                                  )
 9        Defendants.             )
     _____)
10
11
12
13              Friday, March 29, 2019
14
15              300 North Los Angeles Street
16              Seventh Floor
17              Los Angeles, California
18
19
20        The above-entitled matter came on for
21   deposition, pursuant to notice, at 10:10 a.m.
22
23
24
25
```

## Page 2

```
 1              UNITED STATES DISTRICT COURT
 2              CENTRAL DISTRICT OF CALIFORNIA
 3
 4
 5   FEDERAL TRADE COMMISSION,    )Case No.
                                  )ED 5:18-cv-02104-SJO-PLAx
 6        Plaintiff,              )
                                  )
 7        v.                      )CONFIDENTIAL
                                  )
 8   JASON CARDIFF, ET AL.,       )
                                  )
 9        Defendants.             )
     _____)
10
11
12
13
14
15        Videotaped deposition of JASON EDWARD THOMAS
16   CARDIFF, taken on behalf of the Federal Trade
17   Commission, at 300 North Los Angeles Street,
18   Seventh Floor, Los Angeles, California, commencing at
19   10:10 a.m., and concluding at 3:36 p.m., on Friday,
20   March 29, 2019, pursuant to Notice, before
21   Kimberly Cathey, CSR No. 10701, a Certified Shorthand
22   Reporter, in and for the State of California.
23
24
25
```

## Page 3

```
 1   APPEARANCES:
 2
 3   For the Federal        U.S. FEDERAL TRADE COMMISSION
     Trade Commission:      ELIZABETH SANGER, ESQ.
 4                          600 Pennsylvania Avenue NW
                            Mail Drop CC-10528
 5                          Washington, DC 20580
                            (202) 326-2757
 6                          esanger@ftc.gov
 7
     For the Federal        U.S. FEDERAL TRADE COMMISSION
 8   Trade Commission:      EDWIN RODRIGUEZ, ESQ.
                            600 Pennsylvania Avenue NW
 9                          Mail Drop CC-10528
                            Washington, DC 20580
10                          (202) 326-3147
                            erodriguez@ftc.gov
11
12   For the Federal        U.S. FEDERAL TRADE COMMISSION
     Trade Commission:      ROBERT J. QUIGLEY
13                          10990 Wilshire Boulevard
                            Suite 400
14                          Los Angeles, California 90024
                            (310) 824-4334
15                          rquigley@ftc.gov
16
     For the Witness:       LAW OFFICE OF JAMES D. WHITE
17                          JAMES D. WHITE
                            303 Broadway Street
18                          Suite 1044
                            Laguna Beach, California 92651
19                          (949) 697-9236
                            jdw@jamesdwhitelaw.com
20
21
22
23   Also Present:
24        MATTHEW HAUSLE, Videographer
25
```

## Page 4

```
 1                    I N D E X
 2
 3   WITNESS               EXAMINATION             PAGE
 4   JASON EDWARD
     THOMAS CARDIFF        By Ms. Sanger             9
 5
 6
 7
 8   EXHIBITS              DESCRIPTION            FOR ID
 9
     Exhibit 1     Ex Parte Temporary Restraining    14
10                 Order with Asset Freeze,
                   Appointment of a Temporary
11                 Receiver, and Other Equitable
                   Relief, and Order to Show Cause
12                 Why a Preliminary Injunction
                   Should Not Issue
13
     Exhibit 2     Proposed Preliminary Injunction   17
14                 with Asset Freeze, Receiver,
                   and Other Equitable Relief
15                 Against Jason Cardiff and
                   Eunjung Cardiff
16
     Exhibit 3     Federal Trade Commission Financial 22
17                 Statement of Individual Defendant
18   Exhibit 4     Friday, April 13, 2018, E-mail    34
19   Exhibit 5     Monday, 4/9/2018, E-mail          35
20   Exhibit 6     Personal Items List               51
21   Exhibit 7     State of California               58
                   Secretary of State
22                 Statement of Information
23   Exhibit 8     Friday, 10/31/2014, E-mail        62
24   Exhibit 9     Friday, 12/16/2016, E-mail        65
25   Exhibit 10    Directive from the Trustee        67
```

Case 5:23-cr-00021-JGB   Document 61-2   Filed 04/22/24   Page 4 of 10   Page ID #:4289

FTC v. Jason Cardiff, et al.                                                    Cardiff
                                                                             3/29/2019

Page 5

| EXHIBITS | DESCRIPTION | FOR ID |
|---|---|---|
| Exhibit 11 | Carols Place Limited Partnership an Arizona Asset Management Limited Partnership Assignment | 67 |
| Exhibit 12 | Mountain Business Center LLC Registered Agent Services Agreement | 72 |
| Exhibit 13 | IRS Notice Dated 7-26-2018 | 74 |
| Exhibit 14 | August 13, 2018, Project Engagement Letter | 75 |
| Exhibit 15 | Cloverstrip Order Dated 8/13/18 | 76 |
| Exhibit 16 | Invoice Dated 8/14/16 | 77 |
| Exhibit 17 | Certificate of Analysis | 79 |
| Exhibit 18 | Unanimous Written Consent of the Board of Directors Redwood Scientific Technologies, Inc. | 80 |
| Exhibit 19 | Distributor Agreement | 85 |
| Exhibit 20 | Photocopy of Check | 86 |
| Exhibit 21 | Distributor Agreement | 89 |
| Exhibit 22 | Exclusive Distributor Agreement | 90 |
| Exhibit 23 | Invoice | 94 |
| Exhibit 24 | Admiral Insurance Company Health, Nutrition & Lifestyle Application | 96 |
| Exhibit 25 | Clover Cannastrip Thin Film Technologies Corp. Articles | 98 |
| Exhibit 26 | Photocopy of Check | 101 |
| Exhibit 27 | Form 5 Quarterly Listing Statement | 103 |

Page 6

| EXHIBITS | DESCRIPTION | FOR ID |
|---|---|---|
| Exhibit 28 | Proforma Invoice Dated September 29, 2018 | 105 |
| Exhibit 29 | Proforma Invoice Dated October 2, 2018 | 106 |
| Exhibit 30 | A1-Application to Incorporate a Company | 108 |
| Exhibit 31 | Lisa Ragan Customs Brokerage Power of Attorney for Customs and Forwarding Agent | 114 |
| Exhibit 32 | FX Web Media LLC Scope of Work | 115 |
| Exhibit 33 | Whois Record for DissolveResponsibly.com | 119 |
| Exhibit 34 | Whois Record for DislVs.com | 121 |
| Exhibit 35 | Tuesday, December 11, 2018, E-mail Chain | 122 |
| Exhibit 36 | Tuesday, February 12, 2019, E-mail Chain | 123 |
| Exhibit 37 | Promissory Note | 123 |
| Exhibit 38 | Interrogatory Questions and Answers | 128 |
| Exhibit 39 | Attachment 1 to Plaintiff's First Interrogatories to Jason Cardiff | 128 |
| Exhibit 40 | Exhibit C March 7, 2019 Letter from Pharmastrip to Jason Cardiff Re Travel Needs | 132 |
| Exhibit 41 | Cannabis Oral Thin Film Technology Company Overview | 136 |
| Exhibit 42 | Cloverstrip Business Card | 141 |

Page 7

| EXHIBITS | DESCRIPTION | FOR ID |
|---|---|---|
| Exhibit 43 | Cloverstrip Advertisement | 141 |
| Exhibit 44 | U.S. Department of Health and Human Services - National Drug Code Directory | 143 |
| Exhibit 45 | Cloverstrip Letter | 145 |
| Exhibit 46 | Spreadsheet | 147 |
| Exhibit 47 | Pharmastrip "Branded 2018" | 149 |
| Exhibit 48 | PharmaStrip 2018 Classic Collection | 152 |
| Exhibit 49 | Pharmastrip Packaging | 155 |
| Exhibit 50 | Vistaprint Order | 157 |
| Exhibit 51 | Undated Letter | 160 |
| Exhibit 52 | TD Canada Trust Statement of Account | 164 |
| Exhibit 53 | Directors' Resolution | 165 |

Page 8

1  LOS ANGELES, CALIFORNIA, FRIDAY, MARCH 29, 2019
2          10:10 A.M.
3       THE VIDEOGRAPHER:  Good morning.
4  We're on the video record beginning at Media
5  Number 1 in the deposition of Jason Cardiff,
6  testifying in the matter of Federal Trade Commission
7  vs. Jason Cardiff, Case Number ED 5:18-cv-02104-
8  SJO-PLA, filed in the United States District Court,
9  Central District of California.
10      The time is 10:10 a.m. on March 29, 2019.
11      My name is Matthew Hausle, and I'm the
12 videographer, along with our court reporter,
13 Kim Cathey.  We are from Maxene Weinberg Agency.
14      Counsel, please state your appearances for
15 the record.
16      MS. SANGER:  Elizabeth Sanger, Federal Trade
17 Commission.
18      MR. RODRIGUEZ:  Edwin Rodriguez, Federal
19 Trade Commission.
20      MR. QUIGLEY:  Robert Quigley, Federal Trade
21 Commission.
22      MR. WHITE:  James White for Jason Cardiff.
23      THE VIDEOGRAPHER:  And will the court
24 reporter please swear in the witness.
25      //

Page 9

1           JASON EDWARD THOMAS CARDIFF,
2   called as a witness by and on behalf of the Federal
3   Trade Commission, was duly sworn.
4                        EXAMINATION
5   BY MS. SANGER:
6       Q   Good morning.
7           My name is Elizabeth Sanger, and I represent
8   the Federal Trade Commission.
9           Mr. Cardiff, because your attorney has
10  informed me that you'll be invoking the Fifth
11  Amendment in response to my questions today, I'm going
12  to abbreviate my instructive remarks with respect to
13  the ground rules for the deposition, but there are a
14  few things that I want to make sure that you
15  understand.
16          Please give verbal responses to any question
17  you answer, because the court reporter cannot record
18  nonverbal responses for the transcript.
19          Please speak clearly and try not to speak too
20  fast. If either one of us is speaking too fast, I
21  have asked the court reporter to request that we slow
22  down.
23          Your testimony today will be given under
24  oath. The oath that was just administered to you is
25  the same oath as if you were testifying in a court of

Page 10

1   law under penalty of perjury.
2           Do you understand that?
3       A   Yes.
4       Q   Is there any reason, other than your decision
5   to invoke the Fifth Amendment today, such as any
6   medication that you are taking, that would prevent you
7   from giving truthful and complete testimony today?
8       A   No.
9       Q   It's important that you understand my
10  questions. If at any point you don't understand what
11  I'm asking you, please ask me to repeat the question
12  or to clarify.
13          Do you understand that?
14      A   Yes.
15      Q   And please wait for me to finish questions
16  before you start answering.
17          Please let me know if you need to take a
18  break, and I will do my best to accommodate you after
19  you have answered any pending question.
20          Does that make sense to you?
21      A   Yes.
22      Q   Okay. I would like to talk about your
23  preparation for the deposition today.
24          Did you talk to anyone, other than your
25  attorney, to prepare for the deposition today?

Page 11

1           MR. WHITE: Ms. Sanger, I'd like you to have
2   the witness identify himself for the record.
3           MS. SANGER: Oh, sure.
4           MR. WHITE: And from that -- and from that
5   moment forward, the response will be uniform that he
6   will assert his Fifth Amendment privilege.
7           I'd like you to identify for the record all
8   the participants today. I'd like you to specifically
9   identify for the record whether anyone is -- has
10  dialed in on the telephone, as did happen yesterday.
11          And I'd like you to also assert, as I asked
12  yesterday, that the videography that's being recorded
13  is not being live fed anywhere else outside this room.
14          Can you accommodate me, ma'am?
15          MS. SANGER: Yes.
16          MR. WHITE: Thank you.
17          MS. SANGER: And I didn't start writing down
18  the requests until it was too late. Happy to
19  accommodate, and please remind me if I neglect.
20  BY MS. SANGER:
21      Q   Mr. Cardiff, could you please state your full
22  name for the record.
23      A   Jason Edward Thomas Cardiff.
24          MS. SANGER: And I will begin by introducing
25  who's here on behalf of the Federal Trade Commission.

Page 12

1           I'm Elizabeth Sanger, an attorney at the
2   Federal Trade Commission, and I'm joined today by two
3   other attorneys for the Federal Trade Commission,
4   Edwin Rodriguez and Robert Quigley.
5           And there is no one dialed into the phone,
6   and the video that's being recorded today is not a
7   live feed.
8           MR. WHITE: Very well. Thank you.
9           MS. SANGER: And so it's clear for the
10  record, we've stipulated to this agreement about the
11  format of Mr. Cardiff's responses, and I understand
12  your preview of how the day will go.
13          MR. WHITE: I think perhaps the best way to
14  do that is simply reference the fact that at the
15  commencement of yesterday's deposition of
16  Eunjung Cardiff, we put on the record certain
17  statements that I made, certain statements that Edwin
18  made, and that those prefatory comments from yesterday
19  should simply be incorporated by reference into this
20  proceeding.
21          Not necessarily that the court reporter has
22  to go find them and incorporate them; but when the day
23  comes, that which was said yesterday is deemed said
24  today in that same manner, if that's suitable to you.
25          MS. SANGER: That's agreeable to me.

                                                                13
 1          MR. WHITE:  Thank you.
 2     BY MS. SANGER:
 3     Q   Mr. Cardiff, in asserting the Fifth Amendment
 4  privilege today, I want to make sure that you
 5  understand that the FTC reserves all rights to
 6  challenge your assertion of the Fifth Amendment
 7  privilege.
 8          If you choose to assert the Fifth Amendment
 9  in response to a question, the FTC can ask the judge
10  to draw a negative inference based on your refusal to
11  answer or ask the judge to preclude you from
12  presenting evidence in the future that would have been
13  responsive to the question.
14          This could negatively affect your ability to
15  mount an effective defense in this lawsuit.  The FTC
16  reserves its right to do these things.
17          Do you understand?
18          MR. WHITE:  I acknowledge your admonition.
19  We can proceed without asking for a response from the
20  witness.
21          MS. SANGER:  Okay.
22          MR. WHITE:  Thank you.
23     BY MS. SANGER:
24     Q   Mr. Cardiff, on October 12th, 2018, you were
25  personally served with a copy of the Temporary

                                                                14
 1  Restraining Order entered in this case by Judge Otero,
 2  weren't you?
 3     A   I'm invoking my Fifth Amendment privilege.
 4          (Exhibit 1 marked.)
 5     BY MS. SANGER:
 6     Q   Mr. Cardiff, I'm handing you a document that
 7  has been labeled Exhibit 1.  The document up at the
 8  top has a Document Number 29, and I'll represent for
 9  the record that this was the Temporary Restraining
10  Order entered in this case on October 10th, 2018.
11          Mr. Cardiff, have you seen this document
12  before?
13     A   I'm invoking my Fifth Amendment privilege.
14     Q   You met with the receiver on October 12th and
15  discussed this Temporary Restraining Order; isn't that
16  correct?
17     A   I'm invoking my Fifth Amendment privilege.
18     Q   During your initial meeting with the receiver
19  on October 12th, Attorney Tracy Green joined you by
20  phone; is that right?
21     A   I'm invoking my Fifth Amendment privilege.
22     Q   The receiver told you that your personal
23  assets were frozen; correct?
24     A   I'm invoking my Fifth Amendment privilege.
25     Q   The receiver told you that the assets of the

                                                                15
 1  other named defendants, which you can find on page 2
 2  of Exhibit 1, were also frozen; correct?
 3     A   I'm invoking my Fifth Amendment privilege.
 4     Q   The receiver asked you to turn over the
 5  jewelry, artwork, and handbags listed in this
 6  Temporary Restraining Order; is that correct?
 7     A   I'm invoking my Fifth Amendment privilege.
 8          MR. WHITE:  Counsel, for my edification,
 9  could you point out the particular language where the
10  items are specifically listed?
11          MS. SANGER:  Yes.
12          MR. WHITE:  Just so I can follow along.
13          MS. SANGER:  I'm looking --
14          MR. WHITE:  Never mind.  I found it.
15          MS. SANGER:  Oh.  I'm looking at page 20 of
16  37, for the benefit of the record --
17          MR. WHITE:  I found it.  Thank you.
18  Go ahead.
19          MS. SANGER:  -- and beginning on line 13.
20     BY MS. SANGER:
21     Q   Mr. Cardiff, I would like to direct your
22  attention to a specific item in this list.
23          If you will turn to page 21 of 37, the
24  numbered item is Number 25; the line number is 27.
25          In regard to the item identified as a diamond

                                                                16
 1  ring worth $532,000, you claimed that you had sold the
 2  ring in Abu Dhabi; isn't that right?
 3     A   I'm invoking my Fifth Amendment privilege.
 4     Q   Did you provide Julie Green with a copy of
 5  this Temporary Restraining Order?
 6     A   I'm invoking my Fifth Amendment privilege.
 7     Q   Did you provide Gus Navarro with a copy of
 8  this Temporary Restraining Order?
 9     A   I'm invoking my Fifth Amendment privilege.
10     Q   Did you provide any other Redwood Scientific
11  employee with a copy of this Temporary Restraining
12  Order?
13     A   I'm invoking my Fifth Amendment privilege.
14     Q   Did you provide the Temporary Restraining
15  Order to anyone else who worked in the office at
16  820 North Mountain Avenue, Suite 100, in Upland,
17  California?
18     A   I'm invoking my Fifth Amendment privilege.
19     Q   Did you provide the Temporary Restraining
20  Order to anyone else who worked in the office at
21  870 North Mountain Avenue, Suite 115, in Upland,
22  California?
23     A   I'm invoking my Fifth Amendment privilege.
24     Q   Did you provide the Temporary Restraining
25  Order to anyone else who worked in the office at

Case 5:23-cr-00021-JGB   Document 61-2   Filed 04/22/24   Page 7 of 10   Page ID #:4292

FTC v. Jason Cardiff, et al.                                                Cardiff
                                                                         3/29/2019

Page 17

1  **870 North Mountain Avenue, Suite 118, in Upland,**
2  **California?**
3      A   I'm invoking my Fifth Amendment privilege.
4          MR. WHITE:  Counsel, for my edification, is
5  there something in this document that required him to
6  do -- to provide this document to anyone else?  Just
7  for my edification to try to move things along, and
8  I'm asking this simply as a matter of courtesy.
9          MS. SANGER:  So there are certain provisions
10 throughout the order that require defendants to give
11 notice to certain people that may be acting in concert
12 with them.
13         MR. WHITE:  Okay.
14         MS. SANGER:  And that's what I'm getting at.
15         MR. WHITE:  All right.  So that language is
16 here somewhere?
17         MS. SANGER:  Yes.
18         MR. WHITE:  We'll find it later.  Thank you.
19         (Exhibit 2 marked.)
20 BY MS. SANGER:
21     **Q   Mr. Cardiff, I'm handing you a document that**
22 **has been marked Exhibit 2.**
23         MR. WHITE:  Take that and lay it facedown;
24 that way when they come up, they'll be in the right
25 order for our reporter.  We will then be able to know

Page 18

1  that she has a full package on her way out the door;
2  otherwise, we all get locked in for the night.
3          MS. SANGER:  I'll represent for the record
4  that the top of this document has a Document Number
5  59, and that this is the "Preliminary Injunction with
6  Asset Freeze, Receiver, and Other Equitable Relief
7  Against Jason Cardiff and Eunjung Cardiff."  This
8  order was entered on November 8th, 2018.
9  BY MS. SANGER:
10     **Q   Mr. Cardiff, did you receive a copy of this**
11 **preliminary injunction?**
12     A   I'm invoking my Fifth Amendment privilege.
13     **Q   Did you receive a copy of a similar**
14 **preliminary injunction as to the corporate defendants**
15 **named in this lawsuit?**
16         MR. WHITE:  Vague as to "similar."
17 BY MS. SANGER:
18     **Q   Did you receive a copy of a preliminary**
19 **injunction as to the corporate defendants in this**
20 **lawsuit?**
21     A   I'm invoking my Fifth Amendment privilege.
22     **Q   Did you provide a copy of this preliminary**
23 **injunction marked Docket 46 to Julie Green?**
24     A   I'm invoking my Fifth Amendment privilege.
25     **Q   Did you provide a copy of this document to**

Page 19

1  **Gus Navarro?**
2      A   I'm invoking my Fifth Amendment privilege.
3      **Q   Did you provide a copy of this document to**
4  **any of your other employees?**
5      A   I'm invoking my Fifth Amendment privilege.
6      **Q   Did you provide a copy of this order to**
7  **anyone else?**
8      A   I'm invoking my Fifth Amendment privilege.
9          Excuse me.  Can we --
10         MS. SANGER:  I may have -- I may have
11 referenced this as Docket 46, and I just want to
12 correct for the record that I was speaking about
13 Docket Number 59.
14         MR. WHITE:  I wrote it as 52.  So where 46
15 came from, who knows.
16         THE WITNESS:  I --
17         MR. WHITE:  But my witness has a question --
18         MS. SANGER:  Okay.
19         MR. WHITE:  -- to ask.
20         I'd like you to remove your mike.  I'm going
21 to take mine off and find out what his question is.
22         MS. SANGER:  Okay.
23         MR. WHITE:  He seems to be wanting to ask you
24 something, but I don't want to get that pattern
25 established.

Page 20

1          MS. SANGER:  Okay.
2          THE VIDEOGRAPHER:  Do you want to go off the
3  record?
4          MS. SANGER:  Yeah.  We can go off the record.
5          MR. WHITE:  Thank you.
6          THE VIDEOGRAPHER:  The time is 10:23 a.m.
7  We're going off the record.
8          (Recess.)
9          THE VIDEOGRAPHER:  The time is 10:25 a.m.
10 We're back on the record.
11 BY MS. SANGER:
12     **Q   Mr. Cardiff, before we took a break, we were**
13 **speaking about two different preliminary injunctions**
14 **that were entered in this lawsuit; one against the**
15 **corporate defendants, and one against you and your**
16 **wife.**
17         **Did you attend the preliminary injunction**
18 **hearing on November 7th, 2018?**
19         MR. WHITE:  Actually, Counsel, before we took
20 the break, I think we were trying to clear up the
21 identification of what you've marked as Exhibit 2, as,
22 in particular, whether it was from the court docket as
23 Docket Number 46, 52, or 59.  I think that's where we
24 took the break.
25         MS. SANGER:  Okay.  Exhibit Number 2 is

21

1  Docket Number 59.  It is the preliminary injunction as
2  to Jason Cardiff and Eunjung Cardiff.
3       I also made oral reference to Docket 46,
4  which is the preliminary injunction as to the
5  corporate defendants, which was issued on
6  October 24th, 2018.
7       I'm now going to be focusing on the hearing
8  that led to the issuance of the preliminary injunction
9  as to Jason Cardiff and Eunjung Cardiff.
10       MR. WHITE:  Which is Exhibit 2.
11       MS. SANGER:  Correct.
12       MR. WHITE:  Thank you.
13  BY MS. SANGER:
14     Q   So I'll repeat my question, Mr. Cardiff.
15     Did you attend the preliminary injunction
16  hearing on November 7th, 2018?
17     A   I'm invoking my Fifth Amendment privilege.
18     Q   You personally spoke to Judge Otero at the
19  hearing, didn't you?
20     A   I'm invoking my Fifth Amendment privilege.
21     Q   Did you hear me describe the FTC's proposed
22  preliminary injunction in court that day?
23     A   I'm invoking my Fifth Amendment privilege.
24     Q   The Court told you it had significant
25  concerns that you had not been complying with the

22

1  Temporary Restraining Order; correct?
2     A   I'm invoking my Fifth Amendment privilege.
3     Q   The Court informed you that there are
4  significant consequences that could be imposed if you
5  are in violation of the Court's orders going forward
6  and admonished you to make all reasonable efforts to
7  comply; isn't that right?
8     A   I'm invoking my Fifth Amendment privilege.
9     Q   Didn't you tell Judge Otero that you
10  understood his instructions?
11     A   I'm invoking my Fifth Amendment privilege.
12     Q   Did you provide a copy of the preliminary
13  injunction, which is Exhibit 2, issued on
14  November 8th, 2018, to Julie Green?
15     A   I'm invoking my Fifth Amendment privilege.
16     Q   Did you provide a copy of the preliminary
17  injunction, which is Exhibit 2, to Gus Navarro?
18     A   I'm invoking my Fifth Amendment privilege.
19     Q   Did you provide that preliminary injunction
20  to any of your other employees?
21     A   I'm invoking my Fifth Amendment privilege.
22     Q   Did you provide a copy of the preliminary
23  injunction to anyone else?
24     A   I'm invoking my Fifth Amendment privilege.
25       (Exhibit 3 marked.)

23

1  BY MS. SANGER:
2     Q   Mr. Cardiff, I've just handed you a document
3  that has been marked Exhibit 3.  I'll note for the
4  record that the title of the document as listed in the
5  footer is "Federal Trade Commission Financial
6  Statement of Individual Defendant."
7       If you turn to page 10 of 10, I will note for
8  the record that the date on the signature page is
9  October 25th, 2018.
10       Mr. Cardiff, did you submit this document to
11  the FTC?  And when I say "FTC," I mean Federal Trade
12  Commission.
13     A   I'm invoking my Fifth Amendment privilege.
14     Q   Mr. Cardiff, looking at page 10 of 10, is
15  this your signature?
16     A   I'm invoking my Fifth Amendment privilege.
17     Q   Did you complete this form, or did someone
18  else?
19     A   I'm invoking my Fifth Amendment privilege.
20     Q   Mr. Cardiff, let's turn to page 1 of
21  Exhibit 3.  I'm looking at the box titled "Item 1.
22  Information About You."  Under "Full Name" it says
23  "Jason Edward Thomas Cardiff."
24       Have you ever gone by the name "Edward"?
25     A   I'm invoking my Fifth Amendment privilege.

24

1     Q   Have you ever gone by the name "Thomas"?
2     A   I'm invoking my Fifth Amendment privilege.
3     Q   Have you ever gone by the name "Edward
4  Thomas"?
5     A   I'm invoking my Fifth Amendment privilege.
6     Q   Please turn to page 2.
7       Let's look at Item Number 6, "Employment
8  Information/Employment Income."  Listed on this form
9  under "Company Name and Address" are two entities.
10  The first is "Redwood Scientific Technologies"; the
11  second is "People United for Christians."  There are
12  no other entries on the page.
13       Mr. Cardiff, looking at the entry for
14  "Redwood Scientific Technologies," it says "Positions
15  Held Chief Executive," and underneath it says
16  "Former."
17       Are you the chief executive of Redwood
18  Scientific Technologies?
19     A   I'm invoking my Fifth Amendment privilege.
20     Q   In that same entry in the column marked
21  "Income Received:  Year to Date plus 5 Prior Years,"
22  under "2014" it says "0"; under "2015" it says
23  "35,000"; under "2016" it says "65,000"; under "2017"
24  it says "65,000"; under "2018" it says "60,000" and
25  "25,000."

Page 25

1  Was this the amount of income you received
2  from your employment with Redwood Scientific
3  Technologies during the years written on this chart?
4      A   I'm invoking my Fifth Amendment privilege.
5      Q   Let's look at the second entry, "People
6  United for Christians."  Under "Positions Held" it
7  reads "Head Pastor."
8      Are you the head pastor of People United for
9  Christians?
10     A   I'm invoking my Fifth Amendment privilege.
11     Q   In the "Income" box under year "2014" it
12 reads "250,000"; in "2015," "350,000"; in "2016,"
13 "200,000"; in "2017," "200,000"; in "2018," "150,000."
14     Did you earn $150,000 from People United for
15 Christians in 2018?
16     A   I'm invoking my Fifth Amendment privilege.
17     Q   Going forward --
18     A   Just a minute.  Sorry.  I have a question.
19     MR. WHITE:  Okay.  May we, Counsel, take a
20 break?
21     MS. SANGER:  Sure.
22     THE VIDEOGRAPHER:  The time is 10:32 a.m.
23 We're going off the record.
24     (Recess.)
25     THE VIDEOGRAPHER:  The time is 10:34 a.m.

Page 26

1  We're back on the record.
2      MR. WHITE:  Ms. Sanger, I'd like your
3  permission to assert additional privileges as it
4  relates to questions that relate to religious church
5  matters; in particular, you're including -- and in
6  particular, your questions about this entity, People
7  United for Christians.
8      We believe that there are other
9  constitutional privileges and protections which would
10 be applicable.
11     And thus with your permission, I'd like to
12 simply amend his response to those questions by simply
13 adding "and all other constitutionally protected
14 rights," particularly the concept of separation of
15 church and state.
16     If you would permit me to offer that as a
17 supplement to his response and agree that going
18 forward, when he asserts his Fifth Amendment
19 privilege, it will be deemed to include the religious
20 protection privileges under the constitution so we
21 don't have to enlarge his -- his brief response.
22     So how would you like to do that?
23     MS. SANGER:  Can you just clarify for me,
24 Mr. White, whether these additional privileges that he
25 may assert, he would be choosing not to answer based

Page 27

1  both on the Fifth Amendment privilege and potentially
2  other privileges at your instruction?
3      MR. WHITE:  Yes.  Predicated on the same
4  record we made yesterday at the commencement of
5  Eunjung's deposition, which included --
6      MS. SANGER:  Okay.
7      MR. WHITE:  -- my request to you to postpone
8  this for 30 days so that he could -- he and she could
9  have the benefit of criminal counsel.  As I explained
10 yesterday, I'm a civil business litigation attorney.
11     MS. SANGER:  I just wanted to clarify if this
12 additional assertion was also an instruction from you
13 not to answer.
14     MR. WHITE:  Yes.
15     MS. SANGER:  Since it's in addition to what
16 we had talked about.
17     MR. WHITE:  Yes.  Fine.  If you can accept
18 that, then we can move on and deem your questions that
19 have already been asked about the religious thing to
20 include that response and deem them to include that in
21 the future response if we continue to use the
22 shorthand version of the Fifth Amendment without
23 necessarily saying "and all other constitutionally
24 protected rights and privileges."
25     MS. SANGER:  That works for me.

Page 28

1      MR. WHITE:  All right.  Thank you.
2      MS. SANGER:  And so we will obviously reserve
3  our own rights to challenge any assertions that may be
4  made in the future.
5      MR. WHITE:  Not a question.  Not a doubt.
6  I look forward to it.
7  BY MS. SANGER:
8      Q   Mr. Cardiff, did you earn $200,000 from
9  People United for Christians in 2017?
10     A   I'm asserting my Fifth Amendment privilege.
11     Q   Did you ever --
12     MR. WHITE:  And -- and -- and it should be
13 deemed henceforth to include any other
14 constitutionally protected right or privilege.
15     MS. SANGER:  Correct.
16     MR. WHITE:  We agree?
17     MS. SANGER:  Per our agreement.
18     MR. WHITE:  Wonderful.  Thank you.
19 BY MS. SANGER:
20     Q   Did you earn $200,000 from People United
21 from -- People United for Christians in 2016?
22     A   I'm asserting my Fifth Amendment privilege.
23     Q   In 2015 did you earn $350,000 from People
24 United for Christians?
25     A   I'm asserting my Fifth Amendment privilege.

7 (Pages 25 to 28)

                                                                                                   29
 1    Q   Did you pay income taxes on this income from
 2  Redwood Scientific Technologies and People United for
 3  Christians in 2018?
 4        MR. WHITE: Objection. Compound.
 5  BY MS. SANGER:
 6    Q   Did you pay income taxes on your income from
 7  Redwood Scientific Technologies in 2018?
 8        MR. WHITE: Objection. Privacy.
 9  BY MS. SANGER:
10    Q   You can answer.
11    A   I'm asserting my Fifth Amendment privilege.
12    Q   Did you pay income taxes on your income from
13  Redwood Scientific Technologies in 2017?
14        MR. WHITE: Same objection.
15        MS. SANGER: And we can agree it will be a
16  standing objection.
17        MR. WHITE: Thank you.
18        THE WITNESS: I'm asserting my Fifth
19  Amendment privilege.
20  BY MS. SANGER:
21    Q   Did you pay income taxes on your Redwood
22  Scientific Technologies income in 2016?
23        MR. WHITE: Same objection.
24        THE WITNESS: I'm asserting my Fifth
25  Amendment privilege.

                                                                                                   30
 1  BY MS. SANGER:
 2    Q   Did you pay income taxes on your Redwood
 3  Scientific Technologies income in 2015?
 4    A   I'm asserting --
 5        MR. WHITE: Same objection.
 6        THE WITNESS: I'm asserting my Fifth
 7  Amendment privilege.
 8  BY MS. SANGER:
 9    Q   Did you pay income taxes on your People
10  United for Christians income in 2018?
11        MR. WHITE: Same objections.
12        THE WITNESS: I'm asserting my Fifth
13  Amendment privilege.
14        MS. SANGER: Mr. White, for the benefit of
15  efficiency, I'm going to ask about years 2017,
16  2016, and 2015. I would be amenable to accepting
17  your objection in advance for those following
18  questions.
19        MR. WHITE: And I greatly appreciate your
20  offer, and I accept your offer.
21  BY MS. SANGER:
22    Q   Mr. Cardiff, did you pay income taxes on your
23  People United for Christian income in 2017?
24    A   I'm asserting my Fifth Amendment privilege.
25    Q   Did you pay income taxes on your People

                                                                                                   31
 1  United for Christians income in 2016?
 2    A   I'm asserting my Fifth Amendment privilege.
 3    Q   Did you pay income taxes on your People
 4  United for Christians income in 2015?
 5    A   I'm asserting my Fifth Amendment privilege.
 6    Q   Did you file a federal income tax return for
 7  2018?
 8    A   I'm asserting my Fifth Amendment privilege.
 9    Q   Did you file a federal income tax return for
10  2017?
11    A   I'm asserting my Fifth Amendment privilege.
12    Q   Did you file a federal income tax return for
13  2016?
14    A   I'm asserting my Fifth Amendment privilege.
15    Q   Did you file a federal income tax return for
16  2015?
17    A   I'm asserting my Fifth Amendment privilege.
18    Q   Did you file for an extension on your taxes
19  for the tax year 2018?
20    A   I'm asserting my Fifth Amendment privilege.
21    Q   Did you file for an extension on your taxes
22  in 2017?
23    A   I'm asserting my Fifth Amendment privilege.
24    Q   Did you file for an extension on your taxes
25  in 2016?

                                                                                                   32
 1    A   I'm asserting my Fifth Amendment privilege.
 2    Q   Did you file for an extension on your taxes
 3  in 2015?
 4    A   I'm asserting my Fifth Amendment privilege.
 5    Q   Who, other than you, would know if you had
 6  filed taxes for the years -- for the year 2018?
 7    A   I'm asserting my Fifth Amendment privilege.
 8    Q   Do you have an accountant?
 9    A   I'm asserting my Fifth Amendment privilege.
10    Q   Who, other than you, would know if you had
11  filed taxes in the year 2017?
12    A   I'm asserting my Fifth Amendment privilege.
13        MR. WHITE: Are we going to a different topic
14  now?
15        Just to be clear, I withheld making separate
16  objections, and I believe I understood what we entered
17  into as an arrangement and agreement was that I
18  wouldn't need to make separate objections. You were
19  accepting them and deeming them having been made, just
20  so I'm clear.
21        MS. SANGER: Correct.
22        MR. WHITE: Very well. Thank you kindly.
23        MS. SANGER: And now we'll hit the reset
24  button.
25        MR. WHITE: I like that button.

                                                                                    8 (Pages 29 to 32)