# EXHIBIT 3

# In the Matter of:

# FTC v. Jason Cardiff, et al.

*March 28, 2019*
*Eunjung Cardiff*

**Condensed Transcript with Word Index**



For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

```
                                    1
 1           UNITED STATES DISTRICT COURT
 2           CENTRAL DISTRICT OF CALIFORNIA
 3
 4  FEDERAL TRADE COMMISSION,)
 5           Plaintiff,    )
 6       vs.               ) No.  CV18-2104-JGB(KKx)
 7  JASON CARDIFF,         )
 8  individually and as an )
 9  owner, officer, director,)
10  or member of REDWOOD   )
11  SCIENTIFIC TECHNOLOGIES, )
12  INC., a California
13  corporation, et al.,
14           Defendants.
15
16           VIDEOTAPED DEPOSITION OF EUNJUNG
17           CARDIFF, taken on behalf of the
18           Plaintiff, at 300 North Los
19           Angeles Street, 7th Floor, Los
20           Angeles California, commencing at
21           9:30 A.M. on March 28, 2019, 2019
22           before PATRICIA L. HUBBARD,
23           CSR #3400, a Certified Shorthand
24           Reporter in and for the State of
25           California, pursuant to Notice.
```

```
                                    2
 1  APPEARANCES OF COUNSEL:
 2  For the Plaintiff:
 3           FEDERAL TRADE COMMISSION
 4           BY:  EDWIN RODRIGUEZ, ESQ.
 5                ELIZABETH JONES SANGER, ESQ.
 6           600 Pennsylvania Avenue, NW
 7           Washington, DC 20580
 8           202.326.3147
 9           erodriguez@ftc.gov
10           esanger@ftc.gov
11
12
13  APPEARANCES OF COUNSEL:   (Continued)
14  For the Defendants:
15           JAMES D. WHITE, ESQ.
16           303 Broadway Street
17           Suite 1044
18           Laguna Beach, California  92651
19           949.697.9236
20           jdw@jamesdwhitelaw.com
21
22
23  Also Present:
24       Connor Sands (Present via telephone)
25       Matt Hausle, Videographer
```

```
                                    3
 1                I N D E X
 2
 3  WITNESS                                    PAGE
 4  EUNJUNG CARDIFF
 5      (By Mr. Rodriguez)                      9
 6
 7
 8
 9
10              E X H I B I T S
11                                             PAGE
12  PLAINTIFF'S        DESCRIPTION           REFERENCED
13  Exhibit 1   Bank of the West               30
14              Ultimate Beneficial Ownership
15              and Senior Managing Official
16              Certification Form
17  Exhibit 2   TD Canada Trust Bank Statement 32
18  Exhibit 3   Directors Resolution dated     34
19              October 1, 2015
20  Exhibit 4   Novelty Express New Item Form  48
21  Exhibit 5   Cloverstrip Order Form         52
22              Dated 8/13/18
23  Exhibit 6   Cloverstrip CBD Oral Thin      55
24              Film Strips ad
25
```

```
                                    4
 1            E X H I B I T S (Continued)
 2                                             PAGE
 3  PLAINTIFF'S        DESCRIPTION           REFERENCED
 4  Exhibit 7   Cloverstrip Cannabis CBD Strips 66
 5              Packaging
 6  Exhibit 8   Invoice from Aavishkar to      70
 7              Redwood
 8  Exhibit 9   FCCd Logistics, Inc. Invoice   72
 9              To Advanced Mens Institute
10  Exhibit 10  Letter from Cloverstrip to     74
11              Dear Valued Retail Partner
12  Exhibit 11  Cloverstrip Cannabis CBD       78
13              Pharmastrip Thin Film
14              Technologies brochure
15  Exhibit 12  Merchant Processing            83
16              Application and Agreement
17  Exhibit 13  Continuing Personal Guaranty   86
18              Provision - Personal
19              Guarantor
20  Exhibit 14  Cannabis Oral Thin Film        92
21              Technology brochure
22
23
24
25
```

                                        5

|   | E X H I B I T S (Continued) | |
|---|---|---|
|   | PAGE | |
| PLAINTIFF'S | DESCRIPTION | REFERENCED |
| Exhibit 15 | Unanimous Written Consent of the Board of Directors Redwood Scientific Technologies, Inc. | 99 |
| Exhibit 16 | Clover Cannastrip Thin Film Technologies Corp. Articles | 109 |
| Exhibit 17 | Pharmastrip packaging panel | 114 |
| Exhibit 18 | FX Web Media Production Project: Pharmastrip Scope Of Work | 116 |
| Exhibit 19 | Federal Trade Commission Financial Statement of Individual Defendant Eunjung Cardiff | 141 |
| Exhibit 20 | Answers to Interrogatories | 144 |
| Exhibit 21 | Attachment 1 to Plaintiff's First Interrogatories to Eunjung Cardiff | 145 |
| Exhibit 22 | Altima Malta Limited Wire Transfer slip | 147 |

                                        6

|   | E X H I B I T S (Continued) | |
|---|---|---|
|   | PAGE | |
| PLAINTIFF'S | DESCRIPTION | REFERENCED |
| Exhibit 23 | Preliminary Injunction with Asset Freeze, Receiver, and Other Equitable Relief Against Jason Cardiff and Eunjung Cardiff | 149 |

INFORMATION REQUESTED:
    (NONE)

WITNESS INSTRUCTED NOT TO ANSWER:
    Page 134, Line 4
    Page 138, Line 11

                                        7

                    LOS ANGELES, CALIFORNIA
                       MARCH 28, 2019
                            * * *

        VIDEOTAPE OPERATOR: Good morning.
We're on the video record.
        This is media unit one in the deposition of Eunjung Cardiff testifying in the matter of Redwood Scientific -- or FTC versus Jason Cardiff, cause number X190001.
        The time is 9:30 A.M. on March 28, 2019.
        My name is Matthew Hausle. I'm the videographer, along with our court reporter Patricia Hubbard from -- we are from Maxine Weinberg Agency.
        Counsel, please state your appearances for the record.
        MR. RODRIGUEZ: Good morning, Mrs. Cardiff.
        My name is Edwin Rodriguez. I'm an attorney representing the Federal Trade Commission. My name is Edwin Rodriguez.
        MS. SANGER: Elizabeth Sanger, Federal Trade Commission.
        MR. WHITE: James White representing the Cardiffs.

                                        8

        VIDEOTAPE OPERATOR: Will the court reporter please swear in the witness.

            EUNJUNG CARDIFF,
        called as a witness, having been
        sworn, was examined and testified
        as follows:

            EXAMINATION
BY MR. RODRIGUEZ:
    Q. Miss Cardiff, my name is Edwin Rodriguez. I'm representing the Federal Trade Commission.
        And I'll be taking your deposition today.
        Have you ever been deposed before?
    A. I don't believe so. I was interviewed in a judgment debtor's exam, so I don't know if that's a deposition.
    Q. Was it sworn testimony?
    A. I believe so.
    Q. In the deposition I will ask you questions, and my questions and your answers will be recorded by the court reporter at the end of the table.

Case 5:23-cr-00021-JGB   Document 61-3   Filed 04/22/24   Page 5 of 10   Page ID #:4900

FTC v. Jason Cardiff, et al.                                              Cardiff
                                                                        3/28/2019

**Page 9**

1    And you understand that you need to
2    speak up to answer orally in giving your answers so
3    that the court reporter can hear you clearly.
4        He -- she won't be able to record a nod
5    or a shake of the head.
6        Do you understand?
7    A.  Yes.
8    Q.  If you don't understand my questions for
9    any reason, please let me know.
10       I also want you to understand if you
11   need to take a break at any time or for any reason,
12   you should tell me or your attorney, and we will
13   finish your answer if we are in the middle of one,
14   and then see what we can do about a break.
15       Is that okay?
16   A.  Okay.
17   Q.  If you want to talk to your attorney,
18   that's -- I ask that you finish your answer if we're
19   in the middle of one, middle of an answer an answer,
20   and then you can talk to your attorney.
21       Sometimes you'll give an answer as
22   completely as you can, but then later on you might
23   remember additional information in response to an
24   earlier question or perhaps some clarification. And
25   if that happens, please tell us and if you'd like to

**Page 10**

1    revise an earlier answer, and we can do that on the
2    record.
3        Is that okay?
4    A.  Okay.
5    Q.  And sometimes when you're answering you
6    may think of documents that may help you remember
7    the answer or may help you give a more accurate one.
8    And if you do, please let us know, and we may have
9    those documents with us or we may be able to get
10   them to help you answer completely and accurately.
11       Are you taking any medication or drugs
12   of any kind or do you suffer from any illness which
13   might make it difficult for you to understand and
14   answer my questions today?
15   A.  Not at this time.
16   Q.  From time to time your attorney may
17   object to the questions that I ask you. And you
18   should answer the question unless he directs you not
19   to answer.
20       Do you understand?
21   A.  Yes.
22   Q.  Now, it is our understanding from
23   conversation with your attorney that you may be
24   asserting your Fifth Amendment privilege against
25   self-incrimination today and that based on your

**Page 11**

1    assertion of that privilege, your attorney may
2    direct you not to answer questions.
3        So, throughout the deposition today we'd
4    like to enter into a stipulation with your attorney
5    that if you answer -- you assert your Fifth
6    Amendment privilege by saying, for example, "I
7    assert my Fifth Amendment privilege" or "the Fifth"
8    or "I plead the Fifth" or similar words, that it
9    will be our understanding that you are choosing not
10   to answer the question posed.
11       MR. WHITE: You're proposing a
12   stipulation. Please do so to me, sir.
13       MR. RODRIGUEZ: Okay. Do you agree to
14   that stipulation?
15       MR. WHITE: I do.
16       MR. RODRIGUEZ: Thank you.
17       MR. WHITE: So long as you do.
18       MR. RODRIGUEZ: Yes.
19       MR. WHITE: And that Ms. Sanger does.
20       MS. SANGER: Yes.
21       MR. WHITE: Thank you.
22   BY MR. RODRIGUEZ:
23   Q.  But we did want to advise you that if
24   you refuse to answer questions after asserting your
25   Fifth Amendment privilege, we may ask the Court do

**Page 12**

1    make negative or adverse inferences from your
2    refusal to respond and we may ask the Court to
3    foreclose you from presenting evidence in this case
4    if you refuse to answer questions that seek that
5    information.
6        Do you understand?
7    A.  Yes.
8    Q.  Miss Cardiff, can you please state your
9    full name for the record?
10   A.  Eunjung Cardiff.
11   Q.  And where do you reside?
12   A.  Can we --
13       MR. WHITE: Yes. I think we might as
14   well begin the process of the Fifth Amendment.
15       MR. RODRIGUEZ: Okay.
16       MR. WHITE: We are going to assert the
17   Fifth Amendment privilege probably to everything you
18   ask.
19       MR. RODRIGUEZ: Okay.
20       MR. WHITE: I'd like to take a minute to
21   make a record of several conversations very briefly.
22   I won't belabor the matter.
23       MR. RODRIGUEZ: Okay.
24       MR. WHITE: But very briefly. And then
25   ask for some further input from you two, because

13

1   when we last spoke there seemed to be some
2   inclination on, as I understood, Ms. Sanger's
3   comments to me that perhaps your questioning today
4   might be geared so that a Fifth Amendment privilege
5   would not be assertable.
6           At least that was my understanding of
7   our laughs conversation.
8           So if you would allow me, I'd like to
9   take maybe a minute or two to make a record.
10          MR. RODRIGUEZ:  Okay.
11          MR. WHITE:  All right.  Thank you for
12  offering the stipulation that any reference to the
13  Fifth or privilege we can short circuit and simply
14  proceed rapidly through that.
15          As I said, I do believe we will probably
16  be asserting the Fifth to just about everything
17  unless we can carve out some areas for which the
18  Fifth might not be applicable or for which we might
19  enter into some sort of arrangement stipulation so
20  that we can make some progress without having today
21  be unproductive.
22          The question of asserting the Fifth
23  first came to the frontal lobes of my mind a few
24  days ago.  And it arose as a result of a telephone
25  conversation that, frankly, I don't know,

14

1   Mr. Rodriguez, whether you were on or not, but I
2   know Ms. Sanger was on, and I'm not 100 percent sure
3   which phone call it was, because we had several over
4   the course of the last couple weeks.  But the
5   essence of that particular call and which was the
6   genesis of my view that the Fifth is something I
7   wanted to consider very carefully is that I have had
8   a conversation with Michael Fletcher, one of the
9   attorneys for the Franzell firm representing the
10  receiver.
11          And in that conversation he and I, I
12  think, had talked a little bit earlier, but not in
13  any great length, and I posed the question to him as
14  to why this case had resulted in a hold or
15  requirement for them to turn in their passports.
16  And I phrased the question something like, you know,
17  this is a criminal -- this is a civil case, isn't
18  it?  This isn't a criminal case?  I phrased it as a
19  question.
20          Mr. Fletcher's response seemed odd at
21  the time.  He basically deflected the question.  He
22  didn't really answer it.
23          But I didn't concern myself terribly
24  with it.
25          But then on the next call that he was on

15

1   and Ms. Sanger and I were on and I think Mr. Prunty
2   was on -- you may remember better than I,
3   Ms. Sanger -- but the issue again came up because
4   Mr. Fletcher in the course of that conversation, I
5   think it was one of our meet and confers, said
6   somewhat out of the blue and primarily directed his
7   comment to you, Ms. Sanger, as I understood the ebb
8   and flow of the conversation, he seemed to be
9   saying, "Liz, I want you to know that Mr. White
10  asked me about the C-word."  That was his phrasing,
11  "the C-word."  He didn't use the word "criminal."
12  It was just sort of code, the C-word.
13          And then Mr. Fletcher went on to report
14  to you that he hadn't been non-responsive and he
15  reiterated that he wanted you, Ms. Sanger, to know
16  Of that conversation.
17          And I felt that was rather odd at the
18  time.  And in thinking about it after our call and
19  in reviewing your deposition notice and in reviewing
20  the FTC's website and the structure of what's
21  revealed on your website, it began to occur to me
22  that there was some coded message being passed from
23  Mr. Fletcher to you, Ms. Sanger, at least I took it
24  that way.
25          And I think I made a reference in a

16

1   subsequent conversation to this pas de deux, which I
2   thought was rather change, a two-person dance.
3   Okay?
4           And as I reflected on it more and
5   discussed the matter with my clients, and as I
6   reflected on what I was learning about some of the
7   history of the case, I began to become even more
8   concerned.
9           As I'm quite sure I've told you both,
10  I'm a business litigation civil attorney.  I'm not a
11  criminal attorney.
12          So, at one point in another one of our
13  many telephone conversations I requested of
14  Ms. Sanger to postpone these depos today for perhaps
15  30 days so that I could engage with criminal counsel
16  to give my clients a better understanding of what
17  may be at play here.
18          Ms. Sanger declined that request and,
19  thus, we're here today.
20          But I did say to you and Mr. Prunty, to
21  Ms. Sanger and Mr. Prunty, I think you may have been
22  on one of the phone calls, Mr. Rodriguez, that we
23  would more likely than not be asserting the Fifth
24  Amendment today as a consequence of not being able
25  to reach any arrangement as I had proposed.

17

1  The case law that I looked at very
2  briefly, Supreme Court cases, a couple of them, make
3  it pretty clear to me that if there is a reasonable
4  fear of implication of -- of criminal nature that
5  the client is well advised and well within their
6  rights to assert the Fifth.  It can't be a trifling
7  fear, it can't be unrealistic, but it can certainly
8  be a justification for asserting the Fifth.
9       And I think in this case given what I
10 know of the record so far -- and as both know, I'm
11 fairly new to the case, still trying to get up to
12 speed.  But when I look at your subpoena, for one,
13 in the use sections it spells out how you intend to
14 use these depositions.  And there is some phrasing
15 in there which essentially, as I read it, says "or
16 anything else we want to use it for," "or any other
17 purpose" I think was your phrasing.
18      Okay.  So, I have some questions for you
19 folks in that regard.
20      I am concerned that given what I see on
21 your website and given the history of how the FTC
22 has pursued civil matters and then, as reflected in
23 your website in many of the cases you've handled
24 they get flipped over at some point in time, and I
25 don't know when, but they get flipped over for

18

1  potential criminal prosecution.
2       So, what I would like to know from you
3  is if anyone on your team, your attorneys,
4  paralegals, staff, supervisors, subordinates or
5  investors has been in communication with anyone with
6  any prosecutorial authority regarding this case.
7  That's a question for you.
8       I sense from our past history that I
9  probably won't get an answer, but I'd like one.
10      If -- if there has been that sort of
11 communication, I think in fairness I ought to know.
12 So that's my first question for you, either one of
13 you.
14      MR. RODRIGUEZ:  Well, you know, I think
15 it's our position here that I'm not here to testify.
16 Neither are you.
17      MR. WHITE:  I'm not asking you to answer
18 it under oath.  I'm just asking you --
19      MR. RODRIGUEZ:  Right.
20      MR. WHITE:  -- as a colleague to answer
21 my question honestly and forthrightly.
22      MR. RODRIGUEZ:  What I can say, and what
23 I can say is limited because by the nature of, you
24 know, the ethical and -- my ethical duties as an
25 employee of the Federal Trade Commission, is that

19

1  from time to time we share information with
2  Government agencies, and that those communications
3  with Government agencies may be civil or criminal
4  and are confidential, and we can't disclose them.
5       MR. WHITE:  I'll accept that answer for
6  now.
7       And it tells me what I needed to know.
8  And that is, in essence, there is quite often a
9  pattern or practice where the FTC civil flips
10 information to criminal.  And that adds to my
11 attorney.
12      The other question I have, and I'll --
13 I'll get to the end of this so you can go on --
14      MR. RODRIGUEZ:  Okay.
15      MR. WHITE:  -- soon.  I didn't mean to
16 take this much time, but I appreciate your
17 indulgence.
18      Is the video live feed elsewhere?  Is
19 someone else watching us?
20      MR. RODRIGUEZ:  No.
21      MR. WHITE:  Okay.
22      MR. RODRIGUEZ:  There is -- our
23 investigator Connor Sands is on the phone.
24      MR. WHITE:  You didn't announce him.
25      MR. RODRIGUEZ:  I'm so sorry about that.

20

1  He is listening in, Connor Sands.
2       MR. WHITE:  Well, let's get his record,
3  please.
4       MR. RODRIGUEZ:  Okay.  Can you please
5  note that Mr. Connor Sands, an invest- -- an FTC
6  investigator is on the phone.
7       MR. WHITE:  Mr. Sands, can you hear us?
8       MR. SANDS:  I can.
9       MR. WHITE:  Thank you.
10      All right.  This case came to my
11 attention only a few weeks ago.  And it came to my
12 attention in part as a result of a conversation that
13 I had had with Bob Shapiro.  And it was my
14 understanding at that point in time when I was asked
15 to consider taking on this case that the case was
16 virtually on the verge of settlement.
17      I since had that erroneous understanding
18 corrected by Ms. Sanger, who says no, we have not
19 had any substantive discussions on settlement.
20      Nonetheless, from your website, I see
21 pretty clearly that the vast majority of the cases
22 that your division handles end up in a settlement.
23 And we certainly seek to advance that possibility.
24      I know from our many conversations that
25 you are concerned about following the bread crumb

FTC v. Jason Cardiff, et al.                                                                              Cardiff
                                                                                                      3/28/2019

21

1  trails to whatever assets may be out there.
2          So I'd like to talk about a carve-out
3  possibility for today so that we can be somewhat
4  productive, although we will be asserting the Fifth,
5  as I say, to probably the vast majority of the
6  questions asked.
7          MR. RODRIGUEZ:  I think that I should
8  cut you off at least because we can't agree to a
9  carve-out.
10         I have a series of questions that I'm
11 going to pose.  And if Miss Cardiff chooses to
12 assert the Fifth, she is free to do so, and we'll
13 just take it question by question.
14         MR. WHITE:  All right.  There is another
15 housekeeping matter that I'd like to discuss at some
16 point, and that is the deposition of Gerald Cardiff
17 that you've noticed.  I'd like to exchange from
18 information with you in that regard.
19         We don't have to do it on the record nor
20 do we have to do it right now.
21         MR. RODRIGUEZ:  Thank you.
22         MR. WHITE:  But it's on my agenda.
23         MR. RODRIGUEZ:  Okay.  We can do that
24 after the deposition.
25         MR. WHITE:  All right.  So, having been

22

1  duly cut off, I'll cede the floor.
2          MR. RODRIGUEZ:  Thank you.
3  BY MR. RODRIGUEZ:
4     Q.  Miss Cardiff, are you currently
5  employed?
6          MR. WHITE:  We'll assert the Fifth.
7          Do you mind if I simply make the
8  assertion, or do you actually want to hear it from
9  her.
10         MR. RODRIGUEZ:  I'd like to hear it from
11 the witness.
12         MR. WHITE:  Very well.
13         THE WITNESS:  Under the advice of
14 counsel, I'm asserting my Fifth Amendment privilege.
15 BY MR. RODRIGUEZ:
16    Q.  Okay.  Have you taken any steps to find
17 work after your -- after the defendants were shut
18 down in October of 2018?
19         MR. WHITE:  We'll a certain the Fifth.
20         THE WITNESS:  I'm asserting my Fifth
21 Amendment privilege.
22 BY MR. RODRIGUEZ:
23    Q.  I think that it might be easier -- and I
24 hope we can reach an agreement -- that instead of
25 both of you saying that -- you know, instead of both

23

1  of you expressing a Fifth Amendment privilege, if
2  only the witness could do it.
3          MR. WHITE:  Well, I'm looking for a way
4  to expedite, as well.  I'm happy to address that.
5          In your admonitions you made it clear
6  that if she was in the middle of answering a
7  question, she could not then ask for a break.
8          So, I don't want her to start an answer
9  that she under your admonitions will then have to
10 finish the answer before being able to consult with
11 me.
12         So, while I accept your concern about
13 being efficient, my reason for interposing my
14 comment first was to make sure that the witness
15 didn't start to answer prematurely.  And thus, as
16 you noticed, and I suspect it's on camera, I did
17 indeed put my hand up in front of her as a caution,
18 do not answer until I speak.
19         So, if with your permission what I would
20 do then basically as I see your line of questioning
21 and your multi-page outline in front of you -- can
22 we take a shot at that?  That's beautiful.
23         I'm teasing.
24         I want to find a way to expedite it.
25 So, I'm going to sit silent until I decide not to be

24

1  silent, and that could happen at any time.  Okay?
2          But I will rely on the witness to assert
3  the Fifth without any other response.
4          MR. RODRIGUEZ:  Okay.
5          MR. WHITE:  And if the witness doesn't
6  do that, then I will reserve the right to interpose
7  on her behalf.
8          Is that fair enough?
9          MR. RODRIGUEZ:  Yes.
10         MR. WHITE:  Any questions about that?
11         THE WITNESS:  (No audible response.)
12         MR. WHITE:  We'll be efficient that way.
13         MS. SANGER:  Thank you.
14         MR. RODRIGUEZ:  Thank you.
15 BY MR. RODRIGUEZ:
16    Q.  Do you currently have any job?
17    A.  I'm asserting my Fifth Amendment
18 privilege?
19    Q.  In addition to your name of Eunjung
20 Cardiff, have you ever used any other names?
21    A.  I'm asserting my Fifth Amendment
22 privilege.
23    Q.  Have you ever gone by the name Eunjung
24 know?
25    A.  I'm asserting my Fifth Amendment

6 (Pages 21 to 24)

Case 5:23-cr-00021-JGB   Document 61-3   Filed 04/22/24   Page 9 of 10   Page ID #:4904

FTC v. Jason Cardiff, et al.                                    Cardiff
                                                             3/28/2019

Page 25

```
 1   privilege.
 2       Q.  I also want to advise you, you could
 3   also say "I plead the Fifth" or "the Fifth" just to
 4   make it easier for you.
 5           MR. WHITE:  I think we'll stay with the
 6   pattern --
 7           MR. RODRIGUEZ:  Okay.
 8           MR. WHITE:  -- that we've developed.
 9   Thank you.
10   BY MR. RODRIGUEZ:
11       Q.  What is the highest salary that you have
12   ever earned at any job you have held?
13       A.  I am asserting my Fifth Amendment
14   privilege.
15       Q.  Isn't it true that you were the
16   marketing director for Cannella Response Television?
17       A.  I am asserting my Fifth Amendment
18   privilege.
19       Q.  Isn't it true that you have a degree
20   from Columbia University?
21       A.  I am asserting my Fifth Amendment
22   privilege.
23       Q.  Isn't it true that you were the
24   president of People United for Christians located in
25   Upland, California?
```

Page 26

```
 1       A.  I am asserting my Fifth Amendment
 2   privilege.
 3       Q.  Is People United for Christians -- and
 4   henceforth I will refer to that entity as PUFC.
 5           Is it currently active?
 6       A.  I am asserting my Fifth Amendment
 7   privilege.
 8       Q.  Is PUFC still soliciting donations from
 9   the public?
10       A.  I am asserting my Fifth Amendment
11   privilege.
12       Q.  Is PUFC still soliciting donations from
13   the public in the United States.
14       A.  I am asserting my Fifth Amendment
15   privilege.
16       Q.  Is PUFC currently soliciting donations
17   from the public in Canada?
18       A.  I am asserting my Fifth amendment
19   privilege.
20       Q.  Have you ever been involved in the
21   operation of Messengers For Christ World Healing?
22       A.  I am asserting my Fifth Amendment
23   privilege.
24       Q.  Is Messengers For Christ World Healing
25   currently soliciting donations from the public?
```

Page 27

```
 1       A.  I am asserting my Fifth Amendment
 2   privilege.
 3       Q.  Isn't it true that you have identified
 4   yourself as the president of PUFC?
 5           MR. WHITE:  Objection.  Vague
 6   "identify."
 7   BY MR. RODRIGUEZ:
 8       Q.  Are you asserting your Fifth Amendment
 9   privilege?
10           MR. WHITE:  An objection is on the
11   record.
12           Do you wish to clarify?
13           MR. RODRIGUEZ:  Not at this time.
14           MR. WHITE:  Fine.  Privilege.
15           THE WITNESS:  I am asserting my Fifth
16   Amendment privilege.
17   BY MR. RODRIGUEZ:
18       Q.  Isn't it true that PUFC in addition to
19   an address in Upland, California had an address at
20   1383 West Eighth Avenue in Vancouver, British
21   Columbia, Canada?
22           MR. WHITE:  Objection.  Vague as to
23   time.
24           Privilege.
25           THE WITNESS:  I am asserting my Fifth
```

Page 28

```
 1   Amendment privilege.
 2   BY MR. RODRIGUEZ:
 3       Q.  Did PUFC ever have an office at 701 West
 4   Georgia Street, Suite 1500 in Vancouver, British
 5   Columbia, Canada?
 6       A.  I am asserting my Fifth Amendment
 7   privilege.
 8       Q.  Are you currently receiving any income
 9   from Run Away?
10       A.  I am asserting my Fifth Amendment
11   privilege.
12       Q.  Are you currently receiving any income
13   from Advanced Men's Institute?
14       A.  I am asserting my Fifth Amendment
15   privilege.
16       Q.  Are you currently receiving any income
17   from any of the three Redwood Scientific corporate
18   defendants?
19       A.  I am asserting my Fifth Amendment
20   privilege.
21       Q.  Are you currently receiving any income
22   from Defendant Identify?
23       A.  I am asserting my Fifth Amendment
24   privilege.
25       Q.  Are you currently receiving any income
```

Case 5:23-cr-00021-JGB   Document 61-3   Filed 04/22/24   Page 10 of 10   Page ID
#:4909

FTC v. Jason Cardiff, et al.                                                 Cardiff
                                                                          3/28/2019

```
                                    29                                                    31
 1   from defendant Carols Place?                  1   Eunjung@officemgt.com?
 2       A.  I am asserting my Fifth Amendment     2       A.  I am asserting my Fifth Amendment
 3   privilege.                                    3   privilege.
 4       Q.  Miss Cardiff, I am presenting to you  4       Q.  Is the signature on page three your
 5   what has been marked as Plaintiff's Exhibit 1.5   signature?
 6           MR. RODRIGUEZ:  Actually, could I have 6      A.  I am asserting my Fifth Amendment
 7   that document back.  I want to put a prefix on it. 7 privilege.
 8           MR. WHITE:  And the prefix is?        8           (Whereupon the document referred
 9           MR. RODRIGUEZ:  E, period, Cardiff 1. 9           to was marked E. Cardiff Exhibit 2
10           (Whereupon the document referred     10           by the Certified Shorthand
11           to was marked E. Cardiff Exhibit 1   11           Reporter and is attached hereto.)
12           by the Certified Shorthand           12   BY MR. RODRIGUEZ:
13           Reporter and is attached hereto.)    13       Q.  Miss Cardiff, I am presenting to you
14   BY MR. RODRIGUEZ:                            14   what has been marked as E. Cardiff Exhibit 2.
15       Q.  Ms. Cardiff, if you look through this 15          MR. WHITE:  Thank you.  Thank you,
16   document --                                  16   Counsel.
17           MR. RODRIGUEZ:  Yes?                 17   BY MR. RODRIGUEZ:
18           MR. WHITE:  We're reviewing, Counsel. 18      Q.  Please let me know when you've had an
19   Thank you.                                   19   opportunity to review the document.
20   BY MR. RODRIGUEZ:                            20           MR. WHITE:  Thank you, Counsel.  I'll
21       Q.  Okay.  Miss Cardiff, would you please 21  let you know.
22   review the document.                         22           We've had time to review the document.
23           Are you -- have you reviewed the     23   Thank you.
24   document, Miss Cardiff?                      24   BY MR. RODRIGUEZ:
25           MR. WHITE:  I will acknowledge that she 25     Q.  Miss Cardiff, does this document refresh

                                    30                                                    32
 1   and I have had time to review the document.   1   your recollection of whether PUFC had an office at
 2           Ask your next question.               2   1383 West Eighth Avenue in Vancouver, British
 3   BY MR. RODRIGUEZ:                             3   Columbia, Canada?
 4       Q.  Isn't it true that in this document   4       A.  I am asserting my Fifth Amendment
 5   on -- dated August 21, 2018, you identified yourself 5 privilege.
 6   as the president of PUFC in Upland, California? 6       Q.  Did PUFC have an account, a bank
 7           MR. WHITE:  Objection.  Document speaks 7  account, at TD Canada Trust?
 8   for itself.                                   8       A.  I am asserting my Fifth Amendment
 9           Assert the privilege.                 9   privilege.
10           THE WITNESS:  I am asserting my Fifth 10       Q.  Does PUFC currently have any assets in
11   Amendment privilege.                         11   and in Canada?
12   BY MR. RODRIGUEZ:                            12       A.  I am asserting my Fifth Amendment
13       Q.  Based on this document, do you recall 13  privilege.
14   now whether you were, in fact, the president of PUFC 14    Q.  Were there any other entities under your
15   at this time?                                15   operation and -- or control located at that same
16       A.  I am asserting my Fifth Amendment    16   address?
17   privilege.                                   17       A.  I am asserting my Fifth Amendment
18       Q.  If you look at the third page of the 18   privilege.
19   document, do you see where it says "Primary Email 19      Q.  Were there any entities in the past or
20   Address"?                                    20   currently under your operation or control that are
21           MR. WHITE:  Privilege.               21   or were located at 700 West Georgia Street,
22           THE WITNESS:  I am asserting my Fifth 22  Vancouver, British Columbia in Canada?
23   Amendment privilege.                         23       A.  I am asserting my Fifth Amendment
24   BY MR. RODRIGUEZ:                            24   privilege.
25       Q.  Have you ever used the email address 25           (Whereupon the document referred
```