Stephen R. Cochell
Admitted Pro Hac Vice
*srcochell@gmail.com*
5850 San Felipe, Ste. 500
Houston Texas 77057
Telephone:(713) 436-8000
Facsimile: (213) 623-2000

Allan Grant (SBN#213658)
Grant's Law Firm
17351 Greentree Drive
Riverside, California 92503-6762
Telephone (888)937-7555
Facsimile  (866)858-6637

Attorneys for Defendant
JASON EDWARD THOMAS CARDIFF

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>        vs.<br><br>JASON EDWARD THOMAS CARDIFF,<br><br>              Defendant. | Case No. 5:23-CR-00021-JGB<br><br>[*Filed concurrently with Notice of Motion; Declaration of Stephen R. Cochell; Declaration of Jason Cardiff and [Proposed] Order*]<br><br>Courtroom: 1<br>Hearing Date: October 21, 2024<br>Time: 2:00 PM |

# DEFENDANT JASON CARDIFF'S NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE FROM ILLEGAL SEARCHES AND SEIZURES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>NOTICE</u>

PLEASE TAKE NOTICE that on October 21, 2024, at 2:00 p.m. in the courtroom of the Honorable Jesus G. Bernal, United States District Judge, Defendant Jason Cardiff, by and through his attorneys of record, Stephen R. Cochell and Allan Grant hereby move this Honorable Court for an order suppressing all evidence secured by the United States Postal Inspection Service, Department of Justice, and United States Attorney's Office in violation of his Fourth Amendment right against unreasonable searches and seizures with regard to the warrantless search of his business premises and other subsequent locations.  If required, Cardiff requests an evidentiary hearing to further develop the record in support this Motion.

This Motion is based upon the attached Memorandum of Points and Authorities, the Declaration of Stephen R. Cochell, all files and records in this case, and any further evidence as may be adduced at the hearing on this Motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on September 6, 2024.

Respectfully submitted,

*/s/ Stephen R. Cochell*
Stephen R. Cochell
SBN: 24044255
The Cochell Law Firm, P.C.
5850 San Felipe, Ste 500
Houston, Texas 77057
(346) 800-3500 – Telephone
srcochell@gmail.com

1

2

3

# **TABLE OF CONENTS**

4  NOTICE    …………………………………………………………………… ii

5  TABLE OF CONENTS …………………………………………………….  iii

   TABLE OF AUTHORITIES ………………………………………………… iv

6  MEMORANDUM OF POINTS AND AUTHORITIE …………………………. 1

7  I.    INTRODUCTION …………………………………………...………… 1

8  II.   STATEMENT OF FACTS ……………………………………...…… 3

   III. WARRANTLESS SEARCHES……………………………………… 11

9       A. The Fourth Amendment's Warrant Requirement …………..…………11

10      B. The Searches Violated the Fourth Amendment ……………..…………12

11          (1)  The USPIS "Peacekeeping" Claim Is and Was a Pretext. ….………13

            (2) The Second Search Violated the Fourth Amendment. …….………..14

12 IV. THE AUTHORITY OF A RECEIVER IS LIMITED TO THAT    GRANTED
        BY THE COURT IN ITS RECEIVERSHIP ORDER.     THE RECEIVER
13      LACKED AUTHORITY TO WAIVE REDWOOD    AND CARDIFF'S
        CONSTITUTIONAL RIGHTS………..…...........................15

14      A. The Court's TRO and Preliminary Injunction ………………………..…16

15      B. The Receiver Lacked Authority to Consent to the Search ………..………19

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT JASON CARDIFF'S MOTION TO SUPPRSS EVIDENCE FROM ILLEGAL SEARCHES AND
SEIZURES

1

# <u>TABLE OF AUTHORITIES</u>

2

**Case Law**

3

4

*Booth v. Clark*, 58 U.S. 322 (1854) …………………………………………………… 16

5

*California v. Acevedo*, 500 U.S. 565 (1991) …………………………….……….. 11

6

*Chong v. United States*, 23-55140 (9th Cir. August 14, 2024) ………………... 11, 19

7

8

*Florida v. Jardines,* 569 U.S. 1, 133 S. Ct. 1409 (2013) ………………………12, 19

9

*FTC v. On Point Glob. LLC,* No. 19-25046-Civ, 2020 U.S. Dist. LEXIS 180255
(S.D. Fla. Sep. 30, 2020) ………………………………………………………… 15-16

10

11

*Mitchell v. Wisconsin*, 139 S. Ct. 2525 (2019) ………………………………… 11

12

*Riley v. California, 573* U.S. 373 (2014) ………………………………………… 11

13

14

*SEC v. Elfindepan, S.A.* 169 F. Supp. 2d 420 (M.D. N.C.  2001) ……………..…. 16

15

*SEC v. Schooler*, 2015 U.S. Dist. LEXIS 46870 (S.D. Cal. 2015) …………… 1, 16

16

*Segura v. United States*, 468 U.S. 796 (1984) ………………………………… 21

17

18

*Sterling v. Stewart*, 158 F.3d 1199 (11th Cir 1998) ……………………………… 16

19

*United States v. Anderson*, 970 F.2d 602 (9th Cir. 1992),
*amended*, 990 F.2d 1163 (1993) ………………………………………………… 19-20

20

21

*United States v. Anderson,* 101 F.4th 586 (9th Cir. 2024) ……………..………. 2, 11

22

*United States* v. *Jones*, 565 U.S. 400 (2012) ………………………………… 12, 19

23

24

*United States v. Torres*, 828 F.3d 1113 (2016) ………………………………..… 11

25

*Westlands Water Dist. v. United States*, 153 F. Supp. 2d 1133
(E.D. Cal. 2001) ……………………………………………………………….. 19-20

26

27

*Wong Sun v. United States*, 371 U.S. 471 (1963) ……………………………… 14, 21

28

DEFENDANT JASON CARDIFF'S MOTION TO SUPPRSS EVIDENCE FROM ILLEGAL SEARCHES AND
SEIZURES

1
2

**Rules**

3

Fed. R. Evid.  803(7) …………………………………………………………….... 13

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COCHELL
LAW FIRM

DEFENDANT JASON CARDIFF'S MOTION TO SUPPRSS EVIDENCE FROM ILLEGAL SEARCHES AND
SEIZURES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On January 31, 2023, a four count indictment was issued by the grand jury alleging Access Device Fraud (Count One), Aggravated Identity Theft (Count Two) and two counts of destruction of evidence (Counts Three and Four).

On October 12, 2018, the FTC filed its civil lawsuit and obtained an Temporary Restraining Order ("TRO") appointing a receiver who took custody and control of Redwood Scientific Technologies, Inc. ("Redwood") and Cardiff's property.  The order did not transfer *ownership* of the property to the Receiver who was charged with maintaining and preserving the property for the ultimate owners of the property. *SEC v. Schooler*, 2015 U.S. Dist. LEXIS 46870 *3 (S.D. Cal. 2015).  Any major decisions affecting receivership property (e.g. transfer of ownership, corporate dissolution, payments to creditors) required prior notice to interested parties and entry of a court order approving the Receiver's actions.

The TRO authorized the Receiver to cooperate with reasonable requests from local, state or federal law enforcement agencies.  However, the TRO did not authorize or grant the Receiver ability to waive Mr. Cardiff's constitutional rights or allow searches or seizures of private property under the receiver's custody.  The point of any receivership is to provide remedial relief by freezing the assets while the Receiver assists the Court in determining the rights of the parties and third parties.  In sum, a receivership cannot be used as a mechanism to pre-authorize criminal investigators to search and seize property from a receivership estate. Indeed, the Fourth Amendment was designed to prevent such general warrants and to limit the scope of any searches if and when a warrant is sought or obtained.[1]    Warrantless searches are the

---

[1] The Court previously addressed the fact that the Receiver consented to USPIS searching Redwood's premises on October 22, 2018, ten days after the initial entry onto Redwood's premises, and whether this search demonstrated improper

DEFENDANT JASON CARDIFF'S MOTION TO SUPPRSS EVIDENCE FROM ILLEGAL SEARCHES AND SEIZURES

1  *exception*—not the rule.  Thus, the burden lies with the Government to justify the

2  legality of a search without a warrant.  *United States v. Anderson,* 101 F.4[th] 538 (9th

3  Cir. 2024) (en banc).

4  At the FTC's invitation, six USPIS agents joined the FTC at Redwood's

5  premises. The Receiver took possession of Redwood Scientific's business premises

6  and Mr. Cardiff's personal property located at 820 North Mountain Ave., Ste 100,

7  Upland CA 91786 and 870 North Mountain Ave., Suites 115 and 118, Upland CA

8  91786.  As set out in prior pleadings, the FTC and USPIS were investigating Cardiff

9  and Redwood for about four months prior to the unlawful search.  The agents had

10  more than enough time to apply for a search warrant or to obtain consent from Mr.

11  Cardiff, but apparently did not want to spend the time necessary to prepare the papers

12  and submit them to a magistrate.  It is also likely that the UPSIS was concerned that

13  a court would limit the scope of their search of computer evidence.  Simply stated, a

14  court order allowing access to premises under an FTC receivership did not pre-

15  authorize a general warrant for law enforcement officers to rummage through private

16  property without a warrant supported by probable cause. U.S. Const. amend IV .

17  Without a warrant or consent by Cardiff, who is and was Redwood's majority

18  shareholder, six USPIS criminal investigators were granted unrestricted access to the

19  premises for an unlimited amount of time and freely roam through all the offices.

20  They were able to pick up and review documents, examine items, access computers

21  and move about without any oversight or limitations, effectively giving them

22  unfettered access to everything on the premises for about four hours. The USPIS

23  search was unreasonable and violated the Fourth Amendment. All evidence seized as

24

25  _____

collaboration in a parallel prosecution thereby violating due process.  Dkt. 79 at 16.

26  This motion addresses whether the initial entry onto the premises on October 12,

2024 violated the Fourth Amendment.

27

28

DEFENDANT JASON CARDIFF'S MOTION TO SUPPRSS EVIDENCE FROM ILLEGAL SEARCHES AND SEIZURES

a result of the initial search and subsequent warrantless searches of computers and storage lockers must be suppressed as well as the fruits of those searches.

## II.    STATEMENT OF FACTS

The Court has already reviewed and made findings of fact regarding the events leading up to filing of the FTC civil action and the USPIS investigation. Dkt. 79. These include the following:

1.  On July 17, 2018, when a USPIS Postal Inspector and an FTC attorney first conversed about the FTC's then-ongoing investigation of certain companies centered in Upland, California (i.e. Redwood).  **Exhibit A**, Declaration of Stephen Cochell, Ex. 1 (hereafter "Cochell Dec.").[2]

2.  In a follow-up letter, the FTC attorney noted that the FTC expected to hear from the USPIS "regarding [its] interest in pursuing this matter further with us." **Exhibit A**, Cochell Dec., Ex. 1 at 3

3.  On July 24, 2018, USPIS requested from the FTC information related to Cardiff and Redwood via a "Request for Non-public Materials and Certification of Intent to Maintain Confidentiality and to Restrict Use to Law Enforcement Purposes" pursuant to 16 C.F.R. § 4.11(c). **Exhibit A**, Cochell Dec., at Ex. 2 The "law enforcement purpose" listed for the request is to "[a]ssist FTC staff in investigation of advertising and marketing practice for thin film strip products." (*Id*.) The FTC granted this request on August 3, 2018. **Exhibit A** at Ex. 3.

4.  A little over a week later, the FTC attorney arranged a phone call with the USPIS Postal Inspector and another FTC attorney for August 20, 2018.

---

[2] The exhibits to this motion were marked as "Confidential" pursuant to the Stipulated Protective Order in this case.  Pursuant to discussions between the parties, the Government agreed that the exhibits identified in this motion need not be submitted under seal.

COCHELL LAW FIRM

DEFENDANT JASON CARDIFF'S MOTION TO SUPPRSS EVIDENCE FROM ILLEGAL SEARCHES AND SEIZURES

**Exhibit A** at Ex. 4 and 5.

5. In early September 2018, the FTC attorney and the Postal Inspector planned some sort of reconnaissance of the Redwood business premises in Upland, which would include sending USPIS associates to drive by the Redwood premises and the Cardiffs' home. **Exhibit A** at Ex. 6 and 7.

6. On October 5, 2018, the Postal Inspector conducted surveillance of the Redwood offices and the Cardiffs' home. **Exhibit A** at Ex. 8. She walked into the building in which the offices were located but was unable to enter the Redwood offices. *Id*. She returned to the premises on October 10, 2018 and observed a car that matched the description of that belonging to Cardiff's wife but was again unable to enter the Redwood offices. **Exhibit A** at Ex. 1 and 8.

7. The FTC filed the FTC Action five days later, on October 10, 2018.[3] FTC Civil Dkt. 79 at 7. As referenced above, the FTC applied for and was granted an ex parte temporary restraining order which Robb Evans LLC as Receiver.

8. While the TRO was pending, the FTC attorney updated the Postal Inspector that there was "[n]o word from the Court yet, so our earliest date at this point will be Friday, October 12, 2018." **Exhibit A** at Ex. 9.

9. On October 10, 2018, the FTC attorney notified the Postal Inspector that the TRO was approved, attached a copy of the TRO and informed her that the "immediate access" would occur on October 12, 2018. **Exhibit A** at Ex. 10. He also reminded her that they had planned to meet at the Upland Police Department. *Id.*

10. There is no evidence that USPIS talked to the Receiver or that the Receiver knew anything about the joint investigation being conducted by USPIS and

---

[3] Defendant will refer to pleadings in the FTC Civil Action 18-2104 as FTC Civil Dkt. __ "

DEFENDANT JASON CARDIFF'S MOTION TO SUPPRSS EVIDENCE FROM ILLEGAL SEARCHES AND SEIZURES

the FTC prior or at the time of USPIS' entry and search of Redwood's premises. **Exhibit A**, Cochell Dec.¶ ¶ 18-19, Ex. 17.  For example, the Receiver's Initial Report documenting his activities for October, 2018, including entry of Redwood's premises does not identify *when* the Receiver actually arrived at Redwood's premises.

11. The Application for Temporary Restraining Order was accompanied by numerous declarations and materials in support of the TRO and Preliminary Injunction.  Pursuant to Rule 201, Federal Rules of Evidence, Defendant requests the Court take judicial notice of Dkt. 1 through 5-15, 22-25 in *FTC v. Jason Cardiff, et. al*, Case, 18-2104 (C.D. Cal).

12. The USPIS and/or Department of Justice could have, but chose not to seek apply for a search warrant to search Redwood's or Cardiffs' premises and storage areas.  See Paragraph 11 above.

13. The USPIS is an agency charged with criminal law enforcement and is not charged with enforcement of civil statutes, rules or regulations.  Defendant requests the Court to take judicial notice of the USPIS website. https://www.uspis.gov/about/what-we-do

14. At all times, Jason Cardiff was the majority shareholder of Redwood Scientific.  **Ex. B,** Declaration of Jason Cardiff ¶ 11.

15. Redwood's offices were not open to the public.  **Exhibit B** at ¶11.  The office's doors were kept locked during business and after hours. *Id.* Computers were assigned to specific employees. *Id.* at 10. Access into each computer was password protected and additional password protection was provided for certain programs allowing customer access and access to financial records. *Id.*

16. Jason Cardiff maintained personal records in his office including computer, laptops, hard drives, ipads, legal records, and family documents. This was documented by the USPIS in an inventory of items and photograph of 81

5

boxes of items stored in Redwood's offices transferred to a dedicated storge
unit by the Receiver. **Ex.** A, Cochell Dec. at Ex. 11. This includes:

Personal and Financial Documents:

    a. Pre-2014 tax return information (Box 1, Stack 1).

    b. 2015 HSBC statements (Box 4, Stack 1).

    c. Numerous notebooks with personal notes (Box 5, Stack 1).

    d. 2015 payroll documents (Box 5, Stack 4).

    e. Citibank statements (Box 3, Stack 6).

    f. Personal checks and donation records (Stack 6).

Private Correspondence and Documents:

    g. Personal notebooks and memos (Box 5, Stack 1).

    h. "Jasons Personals" labeled folder (Fourth box, Stack 3).

    i. Personal correspondence and potentially privileged documents
      found in various labeled folders (throughout multiple stacks).

Family-Related Documents:

    j. Ministry-related documents, likely personal in nature (Clear tub
      on right side of storage).

    k. PUFC donation checks and personal letters.

Electronic Devices Containing Personal Information:

    l. Hard drives, laptops, iPads, and tablets stored in boxes labeled
      "Ste 100" and "Ste 115," which likely contained private emails,
      correspondence, and personal data.

**Ex. B**, Cardiff Dec. ¶5.

17. The USPIS did not, at any time, ask Jason Cardiff for a consent to search
Redwood's premises, its computers or to seize computers, documents or his
personal property. **Exhibit B**, Cardiff Dec. ¶7.

18. On October 10, 2018,  the Court appointed a receiver over Redwood.  At
that time, there were 130 million shares of common stock issued in

DEFENDANT JASON CARDIFF'S MOTION TO SUPPRSS EVIDENCE FROM ILLEGAL SEARCHES AND
SEIZURES

Redwood.  Jason Cardiff owned approximately 75% majority shareholder holding approximately 100 million shares of common stock. **Exhibit B**, Cardiff Dec. ¶3.

19. On October 12, 2018, the Receiver entered Redwood's premises at three locations 820 North Mountain Ave., Ste 100, Upland CA 91786 and 870 North Mountain Ave., Suites 115 and 118, Upland CA 91786.  **Exhibit B**, ¶4.

20. The FTC was accompanied by two (2) local police officers.  Six (6) USPIS agents were invited to search the premises by the FTC.  **Exhibit A**, Cochell Dec., Ex. 10 at 1. There is no record as to when the Receiver arrived at the location.  **Exhibit A**, Cochell Dec., Ex. 17 at 13-15.

21. Six agents of the USPIS were able to pick up and review documents, examine items, access computers and move about without any oversight or limitations---equivalent to a general warrant to search the premises. **Exhibit B,** Cardiff Dec. ¶¶5, 7, and 9.

22. The USPIS did not, at any time, ask Jason Cardiff for a consent to search Redwood's premises, its computers or to seize computers, documents or his personal property. **Exhibit B**, Cardiff Dec. at ¶9.

23. None of the USPIS agents asked Mr. Cardiff to consent to the search of Redwood's premises*. **Exhibit B*** at ¶¶7 and 10.

24. On October 12, 2018, Jason Cardiff was working at 870 North Mountain Avenue when he observed cars parked outside 820 North Mountain Avenue, where his office was located. The Receiver met Mr. Cardiff at 820 North Mountain Avenue, Ste 100 and requested Mr. Cardiff provide the access codes to Redwood's computers systems at the time of entry. **Exhibit B,** ¶ 8. Mr. Cardiff cooperated fully with the Receiver and provided password access to Redwood's systems. *Id.* at ¶8.

25. Mr. Cardiff saw the USPIS agents roaming through the office, at computer

DEFENDANT JASON CARDIFF'S MOTION TO SUPPRSS EVIDENCE FROM ILLEGAL SEARCHES AND SEIZURES

terminals reviewing documents, picking up and reviewing physical Redwood office files. **Exhibit B, ¶** 9.

26. The declaration of Brick Kane, Receiver in the FTC Action, was initially submitted on November 1, 2018. FTC Dkt. 52 and later submitted under penalty of perjury on November 7, 2018 as FTC Dkt. 81-1 at 3, ¶8 **Exhibit A**, Cochell Dec. Ex. 17. In pertinent part, Mr. Kane testified that his Report of Receiver Activities from October 1,2018 through October 31, 2018, about the entry by the FTC and staff. Id. In the section of his report entitled: "Custody, Control and Possession", Mr. Kane did not document or otherwise disclose the existence of the USPIS agents to the Court. Id. at 13-15. Nor did Mr. Kane document that: (1) there were USPIS agents accompanying him on the entry; (2) being asked for consent or giving consent to search by USPIS agents; (3) knew or was aware of their purpose in entering the premises or (4) was aware that the USPIS was conducting an investigation of Mr. Cardiff. Id. at 13-15.

27. The USPIS had access to all records of People United for Christians and the Cardiffs' personal papers and family pictures. **Exhibit A**, Cochell Dec. Ex. 11, Ex. 17 at 14-15.

28. Discovery granted by the DOJ did not include any memoranda of activity or interviews by the UPSIS during their search of Redwood's offices that took place on October 12th. **Exhibit A**, Cochell Dec. ¶ 21.

29. On October 18, 2018, the Postal Inspector, Christine Reins-Jarin, requested that the Receiver permit her to return to the Redwood offices and allow USPIS inspectors and computer analysts to continue its inspection and "enter the premises to inspect the locations, photocopy and/or photograph items, and image computers." Cochell Dec. **Exhibit A** Cochell Dec. Ex. 12.

30. There is no record that suggests that, on or before October 12, 2018, Ms. Reins-Jarin advised Brick Kane, the Receiver, as to Redwood's or Cardiffs'

8

constitutional right to refuse a search of the premises and various computers.
**Exhibit A**, Cochell Dec. ¶ 21.

31. On October 18, 2018, Inspector Reins Jarin spoke on the *phone* and purportedly obtained consent to enter the locations and image computers. **Exhibit A**, Cochell Dec., Ex. 12.  On October 22, 2018, two Postal Inspectors conducted a search of the Redwood offices alongside two USPIS forensic computer analysts. Id. at 7.  The USPIS did not obtain consent from Redwood's President and majority shareholder, Jason Cardiff. Exhibit A, Cardiff Dec. ¶ 10. There is no record that the Receiver actually gave consent for the October 22, 2018 search.

32. In May 2020, a DOJ attorney requested and secured from the Receiver a signed waiver of the attorney client privilege and work product privilege for the Receivership entities and handwritten notes taken by the Receiver concerning Redwood. **Ex. A**, Cochell Dec. at Ex. 14 and 15.

33. In June 2020, the DOJ requested consent from the Receiver to obtain Redwood's CRM data. **Ex. A,** Cochell Dec. at Ex. 16. On that occasion, the DOJ obtained from the Receiver a signed "Stored Communications Act Consent," which allowed the Government to access third-party stored data for the Receivership entities. *Id.*

34. On July 6, 2021, Christine Reins-Jarin and another USPIS analyst reviewed documents stored by the Receiver in a storage unit—a search to which the Receiver consented in writing. **Ex. A** at Ex. 11 and 13.

35. On July 6, 2021, over two years and six months after the initial search on October 12, 2018 was conducted by Agent Christine Reins-Jarin, Ms. Reins-Jarin submitted a USPIS form Consent to Search, described in Paragraph 32 above. **Ex. A** at Ex. 13.  In pertinent part, the Consent to Search-Electronic Devices and Storage Media or Services advised:

I, Brick Kane/Robb Evans and Associates have been informed of

9

and understand my constitutional rights not to have a search
made of the below listed devices, without the requirement of a
search warrant. I have also been informed of, and understand,
my right to refuse to consent to the search. However, I hereby
authorize law enforcement officers and/or their designees to
conduct a complete search of:

> [Device, serial number/user name, IMEI, phone
> number and password]

U.S. Postal Inspector C. Reins-Jarin or their designees are
authorized by me to take custody of and/or access the above
described devices or services and to search for any electronic
data or files which are contraband or evidence of [federal
criminal statutes.] I further authorize law enforcement officers or
analysts to create a forensic image of copy of the devices's
contents. I understand that any contraband or evidence may be
used against me in court of law or an administrative proceeding.
I understand that I may withdraw my consent at any time.

This written permission is being given by me to the above named
persons freely and voluntarily without threats, promises or
coercion of any kind to have me consent to the search and/or sign
this form. I realize that I may ask or and receive a receipt to all
things taken.

36. On July 6, 2021, Agent Reins-Jarin purportedly obtained consent from the
Receiver to search other items in the storage locker. **Exhibit A**, Cochell
Dec. ¶ 14, Ex. 13.

37. On March 3, 2022, the district court entered a Final Injunction against
Redwood and Jason Cardiff. **Exhibit A**, Cochell Dec. ¶¶ 19, 20, Ex. 18, 19.
The Final Injunction effectively returned Redwood Scientific to its owners,
specifically its shareholders and its majority shareholder, Jason Cardiff.
**Exhibit B**, Cardiff Dec. ¶ 12-13.

38. The DOJ gave notice that it intends to use electronic and documentary
evidence and things obtained as a result of the searches and seizures
described above. **Exhibit A**, Cochell Dec. ¶¶ 21-22.

DEFENDANT JASON CARDIFF'S MOTION TO SUPPRSS EVIDENCE FROM ILLEGAL SEARCHES AND
SEIZURES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.    WARRANTLESS SEARCHES

#### A. The Fourth Amendment's Warrant Requirement

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

In *Riley v. California, 573* U.S. 373, 403 (2014), the Court noted that the Fourth Amendment was "crafted…as a 'response to the reviled "general warrants and writs of assistance of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity.'" The ultimate touchstone of the Fourth Amendment is "reasonableness."  To meet this standard, law enforcement must generally obtain a warrant based on probable cause before conducting a search.  *United States v. Anderson*, 101 F.4th 586,591 (9th Cir. 2024) (en banc) citing *Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2534 (2019).  The Fourth Amendment requires that law enforcement officials particularly describe "the place to be searched and the persons or things to be seized."

As recently noted by the Ninth Circuit, there are exceptions to the warrant requirement, such as the inventory search exception.  *Anderson*, at 591.  It is well established that "the few situations in which a warrantless search may be conducted in the absence of a warrant have been carefully delineated and the burden is on the those seeking the exemption to show the need for it." *Anderson* at 594, citing *California v. Acevedo*, 500 U.S. 565 (1991); *see United States v. Torres*, 828 F.3d 1113, 1118 (2016).

Most recently, in *Chong v. United States*, 23-55140 (9th Cir. August 14, 2024), the Ninth Circuit held under the common law trespassory test which holds that:  a "search occurs when the government 'physically occupie[s] private property for the

purpose of obtaining information,'" while "'engag[ing] in conduct not explicitly or implicitly permitted' by the <u>property owner</u>." Id. & n.3 (quoting *United States* v. *Jones*, 565 U.S. 400, 404 (2012); *Jardines*, 569 U.S. at 6 (2013)) (emphasis supplied)."

### B. The Searches Violated the Fourth Amendment

The burden of justifying a warrantless search rests squarely on the Government. *Anderson*, at 12. In the instant case, this court ruled that the USPIS was working in concert with the FTC months prior to the date of entry. Dkt. 79 at 6-8. The undisputed evidence shows that the USPIS was conducting a parallel criminal investigation into Redwood and the Cardiffs and had been working hand-in-glove with the FTC at least four months prior to filing of the FTC civil action and imposition of the receivership. Id.

The sequence of events leading up to and during the search on October 12th 2018 reveals the USPIS' Fourth Amendment violations. It is undisputed that the USPIS agents were present at Redwood's premises solely at the invitation of the FTC--not the Receiver. Evidence produced in discovery clearly shows that the FTC initiated contact with the USPIS but did not copy these communications to the Receiver, who was kept in the dark about the FTC's plans. The Temporary Restraining Order (TRO) granted the FTC access to the premises but did not include inviting additional parties to conduct a criminal investigation nor did the Order pre-authorize searches for the purpose of criminal prosecution.

The USPIS failed to produce any reports in discovery documenting its activities at Redwood on the day of the October 12, 2018 search. Exhibit A, Cochell Dec. ¶ 21. Nor is there a signed consent-to-search form from anyone present that day. This absence of documentation is damning given the fact that the USPIS was clearly intending an investigatory search. Fed. R. Evid. 803(7). Moreover, the Receiver did not keep notes or otherwise document that the USPIS entered the premises with him.

DEFENDANT JASON CARDIFF'S MOTION TO SUPPRSS EVIDENCE FROM ILLEGAL SEARCHES AND SEIZURES

Significantly, the Receiver submitted a detailed report of the day's events to the district court under penalty of perjury (Civil Dkt. 52) and later detailed events with time entries. **Exhibit A**, Cochell Dec. Ex. 17. However, the Receiver's report makes no mention whatsoever of the USPIS's presence, involvement, or any consent purportedly granted to them for their search. The absence of any notes or documentation is fatal to the idea that the initial entry or subsequent entry on October 22, 2018 by criminal law enforcement agents onto Redwood's premises was authorized by the Receiver or by a court.[4]

### (1) The USPIS "Peacekeeping" Claim Is and Was a Pretext.

At the June 3, 2024 hearing before this Court, the DOJ made it clear that the USPIS agents (six of them) and two Upland police officers were at Redwood to help the Receiver "keep the peace." The Orders allowed the Receiver to employ sheriffs, police and law enforcement agents to keep the peace and secure the property. Civil Dkt. 29 at 19-25. However, as stated above, the civil court did not authorize free access to the premises by criminal investigators and certainly did not anticipate or authorize entry of criminal investigators entering the premises under the pretext that they were peacekeepers. In *Anderson,* the Ninth Circuit held that the Government's misuse of inventory procedures to gather evidence of crime without a warrant violated the Fourth Amendment. *Anderson,* at 600 (holding that totality of circumstances showed that "inventory" was nothing more than an excuse to "rummage" for evidence).

Simply stated, the USPIS knew that it needed a warrant and hoped that it could save itself time by walking into the premises with the FTC. The USPIS also knew that it could have, but did not attempt to secure a consent from Jason Cardiff (who

---

[4] It should be noted that the Receiver took copious notes of his interviews with various witnesses that were produced in discovery. **Ex. A,** Cochell Dec. at Ex. 15 (GOV005_00000038_0003.00002-03, 05, 07, 09-14).

DEFENDANT JASON CARDIFF'S MOTION TO SUPPRSS EVIDENCE FROM ILLEGAL SEARCHES AND SEIZURES

was present at the time of the entry/search) to search Redwood's premises and seize both company and Cardiff's personal property. For that matter, the USPIS did not secure either an oral or written consent-to-search form from the Receiver at the time of entering the premises on initial search.

**(2) The Second Search Violated the Fourth Amendment.**

A search, seizure and forensic imaging of Redwood's computers was conducted ten days after the October 12, 2018 entry was conducted. The alleged consent was obtained, but not in writing. The second search sought evidence identified by USPIS agents during their initial warrantless entry into Redwood's premises on October 12, 2018. As set out below, the seizure of the evidence is "fruit of the poisonous tree" because the agents learned of the existence and location of the evidence on premises and had already perused and rummaged through Redwood's computer system. *Wong Sun v. United States*, 371 U.S. 471, 485-486 (1963).

In a detailed report regarding the October 22, 2018 search of Redwood's premises, Inspector Reins-Jarin asserts that Mr. Kane consented to a search of Redwood's offices, but did not advise Mr. Kane that he had a constitutional right to refuse consent to a search of all Redwood's premises or that he could limit the scope of any search, particularly on electronic devices. Simply stated, to the extent that any consent was requested, the DOJ cannot establish that Mr. Kane fully understood he did not have to consent to a search of Redwoods by criminal investigators. Two and one half years later, in July 2021, the UPSPIS obtained a written consent-to-search form from the Receiver to search and seize evidence from a Redwood storage locker. Exhibit A, Cochell Dec, Ex. 13. On one hand, the USPIS did not ask for consent at the time of initial entry/search or the October 22, 2018 (second) search, but then provided the Receiver with a consent-to-search form explaining rights against non-

consensual searches over two (2) years after the October 12 unlawful search.[5] Clearly, the agent could have presented consent forms to search the premises and asked the Receiver to sign, but <u>chose</u> not to follow this procedure when seeking consent to search.

The initial entry of the premises on October 12, 2018 were made under the auspices of a civil receivership order that allowed access to the Receiver and the FTC, but not part of an official law enforcement investigation. The USPIS's presence and actions on the premises, without a warrant, probable cause, or valid consent, cannot be justified under the guise of a court's administrative authority. The Ninth Circuit's en banc ruling in *United States v. Anderson* further supports this position, emphasizing that searches must be conducted for legitimate administrative purposes and may not be used as a pretext for gathering evidence of suspected criminal activity. *Id*. at 604.

While receiverships may be an appropriate tool in civil cases, the Courts cannot allow Government agents to manipulate and game the system in the name of law enforcement. Such conduct undermines the rule of law and confidence in the administration of justice.

## IV.    THE AUTHORITY OF A RECEIVER IS LIMITED TO THAT GRANTED BY THE COURT IN ITS RECEIVERSHIP ORDER. THE RECEIVER LACKED AUTHORITY TO WAIVE REDWOOD AND CARDIFF'S CONSTITUTIONAL RIGHTS.

A receiver is a creature of equity whose powers, while extraordinary, are limited by the district judge's concept of equity. *FTC v On Point Global LLC*, 2020 U.S. Dist. LEXIS 180255 *10 (S.D. Fla) citing *In re Wiand*, 2012 U.S. Dist. LEXIS 22667. A receiver receives his power and authority directly from the court and

---

[5] Regardless, this search was tainted by the initial illegality as well as the Receiver's lack of authority to waive Redwood and Cardiffs' constitutional rights.

DEFENDANT JASON CARDIFF'S MOTION TO SUPPRSS EVIDENCE FROM ILLEGAL SEARCHES AND SEIZURES

therefore is subject to the court's directions and orders in the discharge of her official duties. *SEC v. Elfindepan, S.A.* 169 F. Supp. 2d 420, 424 (M.D. N.C. 2001). As a creature of the court, a receiver has no powers except such as are conferred upon him by the order of his appointment and the course and practice of the court." *Booth v. Clark*, 58 U.S. 322, 331 (1854).

Once appointed, a receiver is a neutral officer of the Court. *Sterling v. Stewart*, 158 F.3d 1199, 1201 n.2 (11th Cir 1998). A receiver owes a "'fiduciary duty to the property under his care' and thus must 'protect and preserve' the receivership's assets 'for the benefit of the persons entitled to it.'" *On Point Global*, at *10-11, citing *SEC v. Schooler*, 2015 U.S.Dist. LEXIS 46870 *3 (S.D. Cal. 2015). There is no precedent to suggest that a receiver has the power to waive a receivership entity or civil defendant's rights under the Fourth Amendment. The power to authorize a search or seizure rests solely with the Court or, in a receivership with the ultimate owners of the property. U.S. Const. amend IV.

In other words, the Receiver has the authority and powers granted by the Court---no more, but no less.

## A. The Court's TRO and Preliminary Injunction

As noted by this Court its Order Denying Defendants Motion to Dismiss Indictment, the FTC requested the appointment of a temporary receiver over the corporate defendants and the Cardiffs' assets, arguing that "[a] neutral receiver would prevent further harm to consumers and would locate and secure assets and records without disrupting any legitimate business activity" and "also help assess the extent of the fraud, trace its proceeds, prepare an accounting, and make an independent report of Defendants' activities to the Court." Dkt. 79 at 3. The FTC also requested immediate access to the corporate defendants' business premises "to allow the receiver and the FTC to quickly and efficiently locate assets Defendants have wrongfully taken from consumers, identify possible additional defendants, and locate

and secure documents pertaining to Defendants' business." *Id.* The Receiver's authority, however, falls far short of waiving Redwood's and Cardiffs' Fourth Amendment rights and consenting to a search of the premises to law enforcement agents seeking evidence of criminal activity.

Section XVI of the TRO[6] directed and authorized the Receiver to:

A. Assume full control of the Receivership Entities and remove any director or officer or agent from control of, or participation in the affairs of the Receivership Entity;

B. Take exclusive control and possession of all Assets and Documents in the possession, custody or control of the Receivership Entities and the Cardiffs;

C. Take exclusive control and possession of all Documents relating to banks, merchant banks, third party processors or other entities;

D. Conserve, hold, manage and prevent the loss of al Receivership Property, and perform all acts necessary or advisable to preserve the value of those assets, among other things;

E. Take possession of various pieces of jewelry;

F. Obtain, conserve, hold, manage and prevent the loss of all Documents of the Receivership Entities, and perform all acts necessary or advisable to preserve such Documents;…

I. Take all steps necessary to secure and take exclusive custody of each locate from which the Receivership Entities operate their business… Law enforcement personnel, including, but not limited to police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security…

L. Prevent the inequitable distribution of Assets and determine, adjust and protect the interest of consumers who have transacted business with the Receivership Entities;

---

[6] The Preliminary Injunction is virtually identical to the provisions of the TRO.

COCHELL
LAW FIRM

DEFENDANT JASON CARDIFF'S MOTION TO SUPPRSS EVIDENCE FROM ILLEGAL SEARCHES AND SEIZURES

N. Institute, compromise, adjust, appear in, intervene in, defend, dispose of, or otherwise become party to any legal action in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Entities, or to carry out the Receiver's mandate under this Order, including, but not limited to, actions challenging fraudulent or voidable transfers;

R.    Allow Plaintiffs' representatives, agents and assistants reasonable access to the premises of the Receivership Entities, or any other premises where the Receivership Entities conduct business. The purpose of this access shall be to inspect and copy any and all books, records, Documents, accounts, and other property owned by, or in the possession of, the Receivership Entities or their agents. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access;

S. Allow Defendants' representatives, agents, and assistants, as well as Defendants and their representatives reasonable access to all Documents in the possession, custody, or control of the Receivership Entities;

T. Cooperate with reasonable requests for information or assistance from any state or federal civil or criminal law enforcement agency;

Section XVII similarly requires third parties in possession of property or records of the Receivership Entities or the Cardiff's' Assets to transfer receivership property to the Receiver.

To summarize the above, the terms "control", "custody" and "possession," as used in the Orders refer to and simply refer to the Receiver's authority to *manage* and *preserve* the assets and documents of the Receiver for future action by the Court. The Receiver's duties are administrative in nature and do not allow the Receiver to waive Redwood's and Cardiff's' constitutional rights under the Fourth Amendment <u>Neither the TRO nor the Preliminary Injunction transferred *ownership* of any of the Assets or Documents to the Receiver.</u> At all relevant times before, during and after the receivership, Jason Cardiff remained Redwood's majority shareholder and owner.

DEFENDANT JASON CARDIFF'S MOTION TO SUPPRSS EVIDENCE FROM ILLEGAL SEARCHES AND SEIZURES

As set out in *Chong, Jones* and *Jardines*, consent could not be granted by a receiver because he was not the property owner.

### B. The Receiver Lacked Authority to Consent to the Search

Even if the Government asserts that the Receiver was authorized to consent to search by the USPIS based on the receivership order. The order, at Section XVI(T) allowed "reasonable cooperation" with the authorities, but did not define what constituted reasonable cooperation.  The term "reasonably "cooperate" is ambiguous and does not mean that the Receiver was allowed to waive *constitutional rights*. Indeed, the Receiver could have "cooperated" with law enforcement by advising them to get a search warrant or to make a request for documents <u>after</u> the Receiver had an opportunity to review the documents.  Indeed, that is exactly what the USPIS did when it obtained documents through its July 24, 2018 Request for Non-public Materials and Certification of Intent to Maintain Confidentiality and to Restrict Use to Law Enforcement Purposes" pursuant to 16 C.F.R. § 4.11(c).

When interpreting court orders, courts often look to the plain language of the order first and consider the intent underlying the Order. This approach is similar to interpreting contracts, where the plain language and intent of the parties are primary considerations.  *See United States v. Talley Def. Sys.*, 393 F. Supp. 2d 964  (applying contract interpretation principles to a negotiated settlement agreement). *Westlands Water Dist. v. United States*, 153 F. Supp. 2d 1133.  (applying contract interpretation principles to a federal consent decree).

Unlike *Talley* and *Westlands,* however, neither the TRO nor the Preliminary Injunction were <u>negotiated</u>.  Instead, the FTC proposed, and the Court adopted the language of these two orders.  The Court must interpret the language based on its plain meaning.  Moreover, the Court should construe the Order strictly against the Government because this was not a negotiated or consent order.  *See United States v. Seckinger,* 397 U.S. 203, 216 (1970) (Court held that a construction contract was

ambiguous and should be construed less favorably to the government, which drafted the clause). As in *Talley* and *Westlands*, any ambiguity in a court order must be construed against the DOJ. *See United States v. Anderson*, 970 F.2d 602, 607 (9th Cir. 1992), *amended*, 990 F.2d 1163 (1993) (construing ambiguities in favor of the defendant [in a negotiated plea agreement] makes sense in light of the parties respective bargaining power, and expertise).

This conclusion is amplified by the fact that the reasonable cooperation provision follows Sections XVI(R) and XVI(S), which plainly allows the FTC and Defendant free access to documents and things for copying and use in civil proceedings. The FTC theoretically could have, but did not draft a provision that allowed the Receiver to exercise Redwood's and Cardiffs' constitutional rights. However, such a provision would have been contrary to the stated purpose of an receivership-- to maintain, preserve and protect the estate and take actions *in the best interest of the ultimate owners of the property*, whether they be consumers, creditors or the defendant-owners in the receivership action.

Viewing the Orders as a whole, and construing the ambiguous language of the order against the Government, the Orders provide specifically for the FTC and the Defendants to have free access to documents within the custody, possession or control of the Receiver, but did not intend that Receiver be granted authority to waive Redwood's and Cardiffs' rights under the Fourth amendment. If the Court intended to grant the Receiver the authority to provide law enforcement free access to Redwood's and Cardiffs' documents and things, it would have said so and provided a similar "free access" provision to "any and all law enforcement agencies" in the Orders. The FTC did not propose such receivership powers for the receiver, presumably because it knew that a receivership cannot be used as a discovery device for criminal investigators.

## V.    <u>**THE EVIDENCE TO BE SUPPRESSED.**</u>

The exclusionary rule bars the introduction of physical, tangible materials as well as statements made by a defendant as fruits of official illegality. *Wong Sun v. United States*, at 485-486. As set out above, there is no evidence the Receiver granted consent to the USPIS on October 12${}^{th}$, 2018. Further the Receiver lacked the authority to consent and waive Redwood's and Cardiffs' right to object to the October 12, 2018 search and seizures and subsequent searches and seizures conducted by the UPSIS or DOJ. Evidence that was subsequently obtained after the initial illegality is tainted where, as in this case, the evidence was "come at by exploitation of the initial illegality or by means distinguishable to be purged of the primary taint." *Segura v. United States*, 468 U.S. 796, 805 (1984). Even *assuming* that the Receiver had authority to consent (which he did not), the subsequent evidence should be suppressed because the primary purpose of the entry by USPIS agents on October 12, 2018 was in bad faith to obtain evidence for criminal prosecution.

The scope of the search on October 12, 2018 included a search of Redwood physical files, search of computers, ipads and other devices. Exhibit B, Cardiff Dec. ¶ 5, Ex. 1. There was no limit to what was searched, by whom or under what circumstances. There is no record of this search or the fruits of the search. This was nothing more than an extension of the USPIS' four-month criminal investigation. The only reason the USPIS asked to return on October 22, 2018 was to engage in and duplicate the same search and to forensically image the computers discovered and searched on October 12, 2018.

Suppression should be granted where, as here, the second search on October 22, 2018 was based on the illegal observations and actions taken by the October 12, 2018 search and was nothing more than an extension of the original illegality, Moreover, the USPIS engaged in flagrant misconduct, could have applied for a warrant but engaged in the pretense of acting as "peacekeepers." The underlying

COCHELL
LAW FIRM

purpose of the exclusionary rule is to deter misconduct by law enforcement agents. Coming to court and representing that USPIS agents were simply engaged in a "peacekeeping mission" undermines the purpose of the exclusionary rule. Indeed, allowing admission of such evidence will simply encourage law enforcement agencies to conduct warrantless searches under the guise of peacekeeping. *See United States v. Grey*, 959 F.3d 1166, 1183 (9th Cir. 2020) (affirming suppression where, in assisting in executing an administrative warrant, the agents primary purpose was to gather evidence of crime); *United States v. McCarty, 648 F3d 820, 834 (9th Cir. 2011)* (explaining that a valid administrative warrant does not "provide[] carte blanche to the searching officers to snoop to their hearts' content without regard to the scope of their actions").

The specific documents and things produced by the Government, and which should be suppressed and excluded from evidence at trial are listed in correspondence dated April 18, 2024 from the Government regarding production of documents. Exhibit A, Cochell Dec. ¶ 21-22, Ex. 20. The Court should suppress testimony of witnesses whose testimony was obtained as fruits of the initial search and seizure and subsequent searches and seizures, including but not limited to Danielle Cadiz, Diane Melendez, Julie Green, and Gus Navarro.

## VI.    <u>CONCLUSION</u>

The evidence obtained by the United States Postal Inspection Service (USPIS) on October 12, 2018 and subsequent searches by the Government must be suppressed in its entirety.

It is indisputable that the USPIS agents were present on the premises solely at the invitation of the Federal Trade Commission (FTC), which lacked the authority to invite them under the Temporary Restraining Order (TRO). The TRO did not grant the Receiver authority to authorize law enforcement to consent to a warrantless search.

The court-appointed Receiver, who was on the premises with Cardiff, did not document in any way that the USPIS was given permission to search or seize anything, nor did he indicate any awareness of the USPIS's true purpose that day. The Receiver's Initial Report dated November 1, 2018, carefully detailed the events of October 12, 2018.  Notably, the Receiver made no reference to the USPIS's involvement, or granting USPIS a consent to search further underscoring the unauthorized nature of USPIS' actions.  Moreover, USPIS did not document its activities or identify who they talked to, and what they observed, which is contrary to its routine business practices. Cardiff was never served with a search warrant by the USPIS nor did he grant them access to his property. The USPIS could have, but chose not to ask Cardiff to consent to a search to Redwood's premises.

The USPIS's actions violated Redwood's and Cardiff's Fourth Amendment rights, as the warrantless search was conducted without his consent, without a valid warrant, and under the guise of a civil receivership that was administrative in nature, not criminal. The government's claim that the USPIS was merely "keeping the peace" is a transparent pretext for what was, in reality, a search designed to advance the USPIS's criminal investigation.

Finally, the Court did not transfer ownership of Redwood or the Cardiffs' property nor did it delegate the authority of a district court or pre-authorize the Receiver to waive constitutional rights.  The USPIS investigated for four months prior to the search and had every opportunity to obtain a warrant.  The Court should not allow law enforcement to avoid the warrant requirement to the Fourth Amendment simply because USPIS did not want to spend the time or effort to obtain a warrant from a neutral magistrate.  The USPIS searches violated the Fourth Amendment.

Accordingly, all evidence obtained as a result of the USPIS's warrantless searches, along with any related evidence or testimony derived from those searches,

23

1   should be suppressed.

2        WHEREFORE, Defendant Jason Cardiff requests this Honorable Court grant

3   his Motion to Suppress Evidence.

4                                    Respectfully submitted,

5

6                                    */s/ Stephen R. Cochell*
                                     Stephen R. Cochell
7                                    SBN: 24044255
                                     The Cochell Law Firm, P.C.
8                                    5850 San Felipe, Ste 500
                                     Houston, Texas 77057
9                                    (346) 800-3500 – Telephone
10                                   srcochell@gmail.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24

DEFENDANT JASON CARDIFF'S MOTION TO SUPPRSS EVIDENCE FROM ILLEGAL SEARCHES AND SEIZURES

1

## SERVICE LIST

2   I HEREBY DECLARE THAT THE FOLLOWING COUNSEL HAVE BEEN
    SERVED WITH THIS DEFENDANT JASON CARDIFF'S NOTICE OF MOTION
3   AND MOTION TO SUPPRESS EVIDENCE THROUGH THE COURT'S ECF OR
    NEXT GEN ELECTRONIC FILING SYSTEM:

4

5   E. Martin Estrada
    United States Attorney
    Mack E. Jenkins
6   Assistant United States Attorney Chief, Criminal Division
    Ranee A. Katzenstein
7   Assistant United States Attorney Chief, Criminal Division
    Valerie Makarewicz
8   Assistant United States Attorney Major Frauds Section
    1100 United States Courthouse
9   312 North Spring Street
    Los Angeles, CA 90012
10  Telephone: (213) 894-0756 Facsimile: (213) 894-6269
    E-mail: Valerie.Makarewicz@usdoj.gov
11
    Amanda Liskamm
12  Director, Consumer Protection Branch Manu J. Sebastian
    Brianna M. Gardner
13  Trial Attorneys
    Consumer Protection Branch
14  U.S. Department of Justice
    450 Fifth Street NW, Suite 6400 Washington, DC 20001
15  Telephone: (202) 514-0515 Facsimile: (202) 514-8742
    E-mail: Manu.J.Sebastian@usdoj.gov
16          Brianna.M.Gardner@usdoj.gov

17                                          */S/ Stephen R. Cochell*
                                            Stephen R. Cochell
18

19

20

21

22

23

24

25

26

27

28

COCHELL
LAW FIRM

25

DEFENDANT JASON CARDIFF'S MOTION TO SUPPRSS EVIDENCE FROM ILLEGAL SEARCHES AND
SEIZURES