AMANDA N. LISKAMM
Director, Consumer Protection Branch
MANU J. SEBASTIAN
SHEILA B. BERMAN
Trial Attorneys
U.S. Department of Justice
Consumer Protection Branch
    450 Fifth Street, NW, Suite 6400S
    Washington, D.C.  20001
    Telephone: (202) 514-0515
    Facsimile: (202) 514-8742
    Email:  Manu.J.Sebastian@usdoj.gov

E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
VALERIE MAKAREWICZ (Cal. Bar No. 229637)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0756
    Facsimile: (213) 894-6269
    E-mail:  Valerie.Makarewicz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>          v.<br><br>JASON EDWARD THOMAS CARDIFF,<br><br>       Defendant. | No. 5:23-CR-00021-JGB<br><br>**GOVERNMENT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO DEFENDANT'S MOTION TO SUPRESS**<br><br>Date:        October 21, 2024<br>Time:        2:00 p.m.<br>Courtroom:  1 |

    Plaintiff United States of America, by and through its counsel

of record, the United States Department of Justice Civil Division

Consumer Protection Branch and Trial Attorneys Manu J. Sebastian and

Sheila B. Berman, and the United States Attorney for the Central

1

District of California and Assistant United States Attorney Valerie L. Makarewicz, hereby submits this Opposition to Defendant's Motion to Suppress.


Dated: September 23, 2024                Respectfully submitted,


                                         AMANDA LISKAMM
                                         Director
                                         Consumer Protection Branch


                                         E. MARTIN ESTRADA
                                         United States Attorney


                                         ____/s/_____
                                         MANU J. SEBASTIAN
                                         SHEILA B. BERMAN
                                         Trial Attorneys

                                         VALERIE MAKAREWICZ
                                         Assistant United States Attorney


                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA

## TABLE OF CONTENTS

Page(s)

I.   INTRODUCTION..................................................1

II.  STATEMENT OF FACTS...........................................1

III. LEGAL STANDARDS & ARGUMENT...................................8

     A.   Defendant Had No Reasonable Expectation of Privacy
          Once the Court Appointed a Receiver in Response to
          Defendant's Misconduct..................................10

     B.   The Court Permitted Law Enforcement to Access the
          Redwood Premises on October 12,2018.....................11

     C.   The Receiver Consented to Searches and Seizures by Law
          Enforcement and Was Given the Authority By the Court
          to Do So................................................13

     D.   The Independent Source, Inevitable Discovery,
          Attenuation, and Good Faith Doctrines All Apply If the
          Court Determines that There Was Any Illegal Conduct by
          Law Enforcement.........................................16

          1.   The FTC Would Have Produced the Documents to DOJ
               Pursuant to Its Information Sharing Agreement.......17

          2.   Law Enforcement Would Have Inevitably Discovered
               the Fraudulent Conduct from the Public Record of
               the FTC Litigation.................................17

          3.   Attenuation........................................18

          4.   Law Enforcement Acted in Good Faith................19

III. CONCLUSION...................................................20

i

**TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*Birchfield v. North Dakota*,
  579 U.S. 438 (2016) ......................................... 9, 15

*Davis v. United States*,
  564 U.S. 229 (2011) ......................................... 19

*Hudson v. Michigan*,
  547 U.S. 586 (2006) ......................................... 9

*Katz v. United States*,
  389 U.S. 347 (1967) ......................................... 9

*Nix v. Williams*,
  467 U.S. 431 (1984) ......................................... 16, 17

*Porter v. Sabin*,
  149 U.S. 473 (1893) ......................................... 11

*Rakas v. Illinois*,
  439 U.S. 128 (1978) ......................................... 8, 11

*Riley v. California*,
  573 U.S. 373 (2014) ......................................... 8

*Schneckloth v. Bustamonte*,
  412 U.S. 218 (1973) ......................................... 13, 14

*Smith v. Maryland*,
  442 U.S. 735 (1979) ......................................... 8

*Thompson v. Phenix Ins. Co.*,
  136 U.S. 287 (1890) ......................................... 11

*United States v. Arreguin*,
  735 F.3d 1168 (9th Cir. 2013) ......................................... 9

*United States v. Basher*,
  629 F.3d 1161 (9th Cir. 2011) ......................................... 9, 15

*United States v. Castillo*,
  866 F.2d 1071 (9th Cir. 1988) ......................................... 9

*United States v. Gray*,
  751 F.2d 733 (5th Cir. 1985) ......................................... 10

ii

*United States v. Jacobsen,*
   466 U.S. 109 (1984) ........................................ 9, 11

*United States v. Job,*
   871 F.3d 852 (9th Cir. 2017) ................................. 9

*United States v. Madison,*
   226 F. App'x 535 (6th Cir. 2007) ............................ 14

*United States v. Payner,*
   447 U.S. 727 (1980) ......................................... 11

*United States v. Ramirez-Sandoval,*
   872 F.2d 1392 (9th Cir. 1989) ............................... 17

*United States v. Rosenow,*
   50 F.4th 715 (9th Cir. 2022) ................................. 9

*United States v. Ruiz,*
   428 F.3d 877 (9th Cir. 2005) ................................. 9

*United States v. Setser,*
   568 F.3d 482 (5th Cir. 2009) ................................ 14

*Utah v. Strieff,*
   579 U.S. 232 (2016) ................................. 17, 18, 19

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Defendant previously filed an unsuccessful 39-page motion to dismiss the indictment, or in the alternative, to suppress nearly all of the evidence gathered in the investigation, with over 1400 pages of declarations and exhibits. In denying the first motion, this Court was clear in determining that the "Receiver had the authority to permit [a] search." Dkt. No. 79 at 16. The Court also wrote,

> "[t]hough the Defendant contends that the Receiver complied with unreasonable requests and implores the Court to agree, he offers no legal authority supporting this characterization. This Court finds no reason to agree with Defendant's position given the broad authority granted to the Receiver by the court in the FTC Action and the obvious legitimacy of that proceeding."

Dkt. No. 79 at 16.

It is not clear why Defendant has filed this motion to suppress. This new filing contains no new information: it makes the same argument using the same exhibits and more of the same "self-servicing distinction[s]." *Id.* at 13, n. 4. Accordingly, the Court should reject Defendant's second bite of the apple and again deny Defendant's motion to suppress.

**II.   STATEMENT OF FACTS**

On August 11, 2017, the Federal Trade Commission ("FTC") served a Civil Investigative Demand ("CID") to Redwood Scientific Technologies, Inc. ("Redwood"), addressed to Defendant as Redwood's President and CEO. Dkt. No. 79 at 2 (citing *FTC v. Redwood Scientific Technologies, Inc.*, Case No. 2:17-cv-07921-SJO (C.D. Cal. 2017), Dkt. No.1). This CID required a response by September 6, 2017. *FTC v. Redwood*, Dkt.

1

1  No. 1 at 2:12-15. Redwood's counsel acknowledged receipt of the

2  CID on August 15, 2017. *Id.* at 4:7-10. However, Defendant not

3  only ignored the initial response deadline, but neglected to

4  meet three separate deadlines proposed by Redwood's own counsel

5  (October 5, 12, 19). *Id.* After repeated instances of non-

6  compliance, the FTC petitioned the District Court for an Order

7  Enforcing Civil Investigative Demand on October 30, 2017, as

8  "Redwood's failure to comply with the August 3, 2017, [sic] CID

9  has materially impeded the Commission's ongoing investigation."

10 *Id.* at 6.

11      On January 25, 2018, the District Court entered an order

12 compelling compliance with the CID and ordered production of

13 "information, documents, and tangible items responsive to the

14 CID on or before Friday, February 9, 2018" in response to the

15 parties' stipulation for such an order. *FTC v. Redwood*, Dkt. No.

16 17. Redwood again failed to meet the deadline and comply with

17 the Court's enforcement order. *FTC v. Redwood*, Dkt. No. 18.

18 Redwood's counsel claimed material was sent via FedEx but could

19 not provide the tracking number and then ignored further

20 communication from the FTC regarding compliance with the order.

21 *Id.*

22      On March 20, 2018, the Court ordered Redwood to show cause as to

23 why the Court should not find Redwood in contempt for failure to

24 comply with the Court's January 25 Order. *FTC v. Redwood*, Dkt. No.

25 20. Redwood sent materials to the FTC on March 22, 2018, and April 9,

26 2018, "representing that the productions represented full and

27 complete compliance with the CID." *FTC v. Redwood*, Dkt. No. 24.

28 Because the so-called complete production only included 26 documents

in the first production and 14 documents, plus a set of 41 consumer emails in the second production, the FTC contacted Redwood's counsel for the missing material *Id.* On April 16, 2018, Redwood's counsel claimed that the company had recently recovered its internal emails and would produce those emails to the FTC. *Id.* Redwood, however, continued to fail to fully comply with the CID for the next two months and the Court again ordered Redwood to turn over additional documentation to the FTC on June 12, 2018. *FTC v. Redwood*, Dkt. No. 29. Defendant continued to defy the CID and the Court orders and again produced limited documentation to the FTC. *FTC v. Redwood*, Dkt. Nos. 30-44. The material produced, however, provided enough evidence of Defendant's misconduct that the FTC determined a temporary restraining order was necessary.

In a memo dated August 21, 2018, the FTC notified USPIS that the FTC intended to file a complaint and *ex parte* temporary restraining order ("TRO") requesting the court appoint a receiver. Def. Supp. Mot. Ex. A-7. On October 3, 2018, the FTC lodged an action against, among others, Redwood, Defendant, and Defendant's wife under seal. *FTC v. Jason Cardiff, et al.*, Case No. 5:18-cv-02104-DMG (C.D. Cal. 2018), Dkt. No.1. Due to the Defendant's non-compliance with the CID and the court orders, and based on the Defendant's fraudulent conduct, the FTC also filed under seal an *ex parte* application for a temporary restraining order and order to show cause why a preliminary injunction should not issue. *Id.*, Dkt. No. 3. The evidence presented by the FTC not only indicated that the Defendant made unsubstantiated claims about the products he sold, but also, among other things, that he committed credit card fraud while being investigated by the FTC and even after the FTC moved to hold the Defendant in contempt. *Id.*,

Dkt. No. 5.

> Most brazenly, when Defendants decided earlier this year that they needed more money, they took the stored debit and credit card information of consumers who had made only a one-time purchase (i.e., a "straight" sale), and simply processed further charges on those cards – sometimes over a year after the consumer's purchase. Defendant's records show that Jason Cardiff directed his employees to initiate these charges, that Danielle Cadiz worked with employees to make it happen, and that Defendants successfully processed unauthorized charges for at least 1,893 consumers. Defendants chose to do this (January 22, 2018 – April 6, 2018) while the FTC's CID enforcement action was ongoing, and even continued after the Commission moved in March 2018 for Redwood to be held in contempt.

*Id.* at 9:4-14.

On October 5, 2018, and October 10, 2018, a USPIS postal inspector conducted surveillance of the Redwood business locations in preparation for the TRO. *Id.* at Ex. A-8. On October 5, 2018, the postal inspector walked through the publicly-accessible areas of the two office buildings to determine the layout of the buildings and to learn more about the number of employees that may be in the locations. *Id.* Her detailed Memo to File does not state that she attempted to gain access to the offices as the Defendant repeatedly contends. *Id.; see* Def. Supp. Mot. §6; *see also* Dkt. No. 45 at 6:21-22. Rather, the memo clearly states that she "conducted surveillance" by entering the publicly-accessible area of the office building to Suite 100 and observed the office door was closed. *Id.* Then, she left that building, walked over to the other building, and walked past Suites 115 and 118, where she saw an individual in the hallway. *Id.* On October 10, 2018, the postal inspector went back to the Redwood business locations and observed a Bentley belonging to the

4

1    Defendant's wife. *Id.* The postal inspector detailed the person and

2    the vehicle that she saw as she conducted surveillance of the

3    offices. *Id.*

4         The Court issued the temporary restraining order on October 10,

5    2018, and appointed Robb Evans & Associates, LLC. as the receiver

6    ("Receiver") to, among other things: (1) assume full control of the

7    Receivership Entities by removing, as the Receiver deems necessary or

8    advisable, persons associated with any Receivership Entity[1]; (2) take

9    exclusive custody, control, and possession of assets and documents

10   of, or in the possession, custody, or under the control of, any

11   Receivership Entity and assets of Jason Cardiff and Eunjung Cardiff;

12   (3) take exclusive custody, control, and possession of 26 valuable

13   articles, including, but not limited to, a $532,000 diamond ring and

14   a $102,076 diamond ring; and (4) take all steps necessary to secure

15   and take exclusive custody of each location from which the

16   Receivership Entities operate their business. *Id.*, Dkt. No. 29 at 19-

17   23. In securing and taking custody of the business locations, the

18   Receiver was permitted to require any persons present at the location

19   to leave and ensure that such persons were not removing from the

20   premises documents or assets of the Receivership Entities. *Id.* at

21

22        [1] The TRO defines "Receivership Entities" as the Corporate
     Defendants as well as any other entity that has conducted any
23   business related to Defendant's marketing and sale of dissolvable
     film strips and promotion of the Rengalife multilevel marketing
24   program, including receipt of Assets derived from any activity that
     is the subject of the Complaint in this matter, **and that the Receiver
25   determines is controlled or owned by any Defendant.**" *See* Def Supp.
     Mot. Ex. A-10 (emphasis added). "Corporate Defendants" is defined as
26   Redwood Scientific Technologies, Inc. (California), Redwood
     Scientific Technologies, Inc. (Nevada), Redwood Scientific
27   Technologies, Inc. (Delaware), Identify, LLC, Advanced Men's
     Institute Prolongz LLC, Run Away Products, LLC, and Carols Place
28   Limited Partnership, and each of their subsidiaries, affiliates,
     successors, and assigns. *Id.*

23:1-16. The Court explicitly allowed law enforcement personnel to "assist the Receiver in implementing these provisions in order to keep the peace and maintain security." *Id.* In addition, the Court authorized law enforcement to use "any necessary and reasonable force." *Id.*

On October 12, 2018, the Receiver, the FTC, USPIS postal inspectors, and local law enforcement officers met at the Upland Police Department to discuss the operation plan for the execution of the TRO ("immediate access") on the Receivership Entities and office locations. *See* Exhibit 1*, Decl. of USPIS Postal Inspector Jeffrey Hedrick*. Postal inspectors were asked to provide support for the receiver and the FTC and ensure their safety during the immediate access. *Id.* Once at the Receivership Entities' office locations, Brick Kane, President of the court-appointed Receiver, made entry first and was followed by the USPIS postal inspectors and the FTC employees. *Id.* Postal inspectors accompanied employees of the Receiver and the FTC employees through the various offices to provide security as the employees of the Receiver and FTC employees reviewed and collected documents and Kane interviewed the Receivership Entity employees. *Id.* Law enforcement did not conduct a search of the Redwood premises that day, nor did postal inspectors seize any material. *Id.*

On October 18, 2018, a USPIS postal inspector requested and received consent from the Receiver to enter the Receivership Entities business locations to review and collect evidence relating to suspected mail fraud. Def. Supp. Mot. Ex. A-12. Specifically, Kane consented to USPIS postal inspectors and forensic computer analysts inspecting the location, photocopying and/or photographing items, and

imaging computers. *Id.* Then, on October 22, 2018, Jacklin Dadbin, an employee of the Receiver, accompanied the USPIS team through the Receivership Entities' business locations and provided USPIS access to two of the Receivership Entities' computers, as well as some paper files. *Id.* Most of the material collected by USPIS that day pertained to People United for Christians ("PUFC"), a religious ministry that claimed Defendant was the "Master Prophet." *Id.; See Id.,* Ex. A-17 at 13. The Receiver determined that the "operations of [Redwood] and PUFC are intertwined and comingled" and as such, the material was turned over to USPIS by the Receiver. *Id.,* Ex. A-17 at 13. This is also evidenced in the Receiver's Employee Questionnaires and interview notes gathered from the Receivership Entities' employees that were present during the immediate access. *See* Def. Supp. Mot. A-15.

On May 26, 2020, the Receiver signed a privilege waiver related to the Receivership Entities. *Id.* On June 23, 2020, the Receiver provided DOJ with a Stored Communications Act Consent form agreeing to disclose all wire or electronic communications and all records or other information stored by any remote computer service or electronic communications service. *Id.* at A-16. Such consent granted law enforcement access to third-party stored data like the Receivership Entities' customer relationship management ("CRM") data held by Sticky.io formerly known as Limelight CRM. On August 18, 2020, the Receiver agreed to voluntarily produce a forensic image of the Receivership Entities' Google Suite Account and on August 26, 2020, the Receiver consented to voluntarily produce a copy of the Receivership Entities' QuickBooks data. Dkt. 45, Ex. 61 and 63.

On July 2, 2021, the Receiver granted USPIS employees permission to access a storage unit that contained material collected by the Receiver and review its content. *Id.* at Ex. A-11. The Receiver also consented to USPIS searching a computer that was in the Receivership Entities' Chief Operations Officer's ("COO") possession for evidence of mail and wire fraud. *Id.* The COO voluntarily turned the laptop over to USPIS on July 1, 2021, and she also signed a USPIS Consent to Search Electronic Devices form since she kept the computer for personal use for over three years after she left her employment. *Id.* On July 6, 2021, USPIS met with staff from the Receiver and was provided with a photo of the storage unit and the executed USPIS Consent to Search Electronic Devices form related to the COO's laptop. *Id.; See also Id.* at A-13. Then, Receiver employee Manny Chen accompanied USPIS to the storage unit and remained there as USPIS reviewed the various material in the unit. *Id.* at A-11. USPIS made notations regarding the material in the unit but did not document every single document nor did USPIS seize any material from the storage unit. *Id.*

## III. LEGAL STANDARDS & ARGUMENT

Defendant bears the burden to establish that his own Fourth Amendment rights were violated. *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978). Under the Supreme Court's two-part test, Defendant must establish that: (1) he had a subjective expectation of privacy in the area searched; and (2) that society is prepared to recognize that expectation of privacy as reasonable. *Smith v. Maryland*, 442 U.S. 735, 740 (1979). If Defendant does not establish both parts of the test, then a search did not occur.

8

1    Moreover, a warrantless search or seizure is reasonable if it
2  falls within a specific exception to the warrant requirement. *See*
3  *Riley v. California*, 573 U.S. 373, 382 (2014). The government bears
4  the burden of establishing that an exception applies. *United States*
5  *v. Job*, 871 F.3d 852, 860 (9th Cir. 2017). One such exception is
6  consent. It is well established law that a search to which an
7  individual consents is reasonable. *Katz v. United States*, 389 U.S.
8  347, 358 n.22 (1967). Law enforcement may obtain consent from the
9  owner or a third party with shared use and joint access to or control
10  over the searched area. *United States v. Arreguin*, 735 F.3d 1168,
11  1174 (9th Cir. 2013). Such consent may be express or implied.
12  *Birchfield v. North Dakota*, 579 U.S. 438, 476 (2016); *United States*
13  *v. Basher*, 629 F.3d 1161, 1167-68 (9th Cir. 2011). Consent may also
14  be verbal and does not need to be written. *United States v. Castillo*,
15  866 F.2d 1071, 1082 (9th Cir. 1988). An individual who law
16  enforcement reasonably believes has apparent authority may also
17  provide consent, even if the person does not actually have authority
18  to consent. *United States v. Ruiz*, 428 F.3d 877, 880-82 (9th Cir.
19  2005).

20    The Fourth Amendment only protects against unlawful government
21  action. *United States v. Jacobsen*, 466 U.S. 109, 113-14 (1984). The
22  Supreme Court has stressed that suppression of evidence should be
23  "our last resort, not our first impulse." *Hudson v. Michigan*, 547
24  U.S. 586, 591 (2006). Importantly, suppression is appropriate only if
25  a Fourth Amendment violation is the but-for cause of the government
26  obtaining the challenged evidence. *United States v. Rosenow*, 50 F.4th
27  715, 736-37 (9th Cir. 2022). Even if the Court determines that there
28  was a search or seizure that violates the Fourth Amendment, the

9

evidence may still be admitted under the following doctrines: (1) inevitable discovery; (2) independent source; (3) attenuation; and (4) good faith.

### A. Defendant Had No Reasonable Expectation of Privacy Once the Court Appointed a Receiver in Response to Defendant's Misconduct.

As this Court found, the Receiver was appointed "to ensure that the Defendant and his co-defendant wife could not continue their fraudulent behavior through their business during the pendency of the FTC Action." Dkt. No. 79 at 14. In the District Court's order appointing the Receiver, the Court found good cause existed to give the Receiver "exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, any Receivership Entity and all Assets of Jason Cardiff and Eunjung Cardiff." Dkt. No. 45, Ex. 13 at 4. Further, the Court granted the Receiver broad discretion to "[c]onserve, hold, manage, and prevent the loss of all Receivership Property, and perform all acts necessary or advisable to preserve the value of those Assets." Dkt. No. 45, Ex. 13, at 4, 18-20. The Court explicitly granted the Receiver "full powers" to effectuate the mandate by the Court, including, *inter alia*, allowing the FTC access to the premises of the Receivership Entities, giving the Receiver the ability to authorize inspection and copying of books, records, documents and other materials, and authorizing the Receiver to cooperate with "any state or federal civil or criminal law enforcement agency." Dkt. No. 45, Ex. 13, at 18-25.

Once custody, control, and possession of the assets and documents passed to the Receiver, Defendant no longer maintained a reasonable expectation that the Receivership Property would remain

10

private. *United States v. Gray*, 751 F.2d 733, 737 (5th Cir. 1985). Since a "defendant's Fourth Amendment rights are violated only when the challenged conduct invaded his legitimate expectation of privacy," Defendant's challenge to USPIS evidence collection while the Receiver was in place should fail. *United States v. Payner*, 447 U.S. 727, 743 (1980); *Rakas v. Illinois*, 439 U.S. 128, 143 (1978).

Moreover, the evidence obtained after the appointment of the Receiver does not constitute a "seizure" under settled law. "Seizure of property occurs when there is some meaningful interference with an individual's possessory interest in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). At the time of USPIS' presence at the Receivership Entity premises, Defendant did not have a present possessory interest in the property; rather, it was the court, through the Receiver, that retained the present possessory interest in the Receivership Property. *Thompson v. Phenix Ins. Co.*, 136 U.S. 287, 297 (1890); *see Porter v. Sabin*, 149 U.S. 473, 479 (1893) ("The possession of the receiver is the possession of the court; and the court itself holds and administers the estate through the receiver, as its officer, for the benefit of those whom the court shall ultimately adjudge to be entitled to it.").

**B.    The Court Permitted Law Enforcement to Access the Redwood Premises on October 12,2018.**

In its October 10, 2018 TRO, the Court explicitly permitted law enforcement to attend the immediate access conducted by the Receiver. The Court wrote, "Law enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security." Dkt. No. 107-1 at 61:11-14.

As Defendant acknowledges, Redwood Scientific Technologies Inc.'s business premises included three locations: 1) Suite 100 of 820 North Mountain Ave., Upland, CA 91786; 2) Suite 115 of 870 North Mountain Ave., Upland, CA 91786; and 3) Suite 118 of 870 North Mountain Ave, Upland, CA 91786. In addition, the FTC believed there would be 15-20 people working at the three business locations. Def. Supp. Mot. Ex. 7 at 27. The presence of six USPIS inspectors and two local law enforcement "to keep the peace and maintain security" of three locations with 15-20 people during the unannounced execution of a temporary restraining order is reasonable. Moreover, law enforcement did not "pick up and review documents, examine items, access computers, [or] move about without any oversight or limitations" as Defendant contends. Def. Supp. Mot. at 2:15-16. To the contrary, the Receiver made clear that law enforcement's role was to support to the Receiver, and law enforcement acted accordingly. *See* Ex. 1. In fact, the Receiver oversaw the entire event and led the entry into the premises. *Id.* Importantly, law enforcement never seized any material on October 12, 2018, as Defendant claims in another self-serving affidavit.[2] Def. Supp. Mot. Ex. B. ¶5, 9.

Defendant also makes numerous contradictory statements across his motions. First, he claimed the government and the court-appointed Receiver were engaged in a "years-long clandestine and joint criminal investigation." Dkt. No. 45 at 1:3-8. Now that he has lost that argument, Defendant claims, "the absence of any notes or

---

[2] The Memo to File that Defendant references is USPIS' review of items the Receiver collected and kept within a storage unit controlled by the Receiver. Def. Supp. Mot. Ex. B. ¶5. The Receiver provided USPIS access to this material for the first time on July 6, 2021, not during the October 12, 2018 immediate access as Defendant implies. *Id.; See* Def. Supp. Mot. Ex. A-11.

12

documentation is fatal to the idea that the initial entry or subsequent entry on October 22, 2018, by criminal law enforcement agents onto Redwood's premises was authorized by the Receiver or by a court." Def. Supp. Mot. at 13:5-8.

The contradictory statements are also found within Defendant's sworn declarations. In Defendant's April 8, 2024 Declaration, he claims that he "was unaware that [he] was under [this] federal criminal investigation during the pendency of the FTC Action." Dkt. No. 45-1 ¶15. However, his September 9, 2024 Declaration makes it clear that he was aware of a possible criminal investigation on October 12, 2018, when he saw "Upland Police Department and agents from [USPIS]" inside the Receivership Entity premises. Def. Supp. Mot. Ex. B. ¶4.

Law enforcement's presence at the immediate access was permitted by the Court; the Receiver was aware, consented, and provided instructions regarding their role; and law enforcement did not seize any material on October 12, 2018. Even if the Court determines that USPIS' security presence during the immediate access was a search, such a search was permitted because the Court authorized it in a temporary restraining order after a finding that Defendant had committed fraud. *See* Def. Supp. Mot. Ex. A-10.

**C. The Receiver Consented to Searches and Seizures by Law Enforcement and Was Given the Authority By the Court to Do So.**

"Consent searches are part of the standard investigatory techniques of law enforcement agencies." *Schneckloth v. Bustamonte*, 412 U.S. 218, 231 (1973). Such consent can be either express or implied. *Id.* at 227, 248. As this Court has already determined, the Receivers actions "comport with the court order in the FTC Action and

13

evidence nothing more than the Receiver discharging its obligations
to allow reasonable access to the Receivership entities' premises and
documents." Dkt. No. 79 at 16. Moreover, as Defendant admits in his
motion, the Receiver consented to both the October 22, 2018 seizure
by law enforcement and the July 6, 2021 search by law enforcement.
Def. Supp. Mot. ¶¶ 31, 35. However, contrary to Defendant's
assertions, law enforcement was not required to advise the Receiver
that it had a right to refuse to consent. Def. Supp. Mot. ¶ 30; *see
Bustamonte*, 412 U.S. at 231.

The Receiver was explicitly authorized to access and exert
control over all the assets and records of the Receivership Entities
and of Defendant, and to take any action which could have been taken
by any defendant with respect to those assets and records, which
included allowing or consenting to a search of the Receivership
Premises and/or copying or seizure of Receivership records. *See
United States v. Setser*, 568 F.3d 482, 491 (5th Cir. 2009) ("After
appointment, the receiver was 'vested with complete jurisdiction and
control' of the property and had the 'right to take possession' of
it.... The receiver was required to 'manage and operate the property
... in the same manner' as its original owner.... The receiver became
the possessor, and as such could consent to the search of the seized
documents."); *United States v. Madison*, 226 F. App'x 535, 542 (6th
Cir. 2007) (court ordered the receiver to "[t]ake exclusive custody,
control and possession of all ... effects, books and records of
account and other papers and property or interests owned or held by
the [companies] ... with full power to ... receive and take
possession of such receivership properties" and, thus, the receiver

14

1  exercised the [companies'] own authority, and had the authority to

2  consent to the FBI agent's search of the premises).

3      Brick Kane from the Receiver's office not only provided verbal

4  consent on behalf of the Receiver to USPIS agents, but also had a

5  representative from the Receiver accompany USPIS personnel each time

6  they entered the Receivership Entities' locations or viewed and/or

7  collected material from the Receivership Entities. *See* Def. Supp.

8  Mot. Ex. A-11 at 1 and Ex. A-12 at 1. Specifically, Kane accompanied

9  USPIS personnel on October 12, 2018, when the Receiver first took

10 control of the Receivership Entities' locations. *See* Ex. 1. Jacklin

11 Dadbin from the Receiver's office accompanied USPIS personnel on

12 October 22, 2018.[3] Def. Supp. Mot. Ex. A-12 at 1. Manny Chen from the

13 Receiver's office accompanied USPIS personnel on July 6, 2021. *Id.* at

14 Ex. A-11 at 1. Such consent is more than sufficient as the Fourth

15 Amendment does not require written documentation to evidence consent

16 as Defendant claims. *Birchfield v. North Dakota*, 579 U.S. at 476;

17 *United States v. Basher*, 629 F.3d at 1167-68.

18      In addition, in accordance with its responsibilities and duties,

19 the Receiver provided law enforcement with material that it

20 determined may be evidence of criminal activity after conducting

21 interviews with Defendant's employees. Dkt. No. 45, Ex. 14, p.12-24.

22 For example, during the immediate access, the Receiver found a room

23 _____

24      [3] Defendant claims "There is no record that the Receiver
actually gave consent for the October 22, 2018 search." Def. Supp.

25 Mot. ¶ 31. Statements like these are patently false as there is a
Memorandum of Activity that Defendant himself included in his motion

26 indicating that the Receiver gave consent. Def. Supp. Mot. Ex. A-12.
Further, as Defendant himself admits in both his motion and his

27 declaration, the Redwood premises were locked and the public had no
access. Def. Sup. Mot. Ex. B. ¶5. Accordingly, USPIS could not even

28 gain entry to the office location without a representative from the
Receiver consenting and allowing USPIS access to the premises.

1   with boxes containing material related to a mailing operation where

2   Defendant sent letters from a "Master Prophet" and collected over

3   $1,525,000 in donations. *Id.* The Receiver permitted, as the Order

4   appointing the Receiver required, law enforcement to return to the

5   office to take pictures, review the related material, and to make

6   copies of the related computers and documents. *See* Dkt. No. 45 at 8.

7   Later, the Receiver voluntarily provided to the Department of Justice

8   material from Redwood's Google Suites account and QuickBooks

9   financial software, as such material was evidence of possible

10  fraudulent activity which caused the court to appoint the Receiver in

11  the first place. *Id.* at 17.

12      The Court provided the Receiver with authority to consent to law

13  enforcement searches and seizures and the Receiver's consent is an

14  exception to the warrant requirement under the Fourth Amendment.

15  Accordingly, the material lawfully obtained by USPIS should not be

16  suppressed.

17      **D.   The Independent Source, Inevitable Discovery, Attenuation,
            and Good Faith Doctrines All Apply If the Court Determines**

18      **that There Was Any Illegal Conduct by Law Enforcement**

19      Even if the Court found that USPIS somehow conducted an unlawful

20  search of the Redwood premises when it accompanied the Receiver and

21  the FTC in the court-ordered immediate access, no evidence

22  subsequently collected in the government's investigation should be

23  suppressed. Multiple Fourth Amendment doctrines would apply to the

24  government's subsequent evidence collection in its investigation of

25  Defendant and his company.

26

27

28

### 1.    The FTC Would Have Produced the Documents to DOJ Pursuant to Its Information Sharing Agreement.

The independent source exception permits the admission of evidence that was discovered independently of a constitutional violation. *Nix v. Williams*, 467 U.S. 431, 443 (1984). Such evidence is not considered fruit of the poisonous tree because it was discovered through independent legal means, even if it was separately discovered through illegal conduct. *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1396 (9th Cir. 1989); *Utah v. Strieff*, 579 U.S. 232, 237 (2016).

Here, the FTC was permitted to collect records from the Receiver during the immediate access. Def. Supp. Mot. Ex. A-10. The information sharing agreement between the FTC and USPIS indicates that such material could be – and would have been – turned over to law enforcement. Def. Supp. Mot. Ex. A-2 and A-3. In addition, the separate information sharing agreement between the FTC and the Department of Justice indicates that the material collected by the FTC could also be turned over to the Department of Justice. Dkt. 45, Ex. 29-30. Accordingly, even if USPIS presence during the immediate access was considered an unlawful search, the USPIS did not seize any evidence during that immediate access and all information and material collected by the FTC could be turned over to both the USPIS and the Department of Justice through the information requests.

### 2.    Law Enforcement Would Have Inevitably Discovered the Fraudulent Conduct from the Public Record of the FTC Litigation.

The inevitable discovery exception permits the admission of evidence that ultimately or inevitably would have been discovered by lawful means. *Nix*, 467 U.S. at 444. The government must prove that

the relevant evidence would have been inevitably discovered by a preponderance of the evidence. *Id.*

Here, the FTC in fact shared voluminous evidence it obtained from Redwood with the Department of Justice. Moreover, the FTC's litigation against Defendant and his company had over 900 docket entries, many of which included the documents, information, and affidavits evidencing the conduct Defendant was charged with in the Indictment. *See generally FTC v. Cardiff*, *et al*. The Department of Justice would have inevitably discovered this material from its information sharing agreements with the FTC and from the public filings in the FTC litigation, regardless of USPIS presence at the immediate access. *Id.*

### 3.   Attenuation

The attenuation exception permits the admission of evidence when the connection between law enforcement's unlawful conduct and the challenged evidence is remote or has been interrupted by some intervening circumstance. *Utah v. Strieff*, 579 U.S. 232, 238 (2016). The Supreme Court has articulated three factors that are relevant to attenuation: (1) the temporal proximity between the unlawful conduct and the discovery of the evidence, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the misconduct. *Id.* at 239.

Defendant argues that law enforcement's presence at the October 12, 2018 immediate access taints the next four years of investigation, to the point where interviews conducted by the Department of Justice of the Receivership Entities' employees in late-2020 through mid-2021 should be suppressed. *See generally* Def. Supp. Mot. The breadth of Defendant's requested evidence suppression

1  highlights the absurdity of his argument and the fact that he is

2  seeking a second bite at the apple where this Court had already

3  rejected his request to suppress nearly all of the evidence collected

4  in the government's investigation of Defendant.

5      Law enforcement did not interview any employees during the

6  immediate access. Even if their presence during the immediate access

7  is considered a search, "substantial time elapse[d]" between the

8  alleged unlawful conduct and the discovery of evidence. *See Strieff*,

9  at 239. Also, the Department of Justice interviewed the Receivership

10  Entities' employees after many of their declarations and affidavits

11  were publicly filed in the FTC litigation. *See generally Redwood v.*

12  *Cardiff, et al*. The FTC litigation is an intervening circumstance

13  that would have brought the evidence to the Department of Justice's

14  attention.

15      Furthermore, law enforcement's presence at the Redwood premises

16  on October 12, 2018, provided them with no information regarding

17  Defendant's actions related to Counts 3 and 4 of the Indictment as it

18  relates to the destruction of documentation. Such information did not

19  come to light until the FTC interviewed Defendant's employees later.

20  In terms of flagrancy, law enforcement's mere presence at the Redwood

21  premises as per a Court order is in no way a flagrant violation of

22  law as such presence was explicitly permitted by the TRO.

23  Accordingly, each factor within the attenuation doctrine is met and

24  the motion to suppress should be denied.

25          4.   <u>Law Enforcement Acted in Good Faith</u>

26      The good faith exception permits the admission of evidence when

27  law enforcement acts with an objectively reasonable good faith belief

28  that their conduct is lawful. *Davis v. United States*, 564 U.S. 229,

238-39 (2011). This exception recognizes that the high cost of suppression is not warranted when law enforcement acts in good faith or their conduct is merely negligent. *Id.* at 238-39.

Here, the temporary restraining order appointing the receiver provided law enforcement a good faith basis to be in the Receivership Entities' premises during the October 12, 2018 immediate access.

## III. CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Suppress.