# EXHIBIT A

Stephen R. Cochell
Admitted Pro Hac Vice
*srcochell@gmail.com*
5850 San Felipe, Ste. 500
Houston Texas 77057
Telephone:(713) 436-8000
Facsimile: (213) 623-2000

Allan Grant (SBN#213658)
Grant's Law Firm
17351 Greentree Drive
Riverside, California 92503-6762
Telephone (888)937-7555
Facsimile (866)858-6637

Attorneys for Defendant
JASON EDWARD THOMAS CARDIFF

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JASON EDWARD THOMAS CARDIFF,<br><br>Defendant. | Case No. 5:23-CR-00021-JGB<br><br>**DECLARATION OF JASON CARDIFF IN SUPPORT OF MOTION TO DISMISS BASED ON DOUBLE JEOPARDY**<br><br>[*Filed concurrently with Notice of Motion and Motion to Dismiss Based on Double Jeopardy and [Proposed] Order*] |

COCHELL LAW FIRM

1

DECLARATION OF JASON CARDIFF IN SUPPORT OF MOTION TO DISMISS BASED ON DOUBLE JEOPARDY

## DECLARATION OF JASON CARDIFF

I, Jason Cardiff, declare as follows:

1. I am a party in the above-entitled action. I have personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify to the matters stated herein. I make this declaration in support of Jason Cardiff's Motion to Dismiss Based on Double Jeopardy.

2. This declaration is submitted under the protections of *Simmons v. United States*, 390 U.S. 377 (1968) and the United States Constitution. Pursuant to *Simmons* and my constitutional rights, I would object to the use of this declaration for any purpose beyond the Court's adjudication of my Motion to Dismiss Indictment with Prejudice.

3. I established Redwood Scientific Technologies in 2013. The Company offered TBX-FREE, a smoking cessation product, which was Redwood's most popular selling product. My wife and I invested virtually all our savings in Redwood. We did not take salaries but did receive expenses and medical insurance through the Company.

4. After the FTC started issuing CID's we substantially modified our website and advertising to eliminate any statements that might been considered deceptive or misleading about the products. Importantly, we decided to eliminate most of Redwood's staff and restructure the Company to discontinue retail sales and to become a distributor of Redwood products to other companies. At the time the receivership was established on October 10, 2018, Redwood had only three employees and I working for the company. Redwood's downsizing was outlined in the Receiver's initial report to the Court.

5. On October 10, 2018, the Government filed a Complaint and requested appointment of a Receiver for Redwood Scientific Technologies, Inc. ("Redwood") and for me and my wife, Eunjung Cardiff.

6. Some of the allegations raised by the FTC are identical to the allegations made by the Government in the Indictment.

    a. Count XI (Misrepresentation and Continuing Autoship Program) and Count XII (Unfairly Charging Consumers Without Authorization) and XIII (ROSCA)

    b. The Court made findings granting summary judgment in favor of the FTC based its contention that Redwood continued to process orders for customers without authorization. Dkt. 511 at 12-13, 24-25

    c. This conduct is precisely the conduct charged in Counts 1 and 2 of the Indictment.

7. On October 12, 2018, the Receiver seized Redwood and Cardiff's personal assets with approximately $3.5 million in cash. The pleadings indicate that the Receiver relied on Section 13(b) of the FTC Act as authority to seize my assets, including Redwood Scientific Technologies, Inc. ("Redwood"). The Receiver did not operate Redwood but decided to liquidate its assets.

8. The court appointed Receiver seized all my funds and assets and imposed a personal receivership on my wife and I. We were not provided a living allowance or medical insurance for my family. For a period of time, of about 8 months, I was allowed a living allowance because of my employment with VPL Medical, Inc. but the allowance feel well short of my bills and did not allow me to pay credit cards, mortgage payments and homeowners' insurance and taxes nor was I allowed to pay my attorney for legal services. I was also denied expenses for internet and Cable Television.

9. The Receiver refused to pay the mortgage or routine maintenance on my home, which I bought in 2005. The Receiver refused to pay for any expenses for my then 6 year old daughter's care. We lived on credit cards. The Court later issued an order requiring me to sell my home as part of the receivership. Sale of the home was made after the Supreme Court rendered its decision in AMG.

10. The Receiver did not pay property taxes or insurance on my home for over four years. This neglect caused further financial burdens contributed to forced sale of the home.

11. From my review of receivership reports, the Receiver spent over $3.5 million on receivership fees which served no remedial purpose but simply caused financial devastation.

12. The effect of the receivership on my credit has been devastating. As a result of the receivership, my personal credit is limited and most lending institutions will not work with me. I have been made aware it can take over a decade to clear up my credit.

13. I objected to the FTC's authority under Section 13(b). I appealed the seizure of my assets to the Ninth Circuit Court of Appeals.

14. After the *AMG* decision was handed down by the Supreme Court on April 21, 2021, the Ninth Circuit Court of Appeals issued an order reversing the receivership and remanding the case to the district court for further proceedings.

15. On or about January 2023, the Department of Justice obtained an indictment for Access Device Fraud and Aggravated Identity Theft that mirrored factual allegations made by the FTC.

16. I understand that the trial court believed it had authority to appoint a receiver and denied various motions seeking living expenses and our objections to the Receiver's actions. However, in light of *AMG*, the legislative history described by my counsel in this motion, and the Ninth Circuit's decision on the VPL cases, it is clear to me that the trial court never had authority to impose a receivership over me and my wife, and that the FTC was never authorized to obtain a receivership over me and my assets.

17. The financial actions taken—including receiver's fees, asset seizures, and the forced sale of my family home—were all conducted in the absence of <u>legitimate authority</u>. This rendered them not only legally baseless but also *inherently* punitive, as

clear to me that the trial court never had authority to impose a receivership over me and my wife, and that the FTC was never authorized to obtain a receivership over me and my assets.

17. The financial actions taken—including receiver's fees, asset seizures, and the forced sale of my family home—were all conducted in the absence of legitimate authority. This rendered them not only legally baseless but also *inherently punitive*, as they deprived me and my family of essential financial resources without legitimate legal authority. For these and other reasons set out in my attorney's motion and supporting memorandum, I believe that the FTC's actions were taken to punish me and other individuals and businesses that they sued under Section 13(b).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 12/2/2024 day of 12/2/2024, 2024, at Dublin Ireland.

_____
Jason Cardiff