AMANDA N. LISKAMM
Director, Consumer Protection Branch
MANU J. SEBASTIAN
Trial Attorney
U.S. Department of Justice
Consumer Protection Branch
    450 Fifth Street, NW, Suite 6400S
    Washington, D.C.  20001
    Telephone: (202) 514-0515
    Facsimile: (202) 514-8742
    Email:  Manu.J.Sebastian@usdoj.gov

E. MARTIN ESTRADA
United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
VALERIE MAKAREWICZ (Cal. Bar No. 229637)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0756
    Facsimile: (213) 894-6269
    E-mail:    Valerie.Makarewicz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>            v.<br><br>JASON EDWARD THOMAS CARDIFF,<br><br>        Defendant. | No. 5:23-CR-00021-JGB<br><br>**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS 3 AND 4 OF THE INDICTMENT**<br><br>Date:        January 13, 2025<br>Time:        2:00 p.m.<br>Courtroom:    1 |

Plaintiff United States of America, by and through its counsel of record, the Consumer Protection Branch of the United States Department of Justice and Trial Attorney Manu J. Sebastian, and the United States Attorney for the Central District of California and

1

Assistant United States Attorney Valerie L. Makarewicz, hereby submits this Opposition to Defendant's Motion to Dismiss Counts 3 and 4 of the Indictment.


Dated December 23, 2024:            Respectfully submitted,


                                    AMANDA N. LISKAMM
                                    Director
                                    Consumer Protection Branch

                                    E. MARTIN ESTRADA
                                    United States Attorney


                                    _____/s/_____
                                    MANU J. SEBASTIAN
                                    Trial Attorney
                                    VALERIE L. MAKAREWICZ
                                    Assistant United States Attorney


                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION...................................................1

II.  STATEMENT OF FACTS............................................3

III. LEGAL STANDARDS..............................................9

    A.   Rule 12(b) Motions.......................................9

    B.   The existence of a "nexus" between the obstructive act
        and an official proceeding is a question of fact for
        the jury...............................................11

IV.  Argument.....................................................13

    A.   Defendant's Motion Should Be Denied.....................13

    B.   The CID, the enforcement proceeding regarding the CID,
        and the FTC's lawsuit are all official proceedings.......14

        1.   The CID itself was an official proceeding as it
            was before a Federal Government agency which is
            authorized by law..................................15

        2.   The CID enforcement proceeding was also an
            official proceeding before a judge in the United
            States District Court for the Central District of
            California.........................................17

        3.   The FTC's *Ex Parte* Application for a TRO began a
            third foreseeable official proceeding...............19

III. CONCLUSION...................................................21

i

1

# TABLE OF AUTHORITIES

2

### FEDERAL CASES

3

4
Anderson LLP v. United States,
544 U.S. 696 (2005) ............................................. 11

5

6
Seila Law LLC v. Consumer Fin. Prot. Bureau,
591 U.S. 197 (2020) ............................................. 16

7
United States v. Aguilar,
515 U.S. 593 (1995) ............................................. 11

8

9
United States v. Barletta,
644 F.2d 50 (1st Cir. 1981) ..................................... 10

10

11
United States v. Black,
469 F. Supp. 2d 513 (N.D. Ill. 2006) ........................... 12

12

13
United States v. Boren,
278 F.3d 911 (9th Cir. 2002) ................................... 9

14
United States v. Brimager,
No.13-CR-02381 JM, 2014 WL 1515867 (S.D. Cal. Apr. 17, 2014) ..... 13

15

16
United States v. Buckley,
689 F.2d 893 (9th Cir. 1982) ................................... 9

17

18
United States v. Caicedo,
47 F.3d 370 (9th Cir. 1995) .................................... 9

19
United States v. Cervantes,
No. 16-10508, 2021 WL 2666684 (9th Cir. June 29, 2021) ....... 17, 20

20

21
United States v. Erikson,
561 F.3d 1150 (10th Cir. 2009) ................................. 16

22

23
United States v. Ermoian,
752 F.3d 1165 (9th Cir. 2013) .................................. 15

24
United States v. Jensen,
93 F.3d 667 (9th Cir. 1996) .................................... 9

25

26
United States v. Jones,
542 F.2d 661 (6th Cir. 1976) ................................... 10

27
United States v. Meza,
No. 15CR3175 JM, 2017 WL 1371102 (S.D. Cal. Apr. 7, 2017), aff'd,
800 F. App'x 463 (9th Cir. 2020) .............................. 12

28

United States v. Moyer,
  726 F. Supp. 2d 498 (M.D. Pa. 2010) ............................. 12

United States v. Nukida,
  8F.3d 665 (9th Cir. 1993) .................................... 1, 10

United States v. Orrock,
  No. 216CR00111JADCWH, 2018 WL 7254703 (D. Nev. Dec. 3, 2018),
  report and recommendation adopted, No. 2:16-CR-0111-JAD-CWH, 2019
  WL 187866 (D. Nev. Jan. 14, 2019) ............................... 12

United States v. Quattrone,
  441 F.3d 153 (2d Cir. 2006) ..................................... 16

United States v. Ramos,
  537 F.3d 439 (5th Cir. 2008) .................................... 15

United States v. Rand,
  No. 3:10-CR-182-RJC-DSC, 2011 WL 4498866 (W.D.N.C. July 27, 2011),
  report and recommendation adopted, No. 3:10-CR-182, 2011 WL 4498845
  (W.D.N.C. Sept. 27, 2011) ....................................... 12

United States v. Rasheed,
  663 F.2d 843 (9th Cir. 1981) .................................... 16

United States v. Ring,
  628 F. Supp. 2d 195 (D.D.C. 2009) ............................... 12

United States v. Schafer,
  625 F.3d 629 (9th Cir. 2010) .................................... 11

United States v. Shortt Accountancy Corp.,
  785 F.2d 1448 (9th Cir. 1986) ............................... 10, 11

United States v. Smith,
  866 F.2d 1092 (9th Cir. 1989) ................................... 10

United States v. Snyder,
  428 F.2d 520 (9th Cir. 1970) .................................... 11

United States v. Thordarson,
  646 F.2d 1323 (9th Cir. 1981)) ................................... 9

United States v. Triumph Capital Group,
  260 F.Supp.2d 470 (D. Conn. 2003) ............................... 13

United States v. Williams,
  644 F.2d 950 (2nd Cir. 1981) .................................... 10

S<span>TATUTES</span>

15 U.S.C. §
     45.............................................................. 19
     52.............................................................. 19
     53............................................................... 8
     53(b).......................................................... 20
     1693-1693r...................................................... 8
     8401-05......................................................... 8

18 U.S.C. §
     1028A(a)(1)-(2)................................................. 8
     1029(a)......................................................... 8
     1512...................................................... 1, 8, 12
     1515(a)(1)................................................. 15, 17


R<span>EGULATIONS</span>

16 C.F.R. § 310.4(b)(1)(v)........................................... 8

R<span>ULES</span>

Fed. R. Crim. P. 7.................................................... 1

Fed. R. Crim. P. 12(b)(3)............................................ 9

Page(s)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Defendant's Motion to Dismiss Counts 3 and 4 of the Indictment should be denied because it does not raise an issue that is properly heard under Rule 12(b) of the Federal Rules of Criminal Procedure. The Indictment in this case properly charges Defendant with two counts of witness tampering, in violation of 18 U.S.C. § 1512(b)(2)(B). Although Defendant states that his motion is based on a defect in the indictment and the failure to state an offense, he fails to establish that the indictment does not meet the requirements of Fed. R. Crim. P. 7 or that the allegations in the indictment do not state an offense. Instead, Defendant raises a factual dispute about whether Defendant's obstructive conduct had a nexus to an official proceeding. That determination is properly decided by the jury at trial. A Rule 12(b) motion to dismiss is not a proper way to raise a factual defense. United States v. Nukida, 8F.3d 665, 669 (9th Cir. 1993) (cleaned up).

Even if the Court decides to consider Defendant's claim at this stage, the Indictment clearly points to proceedings that the jury may decide are official proceedings for purposes of the tampering statute. The Indictment alleges that Defendant corruptly persuaded two individuals to destroy documents "with the intent to impair the integrity and availability of the objects for use in official proceedings, namely civil and administrative proceedings before the United States District Court for the Central District of California and the United States Federal Trade Commission." As explained below, Defendant's company received a civil investigative demand (CID), which is an official proceeding before the FTC. When his company did

1

1    not comply, the FTC filed an enforcement action in this Court to

2    force his company to comply, which is also an official proceeding.

3    While the enforcement action was pending, Defendant engaged in the

4    criminal conduct alleged in Counts 3 and 4. The FTC then sued

5    Defendant in this Court, another official proceeding that was

6    foreseeable to Defendant when he received the FTC's CID.

7         Defendant focuses solely on the lawsuit the FTC filed against

8    him, ignoring that both the CID and the FTC's enforcement proceeding

9    are official proceedings. But Defendant's argument contradicts his

10   own admission on the second page of the motion that there were

11   "proceedings filed by the [Federal Trade Commission] to compel

12   compliance with the [civil investigative demand]." Def. Mot. at 2:7-

13   8. He also completely disregards the fact that his timeline of events

14   references the docket entries of the enforcement action, an official

15   proceeding in this Court. Id. at 4-5.

16        Importantly, Defendant neglects to include in his timeline that

17   he stipulated to an order compelling production of documents related

18   to the CID within this official court proceeding, was compelled by

19   Judge Otero to produce such documents, and subsequently instructed

20   his staff to withhold and destroy those same documents that were the

21   subject of the order to compel rather than producing them as the

22   Court ordered him to. See Federal Trade Commission v. Redwood

23   Scientific Technologies, Case No. 2:17-cv-07921 (C.D. Ca.).

24   /

25   /

26   /

27   /

28   /

1    **II.    STATEMENT OF FACTS**

2        On August 8, 2017, the Federal Trade Commission ("FTC") issued a

3    Civil Investigative Demand ("CID"), signed by FTC Commissioner

4    Terrell McSweeny, one of five FTC Commissioners nominated by the

5    President and confirmed by the Senate, to Defendant's company,

6    Redwood Scientific Technologies, Inc. ("Redwood"), directed to the

7    attention of Defendant, "Jason Cardiff, President and Chief Executive

8    Officer." Def. Mot. Ex. 1-1. This 18-page compulsory legal demand

9    listed the FTC Matter as No. 1723117 and required Redwood to respond

10   by September 6, 2017, with, among other things, answers to

11   interrogatories and documents responsive to the requests contained

12   therein. Id. Defendant's company, however, failed to comply with the

13   CID.

14       On October 30, 2017, the FTC filed a Petition For an Order

15   Enforcing Civil Investigative Demand in the United States District

16   Court for the Central District of California. FTC v. Redwood, Case

17   No. 2:17-cv-07921 (C.D. Ca.), Dkt. 1 ("hereinafter FTC v. Redwood").

18   The FTC also filed a Memorandum of Points and Authorities to support

19   the petition. Id. at Dkt. 2.

20       On November 1, 2017, the case was assigned to District Judge

21   Percy Anderson and Magistrate Judge Alicia G. Rosenberg. Id. at Dkt.

22   6. On November 21, 2017, the case was transferred to Judge S. James

23   Otero and Magistrate Judge Paul L. Abrams, as it was related to

24   another case against Redwood, Massachusetts Medical Society v.

25   Redwood Scientific Technologies Corporation, Case No. 2:17-cv-0338-

26   SJO-PLA, (C.D. Ca). Id. at Dkt. 8. On November 27, 2017, Judge Otero

27   entered an Initial Standing Order providing the parties with

28   information on the case and the rules that govern it. Id. at Dkt. 9-

3

1    10.

2        On January 16, 2018, Judge Otero entered an Order to Show Cause

3    setting a hearing date for January 29, 2018. Id. at Dkt. 12. The

4    relevant documents (including the initial standing order) were served

5    on Green, the attorney for Defendant's company, who had been

6    communicating with the FTC since the issuance of the CID. Id. at Dkt.

7    13.

8        On January 24, 2018, Defendant's company, along with the FTC,

9    filed a stipulation for an order to compel compliance with the CID

10   and vacating the show cause hearing. Id. at Dkt. 16.

11       On January 25, 2018, pursuant to the parties' stipulation, Judge

12   Otero entered an Order Compelling Compliance with Civil Investigative

13   Demand and Vacating Hearing. Id. at Dkt. 17. This order required

14   Redwood to produce material responsive to the CID by February 9,

15   2018. Id.

16       Defendant's company again failed to produce documents. On

17   February 26, 2018, the FTC filed a status report informing the court

18   of such and on March 5, 2018, the FTC filed an application for an

19   order to show cause why Redwood should not be held in contempt. Id.

20   at Dkt. 18-19.

21       On March 6, 2018, Judge Otero issued another Order to Show Cause

22   directing Redwood to show cause as to why it should not be held in

23   contempt and setting a hearing date of April 9, 2018. Id. at Dkt. 20.

24   The relevant documentation was served on Green shortly thereafter.

25   Id. at Dkt. 21. On March 20, 2018, another Order to Show Cause was

26   entered by Judge Otero moving the hearing date to April 23, 2018. Id.

27   at Dkt. 22. The relevant documentation was served on Green by email.

28   Defendant was also personally served and served by Fed Ex. Id. at

                                        4

1   Dkt. 23.

2        By April 17, 2018, Defendant's company had only produced a total

3   of 81 documents to the FTC. Id. at Dkt. 24. Only one email exchange

4   was produced to the FTC. Id. The FTC filed a reply in support of

5   their application for an order to show cause informing the Court that

6   the Defendant's company continued to be noncompliant with the CID and

7   the order compelling compliance. Id. On April 23, 2018, the Court

8   held a Show Cause hearing where Green represented to the Court that

9   all of the documents Redwood was compelled to produce would be turned

10  over by May 25, 2018. Id. at Dkt. 25-26. The Court set a new Show

11  Cause hearing for May 29, 2018. Id. at Dkt. 25.

12       On April 27, 2018, the FTC provided a comprehensive 7-page

13  search term list that would assist Redwood in searching Defendant's

14  and his employees' emails for documents responsive to the CID. Id. at

15  Dkt. 26-3. Defendant received that document from Green and forwarded

16  it to Danielle Walker (formerly known as Danielle Cadiz), Redwood's

17  Director of Operations. See Ex. 1, April 27, 2018 Search Term Email.

18       Unbeknownst to the Court and the FTC, while this litigation was

19  occurring over Redwood's compliance with the CID, the Defendant

20  instructed his staff to destroy documents responsive to the CID and

21  impede the ongoing court proceeding and the FTC's investigation.

22  Defendant emailed his staff on April 30, 2018, instructing them that

23  they were "in the drivers [sic] seat" when it came to the documents

24  the company produced and subsequently instructed his staff to use the

25  search terms provided by the FTC to destroy documents responsive to

26  the CID. See Ex. 2, April 30, 2018 Production Email; see also Ex. 3,

27  Dec'l of Danielle Walker, Redwood Director of Operations, FTC v.

28  Jason Cardiff, No. 5:18-cv-02104-DMG-PLA (C.D. Cal.), Dkt. 424-1 ¶19.

1    On May 22, 2018, the FTC filed another status report with the

2    Court informing it of Redwood's noncompliance. FTC v. Redwood, Dkt.

3    26. During an April 19, 2018 conference call, Green identified other

4    sources of responsive material, including a Google Drive account, a

5    web-based customer relationship management database called

6    "Limelight," 10 individual workstations, and individual Google email

7    accounts. Id. Green also informed the FTC by email on April 22 that

8    Redwood retained Lighthouse eDiscovery to assist in the document

9    production effort. Id. Redwood, however, continued to fail to produce

10   the required documents. Id. The FTC informed the Court that this

11   continued failure to comply with the CID impeded the FTC's official

12   investigation. Id.

13    At the Show Cause hearing on May 29, 2018, Green informed the

14   Court that Redwood would produce the remaining material they were

15   compelled to produce by June 13, 2018. Id. at Dkt. 28. The Court set

16   the next Show Cause Hearing for June 14, 2018. Id.

17    On June 12, 2018, Judge Otero entered an Order requiring Redwood

18   to take additional steps to provide the documents from the additional

19   sources Green previously identified. Id. at Dkt. 29. On June 13,

20   2018, Green filed a request for extra time to comply with the June

21   12th order and Judge Otero denied the request. Id. at Dkt. 30, 32.

22    On July 13, 2018, the FTC filed a status report informing the

23   Court that Defendant's company continued to fail to comply with the

24   previous court orders compelling compliance. Id. at Dkt. 37.

25    On August 2, 2018, the FTC filed another status report informing

26   the Court that Defendant's company had not resolved any of the issues

27   reported in the July 13, 2018 status report and that Redwood

28   continued to fail to comply with the previous court orders compelling

6

1   compliance. Id. at Dkt. 39.

2       On August 29, 2018, the Court scheduled a status conference for

3   September 10, 2018. Id. at Dkt. 40. Redwood's counsel did not appear

4   on September 10, 2018, and the Court continued the matter to

5   September 11, 2018. Id. at Dkt. 41. Redwood's counsel was unavailable

6   for the September 11, 2018 hearing so the hearing was continued to

7   September 17, 2018. Id. at Dkt. 42-43. After conferring with counsel

8   on September 17, another hearing was then set for October 22, 2018.

9   Id. at Dkt. 43.

10      According to the FTC, following the September 17 hearing,

11  Redwood's counsel provided supplemental responses to the CID's

12  document requests and interrogatory responses on September 24, 2018.

13  Id. at Dkt. 44. Redwood, however, continued to fail to produce

14  "updated information about sales, refunds, and consumer complaints to

15  the date of final and complete production as required by the CID."

16  Id.

17      On October 3, 2018, the FTC filed a sealed Ex Parte Application

18  for a Temporary Restraining Order against the Defendant and his

19  companies in another action before Judge Otero. FTC v. Cardiff, et

20  al., Case No. 5:18-cv-02104 (C.D. Ca.). Dkt. 1. The FTC also filed a

21  sealed Complaint for Permanent Injunction and Other Relief. Id. at

22  Dkt. 2.

23      Finding evidence that Defendant violated the Federal Trade

24  Commission Act ("FTCA"), on October 10, 2018, the Court granted the

25  FTC's request for a Temporary Restraining Order, appointed a

26  Receiver, and permitted the FTC and Receiver "immediate access" to

27  Defendant's business premises. Id. at Dkt. 3. On October 12, 2018,

28  the FTC and Receiver executed the immediate access. Id. at Dkt. 52.

1    That same day, the FTC filed a status report in <u>FTC v. Redwood</u>

2    informing the Court that Redwood provided supplemental responses to

3    the CID's document requests and interrogatories on September 24,

4    2018. Dkt. 44. The FTC informed the court that material responsive to

5    the CID was still missing and that Green had advised the FTC that the

6    remaining material was being compiled. <u>Id.</u>

7    On October 18, 2018, the parties filed a joint stipulation to

8    dismiss the CID enforcement action and on October 19, 2018, Judge

9    Otero ordered the action be dismissed without prejudice. <u>Id.</u> at Dkt.

10    45- 46.

11    The Court in <u>FTC v. Jason Cardiff, et al.</u>, on October 9, 2020,

12    granted summary judgement on 16 different counts: 13 violations of

13    the FTCA, 15 U.S.C. § 53, and violations of the Restore Online

14    Shoppers' Confidence Act("ROSCA"), 15 U.S.C. §§ 8401-05, the

15    Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r, and

16    the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.4(b)(1)(v).

17    Dkt. 511.

18    On March 1, 2022, the Court entered a permanent injunction

19    against Defendant, his wife, and all their related companies

20    prohibiting Defendant from continuing his fraudulent behavior. <u>Id.</u> at

21    Dkt. 705-706.

22    On January 31, 2023, a federal grand jury sitting in the Central

23    District of California returned and filed the Indictment against

24    Defendant, charging him with access device fraud in violation of 18

25    U.S.C.§§ 1029(a) Sections 5 and 2; aggravated identity theft in

26    violation of 18 U.S.C. §§ 1028A(a)(1)-(2); and two counts of witness

27    tampering in violation of 18 U.S.C. § 1512(b)(2)(B). <u>Indictment</u>, Dkt.

28    1.

1  **III. LEGAL STANDARDS**

2      **A.     Rule 12(b) Motions**

3      Federal Rule of Criminal Procedure 12(b)(3) specifies that the

4  following defenses, objections, and requests must be raised in a

5  pretrial motion: (A) a defect in instituting the prosecution; (B) a

6  defect in the indictment or information; (C) suppression of evidence;

7  (D) severance of charges or defendants under Rule 14; and (E)

8  discovery under Rule 16. The basis for the motion must be reasonably

9  available and the motion must be determined without a trial on the

10  merits. Id. A permissible pretrial motion arguing a defect in the

11  indictment or information includes: (i) joining two or more offenses

12  in the same count; (ii) charging the same offense in more than one

13  count; (iii) lack of specificity; (iv) improper joinder; and (v)

14  failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B).

15      In ruling on a pre-trial motion to dismiss counts in an

16  indictment for failure to state an offense, "the court is bound by

17  the four corners of the indictment." United States v. Boren, 278 F.3d

18  911, 914 (9th Cir. 2002) (citing United States v. Jensen, 93 F.3d

19  667, 669 (9th Cir. 1996); United States v. Caicedo, 47 F.3d 370, 371

20  (9th Cir. 1995); United States v. Buckley, 689 F.2d 893, 897 (9th

21  Cir. 1982); United States v. Thordarson, 646 F.2d 1323, 1337 n. 25

22  (9th Cir. 1981)). "[T]he court must accept the truth of the

23  allegations in the indictment" as the "indictment either states an

24  offense or it doesn't." Id. (internal citations removed). A motion to

25  dismiss the counts of an indictment "cannot be used as a device for

26  summary trial of the evidence." Id. (internal citations and

27  quotations removed).

28

1    "Most defenses. . . require factual determinations that the jury

2    should make, rendering pretrial disposition inappropriate." United

3    States v. Smith, 866 F.2d 1092, 1096 n.5 (9th Cir. 1989). The

4    district court may make preliminary findings of fact if necessary to

5    decide the questions of law presented "so long as the court's finding

6    on the motion do not invade the province of the ultimate finder of

7    fact." United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452

8    (9th Cir. 1986) (quoting United States v. Jones, 542 F.2d 661, 664

9    (6th Cir. 1976) (footnote omitted)). "The district court must decide

10   the issue raised in a pretrial motion before trial if it is entirely

11   segregable from the evidence to be presented at trial." Id. (quoting

12   United States v. Barletta, 644 F.2d 50, 57-58 (1st Cir. 1981). If the

13   pretrial claim is "substantially founded upon and intertwined with

14   evidence concerning the alleged offense, the motion falls within the

15   province of the ultimate finder of fact" and the jury must be allowed

16   to make such a finding. Id. (quoting United States v. Williams, 644

17   F.2d 950, 952-53 (2nd Cir. 1981). If the issue raised is not

18   "entirely segregable from the evidence presented at trial, but also

19   does not require review of a substantial portion of that evidence,"

20   discretion lies with the court to defer decision. Id. (citing

21   Barletta, 644 F.2d at 58).

22       A Rule 12(b) motion to dismiss, however, is not a proper way to

23   raise a factual defense. United States v. Nukida, 8F.3d 665, 669 (9th

24   Cir. 1993)(citing United States v. Smith, 866 F.2d 1092, 1096 n.3

25   (9th Cir. 1989)("Rule 12(b) motions are appropriate to consider such

26   matters as former jeopardy, former conviction, former acquittal,

27   statute of limitations, immunity, and lack of jurisdiction," not a

28   factual defense)(internal quotations omitted); United States v.

1    Snyder, 428 F.2d 520, 522 (9th Cir. 1970), cert. denied, 400 U.S.

2    903, 27 L. Ed. 2d 139, 91 S. Ct. 139 (1970); see also United States

3    v. Schafer, 625 F.3d 629, 636 (9th Cir. 2010). If a "pretrial motion

4    raises factual questions associated with the validity of the defense,

5    the district court cannot make those determinations." Schafer, 625

6    F.3d at 636 (citing Shortt Accountancy Corp., 785 F.2d at 1452).

**B.    The existence of a "nexus" between the obstructive act and an official proceeding is a question of fact for the jury.**

Pursuant to the statute charged in Counts 3 and 4, 18 U.S.C. § 1512(b)(2)(B),

> Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, with intent to cause or induce any person to alter, destroy mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceedings shall be fined under this title or imprisoned not more than 20 years, or both.

There must be a "nexus" – the obstructive act must have a relationship in time, causation, or logic - with the official proceeding. United States v. Aguilar, 515 U.S. 593, 599-600 (1995); Arthur Anderson LLP v. United States, 544 U.S. 696, 708 (2005). A person lacking knowledge that his actions are likely to affect an official proceeding lacks the requisite intent to obstruct. Aguilar, 515 U.S. at 599. A conviction, however, is proper if interference with the official proceeding is the natural and probable effect of the defendant's conduct. Id. An official proceeding need not be pending or about to be instituted at the time of the offense.[1] 18 U.S.C. § 1512(f)(1).

---

[1] Defendant's claim that the government must prove "that there was an official proceeding pending at the time of the alleged destruction of documents" is wrong and is exactly the opposite of
*(footnote cont'd on next page)*

1    While the Government must ultimately prove the existence of a

2  nexus as described in Aguilar and Andersen, it is a question of fact

3  for the jury, not the court in a pretrial motion. United States v.

4  Meza, No. 15CR3175 JM, 2017 WL 1371102, *4 (S.D. Cal. Apr. 7, 2017),

5  aff'd, 800 F. App'x 463 (9th Cir. 2020). The Supreme Court's "nexus"

6  requirement for certain obstruction statutes is a matter of proof,

7  rather than a pretrial pleading and should not be a basis for

8  dismissal of an obstruction count. United States v. Orrock, No.

9  216CR00111JADCWH, 2018 WL 7254703, *2 (D. Nev. Dec. 3, 2018), report

10  and recommendation adopted, No. 2:16-CR-0111-JAD-CWH, 2019 WL 187866

11  (D. Nev. Jan. 14, 2019)(citing United States v. Meza, 2017 WL 1371102

12  at *4-*5); see also United States v. Ring, 628 F. Supp. 2d 195, 224

13  (D.D.C. 2009)(holding that the nexus requirement is a jury question);

14  United States v. Moyer, 726 F. Supp. 2d 498, 510-11 (M.D. Pa. 2010)

15  (nexus is an element which must only be proven to the jury beyond a

16  reasonable doubt); United States v. Rand, No. 3:10-CR-182-RJC-DSC,

17  2011 WL 4498866, *3 (W.D.N.C. July 27, 2011), report and

18  recommendation adopted, No. 3:10-CR-182, 2011 WL 4498845 (W.D.N.C.

19  Sept. 27, 2011) ("Numerous courts have held that while the Government

20  must prove a nexus between the defendant's conduct and an official

21  proceeding at trial, the Indictment need not allege any such nexus.";

22  United States v. Black, 469 F. Supp. 2d 513, 543 (N.D. Ill. 2006)("a

23  factual determination that the government cannot prove a nexus. . .

24  is a determination for the jury, not the Court"); United States v.

25  Triumph Capital Group, 260 F.Supp.2d 470, 475 (D. Conn. 2003)

26

27

28  what is written in the statute. Def. Mot. at 9:21-22 (internal
quotations omitted).

                                    12

(government need not allege nexus in indictment; nexus need only be established at trial).

A motion to dismiss focusing on a lack of nexus "essentially requires the court to make a factual determination best left for a jury, not the court." United States v. Brimager, No. 13-CR-02381 JM, 2014 WL 1515867, *5 (S.D. Cal. Apr. 17, 2014).

**IV.  Argument**

   **A.  Defendant's Motion Should Be Denied**

Defendant has improperly used a Rule 12(b) motion to dismiss to raise a factual defense to the charges in the Indictment that should be left to the trial jury to decide. Specifically, Defendant argues that Counts 3 and 4 should be dismissed because he does not believe there was a nexus between his obstructive act and an official proceeding. Def. Mot. at 3:18-22. Defendant fails to show, however, any deficiency in the "four corners of the indictment." See Boren, 278 F.3d at 914.

A defendant is guilty of obstruction of justice if he:

> knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, with intent to cause or induce any person to alter, destroy mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding.

18 U.S.C. § 1512(b)(2)(B). The Indictment charges:

> Between in or about April 2018 and May 2018, in Riverside County, within the Central District of California, and elsewhere, defendant JASON EDWARD THOMAS CARDIFF knowingly and corruptly persuaded another person, namely [person] to cause and induce [person] to alter, destroy, mutilate, and conceal an object, namely, e-mails and electronic records, with intent to impair the integrity and availability of the objects for use in official proceedings, namely, civil

13

and administrative proceedings before the United States District Court for the Central District of California and the United States Federal Trade Commission.

See Dkt. 1.

Counts 3 and 4 of the Indictment track the language in 18 U.S.C. § 1512 (b)(2)(B). Defendant instructed his employees to destroy documents and records that the Court ordered him to produce in and for official proceedings. As described in more detail below, there were three different official proceedings that the Defendant obstructed: (1) the FTC CID; (2) the FTC CID enforcement action in this Court; and (3) the FTC lawsuit beginning with a temporary restraining order and ending with a permanent injunction and a summary judgement finding against Defendant, also in this Court. Counts 3 and 4 of the Indictment properly state the offenses. Defendant's argument as to the "nexus" of the obstructive act and the official proceedings is a finding of fact for the jury to decide.

Accordingly, the Defendant's Motion to Dismiss Counts 3 and 4 should be denied.

**B.    The CID, the enforcement proceeding regarding the CID, and the FTC's lawsuit are all official proceedings.**

Even if this Court were to determine that Defendant's Rule 12(b) motion to dismiss is a proper way to determine if the Indictment sufficiently alleges that Defendant obstructed an official proceeding, then the Motion to Dismiss Counts 3 and 4 should be denied because the CID, the enforcement proceeding regarding the CID, and the FTC's lawsuit are all official proceedings.

14

1            1.   The CID itself was an official proceeding as it was
2                  before a Federal Government agency which is authorized
                by law.

3    Under 18 U.S.C § 1515(a)(1)(C), an "official proceeding"

4    includes "a proceeding before a Federal Government agency which is

5    authorized by law." 18 U.S.C § 1515(a)(1). In analyzing the meaning

6    of an "official proceeding," the Ninth Circuit has determined that

7    the term "proceeding" connotes some type of formal hearing. United

8    States v. Ermoian, 752 F.3d 1165, 1170 (9th Cir. 2013). The Court

9    also determined that the phrase "before a Federal Government agency"

10    suggested an appearance in front of the agency sitting as a tribunal;

11    it implies that an official proceeding involves some formal

12    convocation of the agency in which parties are directed to appear,

13    instead of any informal investigation conducted by any member of the

14    agency. Id. The Ninth Circuit also found the Fifth Circuit's

15    interpretation in United States v. Ramos to be compelling. Id. at

16    1171 n.5. Specifically, the Fifth Circuit found that "official

17    proceeding is consistently used throughout § 1512 in a manner that

18    contemplates a formal environment in which persons are called to

19    appear **or produce documents**." United States v. Ramos, 537 F.3d 439,

20    463 (5th Cir. 2008) (internal quotations omitted) (emphasis added).

21    An "informal investigation, in its most preliminary stages is not an

22    official proceeding." Id.

23    Here, the CID issued by the FTC was a formal demand to produce

24    documents and answer interrogatories pursuant to the FTCA and signed

25    by FTC Commissioner Terrell McSweeny. Def. Mot. Ex. 1-1. Commissioner

26    McSweeny was one of five Commissioners nominated by the President and

27

28

confirmed by the Senate.[2] The CID specified two other individuals the FTC designated as the Records Custodian and Deputy Records Custodian for the specific matter concerning the Defendant and his company and instructed Defendant and his company to produce the relevant material to those individuals. Def. Mot. Ex. 1-1. The CID also listed an attorney whom the FTC designated as Commission Counsel for the matter. Id. The CID was accompanied by a cover letter and a resolution, listing all five Commissioners, describing the nature and scope of the investigation, both of which were signed by Donald Clark, the Secretary of the FTC, and a CID Schedule detailing the steps the Defendant and his company would need to take to comply with the CID. Id. The entire CID package of documents totaled 18 pages which included "22 interrogatories and 16 document requests," many of which had subparts, illustrating that the FTC had already conducted a considerable amount of investigation into the Defendant and his company prior to issuing the CID. Def. Mot. at 9:9, Ex. 1-1.

A CID is essentially a subpoena. Seila Law LLC v. Consumer Fin. Prot. Bureau, 591 U.S. 197, 197 (2020). An obstruction violation occurs when the defendant orders the destruction or concealment of documents he was ordered to produce. United States v. Rasheed, 663 F.2d 843, 853 (9th Cir. 1981); United States v. Erikson, 561 F.3d 1150, 159-160 (10th Cir. 2009); United States v. Quattrone, 441 F.3d 153, 170-71 (2d Cir. 2006). Defendant's company was also represented by attorney Green at the time of the document destruction. The Court

---

[2] Commissioners, Federal Trade Commission available at https://www.ftc.gov/about-ftc/commissioners-staff/commissioners (last visited Dec. 20, 2024). Each Commissioner serves a seven-year term and no more than three Commissioners can be of the same political party. Id. The President chooses one Commissioner to act as Chair. Id.

1    may therefore infer that Defendant had knowledge of the importance of

2    turning over these documents and that destruction of these documents

3    was likely to affect the official proceeding because he was actively

4    represented by counsel. <u>United States v. Cervantes,</u> No. 16-10508,

5    2021 WL 2666684 (9th Cir. June 29, 2021).

6       The CID was an official proceeding, authorized by law, before a

7    Federal Government agency. After significant investigation by FTC

8    staff, the investigation was presented to one of five FTC

9    Commissioners, who reviewed the matter and signed the CID itself.

10    Def. Mot. Ex. 1-1. The 18-page CID package illustrated the complex

11    investigation that the FTC conducted prior to the issuance of the CID

12    and the CID itself formally demanded several specific documents,

13    answers to specific questions, and other material from the

14    Defendant's company. Instead, upon receiving the CID, Defendant knew

15    that he was compelled to produce documents that would incriminate him

16    so instructed his staff to destroy the responsive documents. Ex. 3,

17    ¶19.

18       Consequently, there was a nexus between Defendant's obstructive

19    acts and an official proceeding before the FTC.

20             2.    <u>The CID enforcement proceeding was also an official</u>

                        <u>proceeding before a judge in the United States</u>

21                         <u>District Court for the Central District of California.</u>

22       The plain language of 18 U.S.C. § 1515 (a)(1)(A) defines an

23    official proceeding to include "a proceeding before a judge or court

24    of the United States . . ."

25       On October 30, 2017, the FTC filed a Petition for an Order

26    Enforcing Civil Investigative Demand and a Memorandum of Points and

27    Authorities in support of the petition in this Court. <u>FTC v. Redwood</u>,

28    Dkts. 1-2. The case was assigned to Judge Percy Anderson first, then

transferred to Judge S. James Otero because the enforcement action
was related to another lawsuit filed in May of 2017 against Defendant
and his company.[3] Dkt. 5.

By January 16, 2018, Defendant's company still had not produced
any documents responsive to the CID. Judge Otero entered an Order to
Show Cause, which was served on Redwood's attorney, Green. FTC v.
Redwood, Dkts. 12-13. To prevent being held in contempt, Defendant's
company stipulated with the FTC to have the Court enter an order
compelling compliance with the CID and vacating the show cause
hearing. Id. at Dkt. 16. Judge Otero then entered an Order Compelling
Compliance with the Civil Investigative Demand and Vacating Hearing
on January 25, 2018. Id. at Dkt. 17. Defendant's company was ordered
to, among other things:

> comply fully with the Civil Investigative Demand (CID)
> issued by the Federal Trade Commission on August 3, 2017,
> and produce the information, documents, and tangible
> items responsive to the CID on or before Friday, February
> 9, 2018.

Id.

Defendant's company, however, failed to comply with the court
order and he was personally served notice of another show cause
hearing. Id. at Dkt. 23-4. Shortly thereafter, Defendant instructed
his staff to use a list of search terms the FTC provided to withhold
and destroy documents he was compelled to produce. See Ex. 1 and 2;
see also Ex. 3 ¶19.

Counts 3 and 4 of the Indictment allege that Defendant
instructed his staff to destroy documents that were directly

---

[3] Some of the documents demanded by the CID related to the
claims alleged in this suit where Defendant made deceptive and false
claims regarding his products, including those related to the New
England Journal of Medicine conducting medical testing and endorsing
his products. Def. Mot. Ex. 1-1.

responsive to the CID and which, pursuant to the CID, his company was

required to produce to the FTC. These documents were physical and

tangible material subject to the court order unlike in Aguilar, where

the defendant was accused of withholding information from a field

agent that could potentially testify before a grand jury. Aguilar,

515 U.S., 600. The destruction of documents in this case was not

related to documents destroyed prior to the receipt of a legal demand

like in Anderson. Anderson, 544 U.S. at 702. Unlike Defendant, the

defendants in Anderson stopped destroying documents once they

received a legal demand for the documents. Id. Here, the Indictment

alleges that, months after receiving the FTC's CID and after the FTC

had filed an enforcement action in this Court seeking to enforce the

CID, Defendant ordered his employees to destroy documents that were

the subject of an official proceeding in this Court in which this

Court specifically ordered Defendant to produce responsive documents.

Therefore, there was a nexus between Defendant's obstructive

acts and an official proceeding before this Court.

### 3. The FTC's *Ex Parte* Application for a TRO began a third foreseeable official proceeding.

Defendant admits that he had knowledge of an additional future

official proceeding when the CID notified him that the documents

demanded by the CID were to determine "[w]hether Commission action to

obtain monetary relief would be in the public interest." Def. Mot. at

4:24, Ex. 1-1 at 7. The CID also provided citations to specific

sections of the FTCA, "Sections 5 and 12 of the FTC Act, 15 U.S.C.

§§ 45 and 52." Id. Ex. 1-1 at 7. These statutes notified Defendant

that documents turned over in response to the CID that evidence

violations of the FTCA could result in the FTC filing a temporary

1    restraining order or preliminary injunction, which is exactly what

2    was done here. See 15 U.S.C. § 53(b).

3        Defendant's company was represented by Green within a month of

4    the CID being issued in August 2017. The Court may therefore assume

5    that Defendant had knowledge of the FTC's investigation and

6    litigation processes, the importance of turning over these documents,

7    and the possibility of future litigation if the documents evidenced

8    violations of the FTCA. United States v. Cervantes, No. 16-10508,

9    2021 WL 2666684(9th Cir. June 29, 2021).

10       The FTC filed an enforcement action in October 2017, within two

11   months of issuing the CID, then received an Order Compelling

12   Compliance with the CID in January 2018, and thereafter, filed

13   multiple motions in the enforcement proceeding to force Defendant's

14   compliance with the CID and the Order. The Defendant spent over a

15   year defiantly avoiding compliance. In October 2018, the FTC filed a

16   lawsuit requesting a temporary restraining order, which resulted in a

17   permanent injunction in favor of the FTC.

18       Defendant's claim that the FTC lawsuit in October 2018 was not

19   foreseeable to him when he instructed his employees to destroy the

20   documents in April or May of 2018 is not credible. Def. Mot. at 9:17-

21   19. In addition to all of the other notice to Defendant of potential

22   litigation in the CID itself and in the litigation over the CID,

23   Defendant's act of ordering his employees to destroy documents

24   demanded by the CID and specifically connected to the search term

25   list provided by the FTC illustrated his knowledge that incriminating

26   documents could be used against him in the future official proceeding

27   described both in the CID itself and in the provisions of the FTCA

28   that the CID cited. Defendant instructed his employees to destroy the

documents so that they could not be used against him in the

foreseeable future litigation.

Thus, there was a nexus between Defendant's obstructive acts and

a foreseeable future official proceeding.

**III. CONCLUSION**

A Rule 12(b) motion to dismiss is not a proper way to raise a

factual defense. The government also presented three different

official proceedings that Defendant obstructed when he ordered his

employees to destroy documents legally demanded by the FTC. For the

foregoing reasons, the Court should deny Defendant's Motion to

Dismiss Counts 3 and 4 of the Indictment.