AMANDA N. LISKAMM
Director, Consumer Protection Branch
MANU J. SEBASTIAN
Trial Attorney
U.S. Department of Justice
Consumer Protection Branch
    450 Fifth Street, NW, Suite 6400S
    Washington, D.C.  20001
    Telephone: (202) 514-0515
    Facsimile: (202) 514-8742
    Email:  Manu.J.Sebastian@usdoj.gov

E. MARTIN ESTRADA
United States Attorney
LINDSAY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
VALERIE MAKAREWICZ (Cal. Bar No. 229637)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0756
    Facsimile: (213) 894-6269
    E-mail:   Valerie.Makarewicz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>     Plaintiff, <br><br>       v. <br><br> JASON EDWARD THOMAS CARDIFF, <br><br>     Defendant. | No. 5:23-CR-00021-JGB <br><br> **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT BASED ON DOUBLE JEOPARDY; APPENDIX** <br><br> Date:        January 13, 2025 <br> Time:        2:00 p.m. <br> Courtroom:   1 |

     Plaintiff United States of America, by and through its counsel of record, the Consumer Protection Branch of the United States Department of Justice and Trial Attorney Manu J. Sebastian, and the

1

United States Attorney for the Central District of California and Assistant United States Attorney Valerie L. Makarewicz, hereby submits this Opposition, along with attached Appendix, to defendant's Motion to Dismiss Indictment Based on Double Jeopardy.

Dated: December 23, 2024                    Respectfully submitted,

                                            AMANDA N. LISKAMM
                                            Director
                                            Consumer Protection Branch

                                            E. MARTIN ESTRADA
                                            United States Attorney


                                            _____/s/_____
                                            VALERIE L. MAKAREWICZ
                                            Assistant United States Attorney
                                            MANU J. SEBASTIAN
                                            Trial Attorney

                                            Attorneys for Plaintiff
                                            UNITED STATES OF AMERICA

## **TABLE OF CONTENTS**

I.   INTRODUCTION..................................................1

II.  STATEMENT OF FACTS...........................................2

III. LEGAL STANDARDS..............................................5

     A.   Double Jeopardy.........................................5

     B.   The Hudson Inquiry......................................6

IV.  ARGUMENT.....................................................8

     A.   The Court should apply Hudson to analyze whether
          Double Jeopardy attaches to the FTC's civil lawsuit......10

          1.   Defendant Fails the 1st Prong of Hudson............16

          2.   Defendant Fails the 2nd Prong of Hudson............17

               a.   Pretrial receivership and asset freeze do
                    not amount to affirmative disability or
                    restraint......................................18

               b.   Neither receivership nor asset freeze are
                    punishments....................................21

               c.   Scienter is not required.......................22

               d.   Neither the receivership nor the asset
                    freeze were for the purposes of retribution
                    or deterrence..................................22

               e.   Defendant violated civil and criminal
                    statutes with the same conduct and was
                    charged with different offenses................23

               f.   The receivership and asset freeze were
                    rationally connected to protecting consumers
                    and preventing unjust enrichment...............24

               g.   The receivership and asset freeze were not
                    excessive in relation to the alternative
                    purpose of protecting consumers................24

     B.   Neither the Court nor the FTC violated the Doctrine of
          Separation of Powers....................................25

III. CONCLUSION...................................................25

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3

AMG Cap. Mgmt., LLC v. Fed. Trade Comm'n,
    593 U.S. 67 (2021) ................................................passim

4

Blockburger v. United States,
    284 U.S. 299 (1932) ................................................ 23

5

6

Breed v. Jones,
    421 U.S. 519 (1975) ................................................. 5

7

8

Fed. Trade Comm'n v. AMG Cap. Mgmt., LLC, 910 F.3d 417 (9th Cir.
    2018), rev'd and remanded sub nom. AMG Cap. Mgmt., LLC v. Fed.
    Trade Comm'n, 593 U.S. 67 (2021), and vacated sub nom. Fed. Trade
    Comm'n v. AMG Cap. Mgmt., LLC, 998 F.3d 897 (9th Cir. 2021) ...... 10

9

10

Fed. Trade Comm'n v. Amy Travel Serv., Inc., 875 F.2d 564 (7th Cir.
    1989), overruled by Fed. Trade Comm'n v. Credit Bureau Ctr., LLC,
    937 F.3d 764 (7th Cir. 2019) ................................... 13

11

12

Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.,
    423 F.3d 627 (7th Cir. 2005) ................................... 22

13

14

Fed. Trade Comm'n v. Credit Bureau Ctr., LLC,
    81 F.4th 710 (7th Cir. 2023) ........................... 11, 12, 13

15

16

Fed. Trade Comm'n v. Credit Bureau Ctr., LLC,
    937 F.3d 764 (7th Cir. 2019) ............................... 11, 13

17

18

Fed. Trade Comm'n v. Credit Bureau Ctr., LLC, No. 17 C 194, 2021 WL
    4146884 (N.D. Ill. Sept. 13, 2021), aff'd, 81 F.4th 710 (7th Cir.
    2023) ...................................................... 11, 13

19

20

Fed. Trade Comm'n v. Freecom Commc'ns, Inc.,
    401 F.3d 1192 (10th Cir. 2005) ............................. 16, 22

21

22

Fed. Trade Comm'n v. H.N. Singer, Inc.,
    668 F.2d 1107 (9th 1982) ....................................... 10

23

24

Fed. Trade Comm'n v. Pukke,
    No. 23-1742, 2024 WL 5082066 (4th Cir. Dec. 12, 2024) ........... 22

25

26

Fed. Trade Comm'n v. Triangle Media Corp.,
    No. 18-CV-1388-LAB-WVG, 2022 WL 4793457 (S.D. Cal. Sept. 30, 2022),
    aff'd in part, appeal dismissed in part, No. 22-56012, 2023 WL
    8592867 (9th Cir. Dec. 12, 2023) ............................... 14

27

28

Gavieres v. United States,
 220 U.S. 338 (1911) ........................................... 23

Helvering v. Mitchell,
 30 U.S. 391 (1938) ........................................ 5, 6

Holloway v. Bristol-Myers Corp.,
 485 F.2d 986 (D.C. Cir. 1973) ................................ 16

Hudson v. United States,
 522 U.S. 93 (1997) ...................................... passim

Kansas v. Hendricks,
 521 U.S. 346 (1997) ........................................... 8

Kennedy v. Mendoza-Martinez,
 372 U.S. 144 (1963) .............................. 7, 17, 22

Missouri v. Hunter,
 459 U.S. 359 (1983) ...................................... 5, 6

Noriega-Perez v. United States,
 179 F.3d 1166 (9th Cir. 1999) .......................... 16, 23

Rainwater v. King,
 No. 2:14-cv-02567-JKS, 2017 WL 6040425 (E.D. Cal. 2017) .......... 15

Rex Trailer Co. v. United States,
 350 U.S. 148 (1956)) ...................................... 7, 15

SEC v. Hickey,
 322 F.3d 1123 (9th Cir. 2003) ................................ 22

SEC v. Palmisano,
 135 F.3d 860 (2d Cir. 1998) ................................ 15

Seling v. Young,
 531 U.S. 250 (2001) ...................................... 14, 15

United States v. Bezborn,
 21 F.3d 62 (5th Cir. 1994) ................................ 21

United States v. Brown,
 Case No. 1:20-cr-00524-KPF (S.D. N.Y. Oct. 1, 2020) ...... 11, 12, 16

United States v. Brown,
 Case No. 23-7808-cr, 2024 WL 4601456 (2d Cir. Oct. 29, 2024) . 11, 13

United States v. Camacho,
 413 F.3d 985 (9th Cir. 2005) ................................ 21

iii

United States v. Dixon,
  509 U.S. 688 (1993) ............................................... 23

United  States ex rel. Marcus v. Hess,
  317 U.S. 537 (1943) ............................................... 6

United States v. Garcia,
  829 Fed. Appx. 840 (9th Cir. 2020) ............................... 23

United States v. Hanson,
  178 F.3d 1301 (9th Cir. 1999) .................................... 23

United States v. One Assortment of 89 Firearms,
  465 U.S. 354 (1984) ............................................... 7

United States v. Romero,
  775 Fed. Appx. 347 (9th Cir. 2019) ............................... 23

United States v. Stanford,
  805 F.3d 557 (5th Cir. 2015) ................................. 20, 21

United States v. Ursery,
  518 U.S. 267 (1996) ......................................... 6, 7, 21

United States v. Ward,
  448 U.S. 242 (1980) ........................................... 7, 15

Youngstown Sheet & Tube. Co. v. Sawyer,
  343 U.S. 519 (1952) .............................................. 25

**CONSTITION AND STATUTES**

U.S. Const. amend. V. .............................................. 5

Pub.L. 111-345, § 2, Dec. 29, 2010, 124 Stat. 3618................. 16

15 U.S.C. §

  45 ............................................................ 2, 4, 22

  52 ................................................................ 2

  53(b) ......................................................... passim

  57b ........................................................... passim

  1693-1693r ........................................................ 2

  1693e(b) ...................................................... 2, 4

6105 ....................................................... 2

6152 .................................................... 2, 4

8401 ................................................. 2, 4, 15

8402 ....................................................... 2

8403(2) .................................................. 24

8404 ................................................. 2, 4, 15

8405 ................................................. 2, 4, 15

18 U.S.C. §

1028A(a)(1)-(2) ........................................... 5

1029(a) ................................................... 5

1512(b)(2)(B) ............................................. 5

**REGULATIONS**

16 C.F.R. § 310.4(b)(1)(v) ................................ 4

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Defendant, in yet another motion to dismiss, claims that the Court-imposed asset freeze and the appointment of a receiver in defendant's civil case with the Federal Trade Commission (FTC) were so punitive that the Double Jeopardy Clause bars the current criminal prosecution. This assertion is belied by established case law and completely ignores that, in the underlying FTC action against defendant, following the Supreme Court's ruling in AMG Cap. Mgmt., LLC v. Fed. Trade Comm'n, 593 U.S. 67 (2021)(hereafter "AMG"), the District Court in that case was well within its authority to impose such conditions on defendant, not only under the Federal Trade Commission Act (FTCA), but also under the Restore Online Shoppers' Confidence Act (ROSCA), authority defendant omits from his pending motion. To be clear, the district court in the underlying FTC action did not impose any monetary sanction upon defendant and his companies via the permanent injunction. The district court's order freezing assets and appointing a receiver was both consistent with facts and law, and ultimately stipulated to by defendant; under these circumstances, those actions cannot be so punitive as to be transformed into criminal sanctions, as defendant now argues.

Defendant cannot establish a violation of the Double Jeopardy Clause because Congress intended the FTCA and ROSCA to be civil regulatory regimes, and there is little proof, much less the necessary "clearest proof," that the asset freeze and appointment of a receiver was a civil penalty at all, much less so severe as to transform such actions into a criminal punishment. Defendant's motion should be denied without a hearing.

1

## II.  STATEMENT OF FACTS

In October 2018, the FTC filed a sealed Complaint for Permanent Injunction and Other Relief against defendant and his companies. <u>Fed. Trade Comm'n v. Cardiff, et al.</u>, Case No. 5:18-cv-02104 (C.D. Cal. 2018) (hereinafter "FTC civil lawsuit"), Civ. Dkt. 1.[1] The FTC brought suit under section 13(b) of the FTCA, 15 U.S.C. § 53(b), section 5 of ROSCA, 15 U.S.C. §§ 8401-8405, the Electronic Fund Transfer Act (EFTA), 15 U.S.C. § 1693-1693r, and the Telemarketers and Consumer Fraud and Abuse Prevention Act (Telemarketing Act), 15 U.S.C. § 6105. <u>Id.</u> At the same time, the FTC filed a sealed <u>Ex Parte</u> Application for a Temporary Restraining Order against defendant and his companies. Civ. Dkt. 3.

Finding evidence that defendant and his companies engaged in or were likely to engage in acts/practices that violated Sections 5(a) and 12 of the FTCA, Section 4 of ROSCA, Section 907(a) of EFTA, EFTA's implementing Regulation D, and the Telemarketing Sales Rule, on October 10, 2018, the Court granted the FTC's request for a Temporary Restraining Order, appointed a Receiver to oversee defendant's companies, and, among other things, imposed an asset freeze on defendant. Civ. Dkt. 29. The Court set a Preliminary Injunction hearing for October 23, 2018.

In advance of the October 23, 2018 hearing, defendant and his wife stipulated to an extension of the TRO. Civ. Dkt. 59 at 4:12-16.

On November 1, 2018, the Receiver filed a report with the Court indicating that the business operations of the Receivership Entities could not be continued lawfully or profitably. Civ. Dkts. 52-53. The

---

[1] The FTC civil lawsuit docket will be cited as "Civ. Dkt." followed by the docket number.

1    financial information provided to the Court "fully describes the

2    hopelessly insolvent financial condition and operations of the

3    Receivership Entities." Id.

4         At a November 7, 2018 hearing, defendant and his wife reviewed

5    and stipulated to the preliminary injunction. Appendix Ex. D, Civ.

6    Dkt. 72, 20:25-21:4, 33:15-38:7.

7         After the Court entered the preliminary injunction and asset

8    freeze, defendant made several requests for the payment of

9    defendant's living expenses, and the Court thereafter granted some,

10   but denied others. See, e.g., Civ. Dkt. 112, 145, 507, 509, 525, 534-

11   536, 560, 602, 605, 607.

12        Throughout the duration of the FTC civil lawsuit, the Court held

13   defendant in contempt several times for failure to abide by the

14   Court's Orders to turn over documents and funds, Civ. Dkt. 181, 238,

15   315, 343, 417, 486; approved a settlement between the Receiver and

16   Inter/Media (which had a state court judgment against defendant and

17   his wife) to divide the proceeds of the sale of the defendant's

18   residence, a portion of which defendant received, Civ. Dkts. 306,

19   309, 702; issued another TRO and Preliminary Injunction putting

20   defendant's new company, VPL Medical Inc., under receivership under

21   the terms of the original Preliminary Injunction, Civ. Dkt. 352; and

22   denied multiple attempts to alter the Preliminary Injunction and/or

23   remove the Receiver, Civ. Dkt. 305, 343, 627.

24        Then, on October 9, 2020, the Court granted summary judgement on

25   16 different counts in favor of the FTC: 13 violations of the FTCA,

26   and multiple violations of ROSCA, EFTA and the Telemarketing Sales

27   Rule ("TSR"), 16 C.F.R. § 310.4(b)(1)(v). Civ. Dkt. 511. However, the

28

3

1    Court deferred ruling and judgment on the proper remedy pending the

2    Supreme Court's decision in AMG.

3        In AMG, the Supreme Court held that Section 13(b) of the FTCA

4    authorized the FTC to obtain injunctive relief, including a permanent

5    injunction in federal court against those violating or about to

6    violate a law that the FTC enforced, but did not authorize the FTC to

7    seek, and a court to award, equitable monetary relief such as

8    restitution or disgorgement. Id. But the Supreme Court also specified

9    that nothing in its opinion in AMG prohibited the FTC from using its

10   authority under Sections 5 and 19 of the FTCA to obtain restitution

11   on behalf of consumers. Id. at 1352. The Court also held that the FTC

12   may use Section 13(b) of the FTCA to obtain injunctive relief when it

13   only seeks injunctive relief. Id. AMG did not alter any relief

14   available to the FTC under ROSCA.

15       Thereafter, in defendant's FTC case, the FTC no longer sought

16   monetary relief under Section 13(b) of the FTCA, but moved to obtain

17   monetary relief under ROSCA, which incorporated Section 19(a)(1) and

18   (b) of the FTCA. Civ. Dkt. 596. The Court held in favor of the FTC

19   when it found that the aforementioned authority authorized the FTC to

20   seek equitable monetary relief to redress consumer injury resulting

21   from ROSCA violations. Civ. Dkt. 627. However, due to the FTC's late

22   discovery disclosures to support its ROSCA damages calculation, the

23   Court prohibited the FTC from relying on said evidence in awarding

24   monetary damages against defendant. Id. at 9-10.

25       On March 1, 2022, the Court entered a permanent injunction

26   against defendant, his wife, and all of their related companies that

27   prohibited defendant from continuing his fraudulent behavior. Civ.

28   Dkts. 705-706. Again, the Court did not order monetary relief.

4

On January 31, 2023, a federal grand jury sitting in the Central District of California returned and filed the Indictment against defendant, charging him with access device fraud in violation of 18 U.S.C.§§ 1029(a) Sections 5 and 2; aggravated identity theft in violation of 18 U.S.C. §§ 1028A(a)(1)-(2); and two counts of witness tampering in violation of 18 U.S.C. § 1512(b)(2)(B). Indictment, Dkt. 1.

In his latest motion to dismiss, defendant argues that the asset freeze and appointment of the receiver ordered in the FTC civil lawsuit in October 2018 under FTCA Section 13(b) affected his ability to maintain his home, failed to provide him funds for living expenses, and amounted to a criminal penalty against him to which the Double Jeopardy Clause attaches. Defendant is wrong on both the law pertaining to Double Jeopardy and the facts pertaining to the living expenses the Court permitted during the FTC action against him.

## III. LEGAL STANDARDS

### A.    Double Jeopardy

Under the Double Jeopardy Clause of the Fifth Amendment, no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. Constitution amend. V. "The Clause protects only against the imposition of multiple *criminal* punishments for the same offense, . . . and only when such occurs in successive proceedings." Hudson v. United States, 522 U.S. 93, 99 (1997) (emphasis in original) (citing Helvering v. Mitchell, 30 U.S. 391, 399 (1938); Breed v. Jones, 421 U.S. 519, 528 (1975); Missouri v. Hunter, 459 U.S. 359, 366 (1983)). It has long been held that the Double Jeopardy Clause does not prohibit the imposition of any additional sanction that could be described as a punishment. Id. at

98, 99. "[O]nly criminal punishment subjects the defendant to jeopardy within the constitutional meaning." Hudson v. United States, 522 U.S. at 99 (quoting U. S. ex rel. Marcus v. Hess, 317 U.S. 537, 549 (1943) (citing Helvering v. Mitchell, 30 U.S. 391, 398 (1938)) (internal quotations omitted); see also Hunter, 459 U.S. at 366. The Double Jeopardy Clause does not prevent the criminal prosecution of conduct that also violates a civil regulatory scheme. See Helvering, 303 U.S. at 399 ("Congress may impose both a criminal and a civil sanction in respect to the same act or omission; for the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense).

**B.    The Hudson Inquiry**

In rare instances a civil penalty can be transformed into a criminal penalty. To find that such a transformation occurred, the court must apply a two-part inquiry. Hudson, 522 U.S. at 99; see also United States v. Ursery, 518 U.S. 267, 277 (1996).

First, the court must "ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." Hudson, 522 U.S. at 99.

Second, even "where the legislature has indicated an intention to establish a civil penalty," the court must determine whether a statutory scheme was so punitive either in purpose or effect that it transformed what was clearly intended as a civil remedy into a criminal penalty. Id. (quoting United States v. Ward, 448 U.S. 242, 249 (1980); (see Rex Trailer Co. v. United States, 350 U.S. 148, 158 (1956)); see also United States v. Ursery, 518 U.S. at 277 ("Unless the forfeiture sanction was intended as punishment, so that the

proceeding is essentially criminal in character, the Double Jeopardy Clause is not applicable.") (quoting United States v. One Assortment of 89 Firearms, 465 U.S. 354, 362 (1984)).

In analyzing the second prong of the inquiry, the court may use the seven factors, enumerated in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-169 (1963)) as guideposts:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of *scienter*; (4) whether its operation will promote the traditional aims of punishment – retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

Hudson, 522 U.S. at 99. No one factor should be controlling. Id. at 101. The court must evaluate the "statute on its face" to determine whether it provided for what amounted to a criminal sanction. Id. (internal citations removed). The question is whether the successive punishment at issue is a "criminal" punishment, not whether the sanction, regardless of whether it was civil or criminal, was so grossly disproportionate to the harm caused as to constitute "punishment." Id.

"Only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Id. at 100 (citing Ward, 448 U.S. at 249(internal quotations removed). "If a sanction must be solely nondeterrent to avoid implicating the Double Jeopardy Clause, then no civil penalties are beyond the scope of the Clause." Hudson, 522 U.S. at 102. The Supreme Court has found a defendant's burden to be a heavy one and

7

has found certain punishments, including involuntary civil confinement, to be civil in nature. <u>Kansas v. Hendricks</u>, 521 U.S. 346, 370 (1997).

**IV.  ARGUMENT**

In his motion, defendant's main premise is that from its inception, section 13(b) of the FTCA always prevented the Court from imposing any monetary relief in a civil lawsuit, which the Supreme Court affirmed in <u>AMG</u>. As such, defendant says that the imposition of an asset freeze and receivership in the FTC's civil lawsuit by the District Court was wrong from the onset of such conditions in October 2018, and the FTC was acting outside the bounds of its legal authority when it sued defendant under this section. Defendant claims that with the asset freeze and receivership being conditions imposed upon him without any legal authority, such amounted to criminal punishment.

Defendant's argument misses on several fronts. While true that the District Court could not impose any monetary relief against defendant pursuant to section 13(b) after the holding of <u>AMG</u>, the District Court <u>was</u> authorized under section 19 of the FTCA and ROSCA to impose monetary relief upon defendant. As such, the asset freeze and receivership were imposed upon defendant legally, as monetary relief was available to the FTC under the ROSCA and FTCA Section 19 claims alleged in the complaint.

Second, asset freezes and receiverships are the court's tools ancillary to the injunctive relief. <u>FTC v. Pukke</u>, No. 23-1742, 2024 WL 5082066, *3 (4th Cir. Dec. 12, 2024) (<u>citing</u> <u>SEC v. Hickey</u>, 322 F.3d 1123, 1132 (9th Cir. 2003)). These remedies are always available

1  to the court to protect and implement its judgments prevent unjust

2  enrichment or harm to victims.

3      Third, defendant stipulated to the extension of the temporary

4  restraining order and the preliminary injunction, both of which

5  continued the asset freeze and receivership. The receiver was acting

6  on behalf of the court, and sought the court's permission for most,

7  if not all, actions taken.  It was the Court, not the FTC or the

8  receiver, that made final decisions about the applicability of the

9  asset freeze or imposition of the receiver.  Defendant had

10 opportunities to either request a modification of the asset freeze or

11 to dissolve the receivership, which defendant requested toward the

12 end of the civil lawsuit, and the court denied due to defendant's

13 years-long and ongoing dishonesty.

14     Finally, case law supports that the asset freeze and

15 receivership were civil remedies, and therefore, no criminal

16 punishment was imposed upon defendant in the FTC's civil lawsuit.

17     Of note, defendant argues that the entire Indictment should be

18 dismissed under the Double Jeopardy Clause, but only the credit card

19 fraud and aggravating identity theft conduct charged in Counts 1 and

20 2 were detailed in the civil complaint. Counts 3 and 4 pertain to the

21 destruction of documents related to the Civil Investigative Demand

22 issued before the filing of FTC civil lawsuit. The obstruction of

23 justice charges were not part of the FTC civil lawsuit, yet,

24 defendant requests the entire Indictment be dismissed on the grounds

25 of Double Jeopardy. While no charge alleged in the Indictment should

26 be dismissed, Counts 3 and 4 are not even implicated by defendant's

27 arguments.

28

**A.    The Court should apply <u>Hudson</u> to analyze whether Double
Jeopardy attaches to the FTC's civil lawsuit.**

Without citing to any analogous cases to support, defendant
argues that the <u>Hudson</u> inquiry does not apply to this case because
the FTC did not follow the Congressional scheme, but set out to
subvert Congressional intent. Def. Mot. at 6:22-28. Defendant argues
that, in the FTC's civil lawsuit, the FTC was acting outside the
scope of its authority when it requested monetary relief against
defendant under Section 13(b) of the FTCA. <u>Id.</u> at 7:21-12:19. Not so.
Defendant's focus on the FTC's intent ignores established precedent
that an implementation-based Double Jeopardy argument fails.

<u>Hudson</u> applies, and the Court should analyze the actions in the
FTC civil lawsuit under its well-established test.

In the FTC's 2018 civil lawsuit against defendant, while the FTC
advocated legal positions regarding its authority that were later
rejected in part by the Supreme Court's 2021 ruling in <u>AMG</u>, the FTC's
actions were supported by decades' worth of case law within the Ninth
Circuit (and most other circuits). <u>Fed. Trade Comm'n v. AMG Cap.
Mgmt., LLC,</u> 910 F.3d 417, 426 (9th Cir. 2018), rev'd and remanded sub
nom. <u>AMG Cap. Mgmt., LLC v. Fed. Trade Comm'n</u>, 593 U.S. 67 (2021),
and vacated sub nom. <u>Fed. Trade Comm'n v. AMG Cap. Mgmt., LLC, 998
F.3d 897 (9th Cir. 2021)</u>; <u>Fed. Trade Comm'n v. H.N. Singer, Inc.,</u> 668
F.2d 1107, 1113 (9th 1982).

After an exhaustive search, the government could not find any
authority wherein, post-<u>AMG</u>, a court has found the FTC's actions in
requesting an asset freeze/receivership to preserve the <u>status quo</u>
pending a final judgment that may include equitable monetary relief

10

1  so outrageous that the FTC was acting outside the scope if its
2  official authority so much so that Hudson did not apply.

3       The FTC was wholly justified in asserting that section 13(b)
4  allowed the imposition of equitable monetary judgment until the
5  landmark decision of AMG. Courts across the country found that the
6  FTC acted within the scope of section 13(b) of the FTCA when the FTC
7  requested, and thereafter, was granted an asset freeze and
8  receivership to stop ongoing consumer harm and/or preserve assets for
9  future monetary relief to customers.

10      Defendant argues that since at least the Ninth Circuit's ruling
11 in H.N. Singer, the FTC conned courts into believing that the FTCA
12 allowed for broad monetary relief, and the FTC purposely hid
13 Congress's rejection of broad remedial relief under section 13(b).
14 Def. Mot., 7:15-9:18. Defendant's contention is absurd, and defense
15 counsel's arguments made herein were recently rejected by the
16 District Courts of the Southern District of New York (SDNY) and
17 Northern District of Illinois (NDIL) and the Second and Seventh
18 Circuits wherein he represented the defendants. United States v.
19 Brown, Case No. 1:20-cr-00524-KPF (S.D. N.Y. Oct. 1, 2020)(Appendix
20 Exs. A and B); United States v. Brown, Case No. 23-7808-cr, 2024 WL
21 4601456 (2d Cir. Oct. 29, 2024); Fed. Trade Comm'n v. Credit Bureau
22 Ctr., LLC, Case No. 17 C 194, 2021 WL 4146884 (N.D. Ill. Sept. 13,
23 2021); Fed. Trade Comm'n v. Credit Bureau Ctr., LLC, 937 F.3d 764
24 (7th Cir. 2019); Fed. Trade Comm'n v. Credit Bureau Ctr., LLC, 81
25 F.4th 710, 714 (7th Cir. 2023).

26      In 2017, Michael Brown and his company, Credit Bureau Center,
27 LLC ("CBC"), were sued by the FTC in the Northern District of
28 Illinois (NDIL) with violations of the FTCA and ROSCA. After

preliminarily enjoining Brown and CBC, the NDIL court granted summary judgment in favor of the FTC and ordered Brown and CBC to pay restitution of over $5 million. On appeal, the Seventh Circuit vacated the restitution order, holding that "section 13(b) does not authorize restitutionary relief." Fed. Trade Comm'n v. Credit Bureau Ctr., LLC, 937 F.3d at 767, 774. In doing so, the Seventh Circuit acknowledged that it was abrogating its longstanding precedent that section 13(b) authorized such relief. Id. On remand, the FTC moved to amend the judgment, and the NDIL court reimposed restitution under section 5 of ROSCA and section 19 of the FTCA, in lieu of section 13(b). Fed. Trade Comm'n v. Credit Bureau Ctr., LLC, 2021 WL 4146884 at *4. The Seventh Circuit affirmed the amended judgment in relevant part, after the holding in AMG. Fed. Trade Comm'n v. Credit Bureau Ctr., LLC, 81 F.4th at 714.

Brown was indicted in the Southern District of New York (SDNY) in October 2020, and a superseding indictment was filed against him in November 2022. Brown, who was represented by the same defense counsel arguing here, moved to dismiss the superseding indictment on double jeopardy grounds. The SDNY court denied Brown's motion. (Appendix Ex. C).

Like defendant, Brown was subject to an asset freeze and receivership. Like defendant, Brown had the opportunity to apply for modification of the asset freeze, which Brown did not do, but defendant did. Like defendant, in the wake of AMG, Brown's judgment for equitable monetary relief was re-cast under ROSCA and section 19 of the FCTA, since AMG and the Seventh Circuit in Fed. Trade Comm'n v. Credit Bureau Ctr., LLC, 81 F.4th at 716-17, had only addressed restitution under Section 13(b) and not Section 19 or ROSCA. In

12

1  Brown, <u>Fed. Trade Comm'n v. Credit Bureau Ctr., LLC,</u> and the instant

2  case, defense counsel accused the FTC of knowingly misusing section

3  13(b) and arguing that the FTC had "unclean hands" so as to bar

4  equitable relief. This court, like the SDNY and NDIL courts and the

5  Second and Seventh Circuits, should deny defendant's objection.

6      The FTC neither has "unclean hands" nor has it acted in an <u>ultra</u>

7  <u>vires</u> manner when filing the FTC civil lawsuit against defendant. The

8  FTC's position regarding the relief sought in Section 13(b) of the

9  FTCA had been accepted as settled law by numerous circuits over a

10 period of decades, and the alternate position taken by the FTC --

11 that its authority to seize assets under Section 19 of the FTCA and

12 Section 5 of ROSCA -- has been adopted by many courts, including by

13 Judge Gee in the FTC civil lawsuit against defendant. Civ. Dkt. 627,

14 Appendix Ex. E; <u>United States v. Brown</u>, Appendix Exhibit B, 17:9-

15 18:1[2]; <u>United States v. Brown</u>, 2024 WL 4601456 at *2[3]; <u>Fed. Trade</u>

16 <u>Comm'n v. Credit Bureau Ctr., LLC</u>, 2021 WL 4146884 at *9[4]; <u>Fed. Trade</u>

17 <u>Comm'n v. Credit Bureau Ctr., LLC,</u> 81 F.4th at 716.[5]

18      [2] "Defendant's arguments suggest that the many courts before

19 whom the FTC made these arguments were unwitting dupes and victims of

20 the agency's naked power grab. The fact is, however, that these

   courts had the exact same access to the statutory text and to the

21 legislative history that the FTC did, and after reviewing that

   information and considering competing interpretative arguments, they

22 came to the same conclusion as the FTC."

23      [3] "The FTC cannot be found to have acted in bad faith for

   seeking a remedy that existing law approved, particularly since the

24 relief sought was justified, albeit under different statutory

   authority."

25      [4] "Not only is CBC's argument unpersuasive, it also ignores key

26 facts. From the day the complaint was filed until the Seventh Circuit

   decided the appeal in this case, there was controlling circuit

27 precedent permitting the FTC to seek restitution using section 13(b).

   See <u>Amy Travel</u>, 875 F.2d at 564; <u>Fed. Trade Comm'n v. Credit Bureau</u>

28 <u>Center</u>, LLC, 937 F.3d at 782-86. In fact, prior to <u>AMG Capital</u>, eight

   circuits permitted the FTC to seek monetary damages under section

*(footnote cont'd on next page)*

13

1    Next, defendant argues that the receiver and asset freeze was

2    void ab initio and, as such, the imposition of these two actions upon

3    him are exceptionally punitive. Def. Mot. at 14-15.

4    The Supreme Court's holding in AMG, and Judge Gee's order in

5    compliance of AMG, allowed the Court to impose an asset freeze and

6    the appointment of a receiver in defendant's civil FTC case. The

7    holding of AMG only prohibited the FTC, and thereafter, the Court,

8    from imposing monetary relief against defendant under Section 13(b)

9    of the FTCA. AMG did nothing to prohibit the FTC, and thereafter, the

10   Court, from imposing the equitable relief of an asset freeze or a

11   receiver appointment on defendant and his companies under section 19

12   of FTCA or section 5 of ROSCA. Fed. Trade Comm'n v. Triangle Media

13   Corp., No. 18-CV-1388-LAB-WVG, 2022 WL 4793457, *3 (S.D. Cal. Sept.

14   30, 2022), aff'd in part, appeal dismissed in part, No. 22-56012,

15   2023 WL 8592867 (9th Cir. Dec. 12, 2023)("Thus, even if the Court

16   vacated its November 2019 Order to preclude the Receiver from seeking

17   to recover monetary damages under Section 13(b), the Receiver could

18   still pursue damages under ROSCA and the state law claims."").

19   Throughout his motion to dismiss, defendant ignores that Judge Gee

20   decided that monetary relief under ROSCA and section 19 of FTCA could

21   be imposed upon defendant. Civ. Dkt. 627 at 4. The Court determined

22

23

24   13(b). AMG Cap. Mgmt., 141 S. Ct. at 1351. It cannot be true that a
     party who proffers arguments based on overwhelming and longstanding
25   precedent has unclean hands once that precedent is overturned after
     over 30 years. The fact that other parties had been arguing against
26   the prior interpretation of section 13(b) might be proof that wisdom
     comes late—even to courts—but it is not proof that the FTC is an
27   abusive litigant."

     [5] Brown's appeal rehashes the litany of objections we've just
28   described. Some are frivolous and the rest are meritless..."

14

that the FTC's late discovery disclosures barred its use in the FTC's damages computation under ROSCA. Id. at 9-10.

It was an issue of late-disclosed discovery that barred the FTC from recovering monetary relief from defendant and his companies, not that the agency was barred from recovering monetary relief after AMG. Section 19 of the FTCA and ROSCA both allowed such relief, even after the holding in AMG. Therefore, the imposition of an asset freeze or appointment of a receiver to stop consumer harm and protect assets for potential consumer damages was proper and in accordance with the holding in AMG.

The civil nature of the FTCA is not altered solely by the way the FTC implemented or intended to implement the FTCA. See Seling v. Young, 531 U.S. 250, 251, 263 (2001)("A confinement scheme's civil nature cannot be altered based merely on vagaries in the authorizing statute's implementation."); Rainwater v. King, No. 2:14-cv-02567-JKS, 2017 WL 6040425, *14 (E.D. Cal. 2017)("the civil nature of a statute forecloses double jeopardy claims, even if the individual argues that the statute is punitive as applied to him or her, because it does not establish criminal proceedings or constitute a punishment"). Defendant fails to acknowledge established case law when he argues that the Hudson inquiry does not apply. Def. Mot. at 7. "Harsh executive implementation cannot transform what was clearly intended as a civil remedy into a criminal penalty." Seling, 531 U.S. at 269 (Scalia, J. concurring) (quoting Rex Trailer Co., 350 U.S. at 154. Accordingly, the court should apply the established rubric of Hudson to the pending case.

1.   Defendant Fails the 1st Prong of Hudson

The first prong of Hudson requires an analysis of Congress's legislative intent, not the FTC's, behind Sections 13(b) and 19 of the FTCA and Section 5 of ROCSA to see if these statutes were intended to be punitive. Hudson, 522 U.S. at 99 ("A court must first ask whether the legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.'") (quoting Ward 448 U.S. at 248).

Congress clearly intended sanctions under the FTCA and ROSCA to be civil, not criminal, penalties. The plain language of Section 19 authorizes the Commission to commence a "civil action" against any person, partnership, or corporation who "violates any rule under this subchapter respecting unfair or deceptive acts or practices[.]" 15 U.S.C. § 57b(a)(1). "Congress's designation of a penalty as civil is entitled to considerable deference." SEC v. Palmisano, 135 F.3d 860, 864 (2d Cir. 1998); see, e.g., Noriega-Perez v. United States, 179 F.3d 1166, 1174 n.4 (9th Cir. 1999). The legislative history of the FTCA demonstrates that its purpose was consumer protection, which is not a punitive purpose. See generally Holloway v. Bristol-Myers Corp., 485 F.2d 986, 994-95 (D.C. Cir. 1973); Fed. Trade Comm'n v. Freecom Commc'ns, Inc., 401 F.3d 1192, 1202 (10th Cir. 2005).

Similarly, by its very name — the Restore Online Shoppers' Confidence Act — Congress plainly evinced a non-criminal goal for this statute: To restore consumer confidence in online commerce for the good of the American economy. ROSCA's legislative history confirms this. In enacting ROSCA, Congress found that "[c]onsumer confidence is essential to the growth of online commerce. To continue its development as a marketplace, the Internet must provide consumers

16

with clear, accurate information and give sellers an opportunity to fairly compete with one another for consumers' business." Pub. L. No. 111-345, § 2(2) ("Findings; Declaration of Policy"), 124 Stat. 3618-21. But "aggressive sales tactics" used by many companies "have undermined consumer confidence in the Internet and thereby harmed the American economy." Id. § 2(3).

Of note, defendant incorrectly argues that the focus must be on the FTC's intent, given its alleged willful perversions of congressional intent. The first prong of Hudson is focused on the legislative intent and not the intent of the agency. The District Court in SDNY in Brown already rejected defendant's argument that "the FTC created so much mischief as to merit a shift in perspective..." when it found the FTC's conduct appropriate. (Appendix Ex. B, 21:10-14). As discussed above, Congress unambiguously intended the FTCA and ROSCA to provide for civil remedies, not criminal punishment.

For all of these reasons, defendant cannot satisfy the first prong of Hudson.

### 2. Defendant Fails the 2nd Prong of Hudson

Under the second prong, defendant must show by the "clearest proof" that the sanctions imposed are so punitive in form and effect as to render them criminal despite Congress's intent to the contrary. Hudson, 522 U.S. at 99. Defendant fails to make such a showing. Analysis of the Mendoza-Martinez factors does not show that the receivership and asset freeze were so harsh as to transform what has been viewed as a traditionally civil remedy into a criminal punishment.

1    Again, Judge Gee only imposed a permanent injunction against

2    defendant, not monetary relief. Civ. Dkt. 651. As argued above, the

3    Court was well within its power under the FTCA and ROSCA to award

4    monetary relief. The FTC's late discovery disclosures and the

5    practical recognition that re-opening discovery to allow for the

6    disclosure of damages would, among other considerations, likely

7    reduce, if not eliminate, any actual monetary recovery for

8    consumers.[6] Civ. Dkt. 627, p. 9.

9                   a.    *Pretrial receivership and asset freeze do not
                          amount to affirmative disability or restraint*
10

11    Defendant argues that the pretrial restraint of his assets and

12    living expenses suffice to implicate the Double Jeopardy Clause.

13    Judges Otero and Gee were presented with ongoing misconduct

14    (actually, criminal conduct) resulting in substantial harm to

15    consumers. Judge Otero granted a preliminary injunction after a

16    hearing where defendant, after thoroughly reviewing the proposed

17    injunction, stipulated to the asset freeze and receivership order.

18    Appendix Ex. D, Civ. Dkt. 72. Defendant does not argue, either in the

19    instant litigation or the civil FTC lawsuit, that the FTC presented

20    false or misleading evidence to obtain that preliminary injunction.

21    Judge Otero awarded injunctive relief that included the receivership

22    and asset freeze because he found good cause to believe that

23    immediate and irreparable damage to the Court's ability to grant

24    effective and final relief for consumers, including monetary

25        [6] "The public's interest in expeditious resolution of this
      litigation and the Court's interest in managing its docket weigh
26    decisively in favor of excluding the late-blooming ROSCA damages
      evidence...The public's interest in resolving this case on the merits
27    has already been vindicated, as the Court has ruled in the FTC's
      favor on all 16 Counts brought against the Cardiffs."  Civ. Dkt. 627,
28    p. 9.

                                     18

restitution, rescission, or disgorgement, would occur from the sale, transfer, destruction or other disposition or concealment by defendant of his assets or records.[7] Civ. Dkt. 46, p. 4:19-26. Even further, defendant maintained the ability to petition the court directly if he believed his living expenses were inadequate or to dissolve the receivership, an opportunity he availed himself of several times, sometimes receiving grants of modifications of living expenses. See, e.g., Dkt. 112, 145, 507, 509, 525, 534-536, 560, 602, 605, 607.

Defendant's motion claims "[t]he receiver's actions inflicted devastating financial and personal harm on Mr. Cardiff, including the loss of his home, the destruction of his credit, and the inability to meet basic obligations for his family." Def. Mot. 3:16-18, 3:7-11, 4:22-5:2, 16:24-17, Ex. A ¶8-12, 17-18. These statements, however, are categorically false. On July 2, 2019, the Court found "it seems that the Cardiffs have spent in excess of $50,000 per month since the entry of the TRO. This amount apparently does not include mortgage payments. . ." Civ. Dkt. 145. The Court found that the Cardiff's actions "[we]re not the actions of a family struggling to make ends meet." Id.

In addition, at the March 31, 2020 contempt hearing, the court found, among other things, defendant was spending nearly $17,000 per month on Bentley, Porsche, and Range Rover lease payments, private elementary school tuition, restaurants, phone and cable bills, salons and spas, pet grooming, a 5-star hotel in New York City, music

---

[7] The independent court-appointed Receiver found that defendant's companies could not operate legally or profitably and the Receiver also informed the Court that the defendant was both violating the TRO by removing assets and hiding assets. Civ. Dkt. 53.

lessons, taekwondo lessons, ride shares, movie theaters, and other
lavish expenditures. Civ. Dkt. 315.

> And they allege that, despite spending $38,604 over
> eight months on three luxury car lease payments
> (seemingly for two adults and a second grader), they
> lacked the cash flow to pay their $12,000 monthly
> mortgage. The Court has already determined that the
> Cardiffs are totally unbelievable, lied to the Court,
> and worked in concert with each other and with others
> to avoid, violate the conditions of the orders of the
> Court.

Id.

Regarding defendant's home, defendant's active choice to pay for
his luxuries, like his Bentley, Porsche, and Range Rover, over his
mortgage caused his mortgage to be in arrears. Id.; see also Civ.
Dkts. 306, 417. With the home incurring a monthly loss of $12,000 in
missed mortgage payments, the Court approved a settlement with one of
defendant's creditors where the home was sold to pay a portion of the
prior civil judgment and 25% of the proceeds was returned to
defendant. Id. at Dkts. 309, 702.

Neither the receiver imposition nor the asset freeze approached
the "infamous punishment of imprisonment." Hudson, 522 U.S. at 104.
These actions were from the preliminary injunction that defendant
stipulated to, because Judge Otero found good cause that defendant
would continue to harm consumers and dissipate or otherwise dispose
of assets that could be used for final relief for consumers. Thus,
the goal of the imposition of a neutral person to monitor defendant's
companies and the restriction of defendant's expenditures to maintain
a status quo were implemented not to punish him, but to protect
consumers from further harm and preserve assets for consumer redress.
It is absurd to compare the conditions wherein defendant lived in his

home while not paying the mortgage, drove luxury cars, paid private school tuition and other exorbitant expenses to that of a prisoner. Even assuming for the purposes of this motion only that defendant's allegations were true, they were not the consequence of any monetary remedy imposed by the Court. Rather, they resulted from the stipulated preliminary injunction needed for consumer protection in light of defendant's criminal behavior.

> b.  *Neither receivership nor asset freeze are punishments*

Double Jeopardy does not apply to receiverships or asset freezes because they are not punishments nor remedies imposed by the government. As civil counsel for the defendant in United States v. Stanford, 805 F.3d 557, 567-568 (5th Cir. 2015), defense counsel is aware (but did not disclose to this Court) the Fifth Circuit rejected his assertion that the receiver's sale and liquidation of various assets before trial constituted "punishment" for purposes of double jeopardy. The Fifth Circuit held that the receiver is a private non-governmental entity and is not the government for the purposes of the Double Jeopardy Clause. Id. at 568 (citing United States v. Bezborn, 21 F.3d 62, 68 (5th Cir. 1994)). As a result, the receiver is a private individual, and the Double Jeopardy Clause "does not apply to actions involving private individuals." Id. at 67.[8]

Here, the receiver in defendant's FTC case was an independent entity appointed by the Court. "The Receiver shall be solely the agent of this Court in acting as Receiver under this Order." Civ. Dkt. 29, 19:8-9; Civ. Dkt. 46, 19:4-5; Civ. Dkt. 59, 22:20-21. The

---

[8] The Ninth Circuit has held similarly in United States v. Camacho, 413 F.3d 985, 988-990 (9th Cir. 2005).

receiver's duties and authority were ordered by the Court, mainly to manage defendant's companies and preserve assets for prospective distribution to injured consumers. Civ. Dkt. 29, 46, and 59. At no point was the receiver acting on behalf of the United States of America, but rather, for the Court, and as such, none of the receiver's actions can be imputed to the sovereign such that the Double Jeopardy clause attached.

As for the asset freeze, such imposition was not so extreme or so divorced from the potential of monetary relief for consumers as to constitute punishment. United States v. Ursery, 518 U.S. at 280. Again, Judge Gee found that monetary relief was available to the FTC after AMG. Civ. Dkt. 627, p. 4.

### c.    Scienter is not required

This Mendoza-Martinez factor also does not support the defendant's Double Jeopardy claim. To establish a violation of Section 5 of the FTCA, "[t]he FTC is not . . . required to prove intent to deceive." Fed. Trade Comm'n v. Bay Area Bus. Council, Inc., 423 F.3d 627, 635 (7th Cir. 2005); see also Freecom Commc'ns, Inc., 401 F.3d at 1203-04, n.7. Thus, the FTC did not need to prove defendant's knowledge or intent. Id. at 1202 ("Because the primary purpose of § 5 is to protect the consumer public rather than to punish the wrongdoer, the intent to deceive the consumer is not an element of a § 5 violation.").

### d.    Neither the receivership nor the asset freeze were for the purposes of retribution or deterrence

The Court awarded injunctive relief that included a receivership and an asset freeze because of its concern that consumers would continue to be harmed and because funds for consumer redress were

1  being or would be dissipated. Neither a receivership nor an asset

2  freeze serve the traditional aims of punishment, retribution and

3  deterrence. Receiverships and asset freezes are "important tool[s]

4  for a district court to effectuate its judgments, compensate victims,

5  and stop future transgressions." Fed. Trade Comm'n v. Pukke, No. 23-

6  1742, 2024 WL 5082066, *3 (4th Cir. Dec. 12, 2024) (citing SEC v.

7  Hickey, 322 F.3d 1123, 1132 (9th Cir. 2003)). These tools are

8  ancillary to the injunctive relief. Id.

9           e.   Defendant violated civil and criminal statutes
                 with the same conduct and was charged with
10                different offenses

11     The fact that defendant's credit card fraud scheme violated

12  civil statutes does not preclude the government from charging

13  defendant for violating criminal statutes. The fact that the

14  defendant's scheme violated both civil and criminal statutes is

15  insufficient to transform the asset freeze and receivership in the

16  FTC civil lawsuit into a criminal punishment. See Noriega-Perez v.

17  United States, 179 F.3d at 1173; Blockburger v. United States, 284

18  U.S. 299 (1932); see United States v. Hanson, 178 F.3d 1301, *1 (9th

19  Cir. 1999); United States v. Garcia, 829 Fed. Appx. 840, 841 (9th

20  Cir. 2020); United States v. Romero, 775 Fed. Appx. 347, 347 (9th

21  Cir. 2019).

22     Defendant argues repeatedly that the conduct charged in the

23  civil case is the same as the conduct charged in the criminal

24  Indictment, which he claims violates the Double Jeopardy Clause. See

25  Def. Mot. at 3:1-2, 5:3-9, Ex. 1 at 3:10-11. This argument has been

26  rejected for over 30 years. United States v. Dixon, 509 U.S. 688,704

27  (1993)(rejecting the "same-conduct" test for Double Jeopardy

28  purposes)(citing Gavieres v. United States, 220 U.S. 338, 345

1  (1911)(in subsequent prosecution, "while it is true that the conduct

2  of the accused was one and the same, two offenses resulted, each of

3  which had an element not embraced in the other.")(internal quotations

4  omitted).

5      Here, defendant was charged under criminal statutes that have

6  scienter elements, i.e., "knowingly" and "willfully." See Indictment.

7  As described above, the civil statutes referenced in the FTC action

8  do not include scienter. See Def. Mot. Ex. 2 at 44-45. Therefore,

9  though the civil case and the criminal prosecution reference the same

10 conduct, they do not charge the same offenses.

11              f.    *The receivership and asset freeze were rationally*
                      *connected to protecting consumers and preventing*
12                    *unjust enrichment.*

13     There is an alternative non-criminal purpose to which the

14 receivership and asset freeze are "rationally connected," namely

15 protecting consumers and providing consumer redress. As discussed

16 throughout, the FTC proved to the Court that defendant was violating

17 the FTCA, ROSCA, and other civil statutes aimed at protecting

18 consumers. The Court appointed a receiver and initiated an asset

19 freeze to prevent additional consumers from being harmed and to

20 preserve assets for consumer redress. Section 19 of the FCTA and

21 ROSCA both allow a court to grant such relief as the court finds

22 necessary to redress injury to consumers. Quite obviously, the

23 statutes at issue here have purposes other than punishment, including

24 consumer protection and the protection of online commerce.

25              g.    *The receivership and asset freeze were not*
                      *excessive in relation to the alternative purpose*
26                    *of protecting consumers*

27     There is no basis to conclude that the receivership and the

28 asset freeze were excessive in relation to the alternative purpose of

protecting consumers. Imposition of an asset freeze and receiver were
for the purposes of maintaining the <u>status</u> <u>quo</u>, protecting against
unjust enrichment of defendant, and assessing the viability of
defendant's business. Moreover, as previously noted, defendant
requested and was granted the ability to modify the freeze for living
expenses, and applied, though unsuccessfully, for the dissolution of
the receivership. The ability to do so, coupled with the need of the
court to protect customers, does not render the asset freeze and
receivership excessive.

### B.    Neither the Court nor the FTC violated the Doctrine of Separation of Powers

Defendant's separation-of-powers argument and claim that the
"instant case is virtually identical in the basic fact pattern in
[<u>Youngstown</u>]" is absurd. Def. Mot. at 12-15. Defendant analogizes the
FTC's lawsuit requesting the court appoint a receiver and asset
freeze under the FTCA to President Truman using Executive Order 10340
to take possession of steel mills in 1952. <u>Id</u>.; <u>Youngstown Sheet &</u>
<u>Tube. Co v. Sawyer</u>, 343 U.S. 519 (1952). Defendant neglects to
discuss key facts. The FTC filed a suit in district court, a literal
illustration of the separation of the branches of government. The FTC
did not, by any means whatsoever, take over defendant's company on
its own or under its own authority. The Court, after finding evidence
of misconduct, appointed a receiver to ensure no additional consumers
were harmed and once the receiver took control of the company, found
that fraud permeated through every aspect of the business, which
necessitated the immediate shutdown of the company.

### III. CONCLUSION

The Court should deny defendant's Motion for the reasons stated.