Stephen R. Cochell
Admitted Pro Hac Vice
*srcochell@gmail.com*
5850 San Felipe, Ste. 500
Houston Texas 77057
Telephone:(713) 436-8000
Facsimile: (213) 623-2000

Allan Grant (SBN#213658)
Grant's Law Firm
17351 Greentree Drive
Riverside, California 92503-6762
Telephone (888)937-7555
Facsimile  (866)858-6637

Attorneys for Defendant
JASON EDWARD THOMAS CARDIFF

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>         vs.<br><br>JASON EDWARD THOMAS CARDIFF,<br><br>                Defendant. | Case No. 5:23-CR-00021-JGB<br><br>REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS INDICTMENT BASED ON DOUBLE JEOPARDY<br><br>Hearing Date: January 13, 2025<br><br>Courtroom:  1<br><br>Time:  2:00 p.m. |

COCHELL
LAW FIRM

DEFENDANT JASON CARDIFF'S REPLY  MEMORANDUM IN SUPPORT OF MOTION  TO DISMISS THE
INDICTMENT BASED ON DOUBLE JEOPARDY

1

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................ ii

TABLE OF AUTHORITIES ....................................................... iii

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
    INDICTMENT BASED ON DOUBLE JEOPARDY ........................................ 1

I.    The Government Cannot Deliberately Violate the Doctrine of Separation of
      Powers ....................................................................... 3

II.   Decades of Subverting Congressional Intent Cannot Be Ignored or
      Overlooked. .................................................................. 4

III.  *Hudson* Does Not Apply in This Case. ........................................ 6

IV.   The Government's Reliance on Out-of-Circuit Cases Is Misplaced. ............... 8

V.    The Separation of Powers Doctrine Controls This Case. ........................ 9

VI.   Conclusion ................................................................... 11

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Case Law</u>

3

*AMG Capital Management, LLC v. FTC*, 593 U.S. 67 (2021) …………… 2, 4-6, 10

4

5

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,* 591 U.S. 1 (2020) ……..… 3

6

*FTC v. Credit Bureau Center, LLC,* 937 F.3d 764 (2019) ………….…………..… 7

7

*Hudson v. United States*, 522 U.S. 93 (1997) ……………………………….... 6-9

8

9

*Seling v. Young* 531 U.S. 250 (2001) …………………………………………... 7

10

*United States v. Beszborn*, 21 F.3d 62 (5th Cir. 1994) …………….…………….. 8

11

*United States v. H.N. Singer*, 668 F.2d 1107 (9th Cir. 1982) ………………….… 1

12

13

*Wong Sun v. United States*, 371 U.S. 471 (1963) ………………………………….. 3

14

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) ………… 3-4, 11-12

15

16

17

<u>Statutes</u>

18

FTC Act, 15 U.S.C.

19
§ 53(b) ………………………………………………………. 1-2, 10-11
§ 57 ……………………………………………………………… 2

20

21

<u>Other</u>

22

D. Fitzgerald, The Genesis of Consumer Protection Remedies Under

23
Section 13(b) of the FTC Act 1-2, Paper at FTC 90th,

Anniversary Symposium, Sept. 23, 2004 ………………………………… 5, 7, 10

24

25

26

27

28

## <u>REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS INDICTMENT BASED ON DOUBLE JEOPARDY</u>

The Government's opposition memorandum asks the Court to ignore the fact that a government agency deliberately set out to subvert the will of Congress by claiming that courts had implied authority to impose disgorgement and other remedies sought by the Federal Trade Commission despite the fact that Congress expressly denied that authority to the agency. The FTC's deliberate failure to disclose to Judge Otero that Congress denied the authority requested in this case was consistent with its *modus operandi* in numerous cases since the FTC obtained a ruling in *United States v. H.N. Singer,* 668 F.2d 1107 (9th Cir. 1982).[1]

Indeed, the Government does not deny that the FTC concocted a scheme to get courts to approve authority that Congress expressly rejected. The Government claims that the notion that courts were "unwitting dupes" is absurd. Dkt. 153 at fn 2. As set out below, the notion that any court would *knowingly* rule that Congress <u>*impliedly*</u> granted powers authorizing the FTC to seek monetary relief when Congress actually *rejected* that authority defies logic and common sense. It is clear that the FTC did not disclose an accurate legislative history to the district and appellate courts because the vast majority of judges would have ridiculed and peremptorily rejected the FTC's implied authority argument. The Government's attempt to blame the Courts to detect the FTC's false representations regarding Congressional intent underscores the need to deter agencies who believe they can blatantly violate Congressional intent.

The Court does not have to take counsel's word for it. A *unanimous* Supreme

---

[1] Defendant requests the Court take judicial notice of the FTC's Memorandum in Support of TRO and Preliminary Injunction, which, in pertinent part, states: "Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), gives the district court authority to grant both a permanent injunction against violations of any provisions of law enforced by the FTC and 'any ancillary relief necessary to accomplish complete justice,' including an *ex parte* temporary restraining order, a preliminary injunction, an asset freeze, and the appointment of a receiver." Civil Case 5:18-2104, Dkt. 5 at 21-22.

Court in *AMG Capital Management, LLC v. FTC*, 593 U.S. 67 (2021), found that Congress never intended to grant the authority arrogated by the FTC. The Government conspicuously fails to address the fact that Justice Breyer made it clear that the FTC's misuse of Section 13(b) upset the legislative compromise reached by Congress limiting the FTC's authority.  Nor did the Government address the fact that its conduct violated the basic constitutional principle of separation of powers—Congress makes the law and the Executive branch is entrusted to faithfully execute the laws passed by Congress.

The Government similarly failed to address Defendant's argument that the Government's use of Section 13(b) was *void ab initio*.  Dkt. 153 at 14.  The district court made it clear that the TRO and the Preliminary Injunction was based <u>solely</u> on Section 13(b).  "This Court has authority to issue this Order pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), Federal Rule of Civil Procedure 65, and the All Writs Act, 28 U.S.C. § 1651." The Court did not cite to or rely on Section 19 of the FTC Act or ROSCA as authority for granting relief, but relied solely on Section 13(b).

While the Government seeks to distract the Court's attention claiming that the district court could subsequently rely on monetary remedies under Section 19, the Government cannot breathe life into actions that are *void ab initio*. It is well established that a statute that is *void ab initio* renders any action taken under the authority of that statute to be a nullity and of no effect.[2]  Stated differently, a government agency cannot lawfully seek to confiscate property under a statute that was never intended to grant such draconian authority to the Government.  Nor can judicial decisions imply authority where none ever existed and where such authority was expressly denied by Congress.  Deliberate misconduct by a government

---

[2] In *Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 610, 631 (2020), the court reiterated that an unconstitutional amendment is a nullity, powerless to change a valid original statute.

2

DEFENDANT JASON CARDIFF'S REPLY  MEMORANDUM IN SUPPORT OF MOTION  TO DISMISS THE INDICTMENT BASED ON DOUBLE JEOPARDY

misconduct cannot be condoned or tolerated where, as here, the agency set out to violate Congressional intent.  The taking of all Defendant's assets and property based on an invalid statute was therefore unlawful punishment.

The question before this Court is whether the Government should be rewarded for violating constitutional provisions prohibiting the Executive branch from exercising authority not granted by Congress.   Defendant respectfully submits that the Indictment should be dismissed because the FTC and other Government agencies must be deterred from the same or similar conduct in the future.  See *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,* 591 U.S. 1 (2020); *see also Wong Sun v. United States*, 371 U.S. 471 (1963) (principle of deterrence of official misconduct).

## I.    The Government Cannot Deliberately Violate the Doctrine of Separation of Powers

The checks and balances provided by constitutional separation of powers has been one of the keys to successful government in the United States of America. It is one thing for an agency to err by misinterpreting a statute.  It is quite another, however, for agency officials to deliberately set out to arrogate power that was denied by Congress.

To preserve individual liberty, the Framers sought to ensure that a separate and independent branch of the Federal Government would exercise each of government's three basic functions: legislative, executive, and judicial. While the text of the Constitution does not expressly refer to the doctrine of separation of powers, the Nation's Founding document divides governmental power among three branches by vesting the Legislative Power of the Federal Government in Congress; the Executive Power in the President; and the Judicial Power in the Supreme Court and any lower courts created by Congress. [3]  The Court has held that the Constitution does not require

---

[3] Article II's Vesting Clause, states that the executive power shall be vested in a

DEFENDANT JASON CARDIFF'S REPLY  MEMORANDUM IN SUPPORT OF MOTION  TO DISMISS THE INDICTMENT BASED ON DOUBLE JEOPARDY

a hermetic sealing of the three branches, but "[W]hile the Constitution diffuses power the better to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable government. It enjoins upon its three branches separateness but interdependence, autonomy but reciprocity." *Youngtown Sheet and Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952 (Jackson, J. Concurring).

The Supreme Court has provided an analytical framework for determining what happens when the Executive branch violates fundamental principles of separation of powers.  In *Homeland Security*, the Court held that DHS can only exercise the authority Congress chose to delegate and could not lawfully arrogate power through executive order to grant authority for Deferred Action for Childhood Arrivals ("DACA") not granted by Congress. Similarly, in *Youngstown Sheet & Tube Co. v. Sawyer*, the Court held that the Executive branch could not seize steel factories to assure adequate steel production during the Korean War.  The principle in both cases was that the Executive branch cannot simply seize and exercise powers not granted by Congress.

## II.    Decades of Subverting Congressional Intent Cannot Be Ignored or Overlooked.

The Supreme Court's oral argument underscored the absurd position taken by the FTC in *AMG*. Justice Breyer made it clear that the FTC's conduct upset the legislative compromise reached by Congress in refusing to grant broad remedial powers to seek monetary relief and confirmed "your fears, business community, were

---

President of the United States of America; Article II's Appointments Clause, addresses the respective roles of the President and Congress in the appointment of federal officials; Article III's Vesting Clause, states that [t]he 'judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish . . .'; and Article III, Section 2's Case or Controversy Clause, which limits the jurisdiction of the federal courts.

DEFENDANT JASON CARDIFF'S REPLY  MEMORANDUM IN SUPPORT OF MOTION  TO DISMISS THE INDICTMENT BASED ON DOUBLE JEOPARDY

absolutely right."[4]  Dkt. 137-2 at 451. Justices Sotomayor, Kagan and Breyer all expressed concern that the FTC was circumventing the administrative process established by Congress.   Dkt. 137-2, at 429, 450 and 461. Justice Alito noted that the FTC "looked for a workaround" and the Commission's attorneys were surprised that they succeeded through use of Section 13(b). *Id* at 455. Justice Kavanaugh stated that the text of the FTC Act was the FTC's problem: "And in that sense, this case really is a separation of powers case." *Id*. at 465-66.

The Government does not dispute that agency officials set out to subvert Congressional intent by misusing Section 13(b) to seek monetary relief.  Dkt. 153. The Government does not dispute that the article posted by the FTC's David Fitzgerald on the FTC's website shows that agency officials knew that Congress did not approve broad authority under Section 13(b) to impose consumer redress, but deliberately came up with a plan to get courts to grant that authority.  The Supreme Court relied on Fitzgerald's article to provide the Agency's internal deliberations and intent to obtain authority denied by Congress.[5]  *AMG,* 593 U.S. at 73, 78. As detailed in Defendant's initial memorandum, Fitzgerald set out key facts that establish agency misconduct at its worst.  Dkt. 135 at 12-13.[6]  For purposes of this motion, the Court

---

[4] Congress was concerned about granting the FTC's request for broad powers to seek consumer redress.  Senator Hruska criticized a draft bill permitting consumer redress stating that it sought a comprehensive and far-reaching restructuring of the FTC's functioning it s mission, its procedures as well as its jurisdiction  Beales, Murris, Striking the Proper Balance:  Redress Under Section 13(b) of the FTC Act, 79 Antitrust Law Journal 1, 9 (2013)   Senator Dole believed that the bill "would create many more problems than it would solve.  It is language that is extremely vague and does not define those acts or practices upon which recovery may be had.  *Id.* at fn. 35.

[5] D. Fitzgerald, The Genesis of Consumer Protection Remedies Under Section 13(b) of the FTC Act 1-2, Paper at FTC 90th, Anniversary Symposium, Sept. 23, 2004 ("Fitzgerald")

[6] One must ask whether the Ninth Circuit would have decided *H.N. Singer* on implied authority in 1982 if Mr. Fitzgerald had provided the *Singer* Court with the information

DEFENDANT JASON CARDIFF'S REPLY  MEMORANDUM IN SUPPORT OF MOTION  TO DISMISS THE INDICTMENT BASED ON DOUBLE JEOPARDY

must accept these undisputed facts as true.

Moreover, the case before the *AMG* court did not present an issue of whether the FTC acted in bad faith or whether agency officials *deliberately* violated constitutional principles of separation of powers.[7]  Thus, while there were no findings of bad faith in AMG, the oral argument and unanimous opinion of the Court support a finding of bad faith and deliberate misconduct by agency officials in <u>this</u> case.

### III.    <u>*Hudson* Does Not Apply in This Case.</u>

The Government relies on *Hudson v. United States* for the proposition that Defendant's prosecution this case is not barred by the Double Jeopardy Clause of the Fifth Amendment. Simply stated, *Hudson* did not involve an independent violation of the Constitution's separation of powers doctrine.  The Court, in *Hudson*, was not faced with a violation of the separation of powers doctrine and did not address the issue. Thus, the Court should not utilize the *Hudson* analysis where, as here, the Executive branch violated the separation of powers doctrine.   Indeed, the Court must first determine whether action taken by the FTC violated the separation of powers doctrine. If so, *Hudson* does not apply.

The Government correctly observes that *Hudson* sets out an analytical framework analyzing Congressional intent.   The Government would have this Court analyze the first part of the *Hudson* test: whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.  Dkt. 153 at 16.    The problem is that the FTC's substituted its own

---

he disclosed decades later in his 2004 article?   Clearly, the Supreme Court *unanimously* rejected implied authority under Section 13(b) where, as here, the text of the statute did not permit such a reading.

[7] One of the issues presented in AMG was whether Section 13(b) providing for injunctive relief implicitly allowed the FTC to seek monetary authority.  The Court rejected notion that a provision's grant of an injunction or other equitable powers does not automatically authorize a court to provide monetary relief.  See *AMG*, at 80.

DEFENDANT JASON CARDIFF'S REPLY  MEMORANDUM IN SUPPORT OF MOTION  TO DISMISS THE INDICTMENT BASED ON DOUBLE JEOPARDY

policy preferences for that of Congress and failed to disclose the fact that Congress rejected the FTC's request for monetary authority under Section 13(b).  The Seventh Circuit noted that prior decisions in the Seventh Circuit and other circuits interpreting Section 13(b) "uncritically accepted" the FTC's position that Section 13(b) provided for monetary relief.[8]  *FTC v. Credit Bureau Center, LLC,* 937 F.3d 764,785 (2019) Clearly, the Seventh Circuit diplomatically recognized that the circuits had simply adopted the FTC's strategy, as described by Fitzgerald, without "critically" examining the statute's text, structure and legislative history.  The FTC appealed *Credit Bureau Center* with *AMG* and the Supreme Court unanimously rejected the FTC's argument holding that Congress never intended to provide broad monetary redress through Section 13(b).

The Court, in *Hudson*, did not address how double jeopardy should be addressed where, as here, the Government deliberately violated the separation of powers doctrine. The Government's argues that the civil nature of a statute is not altered by the way an agency implements or intends to implement a statute because "[h]arsh executive implementation "cannot transform what was clearly intended as a civil remedy into a criminal penalty. Dkt. 153 a 15 *citing Seling v. Young* 531 U.S. 250, 269 (2001) (concurring opinion).  In *Seling*, the Court considered whether a civil commitment statute violated double jeopardy and rejected the argument that a respondent could raise an "as-applied" challenge to the Act on double jeopardy grounds. Id. at 262.  In that case, sexually violent prisoners were held in a segregated unit within the prison system "The civil nature of a confinement scheme cannot be

---

[8] *See e.g. FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1434 (11th Cir. 1984 (per curiam); *FTC v. Ross*, 743 F.3d 886 (4th Cir. 2014), *FTC v. Freecom Communications, Inc.*, 401 F.3d 1192, 1203 fn 6 (10th Cir. 2005) (same),  *FTC v. Bronson Partners, LL, 654 F.3d 359,365* (2d Cir. 2011) (same); F*TC v. Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1314-1315 (8th Cir. 1991); *FTC v. Direct Mktg. Concepts, Inc.,* 624 F.3d 1, 15 (1st Cir. 2010).

DEFENDANT JASON CARDIFF'S REPLY  MEMORANDUM IN SUPPORT OF MOTION  TO DISMISS THE INDICTMENT BASED ON DOUBLE JEOPARDY

altered based merely on vagaries in the implementation of the authorizing statute." *Id.* at 263.   Unlike *Seling*, which involved a statute with authority to act, this case involves a statute that did <u>not</u> authorize the FTC's seizure of property.  Simply stated, applying *Hudson* would allow other governmental agencies, to overreach their authority and engage in misconduct without consequence or accountability.

### IV.   <u>The Government's Reliance on Out-of-Circuit Cases Is Misplaced.</u>

The Government cites out-of-circuit cases absolving the Government of misconduct based on the clean hands doctrine. Dkt. 153 at 13. The Government cites the criminal prosecution of Michael Brown following a civil case filed by the FTC. The key difference between Brown and this case is that Brown relied on the analysis set out in *Hudson v. United States*, 522 U.S. 93 (1997) and did not raise a challenge to his prosecution based on constitutional separation of powers citing the *Homeland Security* and *Youngstown Steel* decisions. Neither the district court nor the appellate court in *Brown* found that the FTC did not *deliberately* set out to misuse Section 13(b) after Congress denied the FTC's request for broad remedial relief.

Essentially, these decisions concluded that, because there was long standing precedent allowing the FTC to seek restitution using Section 13(b), the agency could not be found to have acted in bad faith for seeking a remedy approved by existing law. *Id.* at fn. 2-3. The question in this case is whether actions taken by the Government that deliberately violate constitutional separation of powers can be tolerated in a society governed by rules set out in the Constitution.

The Government also asserts that the FTC could not be held accountable for actions undertaken by a Receiver. Dkt. 153 at 21 citing *United States v. Beszborn*, 21 F.3d 62 (5th Cir. 1994).  In *Beszborn*, defendant was indicted in 1988. Id. at 67.  Two years later, the Resolution Trust Company was appointed to step into the shoes of a banks assuming all debts of the bank and ultimately obtained damages. *Id*. at 68.  The Court found that the unique role of the RTC was created to aid in the management of

a failed institution prior to its complete sale and dissolution for the benefit of creditors. <u>Significantly, the Government in this case obtained a receivership by violating constitutional separation of powers.</u>   The FTC specifically asked the Court to appoint a receiver for the purpose of seizing Redwood's and Cardiff's assets knowing that Cardiff would suffer devastating losses through an unauthorized receivership.   In essence, the Government is saying that an agency can set out to violate separation of powers but then defend on the basis that the FTC did not directly seize the Defendant's property and is therefore innocent of wrongdoing. [9]

The Receiver's actions inflicted devastating financial and personal harm on Mr. Cardiff, including the loss of his home, the destruction of his credit, and the inability to meet basic obligations for his family. **Exhibit B**, Declaration of Jason Cardiff ¶¶s 8-12 (hereafter "Cardiff Dec."). Moreover, the Government confiscated funds earned by Cardiff while employed at VPL Medical, a company manufacturing surgical quality face masks during the pandemic.  VPL was created while Cardiff was in receivership after notice to the FTC. Civil Dkt. 389. These funds were unrelated to Mr. Cardiff's operation of Redwood, which were under the control of the Receiver. The Government points out that Defendant made requests for living expenses, some of which were granted and some denied.   <u>Absent Congressional authority, the Receiver's actions must be characterized as punitive rather than remedial.</u>

**V.    <u>The Separation of Powers Doctrine Controls This Case.</u>**

The Government asserts that the FTC did not take over Defendant's company

---

[9] The FTC asserts that assets and receiverships are the court's tools ancillary to the injunctive relief.  Dkt. 153 at 8 *citing SEC v Pukke*, 2024 WL 5082066 (4th Cir. Dec. 12, 2024).  However, *Pukke* involved a court imposing a receivership, not under Section 13(b), but to compel defendants to pay a $120.2 million contempt sanction under the Court's contempt powers. Section 13(b) authorized a preliminary injunction restraining Mr Cardiff from business activities violating the injunction, but the assets were not properly placed in receivership.

DEFENDANT JASON CARDIFF'S REPLY  MEMORANDUM IN SUPPORT OF MOTION  TO DISMISS THE INDICTMENT BASED ON DOUBLE JEOPARDY

on its own or under its own authority.  Dkt. 153 at 25.  The FTC does not (and cannot) deny that it misrepresented its authority under Section 13(b) to Judge Otero and numerous other district and appellate courts:

1. The Supreme Court's opinion in *AMG* made it clear that Congress never intended to grant broad authority to seek monetary redress under Section 13(b);

2. Congress rejected the FTC's request for broad monetary relief---a fact that would have *negated* any claim to implied or ancillary authority; and

3.  Fitzgerald's article admitted that the Agency knew that Section 13(b) was solely designed to provide for injunctive relief;

Agencies of the Executive branch cannot be allowed to engage in misconduct by affirmatively misleading the Courts as to agency authority.

From the inception of this case, the FTC consistently litigated and relied solely on Section 13(b) as its authority for seeking monetary damages and imposing a receivership. It was only after the Supreme Court's unanimous decision in *AMG Capital Management, LLC v. FTC*, which held that Section 13(b) does not authorize monetary relief, that the FTC attempted to shift its legal strategy. This post-hoc effort underscores the FTC's deliberate misuse of Section 13(b) and its failure to candidly address the limitations of its authority.

The constitutional violation occurred when the FTC falsely asserted that it possessed authority it did not have under Section 13(b) and when the Court, relying

The same stakes are at issue where, as here, the FTC went to court and failed to disclose to Judge Otero that Congress expressly denied the very authority the FTC falsely represented under Section 13(b). Such conduct not only violated Fed. R. Civ. P. 11 but also led the Court to a judicial decision that violated the constitutional doctrine of separation of powers. Any actions taken under such an order are void ab initio.

10

DEFENDANT JASON CARDIFF'S REPLY  MEMORANDUM IN SUPPORT OF MOTION  TO DISMISS THE INDICTMENT BASED ON DOUBLE JEOPARDY

on those misrepresentations, unlawfully imposed a receivership and froze all of the Defendant's assets. The FTC's belated attempts to reframe its authority cannot cure the void nature of the actions taken under the original flawed order.

The proper remedy for an agency's violation of separation of powers in this case is dismissal.  The seizure of property in *Youngstown* was condemned by the Supreme Court.   Sanctions must be calculated to deter government misconduct.    In this case, the agency deliberately set out to exercise the power that Congress refused to authorize.   The agency's misconduct lasted almost forty (40) years.  When the Supreme Court *unanimously* rejected the FTC's arguments before the Supreme Court, the FTC's Chairperson publicly criticized the Court's for depriving the FTC of an enforcement tool.[10] Clearly, the Chairperson failed to recognize that the agency failed to *faithfully* execute the law passed by Congress.  Given the deliberate, numerous and sustained period during which the FTC violated constitutional separation of powers, and the FTC's defiance of the Court's opinion in AMG, any lesser remedy would not deter other government agencies or law enforcement personnel from engaging in the same or similar misconduct.

## VI.    Conclusion

Engrained in the law is the concept that "No man is above the law."  In this case, no agency should be above the law.   Lawless conduct by agencies cannot be condoned in a society that depends on executive branch agencies to *faithfully* execute the laws.   Public confidence that agencies will not be allowed to subvert the will of Congress is  imperative  to  a  democratic  society  where  the  people's  elected

---

[10] "In AMG Capital, the Supreme Court ruled in favor of scam artists and dishonest corporations, leaving average Americans to pay for illegal behavior."  April 22, 2021 FTC Press Release, ftc.gov/news-events/news/press-releases.  This sort of rhetoric is inappropriate where, as here, the Agency knowingly overstepped the limits of its authority reflecting a lack of understanding of its limited role to faithfully executing laws passed by Congress.

1  representatives, not agency officials, make public policy.   Any lesser remedy will not

2  deter the Government from engaging in the same or similar conduct going forward.

3        For the above reasons, the Indictment must be dismissed with prejudice.

4

5  Dated:  December 30, 2024

6

7                                    By:  /s/ Stephen R. Cochell

8                                         Stephen R. Cochell

9                                         Attorney for Defendant
10                                        JASON EDWARD THOMAS CARDIFF

11

12                          **SERVICE LIST**

13  I HEREBY DECLARE THAT THE FOLLOWING COUNSEL HAVE BEEN
    SERVED WITH THIS DEFENDANT JASON CARDIFF'S NOTICE OF MOTIO
14  AND MOTION TO SUPPRESS EVIDENCE THROUGH THE COURT'S ECF O
    NEXT GEN ELECTRONIC FILING SYSTEM:
15
    E. Martin Estrada
16  United States Attorney
    Mack E. Jenkins
17  Assistant United States Attorney Chief, Criminal
    Division Ranee A. Katzenstein
18  Assistant United States Attorney Chief, Criminal
    Division Valerie Makarewicz
19  Assistant United States Attorney Major Frauds Section
    1100 United States Courthouse
20  312 North Spring
    Street Los Angeles,
21  CA 90012
    Telephone: (213) 894-0756 Facsimile: (213) 894-6269
22  E-mail: Valerie.Makarewicz@usdoj.gov

23  Amanda Liskamm
    Director, Consumer Protection Branch Manu J. Sebastian
24  Trial Attorneys
    Consumer Protection Branch
25  U.S. Department of Justice
    450 Fifth Street NW, Suite 6400 Washington, DC 20001
26  Telephone: (202) 514-0515 Facsimile: (202) 514-8742
    E-mail: Manu.J.Sebastian@usdoj.gov
27        Brianna.M.Gardner@usdoj.gov

28                                   */S/ Stephen R. Cochell*

DEFENDANT JASON CARDIFF'S REPLY  MEMORANDUM IN SUPPORT OF MOTION  TO DISMISS THE
INDICTMENT BASED ON DOUBLE JEOPARDY

1     Stephen R. Cochell

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COCHELL
LAW FIRM

DEFENDANT JASON CARDIFF'S REPLY  MEMORANDUM IN SUPPORT OF MOTION  TO DISMISS THE
INDICTMENT BASED ON DOUBLE JEOPARDY