Stephen R. Cochell
Admitted Pro Hac Vice
*srcochell@gmail.com*
5850 San Felipe, Ste. 500
Houston Texas 77057
Telephone:(713) 436-8000
Facsimile: (213) 623-2000

Allan Grant (SBN#213658)
Grant's Law Firm
17351 Greentree Drive
Riverside, California 92503-6762
Telephone (888)937-7555
Facsimile  (866)858-6637

Attorneys for Defendant
JASON EDWARD THOMAS CARDIFF

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JASON EDWARD THOMAS CARDIFF,<br><br>Defendant. | Case No. 5:23-cr-00021-JGB<br><br>**JASON CARDIFF'S RESPONSE TO GOVERNMENT'S EX PARTE APPLICATION FOR: (1) DECLARATION OF FUGITIVE STATUS, (2) ORDER VACATING TRIAL DATE AND TOLLING OF SPEEDY TRIAL ACT, AND (3) ISSUANCE OF ARREST WARRANT** |

Defendant, Jason Cardiff opposes the Government's Ex Parte Application for declaration of fugitive status, order vacating trial date and tolling of Speedy Trial Act and Issuance of Arrest Warrant.

COCHELL
LAW FIRM

1

## I. Failure to Follow Local Rules

Defendant objects to this motion being addressed on an *ex parte* basis. L.R. 7-19-1 provides, in pertinent part, that: L.R. 7-19.1 "Notice of Application. It shall be the duty of the attorney so applying (a) to make reasonable, good faith efforts orally to advise counsel for all other parties, if known, <u>of the date and substance of the proposed ex parte application.</u>" (emphasis supplied)  The Court should deny the application because the Government did not advise counsel that any of the motions were going to be filed ex parte. The Government asserts that they "informed defense counsel of its intent to file the *instant pleading* at the hearing on January 30, 2025 and by email on January 31, 2025." Dkt. 190 at 2.

However, the January 31, 2025 email stated that the prosecutors were going to file a motion to declare Defendant a fugitive, to suspend deadlines under the Speedy Trial Act and to issue bench warrant; and file a Motion for Order Forfeiting Bail. **Exhibit A**, Declaration of Stephen Cochell, Ex. 1.  Contrary to the Government's representations to the Court, neither the transcript of the January 30, 2025 motions hearing, nor the January 30, 2025 email *remotely* suggests that the motion would be filed as an ex parte application. Moreover, the January 31, 2025 email does <u>not</u> disclose the Government's intention to ask to vacate the trial date.

Nor has the Government argued or set out any facts as to why this matter should be handled as an emergency motion. In response to Defendants Ex Parte Application for a Restraining Order, Production of Documents and Related Communications, the Government vigorously argued that ex parte applications are solely for extraordinary relief stating:

> The Mission Power Eng'g Co. decision cited in the Order further explains the appropriate circumstances for seeking ex parte relief. "Ex parte motions are rarely justified." Mission Power Engineering Co. v, 883 F. Supp. at 490. "[F]iling an ex parte motion . . . is the forensic equivalent of standing in a crowded theater and shouting, Fire! There had better be a fire." Id. at 492 (internal quotations

> omitted). "It must show why the moving party should be allowed to go to the head of the line in front of all other litigants and receive special treatment." Id. Dkt. 181 at 2.

Moreover, pursuant to L.R. 7-3, not suspecting that the Government planned on filing an ex parte application, Defendant's counsel asked for a meet and confer to discuss the motions. **Exhibit A**, Declaration of Stephen Cochell. The email exchanges between Defendant's counsel and the Government indicates the following:

- On January 31, 2025, Defendant's counsel, Stephen Cochell, requested a meet and confer on the motions, suggesting a telephone conference. "We request a meet and confer on our motion on the extradition arrest. I am flexible tomorrow if that works for you."

- On February 1, 2025, Cochell again confirmed his flexibility for scheduling the meet and confer, indicating a telephone call

- On February 2, 2025, the Government, through Valerie Makarewicz, responded: "We prefer that everything be in writing going forward. Please put the contents of your proposed meet and confer in an email and we will respond accordingly"

- On February 2, 2025, Defendant's counsel emailed Ms. Makarewicz stating: "We believe that L.R. 7-3 requires the parties to confer n person (if feasible) or at least b phone if necessary, insisting that we put everything in writing does not comply with the rule. We want to discuss your intention to seek declaring Mr. Cardiff a fugitive and seeking bond forfeiture."

- On February 3, 2025, counsel wrote Ms. Makarewicz that: "The Local Rules require that we talk about the motions before we file the motions, including your motion to declare Mr. Cardiff a fugitive and regarding forfeiture of bond."

L.R. Rule 7-3 makes it very clear that:

> "In all cases not listed as exempt in L.R. 16-12, … counsel contemplating the filing of any motion must first contact opposing counsel <u>to discuss thoroughly</u>, <u>preferably in</u>

3

person, <u>the substance of the contemplated motion and any potential resolution.</u>  The conference must take place at least 7 days prior to the filing of the motion." (emphasis supplied)

The purpose underlying Rule 7-3 is to have the parties thoroughly exchange their views and try to resolve a motion prior to filing a motion.  This Court recently directed Defendant's counsel to file Defendant's application regarding Fourth Amendment violations on the regular docket.  Dkt. 191, Transcript of January 30,2025 Hearing at 3-4.

**II.     No Evidence of an Emergency**

At the outset, it should be noted that Government counsel incorrectly asserts that Mr. Cardiff had an expired U.S. passport.  In fact, he traveled on a *valid* passport released to him by Pretrial Services. The Garda returned Defendant's U.S. Passport, as evidenced by a receipt.   Exhibit B, Cardiff Declaration, Ex. 1.  Pretrial Services has Mr. Cardiff's Irish passport.  Government counsel apparently did not confer with Pretrial Services about this key fact.

The Government does not articulate how or why the Court must act immediately to declare Mr. Cardiff a fugitive.  Mr. Cardiff filed a status report stating that he felt that he had to stay in Ireland to get the treatment he needed.   From his perspective, traveling back to the United States presents a high risk of permanent injury to his health, a concern shared by Dr. M.S.  He was in regular contact with Pretrial Services and continues to contact them to let them know his whereabouts.  The treatment plan is structured over three to four months but may be terminated early if Mr. Cardiff's specialists advise that he is medically fit to travel.  Mr. Cardiff is not traveling through Europe but is at his home in Dublin getting medical treatment for serious health problems.  As set out in his Status Report, "Mr. Cardiff fully intends to return to the United States but cannot do so immediately due to his health condition." Dkt. 178. Mr.

Cardiff filed a motion with this Court requesting to attend the January 29, 2025, hearing via Zoom, demonstrating his willingness to participate in the proceedings.

In sum, these matters can be handled on the Court's regular motion calendar.

### III. The Speedy Trial Act

The Government cannot have it both ways; that is, argue that Defendant must comply with the meet-and-confer rules and then file an ex parte application that should be handled on the Court's regular motions calendar.

The Government invokes the Speedy Trial Act as its authority to declare Mr. Cardiff a "fugitive." The text of the Speedy Trial Act does not include a definition or of the term "fugitive." 18 U.S.C. § 3161(h) provides that the Court may exclude any period of delay resulting from the absence or unavailability of the defendant from the time within which the trial must commence. A defendant is considered absent when their whereabouts are unknown and they are attempting to avoid apprehension or prosecution, or their whereabouts cannot be determined by due diligence. Id.

The Government knows full well that Defendant will gain no advantage in this case from his absence from the United States.

The Government's rush to get this matter before the Court on an ex parte basis is a response to Mr. Cardiff's motion to unearth the facts as to why he was arrested by the Garda on January 14, 2025----literally a day after Defendant's counsel's January 12, 2024 request for the Government to concur in an extension of travel related to Mr. Cardiff's medical treatment. The timing and nature of this motion, and refusal of the Government's prosecutors to deny their involvement in the arrest strongly suggests that this motion was filed ex parte and in response to the exposure of the Government's apparent misconduct.

The Government had over two weeks to figure out what happened before the Court's January 30, 2025 hearing and deny their involvement, but did not provide any

5

information about why Mr. Cardiff was the subject of a thirteen extradition warrant. Dkt. 191.

The Government is well aware of the Fugitive Disentitlement statute, which defines fugitive status. 28 U.S.C. § 2466. A defendant must be actively avoiding a properly issued warrant to evade the court's jurisdiction, which is not the case here. Defendant has been directed by doctors not to fly or risk more serious health problems, is maintaining contact with Pretrial Services, and wants to participate in pretrial motions and appear for trial.

### IV.  Conclusion

The Government's rush to disregard the Local Rules should not be allowed. On one hand, the Government invokes the rules when it suits their purposes, but ignores the Local Rules to try to obtain a favorable ruling from this Court.

Mr. Cardiff is hardly a fugitive in any sense of the word. While he did not return on January 19, 2025 pursuant to the Court's order, Mr. Cardiff is living with this wife and daughter and receiving treatment for his health condition. Indeed, the Garda confronted Mr. Cardiff at his home in Ireland. Until this unexpected acceleration of his symptoms and illness occurred, Mr. Cardiff diligently followed the Bond conditions, maintains a business in the United States, has children and friends in the United States. In short, Mr. Cardiff fully intends to return to the United States for trial and appear before the Court for trial on the charges.

WHEREFORE, Defendant requests that the Government's Ex Parte Application be denied.

Dated: February 5, 2025

By: /s/ Stephen R. Cochell
Stephen R. Cochell

Attorney for Defendant
JASON EDWARD THOMAS CARDIFF

**SERVICE LIST**

I HEREBY DECLARE THAT THE FOLLOWING COUNSEL HAVE BEEN SERVED WITH THIS DEFENDANT JASON CARDIFF'S NOTICE OF MOTIO AND MOTION TO SUPPRESS EVIDENCE THROUGH THE COURT'S ECF O NEXT GEN ELECTRONIC FILING SYSTEM:

E. Martin Estrada United
States Attorney Mack E.
Jenkins
Assistant United States Attorney Chief, Criminal Division Ranee A. Katzenstein
Assistant United States Attorney Chief, Criminal Division Valerie Makarewicz
Assistant United States Attorney Major Frauds Section 1100 United States Courthouse
312 North Spring Street Los Angeles, CA 90012
Telephone: (213) 894-0756 Facsimile: (213) 894-6269 E-mail:
Valerie.Makarewicz@usdoj.gov

Amanda Liskamm
Director, Consumer Protection Branch Manu J. Sebastian Brianna M. Gardner
Trial Attorneys
Consumer Protection Branch

7

1  U.S. Department of Justice
   450 Fifth Street NW, Suite 6400 Washington, DC 20001
2  Telephone: (202) 514-0515 Facsimile: (202) 514-8742 E-mail:
   Manu.J.Sebastian@usdoj.gov
3          Brianna.M.Gardner@usdoj.gov

4                                          */S/ Stephen R. Cochell*
                                            Stephen R. Cochell
5