Stephen R. Cochell
Admitted Pro Hac Vice
srcochell@gmail.com
5850 San Felipe, Ste. 500
Houston Texas 77057
Telephone:(713) 436-8000
Facsimile: (213) 623-2000

Allan Grant (SBN#213658)
Grant's Law Firm
17351 Greentree Drive
Riverside, California 92503-6762
Telephone (888)937-7555
Facsimile  (866)858-6637

Attorneys for Defendant
JASON EDWARD THOMAS CARDIFF

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JASON EDWARD THOMAS CARDIFF<br><br>Defendant<br><br>And<br><br>LILIA MURPHY and BRIAN KENNEDY<br><br>Sureties | Case No. 5:23-CR-00021-JGB<br><br>SURETIES' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER FORFEITING BAIL AND FOR SUMMARY ADJUDICATION OF OBLIGATION<br><br>Hearing Date: March 3, 2025<br><br>Courtroom: 1<br><br>Time: 2:00 p.m. |

COCHELL LAW FIRM

i

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................... ii
TABLE OF AUTHORITIES .................................................................................... iii
DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER FORFEITING BAIL AND FOR SUMMARY ADJUDICATION OF OBLIGATION ........................................................................ 1
I. Background Facts ................................................................................................... 1
II. Rule 46(f) Does Not Require Forfeiture of Property or Funds If Justice Does Not Require Forfeiture. ............................................................................................ 4
    A.   Defendant's Willfulness in Breaching a Release Condition ..................... 5
    B.   The Sureties Participation Apprehending Defendant ............................... 6
    C.   The Cost, Inconvenience, and Prejudice Suffered By The Government .. 6
    D.   Mitigating Factors ..................................................................................... 6
    E.   Whether The Surety Is A Professional Or A Member Of The Family Or Friend; ............................................................................................................ 7
    F.   The Appropriateness of The Bond Amount. ............................................ 8
    G.   The Facts Are Not Crystallized. ............................................................... 9
III. Conclusion ........................................................................................................... 9

# TABLE OF AUTHORITIES

**Case Law**

*See United States v $8850*, 461 U.S. 555 (1983) ………………………………… 8

*United States v Abernathy*, 757 F.2d 1012 (9th Cir. 1985) …………………….. 5

*United States v. Amwest Sur. Ins. Co.,* 54, F.3d 601 (9th Cir. 1995) ………………... 5

*United States v Bass*, 573 F.2d 258 (5th Cir 1978)………………………………….. 4

*United States v. Castaldo*, 667 F.2d 20 (9th Cir. 1981) ……………………………. 7

*United States v Gifford*, 423 F.Supp. 819 (C.D. Cal. 2019) ………………………….. 7

*United States v. Martinez*,
2013 U.S. Dist. LEXIS 161260, (S.D. Cal. Nov. 12, 2013) …………………….….. 7

*United States v. Nguyen,* 279 F.3d 1112 (9th Cir. 2002) ……………………………. 4

*United States v. Parr*, 594 F.2d 440 (5th Cir. 1979) …………………………………. 5

*United States v. Vaccarro,* 51 F.3d 189, 192 (9th Cir. 1988)…………………………. 4-5

*United States v. Vickers*, 144 F. Supp. 3d 1146 (E.D. Cal.2015) …………………. 4-5

**Rules**

Fed. R. Crim. P. 46 ………………………………………………………….……… *passim*

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER FORFEITING BAIL AND FOR SUMMARY ADJUDICATION OF OBLIGATION

Sureties Lilia Murphy and Brian Kennedy (hereinafter "Sureties"), by and through their undersigned counsel, respectfully submit this response in opposition to the United States' Motion for Order Forfeiting Bail and for Summary Adjudication of Obligation (Dkt. 189). The Government seeks a forfeiture of bail and entry of judgment in the amount of $530,000 based on the alleged bond violation of Defendant Jason Edward Thomas Cardiff, which would result in liability for the Sureties in the amounts of $500,000 (Murphy) and $30,000 (Kennedy).

For the reasons set forth below, the Sureties respectfully request that the Court deny summary adjudication of the Bondholder's rights to seek the mitigation and remission of the proposed forfeiture of their property under Fed. R. Crim. P. 46(f)(2). The Bondholders request an evidentiary hearing before decision on the Government's motion.

### I. Background Facts

On February 5, 2025, the Court granted an Order Vacating Trial Date, Tolling of Speedy Trial Act, and Issuance of an arrest warrant. Dk.t 196.   However, the Sureties submit that entry of a judgment is not automatic and that the Court retains discretion under Rule 46(f)(2) to set aside or remit forfeiture in whole or in part based on the circumstances of this case.

The facts of this case are unique. Mr. Cardiff was placed under arrest when he traveled from Ireland to the United States to attend his father's funeral.  Bond was granted at $530,000. Ms. Lilia Murphy agreed to pledge her home to secure $500,000 of the bond as part of an appearance bond and Mr. Kennedy agreed to a $30,000 appearance bond.  The Court also provided for Stephen Cochell to have custody of

COCHELL
LAW FIRM

1

Mr.Cardiff and approved Mr. Cardiff to live with Ms. Murphy and Stephen Cochell.[1] Dkt. 21. The bond also set a curfew from 8:00 a.m. to 8:00 p.m. daily and to wear an electronic monitoring device. Id.

The Court granted Mr. Cardiff leave to travel to Dublin after his wife suffered a heart attack.  Dkt. 87  He stayed ten days and complied fully with the Court's order. On September 4, 2024, the Court granted Mr. Cardiff leave to visit Ireland to provide support for his wife and eleven year old daughter. Dkt. 103, 105. Mr. Cardiff's request indicated that he was going to visit a pulmonologist. Dkt. 103-1 at 5.  On October 29, 2024, the Court entered an Order allowing Mr Cardiff  fourteen days travel to assist his wife and attend a medical appointment.  Dkt. 122, 122-1.  On November 15, 2025, Mr. Cardiff requested an extension of his travel because of unanticipated health problems and had scheduled an appointment with a cardiologist.  Dkt. 125 at 2. He advised the Court that Dr. M.S. referred him to Blackrock Medical Centre finding him "medically unfit to fly until further notice.  *Id.*  Pretrial Services did not oppose the request. Dkt. 125 at 3.  On December 13, 2024, Defendant asked for an additional extension of travel for medical reasons.  Dkt. 148.  The Court granted this extension but indicated that, absent extenuating circumstances, the Court was not inclined to grant future requests to travel or extend travel. Dkt. 151.

From December 6, 2023 until his last departure to Ireland, Mr Cardiff was living with Ms. Murphy and counsel complying fully with the Bond with electronic monitoring, curfew and reporting to Pretrial Services.  At that point, Mr. Cardiff had periodic discussions with Ms. Murphy updating her on his health condition. While living at Ms. Murphy's home, Ms. Murphy became aware that Mr. Cardiff had certain symptoms and was concerned about Mr. Cardiff's health. **Exhibit A,** Murphy Dec. ¶¶s

---

[1] Ms. Murphy later married Mr. Cochell.  Mr. Cochell subsequently entered an appearance as counsel for Mr. Cardiff.  For purposes of this case, counsel will refer to his wife as Ms. Murphy.

12-14.  In or about November, 2024, Mr. Cardiff disclosed to Ms. Murphy that he had experienced additional and more severe medical problems that needed treatment.  Id. at ¶ 15, 17.

On January 14, 2025, Defendant filed his Motion for an Order Extending International Travel, or in the Alternative to Modify the Bond.  Mr. Cardiff advised the Court, and provided the Court with medical evidence that he was medically unfit to fly back to the United States.   Dkt. 162.  Defendant's primary physician, Dr. M.S. recommended a three-to-four-month treatment plan to assure that Mr. Cardiff could fly safely without risking even more serious health consequences.  Dkt. 171 at 2.   Mr. Cardiff submitted Dr. M.S.' report under seal and asked the Court to allow him to stay the additional time to protect his health.  Dkt 149, 175.

The Court deemed the evidence submitted by Dr. M.S. to be insufficient as her report indicated that Mr. Cardiff's symptoms "could" pose a risk of serious injury and that reduced cabin pressure and lower oxygen availability at altitude would greatly increase the potential for …complications.  See Dkt. 171 at 4.   On reconsideration, Defendant submitted further evidence from Dr. M.S.  However, the Court held that the evidence was rejected because the email submission was not "new" evidence that could not have been submitted under L.R. 7-18.  Dkt. 171 at 2.

Both Ms. Murphy and Mr. Kennedy were aware that Mr. Cardiff became ill while in Ireland and was granted extensions of time to seek evaluation medical treatment for his medical condition.  After the Court's ruling on reconsideration, the Sureties asked Mr. Cardiff why he could not return but were told that he wanted to return but was medically unfit to travel until further treatment was obtained to avoid risk of additional injury or permanent harm to his physical health if he traveled.  **Exhibit A**, Declaration of Lilia Murphy ¶¶s 16, 19  (hereafter "Murphy Dec.") ; **Exhibit B**, Declaration of Brian Kennedy ¶ 7 (hereafter "Kennedy Dec.").  As set out below, the Bondholders respectfully submit that they should not be punished for Mr. Cardiff's decision not to return on January 19, 2025.

## II. Rule 46(f) Does Not Require Forfeiture of Property or Funds If Justice Does Not Require Forfeiture.

It is well established that the purpose of bail bonds is to make sure defendants show up for court, not to punish them or their families if they fail to appear. *United States v. Vaccarro,* 51 F.3d 189, 192 (9th Cir. 1988*); United States v Bass*, 573 F.2d 258, 260 (5th Cir 1978) ("The purpose of a bail bond is not punitive; it is to secure the presence of the defendant"). As set out below, this court has the discretion to set aside a forfeiture "in whole or in part" "if it otherwise appears that justice does not require the forfeiture."

In *United States v. Nguyen,* 279 F.3d 1112, 1115 (9th Cir. 2002), the Court noted that "The law on bail forfeiture is neither complex nor voluminous." F.R. Crim. P. 46 provides that if there is a breach of a condition of a bond, the district court shall declare a forfeiture of the bail." However, Rule 46 (e)(2) and (4) also provides that a district court:

> (2) …may direct that a forfeiture be set aside in whole or in part, upon such conditions as the court may impose, if a person released upon execution of an appearance bond with a surety is subsequently surrendered by the surety into custody or if it *otherwise appears that justice does not require the forfeiture*…. [and]
> (4) …may remit it in whole or in part under the [same] conditions….

*Id*. (emphasis supplied)

The *Nguyen* court set out six non-exclusive factors that may be considered in deciding whether to set aside or remit forfeiture of the bond. These factors include: (1)The defendant's willfulness in breaching a release condition; (2) the sureties' participation in apprehending the defendant; (3) the cost, inconvenience, and prejudice suffered by the government; (4) mitigating factors; (5) whether the surety is a professional or a member of the family or friend; and (6) the appropriateness of the

bond amount.

In *United States v. Vickers*, 144 F. Supp. 3d 1146, 1150 (E.D. Cal.2015), the Court noted that the purpose of the bail bond is not punitive. Rather a bond is to insure that the accused will reappear at a later time. *Id*. citing *Vaccaro*, 51 F.3d at 192. The *Vickers* court emphasized that the court must ensure that its decision remains free from frustration or vindictiveness. *Id. citing United States v. Parr*, 594 F.2d 440, 444 (5th Cir. 1979). In *United States v. Amwest Sur. Ins. Co.,* 54, F.3d 601, 604 (9th Cir. 1995), the Court suggested that a defendant's ultimate appearance is a ground for remittance, even if he was absent in prior proceedings.

**A. Defendant's Willfulness in Breaching a Release Condition**

In *Nguyen*, defendant was arrested at work despite consistent claims that he could not surrender himself because he was at home recuperating from surgery. Id. at 1116. Similarly, in *United States v Abernathy*, 757 F.2d 1012, 1015 (9th Circuit), the Court found conduct to be willful where defendant fled nearly 1500 miles using aliases.

In stark contrast, Defendant was granted a court order allowing him to travel to Ireland and was granted extensions to seek medical treatment. While the Court denied further extensions, Defendant was advised by his doctors that he was medically unfit to travel and that he would suffer greater injury if he returned to the United States. Dr. M.S. provided a 3-4 month treatment plan. Dkt. 175. Defendant recognized that the Court ordered his return but, at the time, concluded that if he returned without sufficient treatment, he would potentially suffer greater health consequences resulting in disability and lose his ability to support his family. Dkt 178, Defendant's Status Report. Defendant fully intends to return to the United States. Exhibit C, Declaration of Jason Cardiff ¶ 4. Dkt. 178 at 2.

The Court should not proceed with forfeiture of property or assets from innocent third parties unless or until it becomes clear that Defendant does not intend to return to the United States. This factor weighs in favor of the Sureties at this time.

### B. The Sureties Participation Apprehending Defendant

While Ms. Murphy and Mr. Kennedy are not in a position to physically apprehend Defendant. Both, however, have asked the defendant to obey the order and return to the United States. Both were essentially told that Defendant wanted to return to the United States but could not risk the health consequences. **Exhibit A**, Murphy Dec. ¶ 19, **Exhibit B,** Kennedy Dec.¶ 7. This factor favors the Sureties.

### C. The Cost, Inconvenience, and Prejudice Suffered By The Government

At this point, the Government has sustained limited cost or prejudice from Defendant's absence on January 19, 2025. The cost of litigating pre-trial motions and trial is a cost that would have been incurred in any event. Moreover, there is no evidence that the Defendant intends to do anything but get treatment in Ireland and return. Defendant states he intends to return to the United States within the next three month (May, 2025). Defendant is still reporting to Pretrial Services and will continue to do so upon return. This factor potentially favors the Government, but is entitled to little weight when the failure to appear took place barely three weeks ago. This factor currently favors the Sureties.

### D. Mitigating Factors

The Court held a hearing on January 30, 2025 and then filed this motion seeking forfeiture of property and funds. Ms. Murphy's home is worth more than $500,000 and was purchased by her and her late husband, Leo Murphy, before he tragically died in 2022. Exhibit A, Murphy Dec. ¶ 5. Ms. Murphy respects and obeys the law and has been a law-abiding citizen her entire life. *Id*. at ¶ 4. Ms. Murphy felt compelled to help. Because he had electronic monitoring, curfew conditions and was under supervision of Pretrial Services supervision, Ms. Murphy was confident that she and Steve Cochell would have control over the situation and be able to oversee Mr. Cardiff's bond conditions. *Id*. at ¶ 7.

Ms. Murphy took Mr. Cardiff into her home and was aware that he complied with the curfew and had a decent living situation. **Exhibit A** at ¶¶s 8-9. Over the course

of the last fourteen months, Ms. Murphy observed that Mr. Cardiff went on business trips and returned without incident. *Id*. at 9.

In January, 2025, before the January 19, 2025 deadline and after the January 19, 2025 deadline, Ms. Murphy told Mr. Cardiff that he needed to return to Houston and reminding him that her house would be subject to forfeiture if he did not return. **Exhibit A** at ¶ 19. On those occasions, Mr. Cardiff made it clear that he wanted to return but could not return to Houston unless the doctors in Ireland said he was fit to travel and further stated that he would suffer greater and potentially irreversible damage to his health if he flew before the doctors could treat him. *Id*. at ¶ 19.

Mr. Kennedy is a member of Redwood Scientific Technologies, Inc's Board of Directors and has had frequent contact with Mr. Cardiff in that capacity. Mr. Kennedy learned of Mr. Cardiff's health condition and urged him to return to the United States to comply with the January 19, 2025 deadline. **Exhibit B**, Kennedy Declaration ¶7. However, Mr. Cardiff told him that he would seriously jeopardize his health and believed that he needed follow doctors' orders until he was found to be fit to travel. Id. This factor favors the Sureties.

### E. Whether The Surety Is A Professional Or A Member Of The Family Or Friend;

If the surety is a defendant's family member or friend, rather than a professional bondsman, this factor weighs in favor of setting aside the bond forfeiture." *United States v Gifford*, 423 F.Supp. 819, (C.D. Cal. 2019); *United States v. Martinez*, 2013 U.S. Dist. LEXIS 161260, 2013 WL 6002441, at *7 (S.D. Cal. Nov. 12, 2013). *See also United States v. Castaldo*, 667 F.2d 20, 21 (9th Cir. 1981) (explaining that professional bondsmen are "experienced at bonding criminal defendants" and more likely to be "aware of the risks of executing and filing a bond on [the defendant's] behalf."). Ms. Murphy was a friend and not a professional bondsman. As such, this factor favors setting aside the bond forfeiture.

**F. The Appropriateness of The Bond Amount.**

This factor addresses whether the bond amount was reasonable at the time of its issuance. At the time of the initial bond hearing, the Government argued that Mr. Cardiff fled to Ireland to avoid prosecution notwithstanding the fact that Mr. Cardiff made no secret of his intention to move to Ireland and, in compliance with the FTC order, gave notice to the FTC that he was moving to Dublin and later updates his address.[2] **Exhibit C**, Declaration of Jason Cardiff ¶¶s 4-5. The argument that Mr Cardiff fled to Ireland likely resulted in a substantial increase in the bond and the Court's determination that it needed real property as security for his bond. The Sureties believe that the bond amount should be remitted to account for this misrepresentation by Government counsel.

The reasonableness of the bond should also be evaluated in light of motions that seek dismissal of part or all of the indictment based on Supreme Court precedent. In sum, the bond should have been lower where, as here, the indictment was either vague or substantively defective. Pending before the Court are four motions that impact a determination of whether the bond was reasonable[3]: (a) Defendant's Motion to Dismiss Count Two of the Indictment (Dubin) Dkt 106; (b) Motion to Suppress Evidence (Dkt. 115); (c) Motion to Dismiss Counts 3 and 4 (Aguilar) Dkt. 134; and (d) Motion to Dismiss Based on Double Jeopardy (Dkt. 135).

In the context of this case, due process requires that the Court rule on these motions *before* determining bond forfeiture. *See United States v $8850*, 461 U.S. 555, 564 (1983) (Due process is flexible regarding the right to be heard at a meaningful time recognizing that the timing of a proceeding may impair a party's ability to defend the

---

[2] Counsel has ordered the transcript of the hearing to eliminate any doubt as to what was said at the bond hearing.

[3] Sureties recognize that the Court indicated that it would issue decisions on the pretrial motions at the January 30, 2025 hearing. Dkt. 198.

propriety of a forfeiture).

### G. The Facts Are Not Crystallized.

As a practical matter, the facts are not set in stone and may change. While the Government may take some satisfaction if they obtain an order forfeiting Ms. Murphy's property and Mr. Kennedy's funds, Mr. Cardiff may be released to travel by his physicians as they treat his condition. At that point, the Court and the sureties will have expended a lot of time and resources on this issue and the Court will have to re-evaluate its rulings on the bond. Ms. Murphy should not be subjected to the emotional stress of losing her house where, as here, the facts may change within the next several months. The Government will not suffer prejudice if the Court defers ruling on its motion.

### III. Conclusion

Rule 46(f) provides that the Court may set aside in whole or in part a bail forfeiture if appears that justice does not require bail forfeiture. In sum, neither Ms. Murphy nor Mr. Kennedy have first-hand knowledge of Mr. Cardiff's medical condition and are not in a position to apprehend him. Both have asked Mr. Cardiff to return to Houston and were told that he wanted to return but his doctors found him medically unfit to travel and would suffer additional harm if he traveled before he completed treatment. The Government is well aware of Mr. Cardiff's explanation for not appearing at the January 30, 2025 hearing and that he intends to surrender as soon as possible, presumably within the next three months when his treatment is concluded. Dkt. 178. The Court vacated the pretrial conference and trial dates.[4] Dkt. 196.

Based on the *Nguyen* factors, "justice does not require the forfeiture" of Ms.

---

[4] Barely three days after the January 30, 2025 hearing, the Government filed its Motion to Forfeit Property. Dkt 189. The rush to secure a judgment and start executing on the Sureties' property and assets appears calculated to punish people who are friendly with Mr. Cardiff---not to secure his appearance.

Murphy's home and Mr. Kennedy's funds.  In that vein, Sureties respectfully submit that the process can be deferred or stayed for several months until Mr. Cardiff either surrenders himself or does not.  At that time, the Court will have more information and be in a better position to render a decision that is fair to the Sureties.

**Dated:** February 10, 2024

**Respectfully submitted,**

By: /s/ Stephen R. Cochell
    Stephen R. Cochell

    Attorney for Defendant
    JASON EDWARD THOMAS CARDIFF

**SERVICE LIST**

I HEREBY DECLARE THAT THE FOLLOWING COUNSEL HAVE BEEN SERVED WITH THIS DEFENDANT JASON CARDIFF'S NOTICE OF MOTIO AND MOTION TO SUPPRESS EVIDENCE THROUGH THE COURT'S ECF O NEXT GEN ELECTRONIC FILING SYSTEM:

E. Martin Estrada United
States Attorney Mack E.
Jenkins
Assistant United States Attorney Chief, Criminal Division
Ranee A. Katzenstein
Assistant United States Attorney Chief, Criminal Division
Valerie Makarewicz
Assistant United States Attorney Major Frauds Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
Telephone: (213) 894-0756 Facsimile: (213) 894-6269
E-mail: Valerie.Makarewicz@usdoj.gov
Amanda Liskamm
Director, Consumer Protection Branch Manu J. Sebastian
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
450 Fifth Street NW, Suite 6400 Washington, DC 20001
Telephone: (202) 514-0515 Facsimile: (202) 514-8742
E-mail: Manu.J.Sebastian@usdoj.gov
         Brianna.M.Gardner@usdoj.gov

*/S/ Stephen R. Cochell*
Stephen R. Cochell