UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CRIMINAL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCR 23-0021 JGB** | Date | March 12, 2025 |
| Title | *United States of America v. Jason Edward Thomas Cardiff* | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Government: | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order DENYING Defendant's Motion to Compel Extradition Files and Related Communications (Dkt. No. 200) (IN CHAMBERS)

Before the Court is a motion to compel extradition files and related communications ("Motion," Dkt. No. 200) filed by Jason Edward Thomas Cardiff ("Defendant" or "Cardiff"). The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **DENIES** the Motion.

## I. BACKGROUND

In October 2023, the United States (the "Government") submitted an extradition package to Irish authorities with an arrest warrant for Defendant that was issued on January 31, 2023. (Dkt. No. 203-1 at 4:21-22.) Cardiff was arrested and made his initial appearance on November 27, 2023. (Dkt. Nos. 7, 11.)

From July 2024 to December 2025, the Court permitted Defendant to travel to Ireland. (Dkt. Nos. 94, 105, 124, 133, 151.) On January 15, 2025, the Court ordered Defendant to return to the United States from Ireland by January 19, 2025. ("First Order to Return," Dkt. No. 165.) On January 17, 2025, the Court confirmed in an order that Defendant was to return to the United States by January 19, 2025, and that he was to attend the January 27, 2025 motion hearing in person. ("Second Order to Return," Dkt. No. 171.) On January 21, 2025, the Court denied Defendant's ex parte application for modification of reporting time to allow submission of new

evidence in support of ex parte application to extend international travel. ("Third Order to Return," Dkt. No. 176.) On January 22, 2025, the Court filed a scheduling notice continuing the motion hearing from January 27, 2025 to January 30, 2025. (Dkt. No. 177.)

On January 24, 2025, Defendant filed a status report, informing the Court that he had not returned to the United States and did not intend to return until his physicians clear him for travel. ("Status Report," Dkt. No. 178.) Defendant failed to appear at the motion hearing on January 30, 2025. (Dkt. No. 188.) On February 5, 2025, the Court granted an order that: (1) declared Defendant a fugitive; (2) vacated Defendant's trial date and the tolling of the Speedy Trial Act; and (3) issued an arrest warrant against Defendant. (Dkt. No. 196.) To date, Defendant seemingly remains in Ireland has not returned to the United States.

On January 14, 2025, Irish authorities visited Defendant's residence in Ireland, and allegedly attempted to arrest him pursuant to an extradition warrant. (See Motion at 3, 5.) At a motion hearing on January 30, 2025, the Government informed the Court that "[t]he October 2023 extradition warrant was open and once what occurred in Ireland [on January 14, 2025], it was withdrawn. My understanding is that Mr. Cardiff was not arrested in Ireland, that this was an amicable situation where they went to his home, they talked it over with him, and they ended up leaving without any kind of arrest." (See Motion at 8 (citing the "January 30, 2025 Hearing Transcript," Dkt. No. 191).)

On February 10, 2025, Defendant filed the Motion. (Motion.) In support of the Motion, Defendant filed two declarations—one by Defendant himself ("Cardiff Decl.," Dkt. No. 200-1) and one by attorney Stephen Cochell ("Cochell Decl.," Dkt. No. 200-2.) On February 18, 2025, the Government filed its Opposition alongside an exhibit. ("Opposition," Dkt. No. 203.) Defendant replied on February 24, 2025.

## II. FACTS

Briefly, Defendant served as Chairman of the Board of Directors, Chief Executive Officer, and President of Redwood Scientific Technologies, Inc. ("Redwood"), a Delaware corporation with its corporate headquarters in Upland, California, which "sold various products to consumers, including thin film strips marketed as homeopathic remedies causing weight loss, male sexual enhancement, and smoking cessation." ("Indictment," Dkt. No. 1.) The Indictment charges Cardiff with three crimes related to the operation of his business: access device fraud under 18 U.S.C. § 1029(a)(5) (Count One), aggravated identity theft under 18 U.S.C. § 1028A(a)(1) (Count Two), and witness tampering under 18 U.S.C. § 1512(b)(2)(B) (Counts Three and Four). (See id.) Cardiff also faces criminal forfeiture. (See id.)

//
//
//
//
//

### III.  LEGAL STANDARD

**A. Motion to Compel**

Pursuant to Federal Rule of Criminal Procedure 16,[1] the Government must permit the defendant to inspect and copy, among other things, papers and documents that are in the government's possession, custody, or control and: (1) the item is material to preparing the defense; (2) the government intends to use the item in its case-in-chief at trial; or (3) the item was obtained from or belongs to the defendant.

"Rule 16 does not authorize fishing expeditions." United States v. Sullivan, 2019 WL 8301178, at *1 (D. Haw. December 2, 2019).  To receive discovery under this Rule, Defendant "must make a threshold showing of materiality, which requires a presentation of facts which would tend to show that the Government is in possession of information helpful to the defense." United States v. Doe, 705 F.3d 1134, 1150 (9th Cir. 2013); see United States v. Little, 753 F.2d 1420, 1445 (9th Cir. 1984) (to secure discovery under Rule 16(a)(1)(E), the defendant carries the burden of demonstrating materiality.); see also United States v. Budziak, 697 F.3d 1105, 1111 (9th Cir. 2012) ("A defendant must make a 'threshold showing of materiality' in order to compel discovery pursuant to Rule 16(a)(1)(E).") (citation omitted).  "The mere suspicion that information will prove helpful is insufficient to require disclosure." United States v. Sai Keung Wong, 886 F.2d 252, 255-57 (9th Cir. 1989) (emphasis added).

Brady v. Maryland also requires that the Government disclose all evidence favorable to the accused where the evidence is material either to guilt or punishment.  373 U.S. 83, 87 (1963).  As the Supreme Court has subsequently explained, "[t]he Brady rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur. Thus, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial[.]" United States v. Bagley, 473 U.S. 667, 675 (1985) (footnotes omitted).  Impeachment evidence, as well as exculpatory evidence, falls within the Brady rule.  Id. at 676 (citing Giglio v. United States, 405 U.S. 150, 154 (1972)).  "Such evidence is 'evidence favorable to an accused,' so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." Id. (quoting Brady, 373 U.S. at 87).

### IV.  DISCUSSION

Defendant argues that his Fourth Amendment right against unreasonable search and seizure was violated when he was arrested on January 14, 2025 by Irish authorities.  (See Motion at 3.)  Moreover, Defendant asserts that circumstantial evidence shows that the arrest by Irish authorities was at the direction of Government and interfered with and/or violated this Court's

---

[1] All subsequent references to "Rule" refer to the Federal Rules of Criminal Procedure, unless otherwise noted.

order authorizing him to travel to Ireland. (See id.; Dkt. No. 151.) As such, Defendant requests that the Court issue an order for the Government to: (1) produce records relating to Defendant's arrest on January 14, 2025; and (2) provide a full report of the arrest and the Government's participation either directing or authorizing the arrest. (See id.)

The Government counters that: (1) Cardiff was never arrested on January 14, 2025; (2) the Fourth Amendment does not create a discovery obligation for the Government; and (3) pursuant to Rule 16 and Brady, the Government does not have an obligation to produce any extradition documentation or related communications when the Defendant has not been extradited. (See Opposition at 1, 7-8.)

The Court agrees with the Government. First, the "Fourth Amendment nor the judicially created exclusionary rule applies to acts of foreign officials." See United States v. Barona, 56 F.3d 1087, 1091 (9th Cir. 1995). Only when the "United States agents' participation in the investigation is so substantial that the action is a joint venture between United States and foreign officials" does the Fourth Amendment apply. Id. Here, Cardiff only speculates that the Government was involved, and thus fails to show that United States law enforcement participated in any way in his encounter with Irish authorities on January 14, 2025, let alone participated in a way that was "so substantial" that the encounter was a joint venture between the United States and Irish officials. (See Motion at 4 ("The timing of the January 14, 2025 arrest and the Government's refusal or failure to explain to counsel why Mr. Cardiff was arrested raises a serious question as to whether the prosecutors were involved in directly or indirectly direct[ing] the arrest.")); Barona, 56 F.3d at 1092.

The Court also doubts that Cardiff was restrained or arrested on January 14, 2025 as Cardiff only states that Irish authorities "rushed and surrounded him" at his home, and "demanded that [he] turn over his car keys" and hand over his and his wife's passport instead of being taken to an Irish jail. (See Motion at 5-6); see also United States v. Parr, 843 F.2d 1228, 1231 (9th Cir.1988) ("a distinction between investigatory stops and arrests may be drawn at the point of transporting the defendant to the police station"); Hayes v. Florida, 470 U.S. 811, 814–15 (1985) ("And our view continues to be that the line is crossed when the police, without probable cause or a [valid] warrant, forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes. We adhere to the view that such seizures . . . are sufficiently like arrests to invoke the traditional rule that arrests may constitutionally be made only on probable cause"). Moreover, no evidence was collected from Defendant and turned over to the Government by Irish law enforcement. (See Motion; Opposition at 8.) As such, even if the United States substantially worked with Irish authorities to execute the attempted arrest, Cardiff's Fourth Amendment right was not violated.

Finally, the Court finds that the extradition documents and related communications are not subject to production under Rule 16 or Brady as the October 2023 extradition request is not material to preparing a defense to access device fraud, aggravated identity theft, or witness tampering as charged in the Indictment. The Government has declared that it does not intend to

use any material from Defendant's January 14, 2025 encounter with Irish authorities in its case-in-chief at trial. (See Opposition at 8.) Further, on January 14, 2025, no evidence was collected from Defendant and nothing belonging to Defendant was provided to the Government by Irish authorities. (See id.) As such, Defendant fails to show how the extradition records and related communications are material to his defense or exculpatory. Accordingly, the Court **DENIES** the Motion.

**IT IS SO ORDERED.**