AMANDA N. LISKAMM
Director, Consumer Protection Branch
MANU J. SEBASTIAN
Trial Attorney
U.S. Department of Justice
Consumer Protection Branch
    450 Fifth Street, NW, Suite 6400S
    Washington, D.C.  20001
    Telephone: (202) 514-0515
    Facsimile: (202) 514-8742
    Email:  Manu.J.Sebastian@usdoj.gov

BILAL A. ESSAYLI
United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
VALERIE MAKAREWICZ (Cal. Bar No. 229637)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0756
    Facsimile: (213) 894-6269
    E-mail:   Valerie.Makarewicz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 5:23-CR-00021-JGB |
| Plaintiff, | **GOVERNMENT'S OPPOSITION TO DEFENDANT'S AND SURETIES' MOTIONS TO SET ASIDE OR MODIFY JUDGMENT** |
| v. | |
| JASON EDWARD THOMAS CARDIFF, | Date:        April 28, 2025 |
| Defendant. | Time:        2:00 p.m. |
| | Courtroom:   1 |

        Plaintiff United States of America, by and through its counsel

of record, the Consumer Protection Branch of the United States

Department of Justice and Trial Attorney Manu J. Sebastian, and the

1  United States Attorney for the Central District of California and

2  Assistant United States Attorney Valerie L. Makarewicz, hereby

3  submits this Opposition to Defendant's and Sureties' motions to set

4  aside or modify judgment. Dkts. 220-221.

5

6  Dated April 7, 2025:                    Respectfully submitted,

7

8                                          AMANDA N. LISKAMM
                                           Director
9                                          Consumer Protection Branch

10                                         BILAL A. ESSAYLI
                                           United States Attorney
11

12                                         ____/s/_____
                                           MANU J. SEBASTIAN
13                                         Trial Attorney
                                           VALERIE L. MAKAREWICZ
14                                         Assistant United States Attorney

15

16                                         Attorneys for Plaintiff
                                           UNITED STATES OF AMERICA
17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION.................................................................1

II. STATEMENT OF FACTS.....................................................1

    A.  Initial Proceedings.........................................................1

    B.  Defendant's Motions to Dismiss...............................4

    C.  Defendant's Motions to Stay His Return to the United States and Violation of Conditions of his Bond............4

III. LEGAL STANDARDS........................................................6

IV. ARGUMENT.....................................................................7

    A.  Defendant Willfully Breached His Release Conditions and Remains in Breach.......................................8

    B.  The Sureties Have Not Participated in Apprehending Defendant...............................................................10

    C.  The Government Suffers Cost, Inconvenience, and Prejudice...............................................................11

    D.  There are No Mitigating Factors...........................12

    E.  The Sureties Understood Their Obligations...............13

    F.  The Bond Amount Was Appropriate.........................14

    G.  The Motions to Dismiss are Irrelevant to Bond Forfeiture.............................................................17

II. CONCLUSION.................................................................19

**TABLE OF AUTHORITIES**

Page(s)

**FEDERAL CASES**

Southern Surety Co. v. United States,
  23 F.2d 55 (8ᵗʰ Cir. 1927)........................................17

United States v. Abelian,
  No. 23-1266, 2024 WL 4182174 (9th Cir. Sept. 13, 2024)..........14

United States v. Abernathy,
  757 F.2d 1012 (9th Cir. 1985)....................................6

United States v. Amwest Sur. Ins. Co.,
  54 F.3d 601 (9th Cir 1995)..................................passim

United States v. Famiglietti,
  548 F. Supp. 2d 398 (N.D. Cal. March 28, 2008), report and
  recommendation adopted, 548 F.Supp. 2d 398 (S.D. Tex. Apr. 21,
  2008).......................................................passim

United States v. Gonware,
  415 F.2d 82 (9th Cir. 1969).....................................13

United States v. Murphy, No.
  19CR00043YGRDMR, 2020 WL 790407 (N.D. Cal. Feb. 18, 2020)
  ..................................................7, 11, 13, 14

United States v. Nguyen,
  279 F.3d 1112 (9th Cir. 2002)...............................passim

United States v. Noriega-Sarabia,
  116 F.3d, 417 (9th Cir. 1997)...................................13

United States v. Plechner,
  577 F.2d 596 (9th Cir. 1978)....................................13

United States v. Skipper,
  633 F.2d 1177(5th Cir. 1981).....................................7

United States v. Toro,
  981 F.2d 1045 (9th Cir. 1992).................................6, 13

United States v. Vaccaro,
  51 F.3d 189 (9th Cir. 1995)...................................6, 17

**RULES**

Fed. R. Crim. P. 46(f)(2) and (4)...................................... 6

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

Jason Cardiff remains a fugitive and is in contempt of numerous court orders requiring him to return to the United States. He continues to violate his bond conditions daily and now forewarns that he intends to remain a fugitive in Ireland for an additional "**several months**." Def. Mot. At 8:7-8 (emphasis added). As argued previously in the government's motion for bail forfeiture and related reply, justice requires forfeiture in this case and the forfeiture should not be set aside or modified. Dkts. 189, 204. Defendant's and his sureties' motions should be denied.

**II.   STATEMENT OF FACTS**

**A.   Initial Proceedings**

On January 31, 2023, a grand jury handed down an indictment charging Defendant with Access Device Fraud, Aggravating Identity Theft, and Obstruction. Dkt. 1.

On November 26, 2023, Defendant was arrested at Los Angeles International Airport when he returned to the United States from Ireland. Dkt. 10. Defendant is a dual citizen of the United States and Ireland and resided in Ireland for almost two years prior to his arrest. Dkt. 90.

On November 29, 2023, the government filed a memorandum of points and authorities in support of its request for pretrial detention. Dkt. 13. In its filing, the government detailed Defendant's history of deception and dishonesty in the representations he made to the Court in his civil case. Id. The government notified the Court that Defendant posed a flight risk as he had been held in contempt by Judge Otero and jailed when he

1　　procured a second Irish passport after the Court confiscated his

2　　original Irish passport. Dkt. 13-3 at 38. Defendant had also sold his

3　　residence in the United States and had limited ties in the United

4　　States since he moved to Ireland. Dkt. 13. The government alerted the

5　　Court to Defendant's statements upon arrest where he informed the

6　　arresting agents that the statute of limitations relating to the

7　　crimes he had committed had expired. Dkt. 13 at 9-10. The government

8　　also provided Defendant's posts on social media illustrating his

9　　claims that he was a billionaire and millionaire that lived a lavish

10　lifestyle, including photos and videos of his Rolexes and travel on a

11　private plane. Dkt. 13-5.

12　　　　On November 30, 2023, the United States Probation and Pretrial

13　Services Office ("USPO") submitted a Pretrial Services Report to the

14　Court with a finding that that Defendant was a flight risk. Dkt. 90.

15　USPO recommended an appearance bond in the amount of $750,000 with

16　full deeding of two properties owned by Ms. Cochell. Id.

17　　　　That same day, the Court, after careful consideration of the

18　facts, statements made by Defendant, his criminal defense attorney at

19　the time, and Stephen Cochell, and the concern that Defendant was not

20　offering any of his own assets as collateral for his bond, ordered

21　that Defendant be released on a $530,000 bond, of which $500,000 was

22　to be secured with full deeding of property belonging to Lilia

23　Cochell. Dkt. 14; see also Dkt. 90. The Court accepted Brian Kennedy

24　as the surety that would be responsible for the remaining unsecured

25　$30,000. Dkt. 90. The Court reasoned that the decisions were based on

26　Defendant's lack of "skin in the game" and the unusual nature of the

27　bond package. Id.

28

The Court also issued, among others, the following additional conditions of release: (1) submit to the United States Probation and Pretrial Services supervision; (2) surrender all passports and travel documents; (3) restrict travel to the Central District of California and the Southern District of Texas (and travel points between the two) unless approved by the Court; (4) reside as approved by the Supervising Agency and not relocate without prior permission of the Supervising Agency; (5) participate in the Location Monitoring Program; (6) remain in an approved residence from 8:00 p.m. to 8:00 a.m.; and (7) be placed in the third-party custody of Mr. Cochell. Dkt. 14. Defendant acknowledged and signed the bond and conditions of release that same day. Id. Defendant did not dispute either the bond amount or the conditions of release. Dkt. 90.

On December 4, 2023, the government conducted a phone call with Ms. Cochell to ensure she fully understood her obligations as a surety for Defendant. See Ex. 1, Memorandum of Interview of Lilia Murphy aka Lilia Cochell. Mr. Cochell attended and participated in the conference call. Id. The government informed Ms. Cochell of Defendant's bond conditions, and that the government would move against Ms. Cochell's residence if Defendant violated his bond conditions or failed to appear for a hearing. Id. Ms. Cochell twice acknowledged that she understood the responsibilities and repercussions of serving as Defendant's surety. Id.

On December 5, 2023, Defendant filed a signed affidavit of surety in which Mr. Kennedy acknowledged that he agreed to accept the responsibilities of surety for Defendant's release. Dkt. 22. The next day, Defendant filed a signed affidavit of surety in which Ms. Cochell acknowledged that she agreed to accept the responsibilities

3

of surety for Defendant's release. Dkt. 24. Shortly thereafter, Defendant filed a Deed of Trust executed by Ms. Cochell listing the Clerk of the Court as the Beneficiary. Dkt. 28. Defendant was then released from pre-trial custody.

### B.    Defendant's Motions to Dismiss

On April 8, 2024, Defendant filed his first motion to dismiss, which the Court denied on June 13, 2024. Dkts, 45, 79. On September 9, 2024, Defendant filed his second motion to dismiss as well as a motion to suppress evidence. Dkts. 106-107. On October 21, 2024, the Court issued oral tentative rulings denying both motions. Dkt. 142.

On December 2, 2024, Defendant filed his third and fourth motions to dismiss. Dkt. 134-137. On January 30, 2025, the Court informed counsel that a ruling would be issued on both motions. Dkt. 198.

### C.    Defendant's Motions to Stay His Return to the United States and Violation of Conditions of his Bond

Meanwhile, Defendant requested and was granted numerous travel requests. Beginning in July 2024, the Court permitted Defendant to travel to Ireland. On July 25, 2024, the Court granted Defendant's request to travel to Ireland for ten days. Dkts. 87, 94. On September 4, 2024, the Court granted Defendant's request to travel to Ireland for fourteen days. Dkts. 103, 105. On October 29, 2024, the Court granted Defendant's request to travel to Ireland for fourteen nights. Dkts. 122, 124. On November 20, 2024, the Court granted Defendant's request to extend his travel in Ireland for 30 days. Dkts. 125, 127, 131-132, 133. On December 20, 2024, the Court granted Defendant's request to extend his travel in Ireland for another 30 days. Dkts. 148-149, 151. The Court ordered Defendant to return to the United

States by January 19, 2025, and informed the Defendant that the Court was unlikely to grant future requests to travel or extend travel absent extenuating circumstances. Id. On January 10, 2025, in response to Defendant's ex parte application to continue the hearing date on his third and fourth motions to dismiss from January 13, 2025 to January 27, 2025, the Court granted the request, but ordered Defendant to personally appear on the new hearing date. Dkts. 160-161. On January 14, 2025, Defendant filed an ex parte request to remain in Ireland for another four months, which the Court denied. Dkts. 162, 165.

On January 16, 2025, Defendant filed a motion for reconsideration with multiple exhibits, which the Court denied. Dkts. 166-169, 171. The Court again ordered Defendant to return to the United States from Ireland by January 19, 2025. Dkt. 171. On January 18, 2025, Defendant filed an ex parte application for an extension of his reporting date, which the Court denied. Dkts. 172-173, 175-176. On January 22, 2025, the Court filed a scheduling notice continuing the motion hearing from January 27 to January 30. Dkt. 177. Defendant failed to return to the United States on January 19, 2025, as ordered, and failed to appear at the motion hearing on January 30, 2025, as ordered. Dkt. 198.

On February 5, 2025, the Court declared Defendant a fugitive, vacated the trial date, tolled the Speedy Trial Act, and issued an arrest warrant. Dkt. 196.

On March 11, 2025, the court ordered the bond forfeited against Defendant in the amount of $530,000, with Lilia Cochell to be jointly and severally liable with Defendant in the amount of $500,000, and

1  Brian Kennedy to be jointly and severally liable with Defendant in
2  the amount of $30,000. Dkt. 214.

3      To date, Defendant has not returned to the United States and
4  remains a fugitive. See Dkt. 220.

5  **III. LEGAL STANDARDS**

6      "The purpose of enforcing the terms of bonds. . .  is to
7  increase the likelihood, generally, that defendants and sureties will
8  take their bond commitments seriously and defendants will attend
9  scheduled court appearances." United States v. Famiglietti, 548 F.
10 Supp. 2d 398, 407 (N.D. Cal. March 28, 2008), report and
11 recommendation adopted, 548 F. Supp. 2d 398 (S.D. Tex. Apr. 21,
12 2008); United States v. Vaccaro, 51 F.3d 189, 192 (9th Cir. 1995)
13 ("[G]enerally 'the purpose of a bail bond is to insure that the
14 accused will reappear at a given time.'")(quoting United States v.
15 Toro, 981 F.2d 1045, 1049 (9th Cir. 1992)(cleaned up)). The surety's
16 "one simple obligation" is to assure the defendant's "appearance when
17 promised." United States v. Nguyen, 279 F.3d 1112, 1117 (9th Cir.
18 2002).

19     If there is a breach of a condition of bond, the Court must
20 declare the bail forfeited. Fed. R. Crim. Pro. 46(f)(1). "The
21 forfeiture is thus mandatory." Nguyen, 279 F.3d at 1115 (citing
22 United States v. Abernathy, 757 F.2d 1012, 1015 (9th Cir. 1985)). A
23 Court may direct that a forfeiture be set aside in whole or in part
24 or remitted if the defendant is surrendered into custody by the
25 surety or if it otherwise appears that justice does not require the
26 forfeiture. Fed. R. Crim. P. 46(f)(2) and (4).

27

28

In the rare instances where a court exercises its discretion to set aside or remit bond, the Ninth Circuit considers six non-exclusive factors:

> 1) the defendant's willfulness in breaching a release condition; 2) the sureties' participation in apprehending the defendant; 3) the cost, inconvenience, and prejudice suffered by the government; 4) mitigating factors; 5) whether the surety is a professional or a member of the family or a friend, and 6) the appropriateness of the amount of the bond.

United States v. Murphy, No. 19CR00043YGRDMR, 2020 WL 790407, at *6 (N.D. Cal. Feb. 18, 2020)(citing United States v. Amwest Sur. Ins. Co., 54 F.3d 601, 603 (9th Cir 1995)); see also Nguyen, 279 F.3d at 1115. The district court's decision is reviewed for abuse of discretion. Amwest, 54 F.3d at 602.

Moreover, remission is not appropriate, and forfeiture of a bond should be enforced, where a defendant remains at large as a fugitive from justice. "Remission of forfeited bonds while their subjects are still at large would undermine" the purpose of the bail bond, which is to assure the presence of the accused. See United States v. Skipper, 633 F.2d 1177, 1180 (5th Cir. 1981).

## IV.    ARGUMENT

Many, if not all, of the Amwest factors favor the government. First, Defendant willfully breached his release conditions and remains a fugitive in violation of multiple orders from this Court. Second, Defendant's sureties have not attempted to apprehend him, even after the Court entered judgment. Third, the government has and continues to suffer cost, inconvenience, and prejudice. Fourth, there are no mitigating factors that favor Defendant or his sureties. Fifth, Defendant's sureties filed declarations confirming that they

7

were aware of the responsibilities and risks associated with serving as sureties. Sixth, the bond amount was reasonable considering Defendant's risk of flight and foreign ties. Justice requires forfeiture, and Defendant's and his sureties' motions should be denied.

**A.    Defendant Willfully Breached His Release Conditions and Remains in Breach**

This Court carefully considered Defendant's medical documentation and rejected his contention that he could not return to the United States. Dkts. 151, 161, 165, 171, 176. Defendant's refusal to return is therefore willful.[1] See Nguyen, 279 F.3d at 1115.

"A breach that consists of fleeing to another country and remaining there indefinitely as a fugitive cuts to the core of the system Congress established." Famiglietti, 548 F. Supp. 2d at 410. By failing to return to the United States, Defendant not only failed to appear for a hearing as the Court required but also willfully violated and continues to violate all seven of the release conditions listed above. Defendant has not been and currently is not under the supervision of the United States Probation and Pretrial Services.[2]

---

[1] Unlike in Nguyen, Defendant, here, refused to allow the government to verify the veracity of his medical documentation. According to the limited information on the record, Defendant's medical providers have only indicated that "reduced cabin pressure and lower oxygen availability at altitude would greatly increase the potential for . . . complications." Def. Mot. At 3:25-26 (internal citation omitted). Nothing in the records addresses why Defendant has refused to return to the United States using another mode of transportation, such as travel by boat.

[2] Defendant's failure to return to the United States on January 19, 2025, resulted in the Sr. United States Probation Officer in the Southern District of Texas to close his case. Ex. 2, February 6, 2025 Email from USPO Officer. The United States Probation Officer in the Central District of California confirms that Defendant has had limited contact with USPO. Ex. 3, Apr. 4, 2024 Email from USPO Officer.

Dkts. 21, 151; See Exhibits 2-3. Defendant failed to surrender his passport and travel documents by January 19, 2025, as the Court previously ordered, and he continues to possess his passport. Dkts. 21, 151. Defendant fails to restrict travel to the Central District of California and the Southern District of Texas (and travel points between the two). Dkts. 21, 178. Defendant has not been and is not currently residing as approved by the Supervising Agency. Dkts. 21, 178, 193, 199, 201, 208, 220, 221. He relocated to Ireland without prior permission of the Supervising Agency and this Court. Id. Defendant failed and continues to fail to adhere to a curfew at an approved residence. Id. Defendant failed to have his ankle monitor replaced and fails to participate in the Location Monitoring Program. Dkts. 21, 151, 178. Defendant failed to return and fails to be in the third-party custody of Stephen Cochell. Dkts. 21, 178, 193, 199, 201, 208, 220, 221.

The facts of Nguyen are strikingly similar to the ones at issue here. During sentencing, the court granted Nguyen's request to remain free on bond "for a few extra weeks to care for his sick wife," contingent on a scheduled self-surrender date. Nguyen, 279 F.3d at 1114. Days before the surrender date, the defendant requested to postpone his surrender date, which the court denied. Id. Nevertheless, the defendant did not surrender himself and argued that he was unable to surrender due to medical problems. Id. The defendant's attorney and surety continued to file motions to stay the surrender but the district court found "that the **motions raised nothing new**, based as they were on the same grounds that had been previously rejected." Nguyen, 279 F.3 at 1114-1115 (emphasis added). Following the district court's application of the six factors laid

9

out in Amwest, the Ninth Circuit affirmed the entire bond forfeiture. Id. at 11118; See Amwest, 54 F.3d at 602.

Defendant's motion to set aside moves the goalposts on when Defendant claims he will return to the United States and this Court should have no confidence that Defendant will ever return of his own volition. Initially, Defendant claimed he needed three to four months of treatment in his January 24, 2025 filing. Dkt. 178. In his March 20, 2025 filing, however, Defendant claims that bail forfeiture can be "deferred or stayed for **several months** while his doctors complete the course of treatment necessary for his return." Def. Mot. At 8:7-8 (emphasis added). Defendant's admission that he will not return for at least an additional "several months" demonstrates that defendant will return to the United States at a time of his choosing, if at all. If the bond forfeiture is set aside, any pressure to return to the United States will be completely extinguished and he will remain a fugitive. See Famiglietti, 548 F. Supp. 2d at 409.

Accordingly, Defendant's motion and his sureties' motion must be denied.

**B.    The Sureties Have Not Participated in Apprehending Defendant**

For this factor to weigh in favor of the sureties, the sureties must demonstrate *active participation* in Defendant's apprehension. Amwest, 54 f.3d at 603-604. While the facts in Amwest "indicate that [the sureties] did cooperate with the marshal, it does not demonstrate that [they] made affirmative efforts to recapture [the defendant], or to otherwise participate in his apprehension." Amwest, 54 F.3d at 604. Without active participation in apprehension of the

defendant by the sureties in <u>Amwest</u>, the court found that this factor did not favor the sureties. Id. at 605.

Similarly, other than a few phone calls to Defendant, the sureties in this case admitted in their motions and declarations that they have not participated in Defendant's apprehension. Dkts. 199, 221. Even after the court entered a judgment against them, the sureties continue to fail to actively participate in Defendant's apprehension and he remains a fugitive to this day. Therefore, this factor does not favor the sureties.

**C.    The Government Suffers Cost, Inconvenience, and Prejudice**

"[W]here there has been cost and inconvenience to the government (as there was here) the amount need not be specified." <u>Amwest</u>, 54 F.3d at 604. "The government has no obligation to furnish a bill of costs, nor can the cost and inconvenience factor be dismissed simply because they were not substantial." See <u>Nguyen</u>, 279 F.3d 1112 at 1117 (internal citation omitted).

Defendant and his sureties concede that this factor favors the government. Dkts. 199 at 9:14-15, 201 at 5:11-13; Sur. Mot. at 6:26-27. Since Defendant was ordered to return to the United States on December 20, 2024, the Government has been required to respond to numerous frivolous motions by the Defendant, all of which were meant to delay his return to the United States. See <u>Nguyen</u>, 279 F.3d at 1117. Every motion was denied by the Court. Like in <u>Nguyen</u>, Defendant's disingenuous motions caused the government cost and inconvenience. <u>Id.</u> "All of this time could have been spent on the prosecution of the merits of this case, or on other cases." <u>Murphy</u>, No. 19CR00043YGRDMR, 2020 WL 790407, at *8.

11

1    Defendant's failure to return to the United States greatly

2  prejudices the prosecution's preparations for trial as witnesses'

3  memories fade over time. See Famiglietti, 548 F. Supp. 2d at 413. In

4  Famiglietti, the court also found that the government would need to

5  expend significant resources and there would be undue delay as the

6  United States would need the cooperation of a foreign government to

7  secure the defendant's arrest and extradition. Id. "Thus, the

8  government's entitlement to try the case – and its duty to try the

9  case fairly -- are imperiled." Id. In addition, any restitution to

10 the victims of Defendant's fraud is also delayed and at risk.

11    **D.    There are No Mitigating Factors**

12    Defendant and his sureties fail to articulate any mitigating

13 factors that support setting aside or modifying the judgment against

14 them.

15    Defendant claims his purported medical issues are a mitigating

16 factor. Def. Mot. At 6. As discussed above, this Court determined

17 that Defendant's purported medical issues do not excuse him from

18 appearing in court nor do they permit him to violate his release

19 conditions. Dkts. 151, 161, 165, 171, 176.

20    The sureties argue that a mitigating factor in their favor is

21 the fact that they are not responsible for Defendant's breach of

22 release conditions. Sur. Mot. at 7-9. The sureties fail to provide

23 any authority that supports such a contention. The sureties seek to

24 be rewarded for not assisting Defendant in breaking the law. This is

25 not a mitigating factor.

26    The government understands that Ms. Cochell may lose her home,

27 but the Ninth Circuit has explicitly refused to adopt a "loving

28

relative" exception in its bail forfeiture jurisprudence. <u>Nguyen</u>, 279 F.3d at 11117 n.2.

> Ninth Circuit jurisprudence prevents the court from considering as a mitigating factor the effect the forfeiture would have on the sureties-even if that effect would be devastating and the amount of money forfeited to the government clearly was much greater than the costs the government incurred because of the defendant's breach.

<u>Murphy</u>, No. 19CR00043YGRDMR, 2020 WL 790407, at *6 (citing <u>Famiglietti</u>, 548 F. Supp. 2d at 407(internal quotations removed)).

Accordingly, there are no mitigating factors that support Defendant's and his sureties' arguments that the judgment must be set aside or modified.

**E.    The Sureties Understood Their Obligations**

"A bail bond is a contract between the government and the defendant and his surety." <u>United States v. Plechner</u>, 577 F.2d 596, 598 (9th Cir. 1978)(citing <u>United States v. Gonware</u>, 415 F.2d 82 (9th Cir. 1969)); <u>see also</u> <u>United States v. Toro</u>, 981 F.2d 1045, 1048 (9th Cir. 1992) (bail bonds are contracts for liquidated damages). When a surety signs the bond, an affidavit, and a deed of trust on her home for the purpose of securing a bond, "[s]he cannot now complain that the obligations and risks were unknown to her." <u>United States v. Noriega-Sarabia</u>, 116 F.3d, 417,421 (9th Cir. 1997).

Ms. Cochell signed the surety affidavit and a deed of trust on her home. Dkts. 24, 28. She was aware of the obligations and the risks associated with serving as a surety as it is explicitly detailed in the affidavit she signed. Dkt. 24. Mr. Kennedy signed the surety affidavit and was also aware of the obligations and the risks. Dkt. 22. Neither surety should be permitted to forego their

responsibilities now that Defendant is a fugitive and the required performance detailed in the contract has come due.

As Defendant's sureties concede, the reason courts consider whether the surety is a professional is because a professional is "more likely to be aware of the risks." Sur. Mot. at 9 (internal quotations removed); see also Dkt. 199 at 10. Ms. Cochell's declarations evidence that she understood her house might be at risk if there was a violation of bond conditions. Dkts. 199-1, 221 Ex. A. Similarly, Mr. Kennedy admits in his declarations that he was also aware that he would lose the money he pledged if Defendant did not comply with his bond conditions. Dkts. 199-2, 221 Ex. B. In addition, Mr. Cochell, an attorney, has advised and spoken for Ms. Cochell and Mr. Kennedy since Defendant's arrest, especially when discussing bond and the collateral for bond. See Dkts. 90, 199, 221.

Both Ms. Cochell and Mr. Kennedy confirmed that they were aware of Defendant's health issues. Dkts. 199-1, 199-2, 221 Ex. A-B. If the health issues concerned them to a degree where they believed Defendant would violate a bond condition, they should have contacted the Court and voiced such a concern. They, however, failed to remove themselves as his sureties and assumed the risks of being sureties voluntarily and knowingly. See Murphy, No. 19CR00043YGRDMR, 2020 WL 790407, at *9.

### F.  The Bond Amount Was Appropriate

"The hallmark of a liquidated damage provision is reasonableness at the time the agreement is made rather than a calculation of actual provable losses when the breach occurs. See, e.g., Cal. Civ. Code § 1671 (validity of liquidated damage clauses). . . . A match [between cost to government and the bond] is not necessary and its lack does

14

not require that the bond be remitted in whole or in part." <u>Amwest,</u> <u>54 F.3d</u> at 604-605; <u>United States v. Abelian</u>, No. 23-1266, 2024 WL 4182174, at *2 (9th Cir. Sept. 13, 2024) (citing <u>Nguyen</u>, 279 F.3d at 1117) (A bond is "like liquidated damages in that it must be reasonable when set," and "it need not necessarily approximate the actual costs of breach.").

A judge must set the amount of a bond based on "circumstance-specific and defendant-specific considerations." <u>Famiglietti</u>, 548 F. Supp. 2d at 414. Here, Judge Mircheff did exactly that. The government filed a memorandum detailing Defendant's past transgressions which illustrated that he was dishonest, that he was aware of a possible criminal investigation against him, and that he was a flight risk. <u>See</u> Dkt. 13. For example, the government provided evidence that Defendant had a history of lying to the Court and hiding assets in the civil FTC case. <u>Id.</u>

When the Court in the civil case confiscated Defendant's passports, Defendant contacted the Irish embassy and procured another passport against the Court's order. <u>Id.</u> Judge Otero determined that Defendant was a flight risk and jailed him until he surrendered the second passport he procured. <u>Id.</u> The government also provided Defendant's social media posts where he claimed to be a millionaire and billionaire. <u>Id.</u> These posts included pictures and videos of his luxurious home in Dublin that included an elevator, his numerous Rolex watches, and his travel on a private jet. <u>Id.</u>

The government also provided statements Defendant made when he was arrested, including a statement where he "told arresting agents that the FTC shut down his business in 2018, so the five year statue of limitations would have passed for any charges." <u>Id.</u> at 10. These

1    statements illustrated that Defendant may have stayed in Ireland

2    through 2023 to avoid a possible arrest. As this Court determined,

3    "multiple references to a potential criminal investigation were made

4    during the pendency of [the civil] action." Dkt. 79 at 5. For these

5    reasons, the government requested Defendant be detained.

6         In addition, USPO submitted a report indicating that it believed

7    Defendant was a flight risk. Dkt. 90. In the report, USPO recommended

8    Defendant be held on a $750,000 bond secured by two of Ms. Cochell's

9    properties, her primary residence and an investment property. Id.

10        After considering the arguments presented by the government,

11   USPO, Defendant, and Mr. Cochell, the Court determined that the bond

12   amount should be $530,000 with Ms. Cochell jointly and severally

13   liable with Defendant in the amount of $500,000 and Mr. Kennedy

14   jointly and severally liable with Defendant in the amount of $30,000.

15   Ms. Cochell's portion was to be secured by her primary residence

16   while Mr. Kennedy's portion was unsecured. Dkt. 90. The Court

17   indicated that its decision was based on the Defendant's foreign ties

18   and his circumstances. Id. Specifically, the Court commented that

19   this was a unique bond package and that it made such a decision

20   because Defendant had no "skin in the game." Id. Neither Defendant

21   nor his attorneys disputed the bond amount or the release conditions

22   until Defendant became a fugitive. Id.

23        Defendant and his sureties now contend that the bond amount

24   should have been lower. Def. Mot. at 7; Sur. Mot. at 9. As discussed

25   in Famiglietti,

26

27

28

                                    16

It follows that if courts are to give reality to the rights of defendants that the [Bail Reform] Act confers, they must not permit bond commitments, so essential to pretrial release, to be eviscerated by the magnitude of the potential impact on the surety. In fact, *the **greater that magnitude, the more meaningful the bond commitment.***

. . .

{A] court may appropriately take into account, when assessing the magnitude of the risk of flight and what affect that risk should have on the amount of a bond, the extent, recency, and purposes of the defendant's international travel and how comfortable with or adaptable to foreign cultures he seems to be. As noted above, Mr. Famiglietti is a citizen of Panama, Italy, and the United States. He lived in Panama for some 40 years. He has close relatives and owns property there. He also lived in Italy for several years and has family there. In addition, he has traveled extensively in Europe and in Latin America. Pretrial Services Report, March 6, 2007, at 2 and 4. He obviously has broad language skills and would not be intimidated by the prospect of living outside the United States. ***These factors also increased the risk of flight and put additional upward pressure on the size of the bond.***

Famiglietti, 548 F. Supp. 2d at 410, 418 (emphasis added).

Defendant's risk of flight and foreign ties indicate that the bond amount was reasonable at the time of issuance. In fact, Defendant's failure to return as ordered by the Court indicates that the bond amount could have been higher as the pressure exerted on Defendant was not enough for him to comply with the Court's orders and his release conditions. Id. at 409.

### G.    The Motions to Dismiss are Irrelevant to Bond Forfeiture

Defendant's and the sureties' argument that the outstanding meritless motions to dismiss require the Court to stay or defer the order to forfeit bond ignores the entire purpose of bail bonds. Def. Mot. at 7; Sur. Mot. at 9. The purpose of bail bonds is to make sure defendants show up for court and adhere to their release conditions.

17

See Vaccaro, 51 F.3d at 192; see also Famiglietti, 548 F. Supp. 2d at 409. Bond forfeiture proceedings are independent of the defendant's underlying crime. See Vaccaro, 51 F.3d at 190 (9th Cir. 1995); Southern Surety Co. v. United States, 23 F.2d 55, 57 (8th Cir. 1927)("the defects or invalidity of the indictment constitutes no defense to an action against the surety on a bond adjudged forfeited for the failure of the principal to appear for trial or to comply with other terms of the bond.")(citations omitted).

Defendant and his sureties argue that a consideration of the reasonableness of the bond amount at the time of issuance is the possibility of future motions to dismiss, but they provide no authority that supports such an assertion. Def. Mot. at 7; Sur. Mot. at 9. As detailed above, Judge Mircheff determined the reasonableness of the bond amount based on Defendant's risk of flight and the fact that he was not offering any of his own assets. Dkt. 90. The Court was not obligated to foresee the possible future motions to dismiss, especially the number of meritless motions that have been filed in this case.

In addition, Defendant fails to acknowledge that this Court entered tentative oral rulings denying the second motion to dismiss and the motion to suppress. Dkt. 142. The third motion to dismiss regarding Counts 3 and 4 improperly uses a Rule 12(b) motion to argue a factual dispute. Dkts. 134, 136; See Dkt. 152. Defendant's fourth motion to dismiss regarding Double Jeopardy related to Count 1 raises an argument that has been denied in two different circuits and again ignores established law. Dkts. 135, 137; See Dkt. 153.

Therefore, neither the order forfeiting bond nor the judgment should be stayed or deferred.

## II.  CONCLUSION

Defendant is a fugitive who is willfully disobeying multiple court orders and violating his release conditions. Justice requires forfeiture. Defendant's motion to set aside or modify judgment and the sureties' motion to set aside or modify judgment should be denied.