Stephen R. Cochell
Admitted Pro Hac Vice
*srcochell@gmail.com*
5850 San Felipe, Ste. 500
Houston Texas 77057
Telephone:(713) 436-8000
Facsimile: (213) 623-2000

Allan Grant (SBN#213658)
Grant's Law Firm
17351 Greentree Drive
Riverside, California 92503-6762
Telephone (888) 937-7555
Facsimile  (866) 858-6637

Attorneys for Defendant
JASON EDWARD THOMAS CARDIFF

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JASON EDWARD THOMAS CARDIFF<br><br>Defendant<br><br>And<br><br>LILIA MURPHY and BRIAN KENNEDY<br><br>Sureties | Case No. 5:23-CR-00021-JGB<br><br>SURETIES' REPLY MEMORANDUM IN SUPPORT OF MOTION TO SET ASIDE OR MODIFY JUDGMENT<br><br>Hearing Date: May 5, 2025<br><br>Courtroom:  1<br><br>Time:  2:00 p.m. |

The Government maps out a position that effectively negates the explicit language of Rule 46(f)(2) , which empowers courts to set aside a bail forfeiture where "it *appears* that justice does not require forfeiture." (emphasis supplied) Simply stated, Rule 46(f) must be interpreted as a whole so that bond holders are not penalized for events beyond their control.

**I.    The Standard of Proof**

Rule 46(f)(1), entitled "Bail Forfeiture" provides in pertinent part, that "The Court must declare the bail forfeited if a condition of the bond is breached." This mandatory action, however, is qualified by Rule 46(f)(2) which provides, in pertinent part that: "The court may set aside in whole or in part a bail forfeiture upon any condition the court may impose if: (B) it appears that justice does not require bail forfeiture." Rule 46(f)(4), entitled Remission, provides: "After entering a judgment under Rule 46(f)(3), the court may remit in whole or in part the judgment under the same conditions specified in Rule 46(f)(2).[1]

While the Ninth Circuit, in *United States v. Nguyen*, 279 F.3d 1112, 1115(2002) has addressed six non-exclusive factors in determining whether to set aside or remit forfeiture of a bond, it did not address the burden of proof to be applied. None of the cases located by counsel for the Sureties addressed the burden of proof for a surety to successfully invoke the proviso that forfeiture may be remitted in whole or in part, if "it appears that justice does not require bail forfeiture." Sureties maintain that use of the term "appears" indicates the burden of persuasion for the Sureties is to present proof that is true, reasonable or plausible—definitive proof is not required. Principles of statutory construction support this conclusion.

According to the Merriam-Webster dictionary, "appear" means "to be or come in sight" or to be "evident or manifest."[2] It does not require certainty—only that something seems or looks to be the case. The drafters chose this language rather than stronger standards like "is proven" or "is established." This suggests that the Court need only perceive or conclude on reasonable indications that "justice does not require forfeiture." Had the drafters intended a higher standard of proof, they could have, but chose not to impose a requirement that a surety show "good cause", "clear and

---

[1] Rule 46(g) provides that the court must exonerate the surety when the court has set aside or remitted the forfeiture.
[2] https://www.merriam-webster.com/dictionary/appear

convincing evidence" or "substantial justification." Thus, the inclusion of "appears" in lieu of stronger evidentiary standards reveals a *deliberate* choice to intentionally adopt a lower threshold of proof by a surety.

Indeed, the structure of the rule reveals the drafter's underlying policy. Forfeiture of bail under Rule 46(f)(1) is a *sanction* while Rule 46(f)(2) balances that sanction by requiring fairness in application. Thus, the drafters adopted a minimal threshold ("it appears) to allow courts to account for equitable circumstances, such as misunderstanding, illness or circumstances beyond a surety's control. Stated differently, the drafters did not adopt a higher standard to assure that bail forfeiture did not punish sureties who posted bail. This is consistent with the axiom that bail forfeiture is not intended to punish parties, but to assure a defendant's appearance in court. Thus, the word "appears" in Rule 46(f)(2)(B) should be read to allow a remission or setting aside of forfeiture upon a minimal showing—not definitive proof, but a credible indication that forfeiture would be unjust under the circumstances.[3]

It should be noted that the Government submitted an MOI regarding a discussion with Ms. Murphy. Dkt. 225-1. This is inadmissible hearsay and should be stricken. The controlling document is the Bond. The MOI cannot and does not re-write Rule 46(f)(2).

## II.   The Facts

Defendant was on bond for over a year with stringent curfew conditions and an electronic monitoring device. Mr. Cardiff lived with Ms. Murphy and Mr. Cochell and complied fully with his curfew, worked, obtained permission of court and traveled domestically for work and complied fully with his Pretrial Services officer.
Because of his sustained compliance, Pretrial Services supported a visit to Dublin Ireland on two occasions. While the Government opposed any travel, the Court

---

[3] Significantly, the Government did not dispute the Sureties' interpretation of Rule 46(f)(2) as affording a lower standard of proof for sureties.

accepted Pretrial Services' recommendation and authorized overseas travel for Mr. Cardiff.

Ms. Murphy was aware that Mr. Cardiff had chronic asthma and had reported some symptoms (e.g. problems going up and down steps, coughing fits) that prompted him to make an appointment with a pulmonologist when he got to Dublin. Mr. Cardiff told Ms. Murphy that doctors in Ireland certified him medically unfit to travel and that, if he traveled before completing treatment, he would likely suffer sustained permanent injury. *Id.* After Mr. Cardiff saw his doctor in Dublin, Ms. Murphy asked about his medical problems and also asked: "Are you coming back? Mr. Cardiff told her: "Of course, I'm coming back. I would never do that to you. I would never want to be a fugitive." He then asked if he could have the downstairs bedroom when he came back. "I believed and trusted him." Dkt. 199-1 ¶ 17.

Ms. Murphy had a number of other discussions with Mr. Cardiff asking him to return to Houston telling him that he was risking her home by not returning. Ms. Murphy made it clear that "although he had medical problems, he was putting my home at risk and that he needed to return to Houston to cure the problem." Dkt. 199-1, ¶ 20. Mr. Kennedy understood that Mr. Cardiff has serious health problems and that his General Practitioner found that he was medically unfit to fly home to the United States. Dkt. 199 ¶ 6. Mr. Kennedy also contacted Mr. Cardiff in Ireland and advised him that he should return to the United States. Dkt. 199-2 ¶ 7. Mr. Cardiff told him that he wanted to return to the United States but did not want to risk that he would suffer additional and lasting harm by returning before completing prescribed treatment. Id. Medical records supplied to the Court corroborate that Mr. Cardiff does suffer from medical problems. Dkt. 171 at 2, 149, 175.[4]

### III. The Nguyen Factors

---

[4] The Court ruled that the medical evidence was insufficient and ordered Mr. Cardiff to return to the United States by January 19, 2025.

### A. Participation in Apprehension

The Government vociferously argues that, pursuant to *United States v. Amwest Sur. Ins. Co.*, 54 F.3d 601, 604 (9th Cir. 1995), the non-professional sureties in this case were obligated to actively participate in apprehending Defendant. Dkt. 225 at 15. This argument is in bad faith and has nothing to do with addressing this factor with ordinary citizens who help post bail for a defendant.

Other than moral suasion, what steps could either Ms. Murphy or Mr. Kennedy take to apprehend or assist in the apprehension of a man living in Dublin Ireland? As private United States citizens, they are not authorized to apprehend anyone in Ireland. Any attempt by Ms. Murphy or Mr. Kennedy to apprehend Mr. Cardiff and bring him back to the United States would likely violate Irish laws.[5] The Government apprehended Mr. Cardiff at his home earlier this year and presumably have taken steps to apprehend him through extradition. Dkt. 200 at 3.

At the outset, counsel for the Sureties urged that the Government defer filing motions to forfeit the bond and obtain judgments against them. Dkt. 201 at 9-10. The Government nevertheless decided to push ahead, obtained a judgment and intends to execute the judgment whether they apprehend Mr. Cardiff or not.

Ironically, the Government has now, for the first time, suggested that the Court not entertain the Sureties motion based on an out of circuit case, where the Court stayed remission of an unsecured bond until defendant was apprehended. Dkt. 225 at 12, *citing United States v. Skipper*, 633 F.2d 1177, 1180 (5h Cir. 1981).[6] The Government made

---

[5] Counsel made inquiries as to what steps were being taken to apprehend Mr. Cardiff, (issuance of a bench warrant) but was told that the Government would not divulge that information.

[6] While Ms. Murphy has to live with the possibility of losing her home, she should not have to live in financial limbo simply because the Government decided it needed a judgment as soon as possible to make whatever point it wanted to make. Ms. Murphy's home has a lien and cannot be sold until the lien is released. A $500,000 judgment

a deliberate litigation decision despite the option of seeking bail forfeiture before Mr. Cardiff is apprehended.

**B. Willfulness of the Breach**

Mr. Cardiff reports that his health deteriorated while in Ireland and his doctors found him unfit to travel and prescribed a treatment program to complete before traveling. The Sureties have (and had) no reason to reject Mr. Cardiff's explanation that is suffering from a serious medical problem and needed treatment or risks further and additional injury. From the medical evidence, it appears that Mr. Cardiff had legitimate concerns regarding his health and traveling before obtaining treatment. The Court denied further extensions for Mr. Cardiff's overseas travel because the evidence did not satisfy the Court's standard. Dkt. 171 at 4  Under the bond, Mr. Cardiff had a legal duty to return to the United States. Unlike defendants who deliberately abscond or violate their bond conditions, Mr. Cardiff was faced with a "Hobson's Choice" ---- obey a court order or risk further injury before receiving appropriate medical care. Sureties recognize that Mr. Cardiff's failure to provide further medical evidence may support a finding of willfulness by Mr. Cardiff.

However, both Ms. Murphy and Mr. Kennedy placed their trust in Mr. Cardiff to comply with the Order. Both made it clear to Mr. Cardiff that he had to return.

The Government also notes that the facts in *Nguyen* bear some resemblance to this case, but only some. In *Nguyen,* defendant was arrested at work despite consistent claims and misrepresentations to the Court that he was at home recuperating from surgery. Id. at 1116. The evidence in this case shows that Mr. Cardiff has made no misrepresentations, but has legitimate illnesses that had to be treated.

The Government also contends that the forfeiture should not be set aside because that will take any pressure off of Mr. Cardiff to return and he will remain a fugitive.

---

against Ms. Murphy has an immediate impact on her credit and ability to secure loans, credit or a mortgage if she wants to live somewhere other than Houston.

Dkt 225 at 15. Mr. Cardiff has been consistent that he will not return to the United States despite the risk of forfeiture of Ms. Murphy's home and Mr. Kennedy's bond. If Mr. Cardiff does not return, it is likely that he will be apprehended at some point and he must live with the consequences. Just as Mr. Cardiff is making his choices, the Government made its choice to immediately seek forfeiture and obtain a judgment. The Court should proceed to decide the issue.

**C. Cost, Inconvenience and Prejudice Suffered by the Government**

The Government asserts that Sureties concede this factor favors the Government. Dkt. 225 at 16. Not so! Sureties merely recognized that there is "authority supporting the idea the bond amount may be treated as 'liquidated damages' but unlike contracts where parties negotiate liquidated damages provisions the Court dictates the amount of the bond." Dkt. 224 at 7.[7] Similarly, Rule 46(g) allows the Court to exonerate bail when the court has set aside or remitted the forfeiture. This Court should decline the Government's invitation to disregard the text and structure of Rule 46(f) and Rule 46(g). Counsel surmise that the Government is taking steps to extradite Mr. Cardiff, but the entire bond should not be attributed to Sureties. The Assistant United States Attorney has withdrawn from this case and has not been replaced.

**D. There are Mitigating Factors.**

The Government asserts that there are no mitigating factors because the Court found that Mr. Cardiff's medical condition did not excuse him from coming to court. Dkt. 225 at 17. Sureties agree that this was the Court's decision, but that is a far cry from saying Mr. Cardiff's concern about his medical condition and the effect on his family is not a mitigating circumstance that cannot be given some weight in the overall

---

[7] It is unclear how this *fiction* was created, but transplanting and applying a civil contract concept of liquidated damages in a criminal bond virtually repeals the portions of Rule 46(f)(2)(B) which expressly allows the Court to set aside in whole or in part a bail forfeiture if it appears that justice does not require bail forfeiture.

balancing of the *Nguyen* factors. Moreover, Sureties are informed that a comprehensive medical report has been filed with the Court.

The Government also asserts that Sureties cannot claim that they should not be penalized and should be held responsible for Mr. Cardiff's breach of bond conditions committed after being authorized overseas travel. The violations occurred in Ireland over 4500 miles away from Houston. Curiously, the government asserts there is no authority to make this argument but the authority to remit and/or exonerate a bond is granted under Rule 46(b). Further, the court, in *Nguyen*, acknowledged that the six factors were non-exclusive and that the courts would be granted discretion in making decisions about remission and exoneration.

**E. Resolution of Pending Motions**

The Government argues that the pending motions are irrelevant to the appropriateness of the bond because the purpose of bail bonds is to assure the defendant's presence and adhere to bond conditions. Dkt. 225 at 23. The Government ignored the due process precedent cited by Sureties; likely, because it had no substantive response. Regardless, the Government is wrong. The *Nguyen* decision makes it clear that the Court should consider the reasonableness of the original bond in determining whether to grant a remission or exoneration.

In support of its argument that the pending motions are irrelevant to bond remission, the Government also cites a decision made by the Eighth Circuit Court of Appeals almost 100 years ago, in 1927.[8]

**IV.    The Judgment Should Be Remitted in Whole**

While Rule 46(f)(1) mandated the court enter an order of forfeiture, Rule

---

[8] The Rules of Criminal Procedure were not adopted until March 21, 1946, 327 U.S. 823 (1946). F. R. Crim. P. clarified procedures on bail, which became effective December 1, 2018. The Court should not enter the Government's time machine when Rule 46(b) and Rule 46(g) provide the answers.

46(f)(2)(B) allows the Court to remit bail forfeiture in whole or in part "if it appears that justice does not require the forfeiture." While Rule 46(f) has been interpreted to prevent remission of forfeitures based on the impact of loss of savings or a home, the drafters made it clear that forfeiture should not be ordered where, as here, it does not appear that justice requires forfeiture if the bondholder is helpless to prevent the bond violation.

In the instant case, Ms. Murphy assured that Defendant complied fully with his bond conditions. While aware of some medical issues, Ms. Murphy did not have any reason to believe that Mr. Cardiff would not return to the United States if ordered to do so. In fact, he promised her that he would return. When he did not return, she told him that he was risking her home and told him he needed to return, but he told her that he could not endanger his health. Sitting 4500 miles away, what more could Ms. Murphy do? *These are circumstances out of her control*. See **Exhibit A**, Supplemental Declaration of Lilia Murphy ¶¶s 2-3. The Government knows exactly where Mr. Cardiff lives. Ms. Murphy should not be punished if Mr. Cardiff does not voluntarily return?

While living in Houston with the Cochells, Mr. Cardiff complied fully with the bond conditions and traveled domestically on business and reported faithfully to Pretrial Services. Because of that record, Pretrial Services Officer Jack Sherrod did not oppose Mr. Cardiff's overseas visits and the Court approved them. Dkt. 125 at 2. Mr. Cardiff's company and its employees are located in the United States. While Ms. Murphy had some knowledge that Mr. Cardiff had a health condition, the facts show that his health condition became serious while in Ireland necessitating extensive treatment resulting in his doctor's finding that he was medically unfit to travel.[9] When Mr. Cardiff shared his medical situation with Ms Murphy, she pointedly asked him:

---

[9] A Report of Dr. Bui has been lodged under seal and provides substantially more evidence on this issue.

"Are you coming back? Mr. Cardiff told her: "Of course, I'm coming back. <u>I would never do that to you. I would never want to be a fugitive</u>." He then asked if he could have the downstairs bedroom when he came back. "I believed and trusted him." Dkt. 199-1 ¶ 17. Ms. Murphy could not have foreseen this development. If she had, she would not have risked her house to allow Mr. Cardiff overseas travel. The Court set January 19, 2025 as a deadline for Mr. Cardiff to appear in court. Mr. Cardiff filed a status report stating that he was unable to return because of his health condition and need for treatment.

Ms. Murphy then pointedly told Mr. Cardiff to return to Houston telling him that he was risking her home by not returning. Ms. Murphy made it clear that "although he had medical problems, he was putting my home at risk and that he needed to return to Houston to cure the problem." Dkt. 199-1, ¶ 20. Similarly, Mr. Kennedy contacted Mr. Cardiff in Ireland and advised him that he should return to the United States. Dkt. 199-2 ¶ 7. Mr. Cardiff told him that he wanted to return to the United States but did not want to risk suffering additional and lasting harm by returning before completing prescribed treatment. Id. Sureties ask the Court to consider the report of Dr. Bui lodged under seal by Mr. Cardiff.

WHEREFORE, Sureties request this Honorable Court grant an evidentiary hearing and/or grant their Motion to Set Aside Judgment and to: (1) enter an order setting aside or remitting the forfeiture; and (2) exonerating the sureties pursuant to Rule 46(g).

**Dated:** April 28, 2025.

By: /s/ Stephen R. Cochell
Stephen R. Cochell

Attorney for Defendant
JASON EDWARD THOMAS CARDIFF

COCHELL
LAW FIRM

# SERVICE LIST

I HEREBY DECLARE THAT THE FOLLOWING COUNSEL HAVE BEEN SERVED WITH THIS DEFENDANT JASON CARDIFF'S NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE THROUGH THE COURT'S ECF OF NEXT GEN ELECTRONIC FILING SYSTEM:

Bilal Essayli United States Attorney
Mack E. Jenkins Assistant United States Attorney Chief, Criminal Division
Ranee A. Katzenstein Assistant United States Attorney Chief, Criminal Division
1100 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
Telephone: (213) 894-0756 Facsimile: (213) 894-6269
E-mail: Valerie.Makarewicz@usdoj.gov

Amanda Liskamm Director, Consumer Protection Branch
Manu J. Sebastian Trial Attorneys Consumer Protection Branch
U.S. Department of Justice
450 Fifth Street NW, Suite 6400 Washington, DC 20001
Telephone: (202) 514-0515 Facsimile: (202) 514-8742
E-mail: Manu.J.Sebastian@usdoj.gov
Brianna.M.Gardner@usdoj.gov

                                                      */s/ Stephen R. Cochell*
                                                       Stephen R. Cochell